IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER J. MILLER, an individual, CLIFFORD HOYT, an individual, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC., a Delaware corporation,<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　　　v.<br><br>PATRICK TREADO, an individual, and CHEMIMAGE CORP., a Delaware corporation,<br><br>　　　　　　　　　Defendants. | **Civil Action No. 05-10367-RWZ** |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
PLAINTIFF'S MOTION TO ENJOIN
DEFENDANTS' REISSUE PROCEEDING**

　　Plaintiffs Cambridge Research and Instrumentation, Inc. ("CRI"), Peter J. Miller, and Clifford Hoyt, pursuant to LR 7.1(b)(1), hereby present a memorandum of reasons, including citations of proper authorities, in support of the accompanying motion for an order requiring defendants to petition the Patent and Trademark Office ("PTO") to withdraw and/or stay defendants' reissue application.

## STATEMENT OF FACTS

Plaintiff CRI, based in Woburn, Massachusetts, develops and sells precision equipment for the measurement and control of light, including liquid crystal tunable filters (LCTFs), microscope apparatus, and spectrometers. Plaintiffs Peter J. Miller and Clifford Hoyt are employees of CRI and have been CRI employees at all relevant times.

Defendant ChemImage, based in Pittsburgh, Pennsylvania, is assignee of the patent-in-suit and sells, among other things, Raman imaging microscopy systems. Defendant Patrick Treado is the president of ChemImage, and has been an employee of ChemImage (or its predecessor ChemIcon, Inc.—referred to collectively herein as "ChemImage") during all relevant times.

In the mid 1990's, plaintiffs and defendants collaborated on several projects ("the CRI/ChemIcon collaboration") using, among other things, plaintiffs' LCTF technology and broad expertise in optics. In one project ("the 1996 SBIR proposal" – described in detail in the complaint, ["the complaint", Docket #1], ¶¶7-9, 11-17; see also Exhibits A-C thereto), plaintiffs and defendants collaborated on the development of a near-infrared chemical imaging system having infinity-corrected optics and an LCTF for an imaging spectrometer.

On October 13, 2000, defendant Patrick Treado, Matthew Nelson, Scott Keltzer, and Juliana Riber filed a provisional patent application entitled "Near Infrared Chemical Imaging Microscope" with the PTO, and on October 13, 2001, defendant Treado, Nelson, and Keltzer filed U.S. Patent Application Ser. No. 09/976,391 ("the '391 application") claiming priority from the provisional patent application. At no time were the plaintiffs informed of these applications.

On May 11, 2004, the patent-in-suit, U.S. Pat. No. 6,734,962 ("the '962 patent"), issued from the '391 application (Exhibit F to the complaint). The claims in the '962 patent cover a chemical imaging system using near infrared radiation comprising, among other things, a light collector using infinity-corrected optics and an LCTF as an imaging spectrometer.

Promptly after learning of the '962 patent, plaintiff CRI contacted defendant ChemImage to express CRI's concerns regarding the '962 patent. In the course of attempting to negotiate a settlement with ChemImage, CRI sent a letter to ChemImage on December 29, 2004 presenting CRI's views on the inventorship issue (Exhibit G to the complaint). Counsel for defendant ChemImage responded by letter dated January 20, 2005 stating that defendants found plaintiffs' inventorship contentions "utterly without merit" (Exhibit H to the complaint).

On February 24, 2005, plaintiffs commenced this action by filing the complaint. Count 1 of the complaint seeks an order under 35 U.S.C. §256 correcting inventorship of the '962 patent by naming plaintiffs Peter J. Miller and Clifford Hoyt as co-inventors of '962 patent.

After plaintiffs commenced this action, and unbeknownst to them, on April 11, 2005, defendants filed an application with the PTO to reissue the '962 patent. In an oath which accompanied the reissue application, defendant Treado, along with Nelson and Keltzer, assert that Treado, Nelson, and Keltzer "are **the original and first inventor(s)** of the subject matter which is described and claimed in United States Patent No. 6,734,962 …" (Reissue Declaration, Exhibit A to defendant's memorandum in support of motion to stay and dismiss, [Docket #3], item (2) on page 1, emphasis added) — the very assertion that plaintiffs are contesting in this litigation.

In fact, the reissue application makes no mention of the inventorship issue raised in plaintiffs' complaint. Instead, the basis for the reissue is that the named inventors had misunderstood the prior art during the prosecution of the '962 patent. Specifically, Treado, Nelson, and Keltzer declare in the reissue oath that "we may have claimed more than we were entitled to claim in claims 1, 12, and 13 of the '962 patent in view of" two prior art articles, both of which were co-written by defendant Treado (Reissue Declaration, Exhibit A to defendant's memorandum in support of motion to stay and dismiss, [Docket #3], item (6)(e) on page 2). Treado, Nelson, and Keltzer further declared that "we failed to appreciate this error during the

prosecution of the patent application" (*Id.*, item (6)(f) on page 2). In other words, defendant Treado alleges that he did not understand that the claims of the '962 patent covered subject matter disclosed in the references he co-wrote.

Ostensibly to correct this error, the reissue application seeks to (1) delete the term "scattered" from the claims; and (2) add to the claims that the spectrometer is an LCTF (*Id.*, item (6)(e) on page 2, item (6)(g) on page 3, and item (6)(i) on pages 4-5).

On April 29, 2005, defendants filed a combined motion to stay Count 1, and to dismiss Counts 2-5. On May 31, 2005, plaintiffs responded to defendants' combined motion by opposing the motion to stay Count 1 and not contesting the dismissal without prejudice of Counts 2-5.

On June 20, 2005, the Court denied the motion to stay Count 1, and granted the motion to dismiss Counts 2-5 without prejudice.

## **INTRODUCTION**

Plaintiffs ask the Court to order defendants to stay and/or withdraw their reissue proceeding before the PTO for several reasons.

*First,* defendants' reissue proceeding puts the cart before the horse. In order to file a reissue application of the '962 patent, the inventors of the '962 patent or an assignee of the entire interest therein must sign the reissue oath. 37 CFR §1.172 and §3.73; see also MPEP §1410.01. In the complaint, plaintiffs contend that plaintiffs Miller and Hoyt are co-inventors of the '962 patent, and, since neither Miller nor Hoyt have assigned any interest in the '962 patent, if plaintiffs prevail in this litigation, plaintiffs Miller and Hoyt would have been required to sign the reissue oath. Thus, in filing the reissue proceeding, defendants have assumed the answer to the very question—the inventorship of the claims in the '962 patent—which plaintiffs are asking this Court to determine. Furthermore, and for the same reason, if the Court finds that plaintiffs were co-inventors of the '962 patent, the reissue proceeding will be invalid *ab initio*. On this basis alone, the defendants should stay and/or withdraw their reissue proceeding.

*Second,* defendants' real purpose for the reissue proceeding is an attempt to delete the subject matter which plaintiffs co-invented from the claims of the '962 patent, thereby extinguishing plaintiffs' rights to the '962 patent. Moreover, there is no mechanism for plaintiffs to participate in the reissue proceeding.

*Third,* plaintiffs filed this action to resolve an inventorship dispute with defendants, as such an action is the appropriate means for correcting inventorship when the parties disagree. Instead of addressing plaintiffs' inventorship contentions, defendants have run to the PTO in an attempt to prevent the plaintiffs from having a fair hearing before this Court. This attempt at an end run around the Court's authority should be quashed.

## ARGUMENT

**A.     DISTRICT COURTS HAVE THE POWER TO STAY REISSUE PROCEEDINGS**

Federal district courts have the power to stay reissue proceedings and/or to order parties to cease proceedings before the PTO.  See, *e.g.*, Baker Hughes Inc. v. Kirk, 921 F. Supp. 801, (D.D.C. 1995) (district court enjoins PTO from proceeding with a reissue application); Houston Atlas, Inc. v. Del Mar Scientific, Inc., 1982 U.S. Dist. LEXIS 10046, 217 U.S.P.Q. (BNA) 1032 (N.D. Tex. June 16, 1982) (district court orders party to withdraw from a re-examination proceeding and, further, "to cease and desist from any further proceedings").  Furthermore, the relief requested here, i.e., ordering defendant to petition the PTO to stay and/or withdraw their reissue proceeding, is expressly contemplated by the PTO.  MPEP §1449.01 ("The patent owner may file a petition under 37 CFR 1.182 in a reissue application … to stay [the reissue proceeding]").

As an aside, it should be noted that**,** if the defendants hadn't explicitly requested the PTO to continue the reissue proceeding, the PTO would have automatically stayed the reissue proceeding in light of the present pending litigation.  MPEP §1442.02 ("In order to avoid duplication of effort, action in reissue applications in which there is an indication of concurrent litigation **will be suspended automatically** …" emphasis added).  An exception to this rule is when the reissue applicant explicitly requests that the reissue application be examined presently, which the defendants have done in this case.  *Id*. and  Preliminary Amendment, page 8, in Exhibit A to defendant's motions to stay/dismiss [Docket #6] ("The applicants request that this reissue application be examined at this time and not be stayed pending the outcome of the litigation.").

**B.     THE APPROPRIATE STANDARD: BALANCING THE FOUR FACTORS OF AN INJUNCTION**

In patent cases, the law of the United States Court of Appeals for the Federal Circuit governs motions for preliminary injunctive relief. Texas Instruments, Inc., v. Tessera, Inc., 231 F.3d 1325, 1328 (Fed. Cir. 2000). However, the factors considered in patent cases are much the same as those considered in other areas of law. See, e.g., High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc., 49 F.3d 1551, 1554, 33 USPQ2d 2005, 2007 (Fed. Cir. 1995) ("This court has made clear that the standards applied to the grant of preliminary injunctions are the same in patent cases as in other areas of the law."). These factors are:

(1) the likelihood of movant's success on the merits;

(2) irreparable harm to the movant without an injunction;

(3) the balance of hardships between the parties;

(4) the demands of the public interest.

Mentor Graphics Corp. v. Quickturn Design Systems, Inc., 150 F.3d 1374, 1377 (Fed Cir. 1998). The Federal Circuit has adopted a flexible approach in analyzing the four factors. Hybritech Inc. v. Abbott Laboratories, 849 F.2d 1446, 1451 (Fed.Cir. 1988) (The "factors, taken individually, are not dispositive; rather, the district court must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested.").

When considering an injunction of allegedly infringing activity at the beginning of an infringement suit, a strong showing of the first factor--likelihood of success--is usually required. Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1578 (Fed.Cir.), cert. denied, 464 U.S. 996 (1983) ("The usual requirement of a showing of probability of success on the merits before a preliminary injunction will issue has historically been even stronger in a patent case. Besides having to prove title to the patent, it has been stated as a general proposition that the movant must show that the patent is beyond question valid and infringed.").

Such a strong showing of likelihood of success is justifiable considering the economic harm that may be caused by enjoining the alleged infringer's conduct, usually the manufacturing and/or selling of a product.  RasterOps v. Radius, Inc., 861 F. Supp. 1479, 1482 (N.D. Calif. 1994) ("Because it is impossible to justify imposing an injunction (and the attendant economic harm) on a defendant who has not had the benefit of a trial without a showing that the defendant is likely to lose on the merits, the primary factor on which the court must concentrate is the likelihood of plaintiff's success on the merits at trial.").

However, when considering an injunction which concerns patent rights, but is not for the purpose of enjoining infringing activity *per se*, a more balanced approach to the four factors is called for.  See, *e.g.*, Robb Container Corp. v. Sho-Me Co., 566 F. Supp. 1143, 1152 (N.D. Ill. 1983) ("Generally, parties seeking preliminary injunctions in patent cases have a formidable burden: to establish beyond question that the patent sued upon is valid and infringed. … The instant matter, however, while it raises patent questions, is not a patent case; Robb does not seek to enjoin infringement of its patent, but rather, breaching of the patent assignment contract by Lynn, Sho-Me.  The validity of the patent is clearly at issue, but as a defense to Robb's claim.  We do not believe that the aforementioned burden faced by parties seeking preliminary injunctions against patent infringement applies to the instant breach of contract case.").

Under such a balanced approach, the strength of one factor can compensate for the relative weakness of another factor.  For example, where the likelihood of success "is less forceful . . . . a movant would have to make a stronger showing of irreparable harm in order to tip the balance of equity in his favor."  Standard Havens Prods. v. Gencor Indus., 897 F.2d 511, 513 (Fed. Cir. 1990) (citing Smith Int'l, Inc., at n.7 (Fed.Cir.), cert. denied, 464 U.S. 996 (1983)).  See also Dippin' Dots v. Mosey, 44 USPQ2d 1812, 1814 (N.D. Tex. 1997) ("… no one factor, taken individually, is necessarily dispositive. If the trial court were to grant a preliminary injunction, the weakness of the showing regarding one factor may be overborne by the strength of others.").

- 8 -

**C.    THE FOUR FACTORS**

**(1)    REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS**

Plaintiffs have already presented to the court a 1996 proposal which describes a collaboration of the plaintiffs and defendants for the purpose of constructing a chemical imaging system having all the elements of Claim 1 of the '962 patent.

Exhibit C to the complaint is a copy of the 1996 SBIR proposal submitted to the National Science Foundation and signed by plaintiff Peter Miller on October 23, 1996. The 1996 SBIR proposal was accompanied by an October 25, 1996 letter in support of the proposal signed by defendant Treado on behalf of defendant ChemImage (Exhibit D to the complaint). The SBIR proposal describes how plaintiffs CRI and Peter Miller and defendants Treado and ChemImage intend to collaborate on building a chemical imaging system, and lists plaintiff Peter J. Miller as the Principal Investigator/Project Director (PI), and defendant Patrick Treado as a consultant (complaint, ¶¶12-13). The proposal discloses all of the elements of Claim 1 of the '962 patent, as shown in the table below:

| **Claim 1 of the '962 Patent** | **SBIR Phase II Proposal** <br> (Exhibit C to the complaint) |
|---|---|
| 1. A near infrared radiation chemical imaging system comprising: | The proposal is for an " imaging microscope" which will operate in the near infrared spectrum (see (ii) on page 6). |
| (a) an illumination source for illuminating an area of a sample using light in the near infrared radiation wavelength; | A laser light source is shown in FIG. 2 on page 27 and described on page 4; it will operate in the near infrared spectrum (see (ii) on page 6). |
| (b) a device for collecting a spectrum of near infrared wavelength radiation light transmitted, reflected, emitted or scattered from said illuminated area of said sample and producing a collimated beam therefrom; | An infinity-corrected objective, a device which collects light from the sample and produces a collimated beam therefrom, is shown in FIG. 2 and described on page 4. The light the infinity-corrected objective receives is from the sample, and may be light in the near infrared spectrum (see (ii) on page 6). |

| (c) a near infrared imaging spectrometer for selecting a near infrared radiation image of said collimated beam; and | An LCTF is used as an imaging spectrometer in the SBIR proposal (see, *e.g.*, pages 9 and 10), and it receives the collimated beam from the infinity-corrected objective discussed on page 4 and shown in FIG. 2. |
|---|---|
| (d) a detector for collecting said filtered near infrared images. | A CCD camera for collecting the image from the spectrometer (i.e., LCTF) is shown in FIG. 2 and described on page 4. |

Thus, the 1996 SBIR proposal signed by plaintiff Peter J. Miller (with an attached letter of support from defendant Treado) describes a collaboration among plaintiffs and defendants to create a chemical imaging microscope having all of the elements recited in Claim 1 of the '962 patent, whereas the application for the '962 patent was not filed until October, 2000.

This one document, in and of itself, provides a strong showing of a reasonable likelihood of success in proving plaintiffs were co-inventors of one or more claims in the '962 patent. At the least, this document shows that there are serious and substantial questions concerning the inventorship of the '962 patent which require resolution. See, *e.g.*, Standard Havens Prods. v. Gencor Indus., 897 F.2d 511, 513 (Fed. Cir. 1990) (concerning reasonable likelihood of success in a preliminary injunction - "… it is not necessary that plaintiff's right to a final decision, after trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly toward plaintiff), **it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation** . . . " (emphasis added, citations omitted) ). As noted above, the more rigorous reasonable likelihood standard appropriate for preliminary injunctions in infringement actions (where the injunction would stop defendant's income-earning activity) is not appropriate here, where the relief requested is the staying of an administrative agency procedure—a procedure which is normally stayed when there is concurrent litigation.

**(2)   THE THREAT OF IRREPARABLE HARM TO THE PLAINTIFFS**

Defendants admit that a purpose of the reissue proceeding is to delete the subject matter which the plaintiffs co-invented from the claims of the '962 patent. Defendants' Memorandum of Law [Docket #6], page 10 ("To the extent that the claims of the '962 patent are successfully narrowed in the reissue proceedings such that they do not read on these prior art concepts, Plaintiffs' inventorship and invalidity claims will be <u>mooted</u>." (emphasis in original) ). In other words, defendants hope to extinguish plaintiffs' inventorship rights to the '962 patent by rewriting the claims to exclude subject matter co-invented by plaintiffs.[*]

The irreparable harm intended by defendants is clear: complete loss of plaintiffs' rights to their invention. The traditional rule regarding irreparable harm, whether the movant has an adequate remedy at law, is particularly apt in this case, since plaintiffs can neither participate in the reissue proceeding nor appeal any decision made therein. See, *e.g.*, <u>Earth Resources Corp. v. United States</u>, 44 Fed. Cl. 274, 278 (1999) (inventor could not appeal the decision to grant a reissue patent, even though inventor filed a protest which was ignored by the PTO); <u>Hitachi Metals v. Quigg</u>, 776 F.Supp. 3, 8 (D.D.C. 1991) ("… third parties protesting reissue applications have only limited rights to participate in PTO proceedings. See *35 U.S.C. § § 302-306*; … . Although PTO rules authorize third parties to file protests against reissue applications, *37 C.F.R. § 1.56(h)*, the rules explicitly confine the participation of third parties in reissue proceedings to the filing of protests. *37 C.F.R. § 1.291*."); and 37 C.F.R. § 1.291 ("the active participation of the member of the public filing a protest . . . ends with the filing of the protest. . . .").

---

[*] Plaintiffs do not concede that defendants' amendments in the reissue proceeding succeed in deleting all subject matter which plaintiffs co-invented. However, any alteration of the scope of the claims in the reissue proceeding necessarily affects plaintiffs' rights in the claims as issued in the '962 patent. Moreover, the possibility that defendants will further amend the claims in the reissue proceeding and thus reach their intended goal—the complete deletion of all subject matter co-invented by the plaintiffs—is further evidence of irreparable harm.

**(3)   BALANCE OF HARDSHIPS BETWEEN THE PARTIES**

It is not clear what harm, if any, would befall the defendants if the reissue proceeding is stopped or stayed pending the outcome of this litigation. On the other hand, stopping the reissue proceeding will prevent a waste of time and money by the defendants, since the reissue proceeding may be invalid *ab initio* if plaintiffs prevail in this Court. Indeed, any benefit that might accrue to defendants, economic or otherwise, from the outcome of this reissue proceeding would depend upon the validity of the reissue proceeding and, therefore, upon the outcome of this litigation. As a matter of logic and law, the inventorship issue should be resolved before the reissue proceeding goes forward.

In contrast, the harm to the plaintiffs intended by the defendants in the reissue proceeding is quite dire—the complete extinguishing of plaintiffs' rights in the '962 patent. Thus, the balance of hardships weighs in favor of staying the reissue application.

**(4)   THE PUBLIC INTEREST**

The enforcement of valid patents is in the public interest, and a patent is invalid if it lists more or less than the true inventors. Trovan, Ltd. v. Sokymat SA, 299 F.3d 1292, 1301 (Fed. Cir. 2002). Thus, it is in the public interest to stay the reissue proceeding pending the Court's resolution of the inventorship issue. Furthermore, normally in these circumstances (i.e., when there is a pending litigation), the PTO would have automatically stayed the reissue proceeding.

**D.   CONCLUSION**

When one weighs the irreparable harm to plaintiffs' rights—extinguishing them completely—which defendants intend in the reissue proceeding; the reasonable likelihood of success shown by, or, at the very least, the serious and substantial questions raised by plaintiffs concerning inventorship; the lack of harm to defendants in staying an administrative proceeding;

and the public interest in clarifying the inventorship status (and, thus, the validity) of the '962 patent, the conclusion is clear: this Court should stay defendants' reissue proceeding.

Accordingly, plaintiffs respectfully request that this Court order defendants to petition the PTO to withdraw and/or stay defendants' reissue application.  Plaintiffs also respectfully request that the order granting this motion further direct defendants to submit such order to the PTO with such petition.

Respectfully submitted,

**PETER J. MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.,**

By their attorneys:

 /s/ Teodor Holmberg_____
Martin B. Pavane
Teodor J. Holmberg (BBO# 634708)
COHEN, PONTANI, LIEBERMAN AND PAVANE
551 Fifth Avenue
New York, New York 10176
Tel. (212) 687-2770
Fax (212) 972-5487
E-mail: tidge@cplplaw.com

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201
E-mail:  BMichaelis@brownrudnick.com

Dated:  June 23, 2005