IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER J. MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.<br>　　　Plaintiffs,<br><br>　　　　　　v.<br><br>PATRICK TREADO and CHEMIMAGE CORP.<br>　　　Defendants. | Case No. 05-10367 RWZ |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENJOIN
DEFENDANTS FROM CONTINUING WITH THE REISSUE APPLICATION**

Defendants Patrick Treado and ChemImage Corporation (collectively "Defendants" ) hereby respond to the Motion to Enjoin Defendants from Continuing with the Reissue Application filed by Plaintiffs Cambridge Research and Instrumentation, Inc., Peter J. Miller, and Clifford Hoyt (collectively "Plaintiffs").

**INTRODUCTION**

In their motion, Plaintiffs ask this Court to take the extraordinary and unprecedented step of preventing Defendants from exercising a statutory right granted by Congress, by ordering Defendants to withdraw or stay the reissue application currently pending before the United States Patent and Trademark Office ("PTO"). Plaintiffs' motion should be denied for several reasons.

*First*, Plaintiffs have failed to meet their heavy burden of demonstrating a likelihood of success on the merits. Rather than offer credible evidence that Plaintiffs Hoyt and Miller are, in fact, co-inventors of the patent-in-suit, Plaintiffs rely solely on unsubstantiated characterizations of a single unauthenticated document. This fails to meet the "clear and convincing" burden

necessary for Plaintiffs to prove their claim of co-inventorship under fundamental principles of patent law.

*Second*, Plaintiffs have failed to show that they will suffer irreparable harm in the absence of the requested injunctive relief. Under Plaintiffs' theory, claim 1 of the patent at issue (*i.e.*, the only claim addressed by Plaintiffs in their motion) is invalid based on the prior art, namely the document cited by Plaintiffs. As a matter of law and logic, Plaintiffs will suffer no irreparable harm if they are not named as co-inventors of an ***invalid*** patent claim.

*Third*, Plaintiffs' motion should be denied because they are improperly attempting to disavow a prior position taken in this case when it suits their needs. In particular, Plaintiffs successfully opposed Defendants' motion to stay on the ground that "Defendants' reissue proceeding cannot, and will not, resolve the inventorship issues raised by Count 1 [because] the claims pending in the reissue application still recite subject matter which plaintiffs allege was invented by plaintiffs Hoyt and Miller."[1] Now, in their current brief, Plaintiffs have completely reversed position and argue that the reissue proceedings will "extinguish plaintiffs' inventorship rights to the '962 patent by rewriting the claims to exclude subject matter co-invented plaintiffs."[2] Judicial estoppel precludes such disingenuous maneuvering. If, as Plaintiffs vigorously argued to this Court, the reissue proceedings "cannot, and will not" extinguish Plaintiffs' inventorship rights to the patent, it is clear that Plaintiffs will suffer no irreparable harm if the reissue proceedings continue.

*Fourth*, granting Plaintiffs' injunction will cause more harm to Defendants than it will prevent to Plaintiffs. If this Court enjoins the reissue proceedings and denies Defendants their

---

[1] Plaintiffs Response To Defendants' Motion To Stay Count 1 And Dismiss Counts 2-5, at p. 6.

[2] *See* Plaintiffs' Mem., at p. 11.

statutory right to have the PTO timely review and correct Defendant's patent, this will irreparably harm Defendants by shortening the time during which Defendants may enforce their patent.

*Fifth*, if this Court were to grant the relief sought by Plaintiffs, it would establish a groundbreaking precedent allowing a party to enjoin others from exercising their rights granted under the patent laws. Such a result would be particularly inappropriate here where Plaintiffs fail to cite any authority that supports their position. Indeed, at least one circuit court of appeals has held that granting the relief requested by Plaintiffs -- enjoining a patent holder from proceeding with the prosecution of a reissue application -- was an abuse of discretion.

*Sixth*, the public interest supports allowing the PTO to correct prior art defects to a patent, and warrants against granting the relief Plaintiffs seek. Contrary to Plaintiffs' contention, it is clear that Plaintiffs are the ones attempting to put the "cart before horse." Plaintiffs contend that claim 1 of the patent (*i.e.*, the only claim addressed by Plaintiffs in their motion) is invalid based on the prior art. Thus, rather than waiting for the PTO to perform its statutorily mandated job of reviewing the prior art to determine whether claim 1 can be corrected (by narrowing the claim in a way that avoids the prior art), Plaintiffs seek a ruling that they participated in inventing an invalid patent claim.[3] Plaintiffs also ask the Court to effectively preclude the PTO from proceeding forward with its decision of whether to correct the prior art defects to claim 1 of the patent. Such a result would be insupportable, illogical, and contrary to the law.

For all of these reasons, Defendants respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction.

---

[3] There is no "end run around the Court's authority" here as Plaintiffs suggest, because, in contrast to the PTO, this Court has **no** authority to correct claim 1 of the patent so that it avoids the prior art.

3

# ARGUMENT

**A.  Plaintiffs Ignore The Proper Standard For Granting A Mandatory Injunction.**

To obtain injunctive relief, Plaintiffs must establish (1) a likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) the balance of hardships favors granting the injunction; and (4) the public interest favors granting the injunction. *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1374, 1377 (Fed. Cir. 1998). The burden on Plaintiffs is particularly great because they seek a mandatory injunction that requires Defendants to take an affirmative act, namely withdrawing or staying the reissue proceedings: "When the relief is in the form of a mandatory injunction requiring that a party perform specific acts, the court should exercise even a further degree of caution in evaluating the propriety of plaintiff's request." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 66 F. Supp. 2d 317, 327 (D.R.I. 1999); *see also Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) (holding plaintiff's request for a mandatory injunction to a standard of "heightened scrutiny").

In this case, Plaintiffs cannot satisfy the heavy burden imposed upon them to warrant the issuance of mandatory injunctive relief. Indeed, as discussed herein, Plaintiffs' unsupported argument of co-inventorship does not even come close to satisfying the normal standards for preliminary injunctions, particularly in light of the heightened level of scrutiny that applies where the moving party is requesting a mandatory injunction.

**B.  Plaintiffs Have Failed To Demonstrate A Clear Likelihood of
Success On The Merits Of Their Claim.**

To prevail at trial, Plaintiffs must prove, by "clear and convincing evidence," that Plaintiffs Hoyt and Miller are co-inventors of the subject matter claimed in the patent-in-suit. *See Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1461 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 923 (1998) ("To show co-inventorship, however, the alleged co-inventor or co-inventors

must prove their contribution to the conception of the claims by clear and convincing evidence.") (citing *Hess v. Advanced Cardiovascular Sys. Inc.*, 106 F.3d 976 (Fed. Cir. 1997)); *see also Hay & Forage Indus. v. New Holland North America, Inc.*, 25 F. Supp. 2d 1180, 1195 (D. Kan. 1998) ("[A] party challenging a patent's validity for failure to name a co-inventor must prove contribution to the invention by clear and convincing evidence. Just as in derivation challenges, 'conception is the touchstone of inventorship.' Thus, a purported co-inventor must show by clear and convincing evidence that he or she contributed to the conception of the invention."). Plaintiffs cannot carry that burden here.

In support of their position that they are likely to succeed on the merits of their co-inventorship claim, Plaintiffs have relied *solely* on an unsupported characterization of a so-called "1996 Phase II SBIR Proposal" (Exh. C to the Complaint) in a chart that purportedly shows how this document discloses all of the elements of claim 1 of the patent-in-suit. See Plaintiffs' Mem., at 9-10. In addition to the utter lack of any testimonial or other evidence to support this chart, a simple comparison (shown below) of the elements of claim 1 to the actual language of the 1996 Phase II SBIR Proposal shows substantial gaps between Plaintiffs' *characterizations* of the proposal and the *actual text* of the document.

| Claim 1 of '962 Patent | Plaintiffs' Characterization Of 1996 Phase II SBIR Proposal | Actual Text Of 1996 Phase II SBIR Proposal |
|---|---|---|
| 1. A near infrared radiation chemical imaging system comprising: | The proposal is for an "imaging microscope" which will operate in the near infrared spectrum. (see (ii) on page 6). | Item (ii) on page 6 describes development of a Raman *filter* – rather than a *microscope*.[4] |

---

[4] Item (ii) on page 6 states "The Phase II Objectives are the following: … to develop a near-IR (NIR) version of the Raman LCTF …" The term LCTF is defined on page 3 of the Proposal as a "liquid crystal tunable *filter*." (Emphasis added).

5

| | | |
|---|---|---|
| a) an illumination source for illuminating an area of a sample using light in the near infrared radiation wavelength; | A laser light source is source is shown in FIG. 2 on page 27 and described on page 4; it will operate in the near infrared spectrum (see (ii) on page 6). | Item (ii) on page 6 does not even relate to the laser light source purportedly shown on page 27 or described on page 4. Item (ii) on page 6 describes development of a *filter* – rather than a *laser light source*. *See* note 4, *supra*. |
| b) a device for collecting a spectrum of near infrared wavelength radiation light transmitted, reflected, emitted or scattered from said illuminated area of said sample and producing a collimated beam therefrom; | An infinity-corrected objective, a device which collects light from the sample and produces a collimated beam therefrom, is shown in Fig. 2 and described on page 4. The light the infinity-corrected objective receives is from the sample, and may be light in the near infrared spectrum. (see (ii) on page 6). | Page 4 states "Raman scatter is collected by the same infinity-corrected objective and presented to two holographic notch filters which remove laser back-scatter." <br><br> Nowhere does Page 4 state that the objective "*collects light from the sample and produces a collimated beam therefrom*" or that light the infinity-corrected objective receives "*may be light in the near infrared spectrum*." <br><br> Item (ii) on page 6 does not even relate to the microscope objective shown on page 27 or described on page 4. Item (ii) on page 6 describes development of a *filter* – rather than an *objective*. *See* note 4, *supra*. |
| c) a near infrared imaging spectrometer for selecting a near infrared radiation image of said collimated beam; and | An (sic) LCTF is used as an imaging spectrometer in the SBIR proposal (see *e.g.*, pages 9 and 10), and it receives the collimated beam from the infinity corrected objective discussed on page 4 and shown in FIG. 2. | The term "*imaging* spectrometer" never even appears on pages 9-10. Page 10 describes the use of a "*scanning* spectrometer" for *calibrating* the LCTF – rather than the use of an LCTF *as an imaging spectrometer in a microscope*. *See* final two paragraphs on p. 10. <br><br> Pages 9-10 do not state that the LCTF "*receives the collimated beam from the infinity corrected objective*." The terms "collimated |

6

|  |  |  |
|---|---|---|
|  |  | beam" and "infinity corrected beam" are *not even mentioned* on pages 9-10 of the Proposal. |
| d) a detector for collecting said filtered near infrared images. | A CCD camera for collecting the image from the spectrometer (i.e., LCTF) is shown in FIG. 2 and described on page 4. | Page 4 does *not* state that the LCTF functions as a spectrometer. |

Moreover, it strains the imagination to understand how, as Plaintiffs suggest, the 1996 Phase II SBIR Proposal "in and of itself" provides a strong showing of a reasonable likelihood of success that Plaintiff Clifford Hoyt ("Hoyt") is a co-inventor of one or more claims in the '962 patent"[5] when he is **not** even listed or otherwise identified as a contributor anywhere on the 1996 Phase II SBIR Proposal. It borders on frivolous for Plaintiffs to assert that a proposal that fails to even mention Plaintiff Hoyt presents a "strong showing" that he invented anything.

Plaintiffs' arguments with respect to the other purported co-inventor, Plaintiff Peter Miller ("Miller"), fare no better. Even if the portions of 1996 Phase II SBIR Proposal cited by Plaintiffs in their claim chart[6] disclosed the elements of claim 1 of the '962 patent, it does not follow that Plaintiff Miller participated in conceiving of the subject matter corresponding to these citations. Plaintiffs' position confuses the significant distinction between an inventor under U.S. Patent Law and a listed contributor on a proposal.

In order to be an inventor under U.S. Patent Law, a person must contribute to the **conception** of the invention. *Hay & Forage Indus.*, 25 F. Supp. 2d 1180, 1195. "Conception is the **mental formulation** and disclosure by the inventor of a complete idea . . . ." *Chisum on Patents*, §10.04 (Emphasis added). *See also Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir.

---

[5] *See* Plaintiffs' Mem., at p. 10.

[6] *See* Plaintiffs' Mem., at pp. 9-10.

1998) ("Conception is the formation, *in the mind of the inventor*, of a definite and permanent idea of the complete and operative invention . . . .") (emphasis added). The 1996 Phase II SBIR Proposal is a 37-page document that purports to identify Defendant Patrick Treado ("Treado") and Plaintiff Miller as contributors. Many ideas and concepts are described throughout the 37-page document, and there is simply no way of telling from the 1996 Phase II SBIR Proposal who conceived of each of the ideas/concepts described therein. It would be rank speculation to assume that because the 37-page document identifies Treado and Miller as contributors, both individuals together *conceived* (*i.e.*, made a mental formulation) of **each and every** one of the ideas/concepts expressed therein. Plaintiffs have not offered even a scintilla of evidence to bridge this glaring gap in their proof.

In short, the only "evidence" provided by Plaintiffs in support of their motion – the unsubstantiated characterizations of the proposal -- provide no basis for this Court to conclude that Plaintiffs are likely to succeed in meeting their clear and convincing burden of proof at trial. For this reason alone, and particularly in view of the heightened level of scrutiny to which this Court should hold Plaintiffs' request for injunctive relief, Plaintiffs' motion should be denied.

**C.     Plaintiffs Have Failed To Demonstrate Irreparable Harm If The Requested Injunction Is Not Entered.**

   **1.     Under The Theory Advanced by Plaintiffs, They Cannot Demonstrate Irreparable Harm.**

If the chart on pages 9-10 of Plaintiffs' brief were correct, and the 1996 SBIR Phase II Proposal disclosed each element of claim 1 of the '962 patent, then claim 1 of the '962 patent would be invalid under 35 U.S.C. § 102 (b). Section 102(b) provides in relevant part as follows:

> A person shall be entitled to a patent *unless* . . . the invention was . . . described in a printed publication in this or a foreign country . . . more than *one year* prior to the date of the application for patent in the United States. (Emphasis added).

8

The '962 patent was based on a provisional patent application filed October 13, 2000[7] – almost *three years after* the 1996 SBIR Phase II Proposal. It also bears mention that paragraphs 58-60 of Plaintiffs' Complaint asked for a declaration that claim 1 of the '962 patent is invalid under 35 U.S.C. § 102 (b) based on the same proposal. The question, however, that Plaintiffs have failed to answer is how they will suffer irreparable harm if they are not named as co-inventors of a patent that they maintain is **invalid**. *See Singer Co. v. P.R. Mallory & Co., Inc.*, 671 F.2d 232 (7th Cir. 1982) (speculative irreparable harm is insufficient to justify enjoining reissue proceedings).

Plaintiffs' assertion that they will suffer irreparable harm in the form of a "complete loss of plaintiffs rights" is entirely at odds with Plaintiffs' earlier assertion that the 1996 SBIR Phase II Proposal discloses every element of claim 1 of the '962 patent. Plaintiffs cannot have it both ways. If, as Plaintiffs maintain, the 1996 SBIR Phase II Proposal discloses every element of claim 1 of the '962 patent, then claim 1 of the patent is invalid and there are no enforceable patent rights for Plaintiffs to lose. In such a case, Plaintiffs' motion would have to be denied based on Plaintiffs' failure to show irreparable harm. On the other hand, if claim 1 of the '962 patent is enforceable, then the 1996 SBIR Phase II Proposal necessarily did not disclose every element of claim 1 of the '962 patent – in which case Plaintiffs' motion must be denied based on Plaintiffs' failure to establish a likelihood of success on the merits of its co-inventorship claim. In either event, Plaintiffs' motion must be denied.

---

[7] *See* Plaintiffs' Complaint, ¶¶ 19-21.

### 2. Because Plaintiffs Previously Took A Contrary Position, They Are Judicially Estopped From Arguing That They Will Suffer Irreparable Harm.

Plaintiffs' irreparable harm argument – that the reissue proceedings will extinguish their inventorship rights – is also squarely at odds with the positions advanced by Plaintiffs in opposing Defendants' motion to stay. In opposing Defendants' motion to stay, Plaintiffs had argued that the reissue proceeding would not resolve the inventorship issues raised by Count 1 "[b]ecause the defendants' amendments to the claims in the reissue application *still recite subject matter which plaintiffs contend was invented by plaintiffs* . . . ."[8] In particular, Plaintiffs had argued:

> The primary changes made to the claims of the '962 patent in defendants' reissue application are (1) deleting the term "scattered"; and (2) specifying that the spectrometer is an LCTF.
> *The deletion of "scattering" from the claims will have no effect on the contentions of plaintiffs, i.e., the amended claims of the reissue proceeding still recite subject matter co-invented by plaintiffs*. For example, Claim 3 still recites that the collecting/collimating device in Claim 1 may comprise a "refractive type infinity-corrected near infrared optimized microscope objective," which plaintiffs contend was invented by plaintiff Clifford Hoyt, and Claim 4 still recites an "Evans Split-Element liquid crystal tunable" filter, which plaintiffs contend was invented by plaintiff Peter J. Miller.
> Amending the claims to recite that the spectrometer is an LCTF also *will not resolve the inventorship issue and, if anything, brings the claims closer to plaintiffs' contribution* . . . .[9]

Now, when it suits Plaintiffs' interest, they have turned 180 degrees from their previous position that the claims in the reissue proceeding "still recite subject matter co-invented by plaintiffs" by arguing in the present motion that the court should order the reissue proceeding

---

[8] Plaintiffs Response To Defendants' Motion To Stay Count 1 And Dismiss Counts 2-5, at p. 14 (emphasis added).

[9] Plaintiffs Response To Defendants' Motion To Stay Count 1 And Dismiss Counts 2-5, at p. 13 (emphasis added).

10

enjoined because the reissue proceedings will "***extinguish plaintiffs' inventorship rights to the '962 patent by rewriting the claims to exclude subject matter co-invented by plaintiffs***."[10] Plaintiffs cannot have it both ways. In view of the contrary position that Plaintiffs advanced in successfully opposing Defendants' motion to stay, Plaintiffs are judicially estopped from asserting that the Court should enjoin the reissue proceeding because that proceeding will "extinguish plaintiffs' inventorship rights to the '962 patent." *See Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32-34 (1st Cir. 2004) ("As a general matter, the doctrine of judicial estoppel prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant . . . in an earlier phase of the same legal proceeding. The doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the judicial system. In line with this prophylactic purpose, courts typically invoke judicial estoppel when a litigant is 'playing fast and loose with the courts.'").

Thus, Plaintiffs have provided the Court with no legitimate basis for concluding that they will suffer irreparable harm absent the requested injunction. Accordingly, Plaintiffs' motion should be denied.

**D.     The Balance Of The Hardships Weighs In Favor of Denying Plaintiffs' Request For An Injunction.**

In contrast to Plaintiffs, Defendants will suffer irreparable harm if this Court orders them to withdraw and/or stay the reissue application. Under Plaintiffs' theory, the claims of the patent-in-suit that Defendants seek to amend in the reissue application are invalid in view of prior art. Thus, until the reissue proceeding is concluded, Defendants are unable to enforce such claims against, or license such claims to, a third party. Lengthening the time for concluding the

---

[10] *See* Plaintiffs' Mem., at p. 11 (emphasis added).

reissue proceedings erodes Defendants' period of exclusivity under at least some of the claims of the '962 patent. The shortening of Defendants' period of exclusivity under the patent constitutes an irreparable injury to Defendants.

In addition to ignoring completely this injury to Defendants in balancing the hardships, Plaintiffs also fail to acknowledge that, if the positions advanced by Plaintiffs are found at trial to be correct – namely, that the claims in the reissue proceeding "still recite subject matter co-invented by plaintiffs"[11] – Plaintiffs actually stand to *benefit* from a successful outcome in the reissue proceedings. Without the reissue proceedings, should Plaintiffs' inventorship position be accepted at trial, Plaintiffs at best will be named as co-inventors of a patent with claims that are *invalid* based on prior art. However, if the PTO is first permitted to correct the patent claims to make them valid over the prior art through the reissue proceedings, and Plaintiffs' inventorship position is later accepted at trial, Plaintiffs will be named as co-inventors on a patent with claims that are *valid* based on the prior art. Under the facts advanced by Plaintiffs, it is clear that rather than threatening harm to the Plaintiffs, the reissue proceedings will serve only to benefit Plaintiffs.

Plaintiffs, nonetheless, make the outrageous assertion in their brief that "the reissue proceeding may be invalid *ab initio* if plaintiffs prevail in this Court."[12] It is not surprising that Plaintiffs make this assertion without citation, since it is completely wrong. There is no authority for "invalidating" a reissue proceeding, as Plaintiffs suggest, because owners of patents can only be conferred a *benefit* when the PTO is permitted to correct patents to make them valid

---

[11] *See* note 1, *supra*.

[12] *See* Plaintiffs' Mem., at p. 12.

over the prior art. Accordingly, balancing the harms to each party further demonstrates that Plaintiffs have failed to establish their entitlement to injunctive relief.

E.   **Plaintiffs Rely On Inapposite Cases And There Is No Legal Basis For The Injunctive Relief That They Seek.**

Defendants' research has uncovered no authority that supports the relief requested by Plaintiffs. In fact, in *Singer Co. v. P.R. Mallory & Co., Inc.*, 671 F.2d 232 (7th Cir. 1982), the United States Court of Appeals for the Seventh Circuit held that the district court abused its discretion by enjoining a patentee from proceeding with a reissue application before the PTO. *Id.* at 237. In *Singer*, the court found that the moving party (in that case the defendant) failed to show irreparable harm. The court stated that any injury to the defendant by not enjoining a reissue proceeding would be "speculative" and, thus, not irreparable harm worthy of injunctive relief, as it "rest[s] on the assumption that the decision of the [PTO] on the reissue application will be contrary to [the defendant's] interest." *Id.* at 235.[13]

The *Singer* court also found that any alleged injury to the defendant did not outweigh the harm that the injunction might cause to the patent holder. While the defendant demonstrated no threatened harm to its interests stemming from the reissue, the patent holder would be injured by the injunction because it would prevent the patent holder from strengthening its patent through the PTO's consideration of prior art. *Id.* at 235-36.

Similar to *Singer*, this Court should reject the request by Plaintiffs for an injunction precluding Defendants from utilizing the reissue procedures provided by Congress. *Id.* at 237.

---

[13] Like the defendant in *Singer*, any injury to Plaintiffs in this case is speculative. As in *Singer*, Plaintiffs here assume that any PTO decision in the reissue will be unfavorable to them. The PTO may well find the claims in question unpatentable, thereby mooting any question of inventorship. It simply makes no sense for this Court to determine inventorship of claims that all parties agree are invalid.

13

As the court in *Singer* made clear, the standards governing the issuance of injunctions cannot be met here.

The two cases cited by Plaintiffs do not dictate a different conclusion. In *Houston Atlas, Inc. v. Del Mar Scientific, Inc.*, 217 U.S.P.Q. 1032 (N.D. Tex. 1982), the court ordered a party to withdraw its request for reexamination of a patent where that party had previously agreed, by way of a consent judgment, that the patent was valid. *Id.* at 1038 ("To allow [such parties] to request reexamination of patent claims which they have expressly agreed are valid would render the consent judgment entered by this Court meaningless."). Clearly, no consent judgment or other agreement by Defendants is present in this case, and the reasoning of *Houston* is inapplicable.

Similarly irrelevant is *Baker Hughes Inc. v. Kirk,* 921 F. Supp. 801 (D.D.C. 1995), the other decision cited by Plaintiffs. In *Baker*, a named assignee of a co-owned patent brought suit against the PTO, alleging that the Commissioner's decision to examine a reissue application filed by the other named assignee exceeded the PTO's statutory authority. In granting the assignee's motion for summary judgment, the court found that the PTO had exceeded its statutory authority when it allowed the reissue to proceed without the consent of the other named assignee. *Id*. at 809. Unlike *Baker*, Plaintiffs in this case do not argue that the PTO is acting outside the scope of its statutory authority by proceeding with the reissue application filed by Defendants. As such, *Baker* is neither relevant nor persuasive authority here.

Plaintiffs' efforts to contort the language of the Manual of Patent Examining Procedure ("MPEP") are equally unavailing. Citing to Sections 1449.02 and 1449.01 of the MPEP, Plaintiffs claim that their requested relief is "expressly contemplated by the PTO." *See*

Plaintiffs' Mem., p. 6.  Section 1449.02, however, provides that "… reissue applications in which there is an indication of concurrent litigation will be suspended automatically unless . . . *it is applicant's desire that the application be examined at that time*."  Accordingly, Plaintiffs' assertion that "normally" the PTO would have automatically stayed the reissue proceedings is just plain wrong.  Likewise, Section 1449.01 relates to **multiple *concurrent*** administrative proceedings pending before the PTO and, in particular, the patent owner's ability to stay a reexamination proceeding in view of a concurrent reissue proceeding (or vice versa) pending before the PTO.  Because this case does not involve a concurrent reissue and reexamination proceedings before the PTO, Section 1449.01 is inapplicable.

Stated simply, there is no legal basis for the injunction requested by Plaintiffs. Accordingly, Plaintiffs' motion should be denied.

**F.    Public Policy Dictates Denial Of Plaintiffs' Request For An Injunction.**

As the Seventh Circuit held in *Singer*, public policy also warrants against granting the injunction requested by Plaintiffs:

> Finally, to enjoin [a party] from proceeding before the Patent Office violates the third prerequisite for injunctive relief.  ***The injunction . . . is contrary to public policy***.  The general policy in cases seeking to interfere with the course of administrative agency action was described in *McKart v. United States*, 395 U.S. 185, 193-94, 89 S.Ct. 1657, 1662-63, 23 L.Ed.2d 194 (1969):
>
>> The agency, like a trial court, is created for the purpose of applying a statute in the first instance.  Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based.  And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise.
>
> Congress has created a statutory procedure under 35 U.S.C. § 251 whereby a patentee can obtain a determination of a patent's validity in

15

> proceedings before the Patent Office. This procedure permits a review of prior art by an agency with particular expertise in the area, and can provide a guide to the patentee as to the advisability of continuing expensive infringement litigation. The injunction here precludes the patentee from utilizing the reissue procedures and is therefore contrary to established public policy.
>
> *\*\*\**
>
> "It is well settled that the courts should not interrupt the administrative process except under very limited and exceptional circumstances." *Federal Trade Commission v. Feldman, 532 F.2d 1092, 1095 (7th Cir. 1976).* This proposition stems from "the long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938). Id.* at 236.

*Singer Co. v. P.R. Mallory & Co., Inc.*, 671 F.2d at 236.

As the *Singer* court recognized, granting the injunction requested by Plaintiffs would establish a groundbreaking precedent precluding parties from utilizing statutory reissue procedures created by Congress that allow for review of the prior art by the agency with particular expertise in this area. Moreover, Plaintiffs' argument regarding the public interest of enforcing valid patents is irrelevant at best (as Defendants have not sought to enforce the patent-in-suit against Plaintiffs) and nonsensical at worst (given that the claims at issue are invalid in view of the prior art, the reissue proceeding is necessary to ensure the validity of the patent-in-suit). Therefore, Plaintiffs' injunction does not serve the public interest in any way, and Plaintiffs' motion should be denied.

## **CONCLUSION**

For the reasons set forth herein, Defendants respectfully request that the Court deny Plaintiffs' motion to enjoin Defendants from proceeding forward with the reissue proceeding.

                                                        Respectfully submitted,

Date:  July 7, 2005                                    /s/ Anthony J. Fitzpatrick
                                                              Anthony J. Fitzpatrick
                                                              Duane Morris LLP
                                                              470 Atlantic Avenue, Suite 500
                                                              Boston, MA 02210
                                                              Telephone: 617.289.9220
                                                              Fax: 617.289.9201
                                                             e-mail: ajfitzpatrick@duanemorris.com

                                                             Counsel for Defendants,
                                                              Patrick Treado and ChemImage Corp.

OF COUNSEL:

Paul D. Weller
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5530
eFax:  215.963.5001
e-mail:  pweller@morganlewis.com