IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER J. MILLER, an individual, CLIFFORD HOYT, an individual, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC., a Delaware corporation,<br><br>      Plaintiffs,<br><br>      v.<br><br>PATRICK TREADO, an individual, and CHEMIMAGE CORP., a Delaware corporation,<br><br>      Defendants. | Civil Action No. 05-10367-RWZ |

**PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION TO ENJOIN DEFENDANT'S REISSUE PROCEEDING**

Pursuant to the Court's July 18, 2005 Order granting plaintiffs', Peter J. Miller's, Clifford Hoyt's, and Cambridge Research and Instrumentation, Inc.'s, request for leave to file a reply to defendants' opposition, plaintiffs respectfully submit this reply to defendants' opposition to plaintiff's motion to enjoin defendants from proceeding with Reissue Application Ser. No. 11/103,423 ('the reissue proceeding"), recently filed for U.S. Pat. No. 6,734,962 ("the '962 patent").

## INTRODUCTION

Plaintiffs contend that plaintiffs Miller and Hoyt are co-inventors of the '962 patent, and are presently seeking correction of inventorship under 35 U.S.C. §256 in the present litigation. In the reissue proceeding plaintiffs seek to enjoin, defendants are amending the claims of the '962 patent Miller and Hoyt claim is theirs, thereby changing the scope of the '962 patent. Thus, defendants' reissue proceeding, if successful, would alter the property rights of the plaintiffs. If defendants' reissue proceeding is allowed to continue, plaintiffs will be irreparably harmed by defendants' unilateral alteration of plaintiffs' property rights.

Defendants argue that plaintiffs have contradicted themselves by arguing that plaintiffs will be irreparably harmed by defendants' alterations of the '962 patent claims, even though plaintiffs had previously argued that the '962 patent is unenforceable and/or invalid. There is no contradiction. Case law explicitly upholds plaintiffs' right to protect their ownership interest in an unenforceable patent. Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd., 292 F.3d 1363 (Fed. Cir. 2002); see Sect. B(1) below.

In their opposition to the injunction, defendants argue that plaintiffs have not met their burden in showing a reasonable likelihood of success. However, defendants urge use of a "heightened level of scrutiny" standard for showing a reasonable likelihood of success, which is inappropriate for the type of relief sought her, as the authorities cited by defendants make plain. Under the appropriate standard, plaintiffs have met their burden and have shown a reasonable likelihood of success.

## ARGUMENT

To obtain injunctive relief, plaintiffs must show: (1) the likelihood of movant's success on the merits; (2) irreparable harm to the movant without an injunction; (3) the balance of hardships between the parties favors granting the injunction; and (4) the demands of the public interest

favors granting the injunction. Mentor Graphics Corp. v. Quickturn Design Systems, Inc., 150 F.3d 1374, 1377 (Fed Cir. 1998). Contrary to defendants' opposition, plaintiffs have successfully shown that all four factors favor granting the injunction.

A. **THERE IS A REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS IN THIS CASE**

    (1) **THE HEIGHTENED LEVEL OF SCRUTINY FOR WHICH DEFENDANTS ARGUE IS INAPPLICABLE**

Defendants argue that "because [plaintiffs] seek a mandatory injunction … ," plaintiffs evidence that there is a reasonable likelihood of success should be held to a "heightened level of scrutiny". ([Docket#14], page 4). However, plantiffs do not seek a *mandatory* injunction.

Defendants appear to define a mandatory injunction as one that "requires Defendants to take an affirmative act, namely withdrawing or staying the reissue proceedings". However, the two cases cited by Defendants describe "mandatory injunctions" as requiring much more than merely an affirmative act. In Ross-Simons, the injunction was for the specific performance of the terms of a contract, namely that Baccarat was forced to keep Ross-Simons as "an authorized Baccarat dealer". Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F. Supp. 2d 317, 324 (D.R.I. 1999). In Dahl, the injunction required the defendant to continue providing an experimental drug to plaintiff patients for 12 months. Dahl v. HEM Pharmaceuticals Corp., 7 F.3d 1399, 1403 (9th Cir. Nev. 1993) ("Also, this injunction required affirmative conduct by Ampligen - it must provide Ampligen and inject it into the veins of the petitioners who want it. Such "mandatory preliminary relief" is subject to heightened scrutiny and should not be issued unless the facts and law clearly favor the moving party. Anderson v. United States, 612 F.2d 1112, 1114 (9th Cir. 1980).").

In Anderson, the Ninth Circuit futher explained: "[m]andatory preliminary relief, which goes well beyond simply maintaining the status quo *pendente lite*, is particularly disfavored, and

- 3 -

should not be issued unless the facts and law clearly favor the moving party." <u>Anderson v. United States</u>, 612 F.2d 1112, 1114 (9th Cir. 1980).  See also, Dobbs, LAW OF REMEDIES, Second Edition, 1993, West Publishing Co., §2.9(1), page 163: "Injunctions are sometimes classified as being either mandatory or prohibitory.  The prohibitory injunction forbids an act. 'The defendant is hereby enjoined from trespassing upon Blackacre,' is a prohibitory injunction. The mandatory injunction orders an affirmative act or course of conduct. 'The defendant is hereby ordered to remove all boulders he has previously deposited upon Blackacre,' is a mandatory injunction."

The injunction requested by plaintiffs is not the type of "mandatory injunction" being discussed in defendants' cases; it is just the opposite, because the purpose of the requested injunction is to maintain the status quo *pendente lite* (defendants having made the application for reissue after plaintiffs filed their complaint in this lawsuit).  Furthermore, although the requested injunction requires defendants to take action, insofar as defendants will have to withdraw their reissue application, the requested injunction is more in the nature of a prohibitory injunction, as it prevents defendants from continuing with the reissue proceeding.  Unlike the examples cited by defendants, it would not require a forced and continual specific performance in the form of personal conduct.

**(2)    UNDER THE APPROPRIATE STANDARD, REASONABLE LIKELIHOOD OF SUCCESS REQUIRES A SHOWING OF SERIOUS AND SUBSTANTIAL QUESTIONS**

Because the requested injunction merely restores the status quo, the appropriate standard is whether there are serious and substantial questions concerning the inventorship of the '962 patent which require resolution.  See, *e.g.*, <u>Standard Havens Prods. v. Gencor Indus.</u>, 897 F.2d 511, 513 (Fed. Cir. 1990) (concerning reasonable likelihood of success in a preliminary injunction - "… it is not necessary that plaintiff's right to a final decision, after trial, be absolutely certain, wholly without doubt; if the other elements are present (i.e., the balance of hardships tips decidedly

toward plaintiff), **it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation** . . . " (emphasis added, citations omitted) ).

    **(3)**     **PLAINTIFFS HAVE RAISED SERIOUS AND SUBSTANTIAL QUESTIONS ABOUT THE INVENTORSHIP OF THE '962 PATENT**

As explained in plaintiffs' memorandum in support of the motion to enjoin defendants' reissue proceeding [Docket#11], the SBIR Phase II Proposal describes a collaboration among plaintiffs and defendants to create a chemical imaging microscope having all of the elements recited in Claim 1 of the '962 patent. It is this collaboration (as evidenced by the SBIR Phase II Proposal) that raises serious and substantial questions concerning the inventorship of the '962 patent which require resolution.

Defendants allege, wrongly, that some of the elements of Claim 1 are not disclosed in the SBIR Phase II Proposal. Their argument depends on a distorted reading of the SBIR Phase II proposal which wrenches details in the proposal from their context to assert that the proposal does not teach the patented component or feature. Furthermore, defendants appear to argue that plaintiffs must show details which are not even recited in the claims at all.

The preamble of Claim 1 of the '962 patent recites a "near infrared radiation chemical imaging system". Plaintiffs cited item (ii) on page 6 of the SBIR Phase II Proposal to show the proposal teaches this, because item (ii) shows that the chemical imaging system described in the proposal will be working in the near-IR. ([Docket#12], page 9). In their analysis, defendants argue that, because item (ii) specifically describes a filter, there is no support for saying the SBIR Phase II Proposal teaches a microscope—only that it teaches a filter. ([Docket#14], page 5, bottom right-hand column, "Item (ii) on page 6 describes development of a Raman *filter* - rather than a *microscope*."). It is difficult to understand the point defendants are making here on a

number of levels.  Claim 1 does not recite a microscope, yet defendants appear to require that the proposal teaches one.  Regardless of the fact that one doesn't need to show a microscope to teach all the limitations of Claim 1, it should be noted that the proposal *does* teach a microscope (after all, the title of the SBIR Phase II Proposal is "High Definition Raman Imaging Microscope").  Either way, plaintiffs have shown that the proposal discloses a "near infrared radiation chemical imaging system" as is recited in the preamble of Claim 1 of the '962 patent.

Element (a) in Claim 1 recites "an illumination source for illuminating an area of a sample using light in the near infrared radiation wavelength."  Plaintiffs cited the laser shown in FIG. 2 of the proposal and described on page 4, and cited item (ii) on page 6 as showing that it can operate in the near infrared spectrum.  Defendants respond by asserting that "[i]tem (ii) on page 6 does not even relate to the laser light source shown on page 27 or described on page 4.  Item (ii) on page 6 describes development of a *filter* – rather than a *laser light source*."  Item (ii) on page 6 of the proposal states one of the objectives of the proposal, namely, "to develop a near-IR (NIR) version of the Raman LCTF which extends the long-wavelength operating limit from the present value of 700 nm to a minimum of 1050 nm."  (Exhibit C to [Docket#1], page 6).  One of ordinary skill in the art reading that passage, and the remaining parts of the proposal, would have understood that the laser source producing the light which is scattered is also in that range.  However, it is not necessary to rely upon a general understanding.  Page 9 of the proposal (which further explains item (ii) of page 6) states, in the context of describing the appropriate polarizer, that the polarizer "is thus ideal for use with laser diode sources at 780 nm and longer" (Exhibit C to [Docket#1], page 9), clearly indicating the desired range for the laser source in the proposal.  Plaintiffs have shown that the proposal teaches "an illumination source for illuminating an area

of a sample using light in the near infrared radiation wavelength," as recited in element (a) of Claim 1.

Element (b) in Claim 1 recites "a device for collecting a spectrum of near infrared wavelength radiation light transmitted, reflected, emitted or scattered from said illuminated area of said sample and producing a collimated beam therefrom."  Plaintiffs cited the infinity-corrected objective shown in FIG. 2 and described in page 4 of the proposal as teaching a device which creates a collimated beam.  By definition, an infinity-corrected objective creates a collimated beam.[1]  In fact, the '962 patent uses an infinity-corrected objective to create the collimated beam (See, e.g., Claim 3; col. 5, lines 42-54).  In spite of this, defendants allege that the infinity-corrected objective in the proposal does not produce a collimated beam because the phrase "collimated beam" is not used in the SBIR Phase II Proposal.  ([Docket#14], page 6, "Nowhere does Page 4 state that the objective 'collects light from the sample *and produces a collimated beam therefrom*' …").  The specification of the '962 patent never uses the word "collimated" (the word is only used in the Abstract and the claims).  Contrary to defendants' argument here, defendant Treado, when drafting the '962 patent, thought it would be clear to one of ordinary skill in the art that the infinity-corrected objective discussed in the specification must be the device producing the collimated beam in element (b) of Claim 1.  (Exhibit F to [Docket#1], the '962 patent, see, e.g., Summary of the Invention, col. 3, line 51; col. 4, lines 47 and 66-7; and col. 5, line 44).

Element (c) of Claim 1 recites "a near infrared imaging spectrometer for selecting a near infrared radiation image of said collimated beam."  Plaintiffs cited pages 9-10 of the SBIR Phase II Proposal for teaching a near-IR imaging spectrometer because pages 9-10 describe the plans

---

[1] See, e.g., "What is an infinity-corrected objective?", Edmund Optics website, http://www.edmundoptics.com/techSupport/DisplayArticle.cfm?articleid=277, ("The image from this type of objective is collimated …").

- 7 -

for building and testing a near-IR liquid crystal tunable filter (LCTF), which operates as an imaging spectrometer in the proposal. However, because defendants can not find the phrase "imaging spectrometer" on pages 9 and 10, they claim that the SBIR Phase II Proposal does not teach "the use of an LCTF *as an imaging spectrometer in a microscope*". ([Docket#14], page 6). This conclusion willfully ignores that one of the main purposes of the proposal is to use an LCTF as a spectrometer in an imaging microscope. (Exhibit C to Complaint [Docket#1], SBIR Phase II Proposal, see, e.g., page C-1: "chemical species were imaged using a narrowband liquid crystal tunable filter (LCTF) and CCD camera integrated into a Raman microscope. Diffraction-limited spatial images were obtained with a complete (and spatially independent) Raman spectra at each pixel in the image," i.e., the LCTF is operating as an imaging spectrometer in a Raman microscope).

Element (d) in Claim 1 recites "a detector for collecting said filtered near infrared images." Plaintiffs cited the CCD camera which collects the image from the LCTF (i.e., spectrometer) as shown in FIG. 2 of the proposal, and described on page 4. Defendants respond by "[p]age 4 does not state that the LCTF functions as a spectrometer." Although defendants' statement, in and of itself, can be viewed as accurate, it does not detract from the fact that the proposal does teach the use of an LCTF as a spectrometer. See, e.g., *supra*.

In short, plaintiffs have successfully shown all of the elements of Claim 1 are disclosed in the SBIR Phase II Proposal.

**B.   IF THE INJUNCTION IS NOT GRANTED, PLAINTIFFS WILL SUFFER IRREPARABLE HARM**

If defendants' reissue proceeding is allowed to continue, plaintiffs will be irreparably harmed by defendants' unilateral alteration of plaintiffs' property rights (as defined by the claims in the '962 patent).

**(1) THE IRREPARABLE HARM PLAINTIFFS WILL SUFFER IS NOT NEGATED BY PLAINTIFFS' ARGUMENTS THAT THE '962 PATENT IS UNENFORCEABLE AND/OR INVALID**

Defendants have repeatedly asserted that there would be no irreparable harm to plaintiffs absent the injunction because of plaintiffs' previous arguments that the '962 patent is either unenforceable or invalid. See, *e.g.*, [Docket#14], page 9 ("The question, however, that Plaintiffs have failed to answer is how they will suffer irreparable harm if they are not named as co-inventors of a patent that they maintain is invalid.").

However, plaintiffs are entitled to correction of the inventorship of the '962 patent, even though plaintiffs assert the '962 patent may be invalid and/or unenforceable. As stated by the Federal Circuit, "[n]othing in the statute governing a court's power to correct inventorship, 35 U.S.C. §256, however, prevents a court from correcting the inventorship of an **unenforceable** patent." Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd., 292 F.3d 1363, 1377, emphasis added (Fed. Cir. 2002). In that case, the lower court had declined to correct the inventorship of the patent-in-suit because the lower court had already determined that the patent-in-suit was unenforceable. *Id.*, at 1366. On appeal, the Federal Circuit upheld the lower court's ruling that the patent-in-suit was unenforceable, but remanded the case "for the limited purpose of determining the correct inventorship of the [patent-in-suit]". *Id.*, at 1377.

In other words, the issues of inventorship under §256 and invalidity/unenforceability under §102/103 are logically and legally separable: the plaintiffs in the Frank's Casing case had a right to pursue their claim of inventorship, even though the patent for which they wished to claim inventorship had been ruled unenforceable *based on plaintiffs' own arguments*.

Similarly in the present case, plaintiffs have the right to be declared (co-)inventors of the '962 patent, even if plaintiffs also maintain that the '962 patent is invalid.

### (2)     DEFENDANTS' REISSUE AMENDMENTS DO NOT "BENEFIT" PLAINTIFFS

Surprisingly, defendants assert that defendants' unilateral alterations of plaintiffs' property in the reissue proceeding are somehow in plaintiffs' best interest. ([Docket#14], page 12, "Plaintiffs actually stand to benefit from a successful outcome in the reissue proceeding"). But plaintiffs have no voice, no vote, in the decision making process when the claims of the '962 patent are amended in the reissue proceeding. The capability of defendants to unilaterally alter plaintiffs' property rights in no way "benefits" plaintiffs.

Furthermore, defendants insinuate that the amendments in defendants' reissue proceeding would fix one or more problems cited by plaintiffs in this litigation, ([Docket#14], page 2: "[u]nder Plaintiffs' theory, claim 1 of the patent at issue (i.e., the only claim addressed by Plaintiffs in their motion) is invalid based on the prior art, namely the document cited by Plaintiffs"; page 11: "Under Plaintiffs' theory, the claims of the patent-in-suit that Defendants seek to amend in the reissue application are invalid in view of prior art").

Plaintiffs have put forth no such theories. Besides requesting the correction of inventorship, plaintiffs' original complaint alleged that the '962 patent was either unenforceable through defendants' inequitable conduct or invalid for violating the one year statutory on-sale bar of 35 U.S.C. §102(b)—but plaintiffs have never argued that the '962 patent was invalid as being obvious over, or anticipated by, the two prior art printed publications being cited in defendants' reissue proceeding.

In fact, if plaintiffs' theories of unenforceability in the complaint are found to be correct, defendants reissue proceeding would be completely mooted because inequitable conduct can not be cured by a reissue proceeding (or any proceeding, for that matter).

### (3) PLAINTIFFS' IRREPARABLE HARM ARGUMENT IS NOT "SQUARELY AT ODDS" WITH PLAINTIFFS' PREVIOUS POSITION

Defendants assert that plaintiffs' irreparable harm argument is "squarely at odds" with plaintiffs' earlier arguments in this case. ([Docket#14], pages 10-12, see also page 2). Specifically, defendants allege that plaintiffs previously argued that "the claims pending in the reissue application still recite subject matter which plaintiffs allege was invented by plaintiffs Hoyt and Miller," but have "reversed position" and now argue that "the reissue proceedings 'cannot, and will not' extinguish Plaintiffs' inventorship rights to the patent." ([Docket#14], page 2). Defendants go so far as to assert that plaintiffs should be judicially estopped from making such an argument. ([Docket#14], page 2, "Judicial estoppel precludes such disingenuous maneuvering").

Plaintiffs have neither reversed nor altered their position. In the beginning of this litigation, defendants admitted that one purpose of the reissue proceeding was to fix the inventorship problem by deleting the subject matter which the plaintiffs co-invented from the claims of the '962 patent. (See Defendants' Memorandum of Law [Docket #6], page 10, "To the extent that the claims of the '962 patent are successfully narrowed in the reissue proceedings such that they do not read on these prior art concepts, Plaintiffs' inventorship and invalidity claims will be mooted." (emphasis in original) ).

Plaintiffs have asserted that defendants *intend* to delete whatever subject matter defendants believe was invented by the plaintiffs. ([Docket#11], page 11, "The irreparable harm intended by defendants is clear: complete loss of plaintiffs' rights to their invention."). However, plaintiffs still maintain that the amended claims in the reissue proceeding recite subject matter (co-)invented by plaintiffs Hoyt and Miller. (see, e.g., [Docket#11], footnote on page 11, "Plaintiffs do

- 11 -

not concede that defendants' amendments in the reissue proceeding would succeed in deleting all subject matter which plaintiffs co-invented."). There is no inconsistency.

Admittedly, it is unlikely that defendants could succeed in causing the irreparable harm they intend (i.e., the deletion of all subject matter plaintiffs Hoyt and Miller co-invented from the claims in the '962 patent). However, every alteration, every change, to the wording of the claims in the reissue proceeding necessarily alters the property rights of the defendants—it is this irreparable harm that the injunction seeks to prevent.

### (4) PLAINTIFFS' IRREPARABLE HARM ARGUMENT IS NOT "ENTIRELY AT ODDS" WITH PLAINTIFFS' PRESENT POSITION REGARDING THE SBIR PHASE II PROPOSAL

Plaintiffs maintain that the SBIR Phase II Proposal discloses all of the elements in Claim 1 of the '962 patent. Defendants assert that, if plaintiffs are correct, Claim 1 of the '962 patent "would be invalid under 35 U.S.C. §102(b)," and thus "Plaintiffs' motion would have to be denied based on Plaintiffs' failure to show irreparable harm." ([Docket#14], page 8). §102(b) provides that a patent will be invalid if "described in a printed publication in this or a foreign country … more than one year prior to the date of the application for patent in the United States." But neither plaintiffs nor defendants have suggested or shown that the SBIR Phase II Proposal constitutes a "printed publication." Thus, Claim 1 of the '962 patent is not invalid under §102(b) in light of the SBIR Phase II Proposal document.[2]

### C. BALANCE OF HARDSHIPS

When balancing the hardships, the strength of one factor can compensate for the relative weakness of another factor. For example, where the likelihood of success "is less forceful . . . . a movant would have to make a stronger showing of irreparable harm in order to tip the balance of

---

[2] On the other hand, Claim 1 may be invalid for any number of other reasons, any of which plaintiffs may, or may not, assert in the future.

equity in his favor." Standard Havens Prods. v. Gencor Indus., 897 F.2d 511, 513 (Fed. Cir. 1990) (citing Smith Int'l, Inc., at n.7 (Fed.Cir.), cert. denied, 464 U.S. 996 (1983)). See also Dippin' Dots v. Mosey, 44 USPQ2d 1812, 1814 (N.D. Tex. 1997) ("… no one factor, taken individually, is necessarily dispositive. If the trial court were to grant a preliminary injunction, the weakness of the showing regarding one factor may be overborne by the strength of others.").

In this case, if defendants' reissue proceeding is allowed to continue, plaintiffs will be irreparably harmed by defendants' unilateral alteration of plaintiffs' property rights (as defined by the claims in the '962 patent). It is this stronger showing of irreparable harm which tips the balance of equities in plaintiffs' favor.

Defendants complain that they would be irrepatably harmed by the injunction because staying the reissue proceeding lengthens "the time for concluding the reissue proceedings" and thus "erodes Defendants' period of exclusivity under at least some of the claims of the '962 patent." ([Docket#14], pages 11-12). However, it seems unlikely that defendants would be able to enforce either the '962 patent (which is technically still in force until a reissue patent is granted) or any patent reissued therefrom until the inventorship issues have been resolved.

Furthermore, if defendants hadn't explicitly requested the PTO to continue the reissue proceeding, the PTO would have automatically stayed the reissue proceeding in light of the present pending litigation. MPEP §1442.02 ("In order to avoid duplication of effort, action in reissue applications in which there is an indication of concurrent litigation **will be suspended automatically** …" emphasis added). An exception to this rule is when the reissue applicant explicitly requests that the reissue application be examined presently, which the defendants have done in this case. (*Id*. and Exhibit A to [Docket #6], Preliminary Amendment, page 8, "The

- 13 -

applicants request that this reissue application be examined at this time and not be stayed pending the outcome of the litigation.").

Lastly, defendants did not file the reissue application until immediately after plaintiffs filed the present lawsuit, so if the injunction is granted, defendants will be in exactly the same position as before the lawsuit began.  By contrast, plaintiffs will be in a worse position, as their property rights in the claims of the '962 patent may be unilaterally altered by defendents in the reissue proceeding.

### E.   PUBLIC POLICY

It is against the public interest to allow defendants to unilaterally alter the '962 patent claims while ownership (i.e., through inventorship) of those claims is in question.

#### (1)   THE REQUESTED INJUNCTION HAS LEGAL SUPPORT AND IS NEITHER "EXTRAORDINARY" NOR "GROUNDBREAKING"

Defendants allege that, "if this Court were to grant the relief sought by Plaintiffs, it would establish a groundbreaking precedent allowing a party to enjoin others from exercising their rights granted under the patent laws." ([Docket#14], page 3).  There is nothing "groundbreaking" about a court's enjoining someone "from exercising their rights granted under the patent laws".  Federal district courts have the power to stay reissue proceedings and/or to order parties to cease proceedings before the PTO.  See, *e.g.*, Baker Hughes Inc. v. Kirk, 921 F. Supp. 801,  (D.D.C. 1995) (district court enjoins PTO from proceeding with a reissue application); Houston Atlas, Inc. v. Del Mar Scientific, Inc., 1982 U.S. Dist. LEXIS 10046, 217 U.S.P.Q. (BNA) 1032 (N.D. Tex. June 16, 1982) (district court orders party to withdraw from a re-examination proceeding and, further, "to cease and desist from any further proceedings").

Defendants allege that there is "no authority that supports the relief requested by Plaintiffs." ([Docket#14], page 13). Yet the relief requested here, i.e., defendants petitioning the PTO to stay and/or withdraw their reissue proceeding, is expressly contemplated by the PTO. MPEP §1449.01 ("The patent owner may file a petition under 37 CFR 1.182 in a reissue application … to stay [the reissue proceeding]").

To support their allegation that there is no legal support for ordering defendants to stop their reissue proceeding, defendants attempt to distinguish the various cases cited by plaintiffs. However, none of those cases supports defendants' premise that a court has no legal authority for stopping a proceeding before the PTO. Indeed, in the case cited by defendants, the court did not deny the injunction because the court did not have the legal authority to issue it, but rather because the record did not support granting the relief. Singer Co. v. P. R. Mallory & Co., 671 F.2d 232, 235 (7th Cir. Ind. 1982) (Defendants' three sentence memorandum "failed to establish the prerequisites to injunctive relief.").

Although defendants contend that Baker Hughes, Inc. v. Kirk, 921 F. Supp.801 (D.D.C. 1995) is "irrelevant" to the present litigation, the facts in that case have particular resonance with the facts of this case. In Baker Hughes, the patent-in-suit had three inventors, two of whom had assigned their interest to Hydril Company, while the third assigned his interest to Baker Hughes. Without Baker Hughes' consent, Hydril filed a reissue application, in which Hydril sought to have the third inventor deleted from the patent (thereby extinguishing Baker Hughes' ownership interest in the patent). The court found that the reissue proceeding was improper, and enjoined it, because, *inter alia*, the appropriate statute for correcting inventorship when the parties disagree is 35 U.S.C. §256. As stated by the court, "if the PTO were allowed to follow its

proposed procedure, it would be determining, and possibly terminating, Baker Hughes' property rights in the '999 patent without following the procedures envisioned by Congress when it enacted the statutory scheme," namely, the procedure for a court to correct inventorship under §256. Baker Hughes, 921 F. Supp., at 810.

## CONCLUSION

For the reasons stated above, and in plaintiffs' original motion papers, the Court should enjoin defendant's reissue proceeding.

Respectfully submitted,

**PETER J. MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.,**

By their attorneys:

  /s/ Teodor Holmberg_____
Martin B. Pavane
Teodor J. Holmberg (BBO# 634708)
COHEN, PONTANI, LIEBERMAN AND PAVANE
551 Fifth Avenue
New York, New York 10176
Tel. (212) 687-2770
Fax (212) 972-5487
E-mail: tidge@cplplaw.com

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201
E-mail:  BMichaelis@brownrudnick.com

Dated: July 25, 2005