IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MILLER, HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC. Plaintiffs, <br><br> v. <br><br> PATRICK TREADO and CHEMIMAGE CORP. Defendants. | CIVIL ACTION <br><br> Case No. 05-1367 RWZ |

### DEFENDANTS' SUR-REPLY MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO ENJOIN DEFENDANTS FROM CONTINUING WITH THE REISSUE APPLICATION

Defendants Patrick Treado and ChemImage Corporation (collectively "Defendants") hereby submit this Sur-Reply Memorandum in Opposition to Plaintiffs' Motion to Enjoin Defendants from Continuing with the Reissue Application filed by Plaintiffs Cambridge Research and Instrumentation, Inc., Peter J. Miller, and Clifford Hoyt (collectively "Plaintiffs").

### INTRODUCTION

In an effort to sustain their motion for preliminary injunction, Plaintiffs offer a series of unsupportable arguments in their reply brief. ***First***, Plaintiffs contend that they are entitled to a preliminary injunction without ***any*** evidentiary showing. Plaintiffs do not dispute, because they cannot, that they must prove their allegation that they co-invented the '962 patent by "clear and convincing" evidence. Plaintiffs, however, have submitted neither statements under oath claiming to be co-inventors, nor testimony to support their co-inventorship claim.[1] Given the absence of any

---
[1] Plaintiffs' lack of any evidence stands in stark contrast to the Declarations that Defendant Treado submitted under penalty of perjury to the U.S. Patent and Trademark Office (PTO) attesting to his inventorship. *See* Defendants' Declarations, attached as Exhibit A ("I believe

BOS\135556.1

affidavit or declaration from Hoyt, Miller or anyone else for that matter, Plaintiffs have not made out even a *prima facie* case, much less proven a likelihood of success in meeting the clear and convincing burden of proof at trial necessary for them to qualify for injunctive relief.

Rather than offer competent evidence, Plaintiffs have continued to rely on the single, unauthenticated document, the so-called "1996 Phase II SBIR Proposal" (Exh. C to the Complaint). In their reply brief, Plaintiffs couple this document only with Plaintiffs' counsel's unsupported, speculation about what "[o]ne of ordinary skill in the art" would glean from the document. This speculation by counsel – which is neither expert testimony nor other evidence -- is insufficient as a matter of law to establish that Plaintiffs have a likelihood of success on the merits of their claim. *See Touchstone v. McDermott*, 120 F. Supp.2d 1055, 1059 (M.D. Fla. 2000) (denying motion for preliminary injunction because plaintiff could not establish a likelihood of success on the merits when the primary evidence put forth was an affidavit made on information and belief, rather than personal knowledge); *Eyler v. Babcox*, 582 F. Supp. 981, 986 (N.D. Ill. 1983) (denying motion for preliminary injunction when "allegations are no more than hearsay and therefore wholly insufficient to support the issuance of a preliminary injunction"); *Edaco Stahlwarenfabrik Ernst Darmann & Co. v. Hill Novelties Manufacturing Corp.*, 185 F. Supp. 621, 622 (S.D.N.Y. 1960) (denying motion for preliminary injunction and disregarding as hearsay affidavit made by plaintiff's attorney who did not have personal knowledge of the facts).

The 1996 Phase II SBIR Proposal itself does not even identify (nor does Plaintiffs' reply brief state) who conceived of any of the ideas or concepts described in the SBIR Proposal. Plaintiffs do not dispute that in order to be an inventor under patent law, a person must contribute to the conception (*i.e.*, make a mental formulation) of the invention. Yet, Plaintiffs fail to explain how the Court can conclude that both Plaintiffs Miller and Hoyt conceived (*i.e.*, made a mental

---

I am ... an original ... inventor ... of the subject matter which is claimed ...") and Exhibit

formulation) of each and every one of the ideas/concepts expressed therein, simply because Miller's name appears on the document.[2]

***Second,*** Plaintiffs also fail to explain how they will suffer any harm if they are not named as co-inventors of a patent that Plaintiffs claim is invalid. While Plaintiffs suggest in their reply brief that they have never claimed the '962 patent is invalid, this position is directly contrary to the Complaint. In paragraph 59 of their Complaint, Plaintiffs alleged that the '962 patent is "invalid ... under 35 U.S.C. § 102(b) and/or § 103." *See also* Complaint, ¶¶ 42, 45 and Count V.[3]

***Third,*** Plaintiffs have reaffirmed their prior position that they remain co-inventors of the amended claims pending in the reissue proceedings. Plaintiffs' Reply, at 11. In view of this, Plaintiffs cannot argue that the reissue proceedings will harm their alleged status as co-inventors of the patent.

***Fourth,,*** Plaintiffs' argument that Defendants' ability to alter the '962 patent in the reissue proceedings by itself will cause Plaintiffs' irreparable harm is meritless. As the Seventh Circuit held in *Singer Company v. P.R. Mallory & Co.*, 671 F.2d 232, 235 (7th Cir. 1982), this argument by Plaintiffs -- that a reissue proceeding will necessarily cause harm -- is purely "speculative." Such reasoning would make *any* reissue proceeding subject to a preliminary injunction. The mere fact that a change is being made to a patent does not by itself equate to irreparable harm. For harm to

---

B ("We believe that the inventors named below are the original and first inventor(s) ...").

[2] Notably, Plaintiff Hoyt, who also claims to be a co-inventor, is not even identified anywhere on the "1996 Phase II SBIR Proposal" as an author.

[3] In their opening brief, Plaintiffs also argued that the 1996 Phase II SBIR Proposal disclosed each element of claim 1 of the '962 patent. The natural result of all of these allegations is that claim 1 of the patent is invalid. Brief, pp. 9-10 (chart). Although Plaintiffs attempt to argue that the 1996 Phase II SBIR Proposal is not a writing that would invalidate the '962 patent, they have submitted no legal or factual authority for this position. This lack of support aside, Plaintiffs' argument misses the point. It is indisputable that Plaintiffs alleged, subject to Rule 11 of the Federal Rules of Civil Procedure, that the patent is invalid. Complaint, ¶¶ 42, 45 and 59. Plaintiffs necessarily can suffer no harm as a result of not being named a co-inventor of an invalid patent.

exist, a change must logically diminish the value of the patent. Plaintiffs have not articulated (because they cannot) how the value of an invalid patent will be diminished by the reissue proceedings.

*Fifth*, Plaintiffs claim that the balancing of the equities weighs in their favor because they want to protect their inventorship rights under the 1996 Phase II SBIR Proposal. In fact, however, Plaintiffs' business plans have little, if anything, to do with the technology described in that Proposal. Instead, Plaintiffs are simply seeking to capitalize on a technical error in the Patent Office in an effort to pirate technology covered by the patent that Plaintiffs did not invent, that has nothing to do with the 1996 Phase II SBIR Proposal, and that Plaintiffs want to sell.

*Finally*, Plaintiffs' argument that Defendants will suffer no irreparable harm as a result of the injunction is just wrong. Any delay in the reissue proceedings equates to a delay in transforming the patent into a valid state, and shortens the time during which Defendants may enforce their patent. While Plaintiffs dismiss this argument out of hand with the conclusory statement that "it seems unlikely that defendants would be able to enforce ... the '962 patent ... until the inventorship issues have been resolved," they ignore the fact that when Defendants do enforce the patent in the future, Defendants will only be able to collect enforcement revenue ***back to the date that the reissue patent emerges from the Patent Office***. Thus, for example, no enforcement revenue will accrue based on Plaintiffs' sales of fluorescence instruments (discussed below) made prior to the emergence of the reissued patent from the Patent Office. Defendants' loss of enforcement revenue during any period of delay will be substantial, as the instruments that are the subject of the patented technology (including, *e.g.,* Plaintiffs fluorescence instruments discussed below) sell for hundreds of thousands of dollars per machine.

For all of these reasons, Plaintiffs have failed to establish a right to injunctive relief, and Defendants respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction.

## ARGUMENT

### A. Plaintiffs' Have Not Demonstrated A Likelihood That They Will Succeed In Meeting A Clear And Convincing Burden Of Proof At Trial

Contrary to the suggestion made by Plaintiffs in their reply brief, the burden in seeking a preliminary injunction is a heavy one. Plaintiffs do not meet this burden, as they suggest, by simply raising an issue on which they might prevail. Rather, a preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted." *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). To obtain a preliminary injunction, Plaintiffs must demonstrate, as a threshold matter, a reasonable likelihood of success on the merits. *See Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1384, 1377 (Fed. Cir. 1998). "The burden is always on the movant to show entitlement to a preliminary injunction." *Insight Tech., Inc. v. SureFire, LLC*, 2004 U.S. Dist. LEXIS 15712 (D. N.H. 2004) (*citing Reebok Int'l v. J. Baker, Inc.*, 32 F.3d 1552, 1555 (Fed. Cir. 1994)). A movant is not entitled to a preliminary injunction if he fails to demonstrate a likelihood of success on the merits. *See Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001) (noting that both "case law and logic" establish the likelihood of success on the merits and the irreparable harm factors as necessary showings to obtain a preliminary injunction).

Adding to the Plaintiffs' already heavy burden in seeking a preliminary injunction, the inventors named on the patent are ***presumed*** to be the true and only inventors. *Sprinturf Inc. v. Southwest Recreational Indus.*, 2004 U.S. Dist. LEXIS 4561, at *4 (Fed. Cir. March 12, 2004); *Trovan, Ltd. v. Sokymat SA*, 299 F.3d 1292, 1301 (Fed. Cir. 2002) (*citing Hess v. Adv. Cardiovascular Sys., Inc.*, 106 F.3d 976, 980 (Fed. Cir. 1997)). This presumption arises from the

statutory presumption of validity pursuant to 35 U.S.C. § 282 accorded to every patent. *Sprinturf Inc.*, 2004 U.S. Dist. LEXIS 4561, at *4.

Unquestionably, "[t]he burden of showing misjoinder or nonjoinder of inventors is a heavy one." *The University of Colorado Foundation, Inc. v. American Cyanamid Co.*, No. 02-1587, 2003 WL 22052034 (Fed. Cir. September 3, 2003); *see also Virginia Elec. & Lighting Corp. v. Nat'l Serv. Indus.*, 2000 U.S. App. LEXIS 131 (Fed. Cir. 2000) (alleged inventor "bears the heavy burden at trial of proving a significant contribution to the conception of the invention of the claims by clear and convincing evidence."). The presumption of validity can be overcome only by "clear and convincing" evidence. *Sprinturf Inc.*, 2004 U.S. Dist. LEXIS 4561, at *4-5; *Amax Fly Ash Corporation v. The United States*, 206 Ct. Cl. 756, 773 (1975) ("A claim of co-inventorship is also viewed with skepticism and requires clear and convincing evidence.").

To meet this clear and convincing burden of proof, an alleged co-inventor must prove his contribution to the conception with more than his or her own testimony. *Price v. Symsek*, 988 F.2d 1187, 1194 (Fed. Cir. 1993). "Because it is a mental act, courts require corroborating evidence of a contemporaneous disclosure that would enable one skilled in the art to make the invention." *Burroughs Wellcome Co. v. Barr Labs. Inc.*, 40 F.3d 1223, 1478 (Fed. Cir. 1994); *see also Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1474 (Fed. Cir. 1997) ("Like conception of the entire invention, a contribution to conception is a mental act which cannot be accurately verified without corroboration.") Plaintiffs' showing here fails to carry this burden.

In their reply brief, Plaintiffs simply ignore the distinction between conception and inventorship under U.S. Patent Law, on the one hand, and being listed as a contributor on an unauthenticated document, on the other. "Conception is the touchstone to determining inventorship." *Fina Oil*, 123 F.3d at 1473. Conception of an idea "is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a

general goal or research plan he hopes to pursue." *Burroughs Wellcome*, 40 F.3d at 1228; s*ee also Feirs v. Revel*, 984 F.2d 1164, 1169 (Fed. Cir. 1993); *Amgen, Inc. v. Chugai Pharmaceutical Co.*, 927 F.2d 1200, 1206 (Fed. Cir. 1989). The only support Plaintiffs proffer in support of their allegation of conception is the unauthenticated 1996 SBIR Phase II Proposal. As a matter of law, this is insufficient to establish conception or to rebut the legal presumption that Plaintiffs are not co-inventors. *See id.*

In addition to this failure in proof on the issue of conception, Plaintiffs also fail to show that they made "a significant, quality 'contribution to the claimed invention,' when 'measured against the dimension of the full invention,' [which] . . . must 'do more than merely explain to the real inventors well-known concepts and/or the current state of the art.'" *Sprinturf Inc.*, 2004 U.S. Dist. LEXIS, at *5-6 (*citing Pannu v. Iolab Corp.*, 155 F.3d 1344, 1351 (Fed. Cir. 1998). As alleged co-inventors, Plaintiffs must posit a significant contribution, something that "beneficially affected the final concept of the claimed invention." *Mueller Brass Co. v. Reading Indus., Inc.*, 352 F. Supp. 1357, 1372 (E.D. Pa. 1972). Put otherwise, Plaintiffs "must be able to say that without [their] contribution to the final conception, it would have been less efficient, less simple, less economical, less something of benefit." Id. In their submissions to the Court, Plaintiffs establish none of this.

Instead, Plaintiffs rely solely on the 1996 SBIR Phase II Proposal. This document, however, is a far cry from the clear and convincing evidence of a "contribution" to the claimed invention necessary for Plaintiffs to prevail. Plaintiffs have provided no testimony from the purported co-inventors Peter Miller or Clifford Hoyt, by way of affidavit or otherwise to support their counsel's characterizations of the Proposal. Nor have they identified any possible benefit that their contrived "contribution" could have made. Moreover, as evident from Plaintiffs' reply brief, they offer none of the required corroborating evidence for the ***naked*** assertions in their Complaint. Despite the Defendants raising a direct challenge to the sufficiency of their evidence, they proffer the same

insufficient, unauthenticated research proposal, and characterizations by counsel as their only evidence. This proof is legally insufficient. *See Touchstone*, 120 F. Supp.2d at 1059 (denying motion for preliminary injunction because plaintiff could not establish a likelihood of success on the merits when the primary evidence put forth was an affidavit made on information and belief, rather than personal knowledge); *Eyler*, 582 F. Supp. at 986(denying motion for preliminary injunction when "allegations are no more than hearsay and therefore wholly insufficient to support the issuance of a preliminary injunction"); *Societe Comptoir De L'Industrie Cotonniere, Establissements Boussac v. Alexander Dep't Stores, Inc.*, 190 F. Supp. 594, 601 (S.D.N.Y.), *aff'd*, 299 F.2d 22 (2d Cir. 1961) (in considering preliminary injunction motion, court can consider only facts presented by affidavit or testimony"); *Edaco*, 185 F. Supp. at 622 (denying motion for preliminary injunction and disregarding as hearsay affidavit made by plaintiff's attorney who did not have personal knowledge of the facts); 11 Wright & Miller, *Federal Practice & Procedure Civ.2d*, § 2949 (evidence that goes beyond unverified allegations must be presented to support preliminary injunction motion).

In short, in the absence of any (i) affidavits from Plaintiffs Miller and Hoyt (or anyone else) attesting to Plaintiffs' position that Miller and Hoyt are co-inventors, or (ii) any corroborating evidence such as laboratory notebooks from Miller or Hoyt evidencing their alleged efforts in inventing the patent, there is no evidence to rebut the presumption that Plaintiffs are not co-inventors of the '962 patent. Accordingly, Plaintiffs motion should be denied.

**B.    Plaintiffs' Continue To Mischaracterize The 1996 Phase II SBIR Proposal**

As mentioned, Plaintiffs rely solely on a distortion of the 1996 Phase II SBIR Proposal under the guise of speculating about what "[o]ne of ordinary skill in the art" would glean from the document to carry their burden of establishing a likelihood of success on the merits of their claim. While these unsupported characterizations of the Proposal are legally insufficient to carry Plaintiffs' burden of proof under the decisional authorities, it bears emphasis for purposes of evaluating the

merits of Plaintiffs' motion that even the language of the document does not support Plaintiffs' position.

Element (a) in claim 1 of the patent recites "an illumination source for illuminating an area of a sample using light in the near infrared radiation wavelength. In their opening brief, Plaintiffs cited to item (ii) on page 6 of the Proposal – which describes development of a *filter* rather than a *light source*. When Defendants pointed out the fact that Plaintiffs' original citation had nothing to do with element (a) of claim 1, Plaintiffs responded in their reply brief by quoting a different passage *three pages later* describing a *polarizer* and then characterized the further citation as "clearly indicating the desired range for the laser source in the proposal." Plaintiffs' Reply, at 6. To the extent that Plaintiffs' new quote even relates to the laser light source to be used in the proposal, the citation clearly fails to mention use of the light source "for illuminating an area of a sample" as required by Element (a) of the claim.

Element (b) in claim 1 recites "a device for collecting a spectrum of near infrared wavelength radiation light transmitted, reflected, emitted or scattered from said illuminated area of said sample *and producing a collimated beam therefrom*." When Defendants pointed out that there the description cited by Plaintiffs of the infinity-corrected objective in the Proposal failed to state that the objective "collects light from the sample *and produces a collimated beam therefrom*," Plaintiffs responded in their reply brief not with any testimony, but rather with an uncorroborated quotation from a website about what "infinity corrected" means. Plaintiffs did not even bother to print out and attach as an exhibit to their papers a print-out from the website showing the purported quotation. Moreover, and contrary to Plaintiffs' assertion, the specification of the patent-in-suit clearly uses the word "collimated" – which appears in the Abstract of the patent. It is beyond dispute that the Abstract is part of the specification of the patent. *See, e.g., Pandrol USA, LP v. Airboss Railway Products, Inc.*, 320 F.3d 1354, n.1 (Fed. Cir. 2003) ("It is well settled that

'[c]laims must be read in view of the specification, of which they are a part.' This includes consulting the preferred embodiment, and the *abstract*.") (citations omitted).

Element (c) in claim 1 recites "a near infrared imaging spectrometer for selecting a near infrared radiation image of said collimated beam." When Defendants pointed out that the term "*imaging* spectrometer" never even appeared in the Plaintiffs' original citations to the Proposal, Plaintiffs responded in their reply brief by quoting a further passage from the Proposal which also *fails* to mention an "*imaging* spectrometer." After reciting the further quote (which mentions a liquid crystal tunable filter or "LTCF"), Plaintiffs' reply brief makes the unsupported characterization that "the LCTF is operating as an imaging spectrometer in a Raman microscope." Plaintiffs' Reply, at 8. This characterization by Plaintiffs' counsel is again not evidence.

Element (d) in claim 1 recites "a detector for collecting said filtered near infrared images." In asserting that the Proposal disclosed this element, Plaintiffs originally asserted that "a CCD camera for collecting the image from the spectrometer (*i.e.*, LCTF) is shown in FIG. 2 and described on page 4" of the Proposal. Defendants then pointed out that Plaintiffs' citations for this element said nothing about an LCTF functioning as a spectrometer and, in their reply brief, Plaintiffs have *admitted* that "defendants' statement, in and of itself, can be viewed as *accurate*." Plaintiffs' Reply, at 8. Given Plaintiffs' admission that their characterization of the Proposal was wrong, it is difficult to understand how Plaintiffs can continue to argue that the Proposal discloses element (d) of the patent claim.

In sum, the 1996 Phase II SBIR Proposal does not support Plaintiffs' position. Plaintiffs have not even come close to showing, through proper evidence, that all of the elements of claim 1 are disclosed in this Proposal. Accordingly, Plaintiffs' motion for injunctive relief should be denied.

### C.  Plaintiffs' Have Failed To Establish That They Will Suffer Irreparable Harm

Not only do Plaintiffs utterly fail to establish a likelihood of success on the merits, they also fail to demonstrate that they will suffer irreparable harm if the requested injunction is denied. *Mentor Graphics Corp. v. Quickturn Design Sys., Inc.*, 150 F.3d 1384, 1377 (Fed. Cir. 1998).

As a threshold matter, Plaintiffs fail to articulate how they will be irreparably harmed if they are not named as co-inventors on a patent that they claim is invalid. While Plaintiffs suggest in their reply brief that they have never claimed the '962 patent is invalid, this position is directly contrary to the Complaint. In paragraph 59 of their Complaint, Plaintiffs alleged that the '962 patent is "invalid … under 35 U.S.C. § 102(b) and/or § 103." *See also* Complaint, ¶¶ 42, 45 and Count V, and note 3, *supra*.

Notably, Plaintiffs have reaffirmed their position that they remain co-inventors of the amended claims that may come out of the pending reissue proceedings:

> "[P]laintiffs still maintain that the amended claims in the reissue proceeding recite subject matter (co-)invented by Plaintiffs Hoyt and Miller."

Plaintiffs' Reply, at 11. In view of Plaintiffs' position that they invented the amended claims of the reissue application, Plaintiffs cannot credibly argue that the reissue proceedings will harm their alleged status as co-inventors of the patent.

Plaintiffs' argument that nothing prevents the Court from correcting the inventorship of an invalid patent is not apt. While the decision cited by Plaintiffs, *Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F. 3d 1363 (Fed. Cir. 2002) may stand for this proposition, the decision does ***not*** address at all the relevant issue of whether the failure to correct inventorship of an unenforceable patent gives rise to irreparable harm. Common sense dictates that there could be no such irreparable harm because an unenforceable patent has no value.

Plaintiffs are then forced to rely solely on the argument that Defendants' ability to alter the patent in the reissue proceedings alone constitutes irreparable harm. Plaintiffs, however, fail to articulate *how* any changes proposed in the reissue proceedings will cause this irreparable harm. The mere fact that a change is being made to the patent does not by itself equate to irreparable harm. Assuming Plaintiffs' theory is true for the sake of argument, in order for there to be harm, any change must logically diminish the value of the patent and affect Plaintiffs' rights in a negative manner.

Because Plaintiffs cannot articulate how the value of the patent is being diminished, they are left to complain that they are harmed because they are not "in charge" of the reissue proceedings. In that regard, at the Scheduling Conference before the Court, Plaintiffs attempted to analogize this case to a hypothetical situation where Defendants are "remodeling" Plaintiffs' house without their permission, and this "remodeling" is necessarily harming the house. In *Singer*, however, the Seventh Circuit *rejected* this precise argument, holding that it amounts to rank speculation. 671 F.2d at 235. In reversing a preliminary injunction entered by a district court, the Seventh Circuit held that the assumption advanced by Plaintiffs here -- that a decision by the Patent Office on the reissue application will necessarily be contrary to their interests – is untenable as a matter of law. *Id.*

Thus, Plaintiffs provide no support for the proposition that they will suffer irreparable harm from the reissue proceedings. Accordingly, Plaintiffs' motion should be denied.

   **D.    Plaintiffs' Claim That They Will Suffer Irreparable Harm If They Are Not Permitted To Protect Their Co-Inventorship Based On The 1996 Phase II SBIR Proposal Is Meritless As Plaintiffs Seek To Practice Other Technology Covered By The Patent That Is Not Covered By The Proposal**

While Plaintiffs' inventorship argument is premised on the 1996 Phase II SBIR Proposal, it is important for the Court to realize that Plaintiffs' business plans seemingly have little, if anything, to do with the technology described in the 1996 Phase II SBIR Proposal. The Proposal was directed to something known as a "High Definition *Raman* Imaging Microscope." The instruments featured on Plaintiffs' website, however, are directed to a completely different type of microscopy known as *fluorescence*.[4] Now focusing on a technical error made by the Patent Office during examination of the patent, Plaintiffs are attempting to "hijack" the '962 patent in an apparent effort to grab rights to Defendants' fluorescence technology in order to continue marketing their fluorescence instruments.

Years after the 1996 SBIR Phase II Proposal, and long after any purported collaboration with the Plaintiffs, Defendant Treado along with others at ChemImage spent countless hours and resources developing an instrument for performing, among other things, luminescence imaging, including fluorescence microscopy in the near infrared range.[5] Defendants filed the patent-in-suit to protect this later work, and successfully obtained the patent – which covers, among other things, fluorescence microscopy in the near infrared range.

During the examination of the patent, Defendants had disclosed to the Patent Office documentation of Defendants' prior work, including the Raman imaging technology that was the

---

[4]   *See* Product Sheets for Plaintiffs' Maestro and Nuance instruments, attached hereto as Exhibit C.

[5]   Almost 100 pages of Defendants' laboratory notebook pages evidencing Defendants' work on this project during 1999 are attached as Exhibit D. Defendants filed these laboratory notebook pages with the U.S. Patent and Trademark on October 13, 2000, as part of the provisional patent application that later formed the basis for the patent in suit. Significantly, Plaintiffs have not produced even a single laboratory notebook page of their own showing any work on the technology at issue.

subject of the 1996 Phase II SBIR Proposal.[6] Since this Raman imaging technology pre-dated the patent-in-suit, the Raman imaging technology constituted prior art to the patent-in-suit, and it was therefore important for the Patent Office to consider this information in determining whether Defendant Treado's later work represented a patentable advance over the prior art. After considering the prior art, the Patent Office agreed that Defendant Treado's later work was indeed patentable, and issued the patent. However, a technical error was made in the wording of the claims which the Patent Office failed to appreciate, arguably causing the patent claims to cover the prior art and making the claims invalid.[7] The purpose of the reissue proceedings is to rectify this error, and to make the claims valid by excluding the prior art from the scope of the claims.

It is clear that Plaintiffs' motion to enjoin the reissue proceeding is nothing more than an attempt by Plaintiffs to derail the reissue proceeding so that Plaintiffs can wrongfully gain the right to use Defendants' fluorescence technology -- which Plaintiffs did not invent. Plaintiffs' true motive in this litigation – namely, to clear the way for Plaintiffs to market fluorescence instruments – is plainly evident from Counts I and V of Plaintiffs' Complaint, which simultaneously pleaded that Plaintiffs invented the patent-in-suit and that the patent was invalid, and footnote 2 of the reply brief, which effectively states that Plaintiffs reserve the right to contest the validity of the patent if their inventorship challenge fails (notwithstanding the fact that they have already withdrawn their invalidity claims (Counts II-V)).

---

[6]  A copy of the patent-in-suit is attached as Exhibit E. Page 2 of the patent identifies the publication: H. Morris, C. Hoyt, P. Miller and P. Treado, "Liquid Crystal Tunable Filter Raman Chemical Imaging," vol. 50 *Applied Spectroscopy*, No. 6, pp. 805-811 (1996).

[7]  In order for an invention to be the subject of a valid patent under 35 U.S.C. §§102, 103, the invention must be both new and not obvious when compared against the prior art. In the present case, it is beyond question that Plaintiffs' 1996 "collaboration" with Defendants involving Raman microscopy was prior art to the patent-in-suit, which was filed several years later.

BOS\135556.1                                        14

Logically, a party seeking to be named as an inventor on a patent seeks to maintain the validity of the patent so that it can be used as an asset by the party for licensing or enforcement purposes. Plaintiffs' motives here are clearly the opposite – namely, to seize control of the patent through legal maneuvering so that they can market technology that they did not invent. Each day that Plaintiffs succeed in delaying the completion of the reissue process, Plaintiffs remain free to practice Defendants' fluorescence technology. The Court should not condone this result. Accordingly, Plaintiffs' motion should be denied.

### E. Plaintiffs' Attempt To Discount The Irreparable Harm To Defendants Is Meritless, And Public Policy Weighs In Favor Of Denying Plaintiffs' Motion

In their reply brief, Plaintiffs also discount the irreparable harm to Defendants if they are not permitted to complete the reissue proceedings in a timely manner. Without any support, Plaintiffs blithely state that "it seems unlikely that defendants would be able to enforce ... the '962 patent ... until the inventorship issues have been resolved." Plaintiffs' Reply, at 13. This argument, however, ignores a fundamental point. The irreparable harm to Defendants as a result of delaying the reissue proceedings occurs *regardless* of whether or not Defendants choose to wait until the present inventorship dispute is resolved before enforcing the patent.

When a patent holder enforces his/her patent in court, the patent holder is entitled to collect damages for any past infringement that occurred during the six-year period prior to the filing of the complaint. But in view of the fact that certain claims of the patent-in-suit are invalid over the prior art according to Plaintiffs, when Defendants do enforce the corrected claims of the patent in the future, Defendants will only be able to collect enforcement revenue *back to the date that the reissue patent emerges from the Patent Office*. Thus, with respect to the corrected claims, no enforcement revenue will accrue to Defendants based on any sales of infringing machines made

prior to the emergence of the reissued patent from the Patent Office.[8] Given that the machines which are the subject of the patent sell for hundreds of thousands of dollars per machine, the loss of patent enforcement revenue resulting from a delay in the reissue proceedings will be substantial and forever lost.

As discussed in greater detail in Defendants' opening brief, public policy weighs against granting the requested injunction and condoning this harm to Defendants. As the Seventh Circuit held in *Singer*, an injunction that precludes a patentee, such as Defendants, from utilizing the reissue procedures established by Congress, is fundamentally wrong. 671 F.2d at 236.

Plaintiffs, nevertheless, attempt to argue that public policy favors granting the injunction, claiming that courts have stayed reissue proceedings in other cases. Citing again to *Baker Hughes Inc. v. Kirk*, 921 F. Supp. 801 (D.D.C. 1995) and *Houston Atlas, Inc. v. Del Mar Scientific, Inc.*, 217 U.S.P.Q. 1032 (N.D. Tex. 1982), Plaintiffs are particularly over-reaching.

In *Baker Hughes*, the plaintiff was the ***named*** assignee of a patent and had sued the Patent Office, claiming that it had no authority to proceed with pending reissue proceedings without the permission of all assignees of the patent. Importantly, there was ***no*** factual dispute that the plaintiff was an assignee of the patent. Because there was no factual dispute on this point, and because the statutory framework created by Congress provided that a reissue application could not proceed without the permission of all assignees, the court entered summary judgment in favor of the plaintiff and ordered the Patent Office not to proceed with the reissue application.

---

[8] Among other things, no patent enforcement revenue will accrue to Defendants based on Plaintiffs' sales of fluorescence instruments made prior to the emergence of the reissued patent from the Patent Office. Plaintiffs' motives for wanting to delay the reissue proceedings could not be more plain – Plaintiffs want to remain free to sell machines that use Defendants' fluorescence technology as long as possible without incurring patent infringement liability.

In contrast to *Baker Hughes*, the facts in the present case are markedly different because there is a significant dispute over the key material fact -- Plaintiffs' supposed co-inventorship. In the absence of clear evidence to the contrary (Plaintiffs have submitted none), Defendants are presumed to be the inventors of the patent. Accordingly, there is no public policy that weighs in favor of enjoining the Patent Office. Indeed, as the Seventh Circuit recognized in *Singer*, Congress has expressly contemplated that a patentee should be permitted to proceed with a reissue application before the Patent Office in order to review the validity of a patent.

Plaintiffs' reliance on *Houston Atlas* is similarly misplaced. As Defendants noted in their opening brief, in *Houston Atlas*, the court ordered a party to withdraw a request for reexamination of a patent where that party had previously agreed, by way of consent judgment, that the patent was valid. 217 U.S.P.Q. at 1038. Here, no such public policy in favor of enforcing consent judgments is implicated. In this case, by contrast, Congress has unequivocally provided that Defendants should be permitted to obtain a determination of a patent's validity in proceedings before the Patent Office, the administrative agency charged with reviewing such matters. As such, there is no basis whatsoever for granting Plaintiffs' motion, and it should be denied.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court deny Plaintiffs' motion to enjoin Defendants from proceeding forward with the reissue proceedings.

Respectfully submitted,

Date  August 9, 2005

_____
Anthony J. Fitzpatrick, BBO # 564324
Christopher S. Kroon, BBO # 660286
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: 617.289.9220
Fax: 617.289.9201
e-mail: ajfitzpatrick@duanemorris.com
and cskroon@duanemorris.com

Counsel for Defendants,
Patrick Treado and ChemImage Corp.

OF COUNSEL:

Paul D. Weller
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5530
eFax:  215.963.5001
e-mail:  pweller@morganlewis.com