IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC. | : : : : |
| Plaintiffs, | : : |
| v. | : : Case No. 05-10367 RWZ |
| PATRICK TREADO and CHEMIMAGE CORP. | : : : |
| Defendants. | : : |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND IN SUPPORT OF DEFENDANTS' CROSS MOTION FOR PROTECTIVE ORDER

Defendants Patrick Treado and ChemImage Corporation (collectively "Defendants") submit

this Memorandum of Law in opposition to the motion to compel filed by Plaintiffs Cambridge

Research and Instrumentation, Inc., Peter J. Miller, and Clifford Hoyt (collectively "Plaintiffs"),

and in support of Defendants' cross motion for entry of a protective order.

### INTRODUCTION

The parties have endeavored to resolve discovery disputes in this action without requiring

involvement of the Court, including seeking to come to agreement on a stipulated Protective Order.

In fact, the parties had reached agreement on the majority of the provisions in a Protective Order

originally proposed by Plaintiffs.  Unfortunately, Plaintiffs have abruptly done a 180 degree turn

and now apparently believe that no Protective Order at all is necessary.  So instead of coming to the

Court with the one distinct issue upon which the parties still could not agree, that being whether or

not two tiers of confidentiality were required, Plaintiffs have forced Defendants to bring the present

motion.  In particular, Plaintiffs have caused Defendants to now burden the Court with having to

decide the unremarkable and well settled proposition that a Protective Order is appropriate in a patent co-inventorship case—a point upon which there had previously been no disagreement among the parties.

In this case, Plaintiffs have served overbroad discovery requests that seek Defendants' production of proprietary, confidential, and commercially sensitive information completely unrelated to the document upon which Plaintiffs base their co-inventorship claims. The Federal Rules of Civil Procedure and controlling case law simply do not require a producing party to disclose trade secrets, sensitive business information, or confidential and proprietary information that would cause the producing party commercial harm. Since Plaintiff Cambridge Research and Instrumentation, Inc. ("CRI") and Defendant ChemImage Corp. ("ChemImage") are competitors in a small, highly technical industry, Defendants are entitled to entry of a Protective Order restricting disclosure of Defendants' confidential and proprietary information. Moreover, Defendants are entitled to an "Attorneys' Eyes Only" designation because disclosure of Defendants' trade secret and sensitive business information to CRI's principals, officers, or employees would cause Defendants irreparable competitive harm.

## PERTINENT FACTS

On February 24, 2005, Plaintiffs instituted this litigation with the filing of a complaint that challenges inventorship of the patent-in-suit, U.S. Patent Number 6,734,962 ("the '962 patent"). Count I of the complaint, the only count pending in this litigation, cites two alleged contributions by Plaintiffs to the invention of the subject matter of the '962 patent. The first contribution that Plaintiffs allege was Plaintiffs' conception of the use of a liquid crystal tunable filter ("LCTF") in an imaging spectrometer. See Complaint ¶ 31. Plaintiffs have sought to support their inventorship claims by demonstrating that the alleged basis of their contributions to the invention of the '962 patent were formulated in a document entitled "Small Business Innovation Research (SBIR) Phase

2

II Proposal" ("SBIR Proposal"), prepared in 1996. Plaintiffs have alleged that the conception of the use of liquid crystal tunable filter (LCTF) technology was formulated by Plaintiffs in the SBIR Proposal. <u>See</u> Complaint ¶¶ 11, 13.

On September 1, 2005, Plaintiffs served their First Set of Requests for Documents and Things upon Defendants. A copy of Plaintiffs' First Set of Requests for Documents and Things is attached hereto as Exhibit A. On October 3, 2005, Defendants responded to Plaintiffs' written discovery. A copy of Defendants' Response to Plaintiffs' First Set of Requests for Documents and Things is attached hereto as Exhibit B. Shortly thereafter, counsel for each of the parties participated in a conference call whereby the parties agreed that a stipulated Protective Order was necessary and appropriate. Recognizing the confidential, proprietary and trade secret nature of documents to be produced by the parties in discovery, **Plaintiffs proposed** that the parties agree to entry of a stipulated Protective Order. Plaintiffs confirmed the agreement by the parties reached during this call in a letter dated October 17, 2005:

> (6)    We would like to confirm the earlier telephone conversation between Tony [Fitzpatrick, counsel for Defendants] and Tidge [Holmberg, counsel for Plaintiffs] in which it was stated that:
>
> ***
>
> **(b)    Defendants are amenable to a Protective Order in this case—Plaintiffs will prepare a draft Order which Defendants will review.**

(emphasis added). A copy of Plaintiffs' October 17, 2005 letter is attached hereto as Exhibit C. Consistent with the parties' agreement, Plaintiffs forwarded a draft Protective Order to Defendants on or about November 11, 2005. A copy of Plaintiffs' proposed Protective Order is attached hereto as Exhibit D. Because both sides anticipated that their respective document productions would include confidential information, the parties also agreed that they would defer document production until the Protective Order was finalized.

3

Eager to finalize the outstanding details and enter a Protective Order, Plaintiffs requested a discovery conference under Local Rule 37.1 to discuss the draft Protective Order. A copy of Plaintiffs' January 23, 2006 letter is attached hereto as Exhibit E. Still impatient to have a Protective Order, Plaintiffs threatened that it would file a motion to compel seeking to have the Court enter its draft Protective Order. A copy of Plaintiffs' January 30, 2006 letter is attached hereto as Exhibit F. The next day, Defendants sent Plaintiffs a revised Protective Order. A copy of Defendants' January 31, 2006 letter, including a copy of the revised Protective Order enclosed therein, is attached hereto as Exhibit G.

The primary difference between Plaintiffs' draft and Defendants' revised version of the Protective Order was that Plaintiffs had proposed one category of confidentiality designation whereas Defendants counter-proposed two categories of confidentiality designations. Specifically, Plaintiffs' proposed that parties could designate documents containing proprietary business information as "CONFIDENTIAL." Accordingly, disclosure of documents marked as "CONFIDENTIAL" would be restricted to certain categories of individuals as limited by the Protective Order. Defendants counter-proposed that parties could designate documents containing sensitive, proprietary commercial information, the disclosure of which would pose an undue risk of competitive injury, as "CONFIDENTIAL — ATTORNEYS' EYES ONLY." The key distinction between documents designated as "CONFIDENTIAL" and those designated as "CONFIDENTIAL — ATTORNEYS' EYES ONLY" was that the former could be disclosed to "the receiving parties officers, directors and employees" whereas the latter could be disclosed only to outside counsel of record and any experts hired by counsel.

Plaintiffs provided comments to Defendants' counter-proposal of a second confidentiality designation. A copy of Plaintiffs' February 2, 2006 letter is attached hereto as Exhibit H. Plaintiffs objected to the "CONFIDENTIAL — ATTORNEYS' EYES ONLY" designation for two reasons:

4

(1) the possibility that documents relating to inventorship would not be able to be reviewed by Plaintiffs officers, directors and employees; and (2) the cost and expense of hiring an expert. Defendants supported its request for a second confidentiality designation by noting that Plaintiffs' broad document requests seek information far beyond the single patent-in-suit. The disclosure of sensitive competitive information to Plaintiffs, a competitor within the same small industry, would cause Defendants irreparable harm. A copy of Defendants' February 8, 2006 letter is attached hereto as Exhibit I. Two days later, Plaintiffs informed Defendants that they believed further negotiation on the Protective Order was futile and threatened that they, **Plaintiffs**, would move the Court for entry of a Protective Order. A copy of Plaintiffs' February 10, 2006 letter is attached hereto as Exhibit J.

On March 9, 2006, after nearly one month of silence, Plaintiffs' counsel unexpectedly left Defendants' counsel a voice mail that directly contradicted the parties' previous agreement. Plaintiffs' counsel indicated that none of the documents responsive to Defendants' requests were confidential, and they saw no basis for any confidentiality protection under a Protective Order. Plaintiffs' flip-flop ignored the entirety of the correspondence created and appended to this motion wherein the parties' had agreed to entry of a Protective Order with at least one confidentiality designation. Indeed, as this record demonstrates, Plaintiffs had themselves proposed the first draft of such a Protective Order. Plaintiffs confirmed their about-face in an e-mail to Defendants' counsel. Defendants responded, reminding Plaintiffs that they had an obligation to meet and confer prior to filing any discovery motion. A copy of Plaintiffs' March 9, 2006 e-mail and Defendants' March 14, 2006 response is attached hereto as Exhibit K. Even after receiving Defendants' response, nonetheless, Plaintiffs went ahead and filed their motion to compel later that same day without regard for their meet and confer obligations under Local Rules 7.1 and 37.1.

5

**ARGUMENT**

A.    **Plaintiffs' Are Seeking To Hijack The Patent In Suit In Order To Practice Fluorescence Technology That Plaintiffs Did Not Invent**

By way of background, and before addressing the legal issues surrounding entry of a Protective Order, it is important to understand the breadth of Plaintiffs' claims, their true motives in this matter and how, through legal maneuvering, Plaintiffs are attempting to gain the right to use technology that they never invented.

Although Plaintiffs' inventorship argument is premised on the 1996 Phase II SBIR Proposal, Plaintiffs' business plans have <u>nothing</u> to do with the technology described in that document— which was directed to a High Definition <u>Raman</u> Imaging Microscope (emphasis added).  Rather, the instruments marketed by Plaintiffs and featured on their website are directed to a completely different type of microscopy known as <u>fluorescence</u>.[1]  Years after the 1996 SBIR Phase II Proposal, and long after any purported collaboration with the Plaintiffs, Defendant Treado along with others at ChemImage spent countless hours and resources developing an instrument for performing, among other things, <u>fluorescence</u> microscopy in the near infrared range.[2]  Defendants applied for and successfully obtained the patent-in-suit to protect this later work – which covers, among other things, fluorescence microscopy in the near infrared range.  Plaintiffs are now attempting to "hijack" this patent in order to grab rights to Defendants' <u>fluorescence</u> technology, so that Plaintiffs

---

[1] <u>See</u> Product Sheets for Plaintiffs' Maestro and Nuance instruments, a copy of which was attached as Exhibit C to Defendants' Sur-Reply Memorandum In Opposition To Plaintiffs' Motion To Enjoin Defendants From Continuing With The Reissue Application (Docket Entry No. 21).

[2] Almost 100 pages of Defendant Treado's laboratory notebook pages evidencing Defendants' work on this project during 1999 were attached as Exhibit D to Defendants' Sur-Reply Memorandum In Opposition To Plaintiffs' Motion To Enjoin Defendants From Continuing With The Reissue Application (Docket Entry No. 21).  Defendants filed these laboratory notebook pages with the U.S. Patent and Trademark on October 13, 2000, as part of the provisional patent application that later formed the basis for the patent in suit.  Significantly, **Plaintiffs have not identified even a single laboratory notebook page of their own showing any work on the technology at issue.**  <u>See</u> Plaintiffs' Supplemental Response To Defendants' Interrogatory No. 7, a copy of which is attached hereto as Exhibit L.

6

can continue to pursue their business plan of marketing <u>fluorescence</u> instruments in competition with Defendants.

Plaintiffs' true motive in this litigation – namely, to clear the way for Plaintiffs to market fluorescence instruments – is evident from Counts I and V of Plaintiffs' Complaint, which simultaneously pleaded that Plaintiffs invented the patent-in-suit and that the patent was invalid. Typically, a party seeking to be named as an inventor on a patent <u>wants</u> the patent to be <u>valid</u>, so that it can be used as an asset by the party for licensing or enforcement purposes. Plaintiffs' motives here are clearly the opposite – namely, to seize control of the patent through legal maneuvering so that the patent remains uncorrected and in an <u>invalid</u> state, thus clearing the way for Plaintiffs to market fluorescence technology which they did not invent.

**B.    Plaintiffs' Overbroad Discovery Requests Necessitate The Entry Of A Protective Order**

As Plaintiffs' discovery shows, they have requested documents pertaining to technology far beyond the SBIR Proposal. Plaintiffs' requests encompass technology developed solely by ChemImage long after its work on the SBIR Proposal with CRI had concluded. Since collaborating with CRI in the mid-1990's, ChemImage has conducted substantial research, expended significant money on development, and entered into contracts and joint ventures with private and governmental entities for purposes of conducting research and development in the field of chemical imaging. Aspects of the technology, research, and information generated by ChemImage during this time period have been vigorously kept secret due to their highly proprietary, confidential, and commercially sensitive nature. Since Plaintiffs have called for the production of "all documents concerning" the patent-in-suit, Defendants' production of responsive documents will necessarily include the types of documents described above, even though they are extremely commercially sensitive and important to ChemImage and have nothing to do with the long ago finite collaboration between CRI and ChemImage.

7

Since collaborating on the SBIR Proposal, CRI and ChemImage have independently developed their business in overlapping technological markets. As a result, Plaintiff CRI is a direct competitor of Defendants within a small and highly specialized industry and academic community. ChemImage and CRI both sell instruments for generating and analyzing chemical images, and are competitors in this market. See Declaration of Patrick Treado, a copy of which is filed herewith. CRI also supplies ChemImage with components (i.e., filters) that ChemImage incorporates into its instruments. In this respect, CRI and ChemImage are engaged in a vendor/customer relationship. See Declaration of Wesley Hutchison, a copy of which is filed herewith. Defendants' document requests seek to have ChemImage produce its trade secret, confidential technical research and development, and highly sensitive and proprietary commercial information to CRI, a direct competitor. If required to do so, without appropriate restrictions, ChemImage's competitive position with respect to CRI would be irreparably compromised.

Defendants' proprietary and commercially sensitive information is the result of expensive research and development conducted by Defendants (and their predecessors) over the past decade. The information is integral to Defendants' business. The public disclosure, or disclosure to a competitor, of any portion of the confidential information could be competitively devastating for Defendants. In fact, the secrecy of the confidential information gives Defendants a competitive edge and enhances their ability to do business in the industry. The severe financial harm that Defendants would suffer as a result of a disclosure of the confidential information is of such magnitude that Defendants would have no commercially viable recourse against those responsible for the disclosure.

After lengthy negotiations designed to reach accord on the terms of a stipulated Protective Order, Plaintiffs abruptly ceased negotiations, completely switched their position on their perceived need for a Protective Order, and filed their instant motion to compel. In doing so, Plaintiffs have

8

misstated the nature of the dispute by, among other things, ignoring the substantial agreement reached among the parties as to the fundamental need for a Protective Order granting the parties the ability to control the disclosure of confidential information.

In response to Plaintiffs' requests for production of documents, Defendants have asserted various objections. With the exception of Defendants' objections relating to matters of confidentiality, all of Defendants' asserted objections remain valid and are not at issue in Plaintiffs' present motion to compel. With respect to the vast majority of responsive documents not subject to Defendants' objections, Defendants would not require any confidentiality designation. However, Defendants would only produce the following categories of responsive documents subject to the following confidentiality designations as set forth in the proposed Protective Order attached hereto as Exhibit G.

Pursuant to the Protective Order that Defendants' have herein moved the Court to enter, Defendants would seek to designate the following categories of documents as "CONFIDENTIAL — ATTORNEYS' EYES ONLY":

      1.    <u>Documents relating to confidential research performed by ChemImage ("Research.")</u>

CRI was not involved in the Research, and the Research includes technology that constitutes trade secrets of ChemImage. If officers or employees of CRI were provided access to the Research, they could use the sensitive commercial information contained therein to compete with ChemImage and cause ChemImage competitive harm. Moreover, once officers and employees of CRI have this confidential trade secret information in their head, it would be impossible for them to "pretend" that they did not know it when making decisions about how to engage/compete with ChemImage in the marketplace.

2.     Documents relating to proposed business relationship between
       ChemImage and CRI

CRI previously attempted to purchase ChemImage. In connection with the contemplated

transaction, ChemImage generated internal documents that set forth its business strategies,

including particular strategies for competing with CRI in the marketplace. If principals of CRI were

provided access to this strategic corporate information, they could use it to compete with

ChemImage and cause ChemImage competitive harm. Moreover, once the principals of CRI have

this confidential information in their heads, it, again, would be impossible for them to "pretend" that

they did not know it when making decisions about how to engage/compete with ChemImage in the

marketplace.

Pursuant to the Protective Order that Defendants' have herein moved the Court to enter,

Defendants would seek to designate the following categories of documents as "CONFIDENTIAL":

Non-public drafts, notes and correspondence relating to the SBIR
proposals and reports that are identified in the Complaint

These materials include financial and technical information concerning ChemImage and its

technology which is not generally known outside of ChemImage. ChemImage does not believe that

this non-public information needs to be shielded from principals of CRI, since they previously

became aware of the information in connection with the SBIR proposals/reports cited in the

complaint. However, ChemImage would be harmed if this information were made known generally

to competitors beyond CRI.

C.    **Defendants Are Entitled To Entry Of A Protective Order Prohibiting
      Disclosure Of Their Confidential And Proprietary Information**

District judges need wide latitude in designing protective orders, and Rule 26(c) of the

Federal Rules of Civil Procedure generously permits "for good cause shown" the making of "an

order which justice requires" to protect against annoyance, embarrassment or undue burden

occasioned by discovery. See Poliquin v. Garden Way, Inc., 989 F.2d 527, 532 (1st Cir. 1993);

Rodriguez v. Boehringer Ingelheim Pharma., Inc., 425 F.3d 67, 73 (1st Cir. 2005). It is well settled that the district court has "broad discretion" to decide "when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 91 (1st Cir. 1996). Specifically, Federal Rule of Civil Procedure 26(c)(7) provides that : "the court in which the action is pending . . . may make any order which justice requires to protect a party . . . including one or more of the following . . . that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way . . . ."

Federal courts have repeatedly demonstrated a willingness to issue protective orders to restrict the disclosure of competitive information that would place the producing party at a competitive disadvantage. See Multi-Core, Inc. v. Southern Water Treatment Co., 139 F. R.D. 262, 264 (D. Mass. 1991)(granting protective order restricting disclosure of sensitive competitive information when public disclosure would result in harm to producing party's business); U.S. v. Federation of Physician & Dentists, 63 F. Supp.2d 475, 479 (D. Del. 1999)(prohibiting discovery of "financial information when it may be revealed to business rivals, especially when the information would be collateral and not direct proof of the plaintiff's claims"); Miles v. Boeing Corp., 154 F.R.D. 112, 114 (E.D. Pa. 1994)("Competitive disadvantage is a type of harm cognizable under Rule 26, and it is clear that a court may issue a protective order restricting disclosure of discovery materials to protect a party from being put at a competitive disadvantage."). Moreover, when sensitive, confidential business information is sought in discovery, the party opposing the protective order bears the burden of establishing substantial need for the material that cannot be met without undue hardship. See Act, Inc. v. Sylvan Learning Systems, Inc., No. Civ. A. 99-63, 1999 WL 305300, at *2-3 (E.D. Pa. May 14, 1999)(preventing discovery of confidential business information

11

where disclosure would expose producing party to serious commercial harm and disadvantage).

Plaintiffs have made no such showing here.

### D.    Disclosure Of Defendants' Trade Secrets And Competitive Business Information Should Be Restricted To Only Outside Counsel And Experts Hired By Counsel

Defendants have demonstrated that "good cause" exists, namely the protection of competitively sensitive, trade secret information from a direct competitor, for the issuance of a Protective Order providing two possible confidential designations. The "CONFIDENTIAL" designation will protect confidential information of which Defendants are already aware from further public dissemination that could have a negative competitive impact on ChemImage. The "CONFIDENTIAL—ATTORNEYS' EYES ONLY" designation will protect ChemImage's trade secret and competitive business information from dissemination to any officers and employees of its competitor CRI. This latter category of materials will be restricted to CRI's outside counsel and experts hired by counsel. Defendants request a Protective Order with a second confidentiality designation, "CONFIDENTIAL — ATTORNEYS' EYES ONLY," because allowing principals, officers, or employees of CRI to review the most highly sensitive trade secret business and research information of its competitor would cause undeniable competitive harm to ChemImage and place it at a significant competitive disadvantage as a result of the unprotected disclosure. Moreover, the type of unrestricted disclosure of business information to a competitor that Plaintiffs seek from this Court by way of their motion to compel is clearly prohibited by the Federal Rules of Civil Procedure and controlling case authorities.

Numerous district courts have held in similar circumstances that a protective order providing for "Attorneys' Eyes Only" protection strikes the proper balance between providing plaintiffs the documents they request and protecting defendants from dispersion of their confidential information and business strategies. Such a provision would allow attorneys for the parties to access documents

designated as "CONFIDENTIAL — ATTORNEYS' EYES ONLY," but prevent disclosure to the

competitor parties.  As one court has stated:

> Ample precedent exists for limiting disclosure of highly sensitive,
> confidential or proprietary information to attorneys and experts,
> particularly when there is some risk that a party might use the information
> or disseminate it to others who might employ it to gain a competitive
> advantage over the producing party.

Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., No. Civ. A. 97-3012, 1998 WL 186728, at *2

(E.D. La. Apr. 17, 1998); see also Ellipsis, Inc. v. The Color Works, No. Civ. A. 03-2939, 2004 WL

3142216, at *2 (W.D. Tenn. Dec. 17, 2004)(holding that it would enter "Attorneys' Eyes Only"

protective order to protect the "trade secrets, confidential information, and proprietary information"

from competitors while "balancing" the need for production of documents).

As the court in C.A. Muer Corp. v. Big River Fish Co., Nos. Civ. A. 97-5402, 97-6073, 97-

7154, 1998 WL 488007, at *4 (E.D. Pa. Aug. 10, 1998) explained, "dissemination of . . .

information to a competitor . . . could lead to a competitive disadvantage."  If one company were

allowed to access a competitor's confidential information, the competitor could "base future

business decisions on the information obtained during discovery."  The Court explained that, once

disseminated to a competitor, the information "would become part of a residue of knowledge"

which the competitor "would not shed after the termination of the litigation."  Id.  In Safe Flight

Instrument Corp. v. Sundstrand Data Control Inc., 682 F. Supp. 20 (D. Del. 1988), Sundstrand

moved for a protective order to preclude the President of Safe Flight from having access to

confidential documents.  The court held that the president of a direct competitor could, consciously

or subconsciously, abuse the confidential information revealed to the producing party's

disadvantage.  Further, in Vesta Corset Co. v. Carmen Foundations, Inc., No. Civ. A. 97-5139, 1999

WL 13257 (S.D.N.Y. Jan. 13, 1999), the court held that, because the information in question was

sensitive commercial information and because the parties were competitors, the disclosure should

13

be limited to counsel and experts in the case and not to the presidents. See also GTE Prods. Corp. v. Gee, 112 F.R.D. 169, 171-72 (D. Mass. 1986)(precluding non-lawyers from having access under court-issued protective order, stating that defendants do not the right to have confidential commercial information of competitors disclosed to them); Phillips Petroleum Co. v. Rexene Prods. Co., 158 F.R.D. 43, 46-47 (D. Del 1994)(same).

Entry of a protective order providing a "CONFIDENTIAL — ATTORNEYS' EYES ONLY" is both appropriate and required by the circumstances of this case. Plaintiffs have brought suit seeking co-inventorship rights in a recent patent on the basis of a decade-old document purportedly demonstrating prior collaboration between the principals of CRI and ChemImage on technology unrelated to the patent-in-suit. In an attempt to support their baseless claims, Plaintiffs have requested far ranging discovery that calls for the production of all research and development of technology relating to the patent-in-suit, even though this amounts to production of trade secret research and development activities of Defendants over the last decade that have nothing to do with the SBIR Proposal upon which Plaintiffs rely.

Protection of these documents as "CONFIDENTIAL — ATTORNEYS' EYES ONLY" would not hinder Plaintiffs' ability to litigate the claims that they initiated against Defendants. The attached proposed Protective Order would allow the parties' attorneys to access these documents, develop their case, and work with the expected expert witnesses hired by counsel without jeopardizing the proprietary nature of the information. Surely Plaintiffs would not wish to review ChemImage's confidential business information for purposes other than pursuing their claims against Defendants. Therefore, Plaintiffs' highly qualified and experienced intellectual property attorneys with the assistance of expert witnesses would be more than competent to prosecute Plaintiffs' claims without revealing ChemImage's sensitive competitive information to the principals, officers, or employees of CRI.

14

## CONCLUSION

Plaintiffs' motion to compel the production of documents that Defendants seek to designate as "CONFIDENTIAL" and "CONFIDENTIAL — ATTORNEYS' EYES ONLY," prior to or in the absence of the proposed Protective Order, would cause significant competitive harm to Defendants. For all of the foregoing reasons, Defendants respectfully request that this Honorable Court DENY Plaintiffs' motion to compel and GRANT Defendants' cross motion for entry of protective order.

Respectfully submitted,

Date:  March 28, 2006

/s/ Anthony J. Fitzpatrick
Anthony J. Fitzpatrick
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: 617.289.9220
Fax: 617.289.9201
e-mail:  ajfitzpatrick@duanemorris.com

Counsel for Defendants,
Patrick Treado and ChemImage Corp.

OF COUNSEL:

Paul D. Weller
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5530
eFax:  215.963.5001
e-mail:  pweller@morganlewis.com

C:\Documents and Settings\abf145\Desktop\ChemImage - Oppn To Mtn Compel and Cross Mtn for Prot Ord.doc

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 28, 2006.


Date:  March 28, 2006                    /s/ Anthony J. Fitzpatrick
                                         Anthony J. Fitzpatrick
                                         Duane Morris LLP
                                         470 Atlantic Avenue, Suite 500
                                         Boston, MA 02210
                                         Telephone: 617.289.9220
                                         Fax: 617.289.9201
                                         e-mail:  ajfitzpatrick@duanemorris.com

                                         Counsel for Defendants,
                                         Patrick Treado and ChemImage Corp.

16

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation,

                Plaintiffs,

                v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

              Defendants.

Civil Action No. 05-10367-RWZ

## PLAINTIFFS' FIRST SET OF
## REQUESTS FOR DOCUMENTS AND THINGS

Plaintiffs, Peter J. Miller, Clifford Hoyt, and Cambridge Research and Instrumentation, Inc.

hereby submit their First Set Of Requests For The Production Of Documents and Things to

defendants Peter Treado and ChemImage Corp.

## DEFINITIONS

1.    "*document*" - synonymous in meaning and equal in scope to the usage of this term in Rule 34(a), Fed. R. Civ. P., and Local Rule 26.5(c)(2), including, but not limited to, any data or communication, in any storage format (e.g., paper, electromagnetic memory, optical disks), and in any presentation format (e.g., text, image, audio, etc.).

Thus, it is expected that all electronic storage media will be appropriately searched in response to any requests for documents herein, and that all electronically stored responsive information will be produced, either in its original format on electronic storage media (providing that the original format is decipherable by commonly used software) or printed out on paper (if all information of the original electronically stored responsive information is retained without modification when printed out).

Any draft or non-identical copy is a separate document within the meaning of this term.

2.    "*communication*" - means the transmittal or reception of information (in the form of facts, ideas, inquiries, or otherwise).

3.    "*CHEMIMAGE*" - means the corporate entity presently known as ChemImage Corporation (and previously known as ChemIcon, Inc.), including, but not limited to, its past and present officers, directors, employees, agents, representatives, attorneys, accountants, partners, corporate parent(s), subsidiaries, affiliates, predecessors, and successors (including, but not limited to, ChemIcon, Inc.). Thus, defendant Patrick Treado is encompassed within this definition.

4.    "*CRI*" - means Cambridge Research and Instrumentation, Inc., including, but not limited to, its past and present officers, directors, employees, agents, representatives, attorneys, accountants, partners, corporate parent(s), subsidiaries, affiliates, predecessors, and successors. Thus, plaintiffs Peter J. Miller and Clifford Hoyt are encompassed within this definition.

5.    "*and*" and "*or*" - shall be construed to give them the broadest, most expansive meaning, which includes, without limitation, reading such terms in the disjunctive or conjunctive, as necessary, to give them a broader meaning.

6.    As indicated in Local Rule 26.5(a), the definitions of Local Rule 26.5(c) are herein incorporated by reference; however, if any definition found herein has a greater scope than any definition in Local Rule 26.5(c), the definition with greater scope found herein is intended.

7.    As used herein, the singular form shall include the plural and vice versa whenever such a dual construction shall serve to bring within the scope of any request any documents or things which would otherwise not be brought within its scope.

## INSTRUCTIONS

1.    These requests shall be deemed to include any and all relevant documents and things within the possession, custody, or control of CHEMIMAGE.

2.    CHEMIMAGE shall supplement its production if it comes into the possession, custody or control of any responsive document or thing after the time of initial production and before the time of trial herein by promptly producing such document or thing.

3.    CHEMIMAGE is required to produce not only the original or an exact copy of the original of all documents and things responsive to any of the following requests, but also all copies of any such document and thing which bears any note, marking, or modification not found on the original and all preliminary, intermediate, final, and revised drafts or embodiments of the same.   CHEMIMAGE is required to produce all versions of such documents including any English translations thereof, as well as identical copies found in different files.

4.    Documents from any single file should be produced in the same order as they were found in such file.  If copies of documents are produced, such copies should be legible and bound, clipped, or stapled in the same manner as the original.

5.    Documents should be produced in such a manner as will facilitate their identification with the particular request(s) to which they are responsive.

6.    For all documents and things produced in response to the requests herein, produce documents that reflect the name and location from which the document or thing was retrieved, including, but not limited to, labels or other identifying information for each file in which responsive documents were found, and/or documents indicating the location of each file and the identity of the custodians of each such file.

7.    All documents that are responsive in whole or in part to any of the requests herein shall be produced in full, without abridgment, abbreviation, or expurgation of any sort.  Similarly, all things that are responsive in whole or in part to any of the requests herein shall be produced in full, without modification of any sort.  If any document or thing cannot be produced in full, CHEMIMAGE shall produce the document or thing to the extent possible and indicate in its written response what portion of the document is not being produced and why it can not be produced, or how the thing has been modified and why it has been modified.  See Local Rule 34.1(c)(2) and Instruction #11(b) below.

8.    If a document or thing responsive to these requests has been destroyed, CHEMIMAGE shall describe said thing or the content of said document, the location of any copies of said document or thing, the date of such destruction, and the name of the person who ordered or authorized such destruction.

9.    If there are no documents or things responsive to a specific request, CHEMIMAGE's response should so state.

10.    To the extent CHEMIMAGE believes that any term, phrase, or sentence in this document is open to interpretation, such term, phrase, or sentence should be given the broadest possible interpretation.  Furthermore, the requests for documents and things should not be interpreted as necessarily mutually exclusive, i.e., the subject matter of individual requests may overlap.  Thus, if and when requests appear to overlap, they should be interpreted as overlapping.

11.    In addition to the requirements of Rule 45(d), Fed. R. Civ. P., and Local Rule 34.1(e), concerning privilege claims:
 (a) With respect to any documents or things otherwise responsive to the request that CHEMIMAGE withholds or refuses to divulge on a claim of privilege, CHEMIMAGE must provide a statement signed by its attorneys setting forth as to each document (or thing, where applicable):
  (i)    the names of the sender, author, and recipient of the document and any persons to whom the document was circulated or its contents communicated;
  (ii)   the date of the document, or, if no date appears, the date on which it was prepared;
  (iii)  a general description of the subject matter of the document;
  (iv)   the name of the person who has custody of the document or any copy thereof;
  (v)    the specific grounds, including the statute, rule, or decision, which provides the authority for the claim of privilege.
 (b) Any purportedly privileged document containing non-privileged matter must be produced, with the purportedly privileged portion excised.  CHEMIMAGE shall identify the specific location on each page where matter has been excised, and provide all information required by paragraph 11(a) above concerning the excised matter.

12.    In accordance with Local Rule 26.1(a) concerning Cooperative Discovery and Local Rule 37.1 concerning Discovery Disputes, counsel for plaintiffs suggest that CHEMIMAGE (or counsel for CHEMIMAGE) contact counsel for plaintiffs promptly after service of these requests in order to discuss CHEMIMAGE's response to these requests.

To the extent that CHEMIMAGE has any objection to any definition, instruction, or request herein, this instruction is intended as a request for a discovery conference under Local Rule 37.1.

For such a teleconference, counsel for plaintiffs suggest the following topics:
 (a) any questions, comments, or objections concerning the scope of the requests for documents and things, including, but not limited to:
  (i)    any definition, instruction, or request which CHEMIMAGE believes to be overly broad or burdensome, or with which CHEMIMAGE does not intend to comply; and/or
  (ii)   any term, phrase, or sentence in this document which CHEMIMAGE finds vague, confusing, or otherwise indefinite;
 (b) the scheduling of production, including, but not limited to, such issues as:
  (i)    the possible staggering of initial production on different dates; and
  (ii)   establishing a date on which the statement(s) concerning privilege claims called for in Instruction 11 will be served.

The purpose of this teleconference is so that the parties may confer in good faith as early as possible after service of the request, to reduce the burden on CHEMIMAGE, if possible,

while achieving the appropriate scope of production, and to work out any differences without involving the court.  See Local Rule 37.1(a).

Any modification, no matter how slight, of the definitions, instructions, or requests in this document, and any establishment of a schedule or logistical plan regarding production, must be reduced to writing, and consent to that writing given by both CHEMIMAGE and counsel for plaintiffs.

## REQUESTS FOR DOCUMENTS AND THINGS

**1.** All documents and things concerning the following United States Patent Applications and United States Patents:

| | |
|---|---|
| U.S. Prov. Pat. App. Ser. No. 60/144,518 | U.S. Pat. App. Ser. No. 10/698,584 |
| U.S. Prov. Pat. App. Ser. No. 60/187,560 | U.S. Pat. App. Ser. No. 10/773,077 |
| U.S. Prov. Pat. App. Ser. No. 60/239,969 | U.S. Pat. App. Ser. No. 10/934,885 |
| U.S. Prov. Pat. App. Ser. No. 60/422,604 | U.S. Pat. App. Ser. No. 10/935,423 |
| U.S. Pat. App. Ser. No. 09/064,347 | U.S. Pat. App. Ser. No. 11/091,126 |
| U.S. Pat. App. Ser. No. 09/619,371 | U.S. Reissue Pat. App. Ser. No. 11/103,423 |
| U.S. Pat. App. Ser. No. 09/800,953 | U.S. Pat. No. 6,002,476 |
| U.S. Pat. App. Ser. No. 09/976,391 | U.S. Pat. No. 6,717,668 |
| U.S. Pat. App. Ser. No. 10/610,481 | U.S. Pat. No. 6,734,962 |
| U.S. Pat. App. Ser. No. 10/698,243 | U.S. Pat. No. 6,788,860 |

This includes, but is not limited to:

(a) all documents and things concerning the preparation and prosecution of the listed patents and patent applications, including, but not limited to, all documents and things concerning:

   (i) the preparation of any draft patent applications covering the subject matter of any of the listed patents or patent applications, such as, without limitation, all invention disclosures, all drafts, and any meetings or communications with patent counsel concerning the preparation of any such drafts;

   (ii) the decision to file any of the listed patents or patent applications or to file any application covering any of the subject matter of any of the listed patents or patent applications; and

   (iii) the abandonment of any of the listed patents or patent applications;

(b) all documents and things concerning the conception and the actual and/or constructive reduction to practice of any invention(s) claimed in any of the listed patents or patent applications, including, but not limited to, all laboratory notebooks, notes, memoranda, workbooks, reports, or other documents;

(c) all documents and things concerning the inventorship of any of the listed patents or patent applications or of the subject matter of any of the listed patents or patent applications. This includes, but is not limited to, all documents and things concerning:

   (i) the identity of each inventor; and

   (ii) the decision to name each inventor;

(d) all documents and things concerning any testing, experimentation, development, study, and/or evaluation of any invention(s) claimed in any of the listed patents or patent applications;

(e) all documents and things concerning the ownership of any of the listed patents or patent applications or of the subject matter of any of the listed patents or patent applications;

(f) all documents and things concerning the infringement of any of the listed patents or patent applications;

(g) all documents and things describing any invention(s) in any of the listed patents or patent applications; and

(h) all documents and things concerning any agreement, contract, covenant, or license that grants or conveys any rights under any of the listed patents or patent applications.

2. Insofar as this request is not covered by any other request herein, all documents and things concerning foreign patent applications or patents which cover any subject matter recited in any of the patents and patent applications listed in Request 1. This request is intended to have the same scope as Request 1.

3. Insofar as this request is not covered by any other request herein, all documents and things concerning any product which embodies any invention(s) in any of the listed patents or patent applications.

4. Insofar as this request is not covered by any other request herein, all documents and things concerning the Covenant Not To Sue on U.S. Pat. No. 6,002,476 executed by Patrick Treado on November 11, 2000, including, but not limited to, all documents and things concerning:
   (a) the decision to sign the Covenant;
   (b) any analyses of CRI's allegations concerning the inventorship, invalidity, and unenforceability of U.S. Pat. No. 6,002,476;
   (c) any assessments of rights and responsibilities, such as, but not limited to, the "assessing" of "our rights and responsibilities" referred to by Patrick Treado in his May 10, 2000 e-mail to Peter J. Miller; and
   (d) the preparation of any draft Covenants, draft letters, or drafts of any documents in response to CRI's allegations concerning the inventorship and validity of U.S. Pat. No. 6,002,476, including, but not limited to, the "draft of a non-royalty bearing license agreement" and the "draft of a purchase agreement" referred to in Michael Dever's August 17, 2000 letter to Martin B. Pavane.

5. Insofar as this request is not covered by any other request herein, all documents and things concerning CRI's attempts to have CHEMIMAGE execute a Covenant Not to Sue on U.S. Pat. No. 6,734,962, including, but not limited to, all documents and things concerning:
   (a) the decision not to sign a Covenant;
   (b) any analyses of CRI's allegations concerning the inventorship, invalidity, and unenforceability of U.S. Pat. No. 6,734,962;
   (c) any assessments of rights and responsibilities;
   (d) the preparation of any draft Covenants, draft letters, or drafts of any documents in response to CRI's allegations concerning the inventorship, invalidity, and unenforceability of U.S. Pat. No. 6,734,962; and
   (e) Daniel Golub's January 20, 2005 letter asserting that Patrick Treado was "sole inventor of the technology that he (and ChemIcon) brought to the SBIR proposal".

6. Insofar as this request is not covered by any other request herein, all documents and things concerning CRI, including, but not limited to, all documents and things concerning:
   (a) any collaborations between CRI and CHEMIMAGE, including, but not limited to, the collaboration on the Small Business Innovation Research (SBIR) grant from the National Science Foundation (as discussed in Complaint, [Docket#1]; see Exhibit A);
   (b) any merger of CRI and CHEMIMAGE, including, but not limited to, any possible buyout of CHEMIMAGE by CRI;
   (c) any offer to Patrick Treado of a position at CRI;

    (d) any agreements with or concerning CRI;

    (e) any publications, presentations, advertisements, products, patents, patent applications, and inventions of CRI;

    (f) all communications concerning CRI, regardless of recipient and subject matter; and

    (g) all communications with CRI, regardless of subject matter.

7. Insofar as this request is not covered by any other request herein, all documents and things concerning Peter J. Miller and/or Clifford Hoyt, including, but not limited to:

    (a) all documents and things concerning publications, presentations, patents, and inventions of Peter J. Miller and/or Clifford Hoyt, either alone or jointly;

    (b) all communications concerning Peter J. Miller and/or Clifford Hoyt, regardless of recipient and subject matter; and

    (c) all communications with Peter J. Miller and/or Clifford Hoyt, regardless of subject matter.

8. Insofar as this request is not covered by any other request herein, all documents and things concerning any of the following articles:

    (a) H. Morris, C. Hoyt, P. Miller, and P. Treado, "Liquid Crystal Tunable Filter Raman Chemical Imaging", Vol. 50, Applied Spectroscopy, No. 6, pp. 805-811 (1996);

    (b) P. Treado, I. Levin, E. Lewis, "Indium Antimonide (InSb) Focal Plan Array (FPA) Detection for Near-Infrared Imaging Microscopy", Vol. 48, Applied Spectroscopy, No. 5, p. 607 (1994);

    (c) P. Miller and C. Hoyt, "Multispectral Imaging with a Liquid Crystal Tunable Filter", SPIE, Vol. 2345, pp. 354-365 (1995); and

    (d) P. Miller, "Tunable Narrowband Birefringent Filters for Astronomical Imaging", SPIE, Vol. 1235, pp. 466-470 (1990).

9. Insofar as this request is not covered by any other request herein, all documents and things concerning the "line of Raman microscopes" for which CHEMIMAGE had "quotations pending with several customers totaling over $300K" as stated in Appendix 2A of the SBIR Phase II Proposal (Complaint, [Docket #1], Exhibit C).

10. All documents and things concerning liquid crystal tunable filter (LCTF) technology, including, but not limited to, all documents and things concerning:

    (a) Evans Split-Element LCTF technology, including, but not limited to, its development and all inventive contributions thereto; and

    (b) Gary D. Sharp's and/or Colorlink, Inc.'s inventive contribution to LCTF technology.

11. All documents and things sufficient to show the corporate and organizational structure of CHEMIMAGE from 1994 to the present, including, but not limited to, its personnel, directors, officers, parents, subsidiaries, and all documents and things concerning any and all persons with any ownership interest in CHEMIMAGE.

12. All documents and things concerning any document retention, document destruction, or record keeping policy, past or present, of CHEMIMAGE.

**13.** All documents and things concerning the present litigation, including, but not limited to, all documents and things concerning the location of any documents or things responsive to these requests, and the gathering of documents and things responsive to these requests.

Respectfully submitted,

**PETER J. MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.,**

By their attorneys:

/s/ Teodor Holmberg
Martin B. Pavane
Teodor J. Holmberg (BBO# 634708)
COHEN, PONTANI, LIEBERMAN AND PAVANE
551 Fifth Avenue
New York, New York 10176
Tel. (212) 687-2770
Fax (212) 972-5487
E-mail: tidge@cplplaw.com

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201
E-mail: BMichaelis@brownrudnick.com

Dated: September 1, 2005

## CERTIFICATE OF SERVICE

I hereby certify than on this 1st day of September, 2005, I am serving a copy of the foregoing Plaintiffs' First Set of Requests for Documents and Things via electronic mail upon counsel for the defendants at the following e-mail address:

afitzpatrick@duanemorris.com

pweller@morganlewis.com

                                    /s/ Teodor Holmberg
                                    Martin B. Pavane
                                    Teodor J. Holmberg (BBO# 634708)
                                    COHEN, PONTANI, LIEBERMAN AND PAVANE
                                    551 Fifth Avenue
                                    New York, New York 10176
                                    Tel. (212) 687-2770
                                    Fax (212) 972-5487
                                    E-mail: tidge@cplplaw.com

                                    Brian L. Michaelis (BBO# 555159)
                                    Erin E. McLaughlin (BBO# 647750)
                                    BROWN RUDNICK BERLACK ISRAELS LLP
                                    One Financial Center
                                    Boston, MA 02111
                                    Tel. (617) 856-8200
                                    Fax (617) 856-8201
                                    E-mail: BMichaelis@brownrudnick.com

Dated: September 1, 2005

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PETER J. MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.<br>　　Plaintiffs,<br><br>　　　　　　v.<br><br>PATRICK TREADO and CHEMIMAGE CORP.<br>　　Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Case No. 05-10367 RWZ |

## DEFENDANTS' RESPONSE TO PLAINTIFFS'
## FIRST SET OF REQUESTS FOR DOCUMENTS AND THINGS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and the applicable

Local Rules of the District of Massachusetts, defendants Patrick J. Treado and ChemImage Corp.

(collectively "Defendants"), by and through their undersigned counsel, hereby respond to

Plaintiffs' First Set of Requests for Documents and Things as follows:

## GENERAL OBJECTIONS

### General Objection No. 1:

Defendants object to the "Definitions" and "Instructions" contained in Plaintiffs' First Set

of Requests for Documents and Things to the extent that they are inconsistent with or seek to

impose obligations beyond those imposed by the Federal Rules of Civil Procedure, the Local

Rules of the United States District Court for the District of Massachusetts or any applicable

Court Order.

**General Objection No. 2:**

Defendants object to the document requests to the extent that they would require disclosure of either documents or information protected by the attorney-client privilege or the work product doctrine, or of otherwise privileged material. Any inadvertent disclosure of such information shall not be deemed a waiver of the attorney-client privilege, the work product doctrine, or any other applicable privilege or immunity recognized by statute or case law.

**General Objection No. 3:**

Defendants object to the document requests to the extent that they require Defendants to search for and reveal privileged information from their and their attorney's litigation files concerning the inventorship claims that are the subject of Count I of the Complaint. Defendants will not schedule on their privilege log any attorney-client privileged materials or materials protected by the work product doctrine that concern the inventorship claims that are the subject of Count I of the Complaint and that were created on or after December 29, 2004, the date of the letter attached as Exhibit G to Complaint, wherein Plaintiffs stated their intent "to take steps to remove the '962 patent as an obstacle."

**General Objection No. 4:**

Defendants object to the document requests to the extent they call for information which is confidential or proprietary to, or the trade secrets of, Defendants or a third party. Subject to the objections stated herein, Defendants will produce documents in their possession, custody or control upon the execution of an appropriate protective order.

**General Objection No. 5:**

Defendants object to the document requests to the extent that they seek information that

is not relevant to the subject matter of this litigation and that is not reasonably calculated to lead

to the discovery of admissible evidence.

## RESPONSES

**Request No. 1:**

All documents and things concerning the following United States Patent Applications and United
States Patents:

| | |
|---|---|
| U.S. Prov. Pat. App. Ser. No. 60/144,518 | U.S. Pat. App. Ser. No. 10/698,584 |
| U.S. Prov. Pat. App. Ser. No. 60/187,560 | U.S. Pat. App. Ser. No. 10/773,077 |
| U.S. Prov. Pat. App. Ser. No. 60/239,969 | U.S. Pat. App. Ser. No. 10/934,885 |
| U.S. Prov. Pat. App. Ser. No. 60/422,604 | U.S. Pat. App. Ser. No. 10/935,423 |
| U.S. Pat. App. Ser. No. 09/064,347 | U.S. Pat. App. Ser. No. 11/091,126 |
| U.S. Pat. App. Ser. No. 09/619,371 | U.S. Reissue Pat. App. Ser. No. 11/103,423 |
| U.S. Pat. App. Ser. No. 09/800,953 | U.S. Pat. No. 6,002,476 |
| U.S. Pat. App. Ser. No. 09/976,391 | U.S. Pat. No. 6,717,668 |
| U.S. Pat. App. Ser. No. 10/610,481 | U.S. Pat. No. 6,734,962 |
| U.S. Pat. App. Ser. No. 10/698,243 | U.S. Pat. No. 6,788,860 |

This includes, but is not limited to:

(a)    all documents and things concerning the preparation and prosecution of the listed
patents and patent applications, including, but not limited to, all documents and
things concerning:

        (i)    the preparation of any draft patent applications covering the subject matter
of any of the listed patents or patent applications, such as, without
limitation, all invention disclosures, all drafts, and any meetings or
communications with patent counsel concerning the preparation of any
such drafts;

        (ii)    the decision to file any of the listed patents or patent applications or to file
any application covering any of the subject matter of any of the listed
patents or patent applications; and

        (iii)    the abandonment of any of the listed patents or patent applications;

(b)    all documents and things concerning the conception and the actual and/or
constructive reduction to practice any invention(s) claimed in any of the listed
patents or patent applications, including, but not limited to, all laboratory
notebooks, notes, memoranda, workbooks, reports or other documents;

(c)    all documents and things concerning the inventorship of any of the listed patents
or patent applications or of the subject matter of any of the listed patents or patent
applications. This includes, but is not limited to, all documents and things

concerning:
    **(i)**    the identity of each inventor;
    **(ii)**    the decision to name each inventor;

**(d)**    all documents and things concerning any testing, experimentation, development, study, and/or evaluation of any invention(s) claimed in any of the listed patents or patent applications;

**(e)**    all documents and things concerning the ownership of any of the listed patents or patent applications or the subject matter of any of the listed patents and patent applications;

**(f)**    all documents and things concerning the infringement of any of the listed patents or patent applications;

**(g)**    all documents and things describing any invention(s) in any of the listed patents or patent applications; and

**(h)**    all documents and things concerning any agreement, contract, covenant, or license that grants or conveys any rights under any of the listed patents or patent applications.

## Response to Request No. 1:

Defendants object to this request on all of the grounds set forth in the General Objections and incorporate those objections as if set forth in full herein. Defendants further object to this request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Defendants further object to this request as seeking documents or information protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged material.

Defendants specifically object to the request for production of documents and things concerning any patents and patent applications other than: (i) U.S. Provisional Patent Application No. 60/239,969 (i.e., the provisional application upon which the patent-in-suit is based), (ii) U.S. Patent Application No. 09/976,391 (i.e., the patent application that matured into the patent-in-suit), (iii) U.S. Patent No. 6,734,962 (i.e., the patent-in-suit) and (iv) U.S. Reissue Application No. 11/103,423 (i.e., the reissue application corresponding to the patent-in-suit), on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to

4

lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action.

Defendants specifically object to the request for production of "documents and things concerning the conception and the actual and/or constructive reduction to practice of any invention(s) claimed in any of the listed patents or patent applications ...." (Request 1(b)) on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Subject to and without waiver of the foregoing objections, Defendants will produce any documents and things in their possession, custody and control concerning the conception and actual and/or constructive reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims. Defendants object to the request for production of documents and things concerning the conception and actual and/or constructive reduction to practice of subject matter other than that set forth in claims 3 and 4 of the patent-in-suit, on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action.

Defendants specifically object to the request for production of all documents and things concerning "the subject matter of any of the listed patents and patent applications" (Request 1(c)) on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Subject to and without waiver of the foregoing objections, Defendants will produce any documents and things in their possession, custody and

control concerning the inventorship of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims. Defendants object to the request for production of documents and things concerning "the subject matter of any of the listed patents and patent applications" to the extent that such subject matter extends beyond the inventorship of the subject matter of claims 3 and 4 of the patent-in-suit, on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action.

Defendants specifically object to the request for production of all documents and things concerning "any testing, experimentation, development, study and/or evaluation of any invention(s) claimed in any of the listed patents or patent applications" (Request 1(d)) on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Subject to and without waiver of the foregoing objections, Defendants will produce any documents and things in their possession, custody and control concerning any testing, experimentation, development, study and/or evaluation performed as part of the conception and/or reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims. Defendants object to the request for production of documents and things concerning "any testing, experimentation, development, study and/or evaluation of any invention(s) claimed in any of the listed patents or patent applications" to the extent that such request extends beyond documents and things concerning any testing, experimentation, development, study and/or evaluation performed as part of the conception and/or reduction to

6

practice of the subject matter of claims 3 and 4 of the patent-in-suit, on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action.

Defendants specifically object to the request for production of all documents and things concerning "the infringement of any of the listed patents or patent applications" (Request 1(f)) on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action.

Defendants specifically object to the request for production of all documents and things describing "any inventions in any of the listed patents or patent applications" (Request 1(g)) on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Subject to and without waiver of the foregoing objections, Defendants will produce any documents and things in their possession, custody and control that describe the conception and/or reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims. Defendants object to the request for production of documents and things describing "any inventions in any of the listed patents or patent applications " to the extent that such request extends beyond documents and things that describe the conception and/or reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to

7

the discovery of admissible evidence relevant and material to the claim or defense of any party to this action.

Defendants specifically object to the request for production of all documents and things concerning "any agreement, contract, covenant, or license that grants or conveys rights under any of the listed patents or patent applications" (Request 1(h)) on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action.

**Request No. 2:**

Insofar as this request is not covered by any other request herein, all documents and things concerning foreign patent applications or patents which cover any subject matter recited in any of the patents and patent applications listed in Request 1. This request is intended to have the same scope as Request 1.

**Response to Request No. 2:**

Defendants object to this request on all of the grounds set forth in the General Objections Defendants' Response to Request No. 1, and incorporate those objections as if set forth in full herein. Defendants further object to this request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Defendants further object to this request as seeking documents or information protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged material. Subject to and without waiver of the foregoing objections, Defendants will produce any documents and things in their possession, custody and control that describe the conception and/or reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims.

8

**Request No. 3:**

Insofar as this request is not covered by any other request herein, all documents and things concerning any product which embodies any invention(s) in any of the listed patents or patent applications.

**Response to Request No. 3:**

Defendants object to this request on all of the grounds set forth in the General Objections Defendants' Response to Request No. 1, and incorporate those objections as if set forth in full herein. Defendants further object to this request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Defendants further object to this request as seeking documents or information protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged material. Subject to and without waiver of the foregoing objections, Defendants will produce any documents and things in their possession, custody and control that describe the conception and/or reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims.

**Request No. 4:**

Insofar as this request is not covered by any other request herein, all documents and things concerning the Covenant Not To Sue on U.S. Pat. No. 6,002,476 executed by Patrick Treado on November 11, 2000, including but not limited to, all documents and things concerning:

  (a)  the decision to sign the Covenant;
  (b)  any analyses of CRI's allegations concerning the inventorship, invalidity, and unenforceability of U.S. Pat. No. 6,002,476;
  (c)  any assessments of rights and responsibilities, such as, but not limited to, the "assessing" of "our rights and responsibilities" referred to by Patrick Treado in his May 10, 2000 e-mail to Peter J. Miller; and
  (d)  the preparation of any draft Covenants, draft letters, or drafts of any documents in response to CRI's allegations concerning the inventorship and validity of U.S. Pat. No. 6,002,476, including but not limited, the "draft of a non-royalty bearing license agreement" and the "draft of a purchase agreement" referred to in Michael

9

Dever' August 17, 2000 letter to Martin B. Pavane.

**Response to Request No. 4:**

Defendants object to this request on all of the grounds set forth in the General Objections

and incorporate those objections as if set forth in full herein. Defendants further object to this

request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to

the discovery of admissible evidence relevant and material to the claim or defense of any party to

this action. Defendants further object to this request as seeking documents or information

protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged

material.

**Request No. 5:**

Insofar as this request is not covered by any other request herein, all documents and things
concerning CRI's attempts to have CHEMIMAGE execute a Covenant Not to Sue on U.S. Pat.
No. 6,734,962, including, but not limited to, all documents and things concerning:
  **(a)**    the decision not to sign a Covenant;
  **(b)**    any analyses of CRI's allegations concerning the inventorship, invalidity, and
            unenforceability of U.S. Pat. No. 6,734,962;
  **(c)**    any assessments of rights and responsibilities;
  **(d)**    the preparation of any draft Covenants, draft letters, or drafts of any documents in
            response to CRI's allegations concerning the inventorship, invalidity, and
            unenforceability of U.S. Pat. No. 6,734,962; and
  **(e)**    Daniel Golub's January 20, 2005 letter asserting Patrick Treado was "sole
            inventor of the technology that he (and ChemIcon) brought to the SBIR
            proposal".

**Response to Request No. 5:**

Defendants object to this request on all of the grounds set forth in the General Objections

and incorporate those objections as if set forth in full herein. Defendants further object to this

request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to

the discovery of admissible evidence relevant and material to the claim or defense of any party to

this action. Defendants further object to this request as seeking documents or information

protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged

material.   Subject to and without waiver of the foregoing objections, Defendants will produce

any documents and things in their possession, custody and control that describe the conception

and/or reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which

are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship

claims.

**Request No. 6:**

Insofar as this request is not covered by any other request herein, all documents and things
concerning CRI, including, but not limited to, all documents and things concerning:

    **(a)**    any collaborations between CRI and CHEMIMAGE, including but not limited to,
the collaboration on the Small Business Innovation Research (SBIR) grant from
the National Science Foundation (as discussed in Complaint, [Docket #1]; see
Exhibit A);

    **(b)**    any merger of CRI and CHEMIMAGE, including, but not limited to, any possible
buyout of CHEMIMAGE by CRI;

    **(c)**    any offer to Patrick Treado of a position at CRI;

    **(d)**    any agreements with or concerning CRI;

    **(e)**    any publications, presentations, advertisement, products, patents, patent
applications, and inventions of CRI;

    **(f)**    all communications concerning CRI, regardless of recipient and subject matter;
and

    **(g)**    all communications with CRI, regardless of subject matter.

**Response to Request No. 6:**

Defendants object to this request on all of the grounds set forth in the General Objections

and incorporate those objections as if set forth in full herein. Defendants further object to this

request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to

the discovery of admissible evidence relevant and material to the claim or defense of any party to

this action. Defendants further object to this request as seeking documents or information

protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged material.

Defendants specifically object to the request for production of all "documents and things concerning CRI" on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Subject to and without waiver of the foregoing objections, Defendants will produce any documents and things in their possession, custody and control that concern the purported collaboration between CRI and ChemImage on the Small Business Innovation Research (SBIR) grant from the National Science Foundation described in the Complaint. Defendants object to Request No. 6 to the extent that such request extends beyond documents and things that concern the purported collaboration between CRI and ChemImage on the Small Business Innovation Research (SBIR) grant from the National Science Foundation described in the Complaint, on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action.

Defendants specifically object to the requests for production set forth in subparts (b), (c), (d), (e), (f) and (g) of Request No. 6, as being overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action.

12

**Request No. 7:**

Insofar as this request is not covered by any other request herein, all documents and things concerning Peter J. Miller and/or Clifford Hoyt, including, but not limited to:

    **(a)**    all documents and things concerning publications, presentations, patents, and inventions of Peter J. Miller and/or Clifford Hoyt, either alone or jointly;

    **(b)**    all communications concerning Peter J. Miller and/or Clifford Hoyt, regardless of recipient and subject matter; and

    **(c)**    all communications with Peter J. Miller and/or Clifford Hoyt, regardless of subject matter.

**Response to Request No. 7:**

Defendants object to this request on all of the grounds set forth in the General Objections and incorporate those objections as if set forth in full herein. Defendants further object to this request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Defendants further object to this request as seeking documents or information protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged material.

Defendants specifically object to the request for production of "all documents and things concerning Peter J. Miller and/or Clifford Hoyt …including all communications ... regardless of subject matter" on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. In response to Request No. 7, Defendants will produce any documents and things in their possession, custody and control that relate to communications with Miller and Hoyt concerning the conception and actual and/or constructive reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims. Defendants object to Request No. 7 to the extent that such request extends

beyond documents and things that relate to communications with Miller and Hoyt concerning the

conception and actual and/or constructive reduction to practice of the subject matter of claims 3

and 4 of the patent-in-suit, on the grounds that such requests overly broad, unduly burdensome,

vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant

and material to the claim or defense of any party to this action.

## Request No. 8:

Insofar as this request is not covered by any other request herein, all documents and things
concerning any of the following articles:

(a)   H. Morris, C. Hoyt, P. Miller and P. Treado, "Liquid Crystal Tunable Filter
      Raman Chemical Imaging", Vol. 50, Applied Spectroscopy, No. 6, pp. 805-811
      (1996);

(b)   P. Treado, I. Levin, E. Lewis, "Indium Antimonide (InSb)Focal Plan Array (FPA)
      Detection for Near-Infrared Imaging Microscopy", Vol. 48, Applied
      Spectroscopy, No. 5,  p. 607 (1994);

(c)   P. Miller and C. Hoyt, "Multispectral Imaging with a Liquid Crystal Tunable
      Filter", SPIE, Vol. 2345, pp. 354-365 (1995); and

(d)   P. Miller, "Tunable Narrowband Birefringent Filters For Astronomical Imaging",
      SPIE, Vol. 1235, pp. 466-470 (1990).

## Response to Request No. 8:

Defendants object to this request on all of the grounds set forth in the General Objections

and incorporate those objections as if set forth in full herein.  Defendants further object to this

request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to

the discovery of admissible evidence relevant and material to the claim or defense of any party to

this action.  Defendants further object to this request as seeking documents or information

protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged

material.  Defendants further object to this request to the extent that the articles in question have

not been furnished to Defendants.

Defendants specifically object to the requests for production set forth in subparts (b), (c) and (d) of Request No. 8, as being overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action.

**Request No. 9:**

Insofar as this request is not covered by any other request herein, all documents and things concerning the "line of Raman microscopes" for which CHEMIMAGE had "quotations pending with several customers totaling over $300K" as stated in Appendix 2A of the SBIR Phase II Proposal (Complaint, [Docket #1], Exhibit C).

**Response to Request No. 9:**

Defendants object to this request on all of the grounds set forth in the General Objections and incorporate those objections as if set forth in full herein. Defendants further object to this request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Defendants further object to this request as seeking documents or information protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged material. Subject to and without waiver of the foregoing objections, Defendants will produce any documents and things in their possession, custody and control that describe the conception and/or reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims.

**Request No. 10:**

All documents and things concerning liquid crystal tunable filter (LCTF) technology, including, but not limited to, all documents and things concerning:

- (a) Evans Split-Element LCTF technology, including, but not limited to, its development and all inventive contributions thereto; and
- (b) Gary D. Sharp's and/or Colorlink, Inc.'s inventive contribution to LCTF

15

technology.

**Response to Request No. 10:**

Defendants object to this request on all of the grounds set forth in the General Objections and incorporate those objections as if set forth in full herein. Defendants further object to this request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Defendants further object to this request as seeking documents or information protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged material.

Defendants specifically object to the request for production of all documents and things concerning "liquid tunable filter (LCTF) technology" on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Subject to and without waiver of the foregoing objections, Defendants will produce any documents and things in their possession, custody and control concerning the conception and actual and/or constructive reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit (including any such documents and things that concern LCTF technology). Defendants object to the request for production of documents and things concerning "liquid tunable filter (LCTF) technology" to the extent that such request extends beyond documents and things concerning the conception and actual and/or constructive reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, on the grounds that such request is overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action.

16

**Request No. 11:**

All documents and things sufficient to show the corporate and organizational structure of CHEMIMAGE from 1994 to the present, including but not limited, its personnel, directors, officers, parents subsidiaries, and all documents and things concerning any and all persons with any ownership interest in CHEMIMAGE.

**Response to Request No. 11:**

Defendants object to this request on all of the grounds set forth in the General Objections and incorporate those objections as if set forth in full herein. Defendants further object to this request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Defendants further object to this request as seeking documents or information protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged material. Subject to and without waiver of the foregoing objections, Defendants will produce any documents and things in their possession, custody and control that describe the conception and/or reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims.

**Request No. 12:**

All documents and things concerning any document retention, document destruction, or record keeping policy, past or present, of CHEMIMAGE.

**Response to Request No. 12:**

Defendants object to this request on all of the grounds set forth in the General Objections and incorporate those objections as if set forth in full herein. Defendants further object to this request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to

this action. Defendants further object to this request as seeking documents or information protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged material.

## Request No. 13:

All documents and things concerning the present litigation, including, but not limited to, all documents and things concerning the location of any documents or things responsive to these requests, and the gathering of documents and things responsive to these requests.

## Response to Request No. 13:

Defendants object to this request on all of the grounds set forth in the General Objections and incorporate those objections as if set forth in full herein. Defendants further object to this request as overly broad, unduly burdensome, vexatious and not reasonably calculated to lead to the discovery of admissible evidence relevant and material to the claim or defense of any party to this action. Defendants further object to this request as seeking documents or information protected by the attorney-client privilege, or the work product doctrine, or otherwise privileged material. Subject to and without waiver of the foregoing objections, Defendants will produce any documents and things in their possession, custody and control that describe the conception and/or reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims.

Date  October 3, 2005

/s/ Anthony J. Fitzpatrick
Anthony J. Fitzpatrick
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: 617.289.9220
Fax: 617.289.9201
e-mail:  ajfitzpatrick@duanemorris.com

Counsel for Defendants,
Patrick Treado and ChemImage Corp.

OF COUNSEL:

Paul D. Weller
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5530
eFax:  215.963.5001
e-mail:  pweller@morganlewis.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a true copy of the foregoing document was served upon counsel for the plaintiffs by electronic mail on October 3, 2005.

/s/ Anthony J. Fitzpatrick
Anthony J. Fitzpatrick

BOS\138382.1

# EXHIBIT C



**COHEN PONTANI LIEBERMAN & PAVANE**
551 Fifth Avenue, New York, NY 10176  *phone* 212.687.2770  *fax* 212.972.5487  www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.

_____

Sidney R. Bresnick
Of Counsel

_____

Yunling Ren, Ph.D.
Julia S. Kim
Mindy H. Chettih
Vincent M. Fazzari
Alfred W. Froebrich
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Lisa A. Ferrari
Richard D. Margiano
Darren S. Mogil
David P. Badanes
James P. Doyle
Mher Hartoonian
Alphonso A. Collins
Jason S. Howell
Douglas D. Zhang
Edward V. DiLello

_____

Enshan Hong
Technical Advisor

October 17, 2005

*VIA E-MAIL (CONFIRMATION BY MAIL)*

Paul D. Weller
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Anthony J. Fitzpatrick, Esq.
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

Re:    Cambridge Research & Instrumentation, Inc.,
       Peter J. Miller and Clifford Hoyt
       v. ChemImage Corporation and Patrick Treado
       Civ. No. 05-10367-RWZ (D.Mass.)
       Our File No.: 34250-60L

Dear Messrs. Weller and Fitzpatrick:

This letter is a request for a discovery conference under Local Rule 37.1 on Friday, October 21, 2005 at 3 p.m.  As you know, failure to respond to this request within 7 days may result in sanctions, including automatic allowance of any motion based on the discovery problems listed herein.

In the discovery conference, we would like to discuss a number of problems in your written response to our First Set of Requests for the Production of Documents and Things.

When we requested a cut-off date for our privilege logs, you rebuffed us, stating in your e-mail of September 14, 2005, that "[w]e do not believe that such an approach is appropriate, and will not agree to it in any case."  Nevertheless, in your response to our discovery requests, you have unilaterally pronounced that you will not list on your privilege log protected documents that were created on or after December 29, 2004.  We agree to this date, although it is earlier than the date we suggested, and thus we will also list no such materials after that date on our privilege log. We request that in the future we work together to resolve these differences.  Frankly, we do not understand why you couldn't have suggested your cut-off date back in September 14, 2005, and we hope this is not a harbinger of discovery negotiations to come.

We had asked in the Instructions to our First Set of Requests for Documents and Things that you contact us if you had any objections or problems with our Requests so that we could "reduce the burden on CHEMIMAGE, if possible, while achieving the appropriate scope of production, and to work out any differences without involving the court."  In fact, we asked that you consider our



Page 2
October 17, 2005

instructions as a request for a discovery conference under LR 37.1. Instead of contacting us in an attempt to find common ground, you have served us with a response indicating that you will not provide *any* documents in response to half of our Requests and largely ignoring most of the other Requests. While it is possible that we will not agree on many discovery matters, the earlier we attempt to resolve our differences or at least clarify our points of disagreement, the smoother the discovery process will be for all parties and, with sincere effort on both sides, we can hopefully avoid getting the Court involved.

We would like to discuss the following items in the discovery conference:

(1)    Although we asked for documents and things concerning 20 different patent and patent applications in Request No. 1, you only agreed to produce documents and things concerning three applications (the provisional application from which the patent-in-suit claims priority, the application which matured into the patent-in-suit, and the presently pending reissue application) and the patent-in-suit. We will agree to narrow the scope of Request No. 1 to include the patent-in-suit, the three applications you indicated, U.S. Pat. App. No. 09/064,347 ("the '347 application"), and U.S. Pat. No. 6,002,476 ("the '476 patent"). Because the '347 application and the '476 patent concern material related to the material in the patent-in-suit, and they were also based on a collaboration between CRI and ChemImage, they are relevant.

(2)    You have not objected or otherwise responded to Request Nos. 1(a) and 1(e). Thus, we are left to conclude that you will produce all non-privileged documents responsive to these Requests. If that is not the case, please provide an appropriate written response to these Requests by this Friday, October 21, 2005.

(3)    In regards to Request Nos. 1(f), 1(h), 4, 6(b), 6(c), 6(d), 6(e), 6(f), 6(g), 8, and 12, you have not indicated that you will produce *any* responsive non-privileged documents. Please confirm that you are not providing any documents responsive to those Requests. We would be happy to discuss your objections in the discovery conference and will consider any reasonable and appropriate change in the scope of these Requests in order to avoid having the Court become involved.

(4)    Regarding Request Nos. 1(b), 1(c), 1(d), 1(g), 2, 3, 5, 7, 9, 10, 11, and 13, you have completely ignored the wording of each individual Request. Your response in each case is one or another version of "we'll produce documents ...concerning the conception and actual and/or constructive reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims".

First, for many of these Requests, this response is a nonsensical *non sequitur*. For example, how is this a response to Request No. 11, which concerns the organization and structure of ChemImage, or Request No. 13, which concerns the location and gathering of any responsive documents?

Second, and perhaps more importantly, even where this response is arguably related to the Request, the Request is improperly narrowed by the response.



Page 3
October 17, 2005

Although Claims 3 and 4 are mentioned as examples in the Complaint, they are by no means the "bases for Plaintiffs' co-inventorship claims". In fact, Plaintiffs assert that they are at least co-inventors, and perhaps sole inventors, of Claim 1 of the '962 patent. Plaintiffs' assertion of co-inventorship/sole inventorship of Claim 1 of the '962 patent is completely consistent with the wording of the Complaint.

We would be happy to discuss your objections in the discovery conference and will consider any reasonable and appropriate change in the scope of these Requests in order to avoid having the Court become involved. However, we will not accept your unreasonable and inappropriate "generic" response to these various Requests.

(5)    Regarding Request No. 6(a), concerning any collaborations between Plaintiff CRI and Defendant ChemImage, you responded that you will only produce documents regarding the NSF SBIR collaboration. We believe all collaborations between the parties are legally and factually relevant. Please provide your basis for asserting you need only produce documents concerning the NSF SBIR collaboration. We would be happy to discuss your basis in the discovery conference and will consider any reasonable and appropriate change in the scope of these Requests in order to avoid having the Court become involved. However, we will not accept your drastic narrowing of the scope of this Request.

(6)    We would like to confirm the earlier telephone conversation between Tony and Tidge in which it was stated that:

(a)    each side will produce their documents, as well as their privilege logs, on October 28, 2005; and

(b)    Defendants are amenable to a Protective Order in this case–Plaintiffs will prepare a draft Order which Defendants will review.

We look forward to your response.

Very truly yours,
COHEN, PONTANI, LIEBERMAN & PAVANE

Teodor J. Holmberg

MBP/TJH/tdg

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation,

          Plaintiffs,

            v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

          Defendants.

Civil Action No. 05-10367-RWZ

## STIPULATED [PROPOSED] PROTECTIVE ORDER

Subject to approval by the Court, plaintiffs Peter J. Miller, Clifford Hoyt and Cambridge

Research and Instrumentation, Inc. and defendants, Patrick Treado and ChemImage Corp.,

hereby stipulate to the entry of the following [Proposed] Protective Order, which shall govern all

production of Protected Material (defined below), including documents and things produced or

filed by any party or non-party to this action.

## A.  SCOPE

1. The protections conferred by this Order cover not only Protected Material (as defined below), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Material.

2. Discovery Material: all items or information, regardless of the medium or manner generated, stored, or maintained including, but not limited to, documents, things, testimony and information produced or generated in disclosures or responses to discovery in this action.

3. Protected Material: any Discovery Material that is designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" in accordance with this Order.

## B.  DESIGNATION OF PROTECTED MATERIAL

1. Each party or non-party shall only designate as "CONFIDENTIAL" all or part of any document, thing, testimony or information that contain or constitute commercial, technical or business information which that party in good faith believes constitutes proprietary business information which information is not generally known and which that party would normally not reveal to third party or, if disclosed, would require such third party to maintain in confidence.

2. If a party or non-party believes in good faith that (a) certain information is of an especially sensitive commercial or proprietary nature, and (b) disclosure of such information to the persons described in paragraph E(4)(c) would pose an undue risk of competitive injury, the party or non-party may designate such information as "CONFIDENTIAL – ATTORNEYS' EYES ONLY."

3. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

    Designation in conformity with this Order requires:

    (a) Documents (apart from transcripts of depositions or other pretrial or trial proceedings): the producing party affix the legend "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" at the top or bottom of each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the producing party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

    (b) Depositions will be treated as CONFIDENTIAL – ATTORNEYS' EYES ONLY until 20 days after receipt of the transcript thereof. The producing party shall, within said 20 days, identify and designate any portions of such testimony as to which it requires protection from disclosure under this Order. Only those portions of the testimony that are appropriately designated for protection within the 20 days shall be covered thereafter by the provisions of this Stipulated Protective Order.

(c) For information produced in other than documentary form, and for any other tangible items, the producing party shall affix in a prominent place on the exterior of said item the legend "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER". If only portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portions.

4.  Inadvertent failure to designate appropriate material produced as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" shall not constitute a waiver of any otherwise valid claim for protection under this Order. A party may cure an inadvertent failure to place a legend or otherwise designate a document or other information at the time of its production as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" by so notifying the receiving party within ten (10) business days after the initial production, whereupon such Protected Material shall be treated as designated in the corrective notification. Upon receipt of a timely corrective notification, the receiving party shall immediately take all reasonable steps to retrieve the Protected Material and any copies thereof, and either

    (a) designate the Protected Material in the manner specified in the corrective notification as either "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER", or

    (b) return the Protected Material to the producing party for proper designation. The cost of re-designation will be borne by the producing party.

    Unless the producing party seeks to cure the inadvertent failure to designate the material as specified in this section, the producing party will have waived any right to designate said material.

5.  If it comes to a Party's or a non-party's attention that information or items that it designated do not qualify for protection at all, that Party or non-party is obligated to promptly notify all other parties that it is withdrawing the mistaken designation.

## C.  CHALLENGING CONFIDENTIALITY DESIGNATIONS

1.  A party shall not be obligated to challenge the propriety of any designation of Protected Material as "CONFIDENTIAL" at the time made, and failure to do so shall not preclude a subsequent challenge thereto.

2.  In the event that any party disagrees at any stage of this action with any confidentiality designation, such party shall provide to the producing party written notice of its disagreement with the designation. Within seven (7) days of service of the written notice, the parties will have a conference in order to dispose of such dispute in good faith and on an informal basis. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.

3.  Within seven (7) days of the conference, if the dispute cannot be resolved, the party challenging the designation may request appropriate relief from the Court by motion. The burden of proving that Protected Material has been properly designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" is on the designating party.

4.  Designations that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, to impose unnecessary expenses and burdens on other parties, or to avoid disclosing information which it has a duty to disclose to an administrative agency), expose the designating party to sanctions.

## D.  DISCLOSURE OF PROTECTED MATERIAL TO EXPERTS

1.  **[CRI to supply missing language]** a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action and who is not a current employee of a Party or of a competitor of a Party's and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party's. This definition includes a professional jury or trial consultant retained in connection with this litigation.

2.  Protected Material may be disclosed by counsel of a receiving party to an expert, subject to the provisions of this section.

3.  Ten days before Protected Material is disclosed to an expert, the receiving party retaining said expert must serve upon the counsel of record:

    (a)  written notice to counsel of record stating the name, address, and current employer of said expert;

    (b)  a curriculum vitae of said expert, setting forth said expert's area of expertise, experience, qualifications, relevant work experience, etc.; and

    (c)  an undertaking in the form of Exhibit A, attached hereto, signed by said expert.

4.  If no party objects in writing to said expert, setting forth the grounds for such objection, within twenty days of service of the notice described above, Protected Material may be shown to said expert.

5.  If a party objects to an expert, a conference between the parties will be held within seven days of service of the written objection. If agreement of the parties cannot be reached at said conference, then the objecting party must file a motion with the Court within seven days of said conference seeking to bar the expert. Failure to file such motion shall constitute a withdrawal of said objection.

## E.  ACCESS TO AND USE OF PROTECTED MATERIAL

1.  A receiving party may use Protected Material solely for the purpose of conducting this Action, not for any other litigation, domestics or foreign, and not for any other purpose whatsoever, unless a Court having jurisdiction over the Plaintiffs or Defendants shall order otherwise. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been

terminated, a receiving party must comply with the provisions of section below, entitled FINAL DISPOSITION.

2.   In the event that any Protected Material is used in any Court proceeding in connection with this action, it shall not lose its status as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" through such use, and the parties shall take all reasonable steps to protect the confidentiality of such Protected Material during such use.

3.   The receiving party of any Protected Material shall exercise the same standard of due and proper care with respect to the storage, custody, use, and dissemination of such Protected Material as is exercised by the receiving party with respect to their own proprietary information.

4.   Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose Protected Material designated as "CONFIDENTIAL" only to:

   (a) The receiving party's Outside Counsel of record in this action, employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation, and professional vendors which provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors to whom it is reasonably necessary to disclose the information for this litigation;

   (b) The receiving party's Experts (as defined and limited in this Order) to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by the Protective Order" (Exhibit A);

   (c) The receiving party's officers, directors, and employees to whom disclosure is reasonably necessary for this litigation;

   (d) The Court, jury, or other Court personnel, including, but not limited to, stenographers and videographers covering any deposition, hearing, or trial in this action;

   (e) Any individual whom the "CONFIDENTIAL" document or information clearly identifies as an author, addressee or recipient; and

   (f) Deponents or witnesses to whom disclosure is reasonably necessary and who have signed the attached "Agreement To Be Bound by the Protective Order" (Exhibit A).

5.   Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose Protected Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

   (a) The receiving party's Outside Counsel of record in this action, employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation, and professional vendors which provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors to whom it is reasonably necessary to disclose the information for this litigation;

    (b) The receiving party's Experts (as defined and limited in this Order) to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by the Protective Order" (Exhibit A);

    (c) The Court, jury, or other Court personnel, including, but not limited to, stenographers and videographers covering any deposition, hearing, or trial in this action;

    (d) Any individual whom the "CONFIDENTIAL" document or information clearly identifies as an author, addressee or recipient; and

    (e) Deponents or witnesses to whom disclosure is reasonably necessary and who have signed the attached "Agreement To Be Bound by the Protective Order" (Exhibit A).

6. Any party may disclose or use, in any manner and for any purpose, information which they have designated as "CONFIDENTIAL" or "CONFIDENTIAL—ATTORNEYS' EYES ONLY.".

## F.   PROTECTED vs. PRIVILEGED MATERIAL

1. Nothing in this Order is intended to address the grounds of attorney-client privilege or work product, or to preclude any party from seeking relief or other protective orders from the Court as may be appropriate in regards to attorney-client privilege or work product.

2. The inadvertent production of any document or thing by any party shall be without prejudice to any claim by the producing party that such document or thing is protected by attorney-client privilege or protected from discovery as work product within the meaning of Fed.R.Civ.P. 26. If after documents are disclosed, a producing party asserts that such documents are protected by the attorney-client privilege or work product doctrine and were inadvertently produced, the receiving party shall take prompt steps to ensure that all known copies of such documents are returned promptly to the producing party. The cost, if any, for excising such documents by the receiving party shall be borne by the producing party. The receiving party may thereafter contest such claims of privilege or work product as if the materials had not been produced, but in contesting such claim shall not rely on any portion of the document other than the description set forth in the producing party's privilege log as per Fed. R. Civ. P. 26(b)(5) and the receiving party shall not assert that a waiver occurred as a result of the inadvertent production.

## G   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION.

1. If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any information or items designated in this action as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY", the receiving party must so notify the designating party, in writing (by e-mail, if possible) immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

2. The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all the material covered by

the subpoena or order is the subject of this Protective Order. In addition, the receiving party must deliver a copy of this Stipulated Protective Order promptly to the Party in the other action that caused the subpoena or order to issue.

3. The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the designating party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued. The designating party shall bear the burdens and the expenses of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court.

## H.  UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a receiving party discloses, by inadvertence or otherwise, Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the receiving party must immediately:

    (a)  notify in writing the designating party of the unauthorized disclosures;

    (b)  use its best efforts to retrieve all copies of the Protected Material;

    (c)  inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and

    (d)  request such person or persons to execute the "Agreement to Be Bound by the Protective Order" that is attached hereto as Exhibit A.

## I.  DURATION

Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until:

    (a)  a designating party agrees otherwise in writing;

    (b)  a court order otherwise directs; or

    (c)  the material otherwise becomes public through no fault of the receiving party.

## J.  FINAL DISPOSITION

1. Unless otherwise ordered or agreed in writing by the producing party, within sixty days after the final termination of this action, each receiving party must return all Protected Material to the producing party. Further, this Order shall survive the final termination of the Action and the Court shall retain jurisdiction to resolve any dispute concerning the use of any Protected Material designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY", provided, however, that this Order shall not be construed:

    (a)  to prevent any party or its attorneys from making use of Protected Material lawfully in their possession prior to its disclosure by the producing party;

    (b)  to apply to Protected Material which appears in issued patents or printed publications;

    (c)  to apply to Protected Material which is, or later becomes, publicly known through no fault of the receiving party; or

    (c) to apply to Protected Material which any party or its attorney has, after disclosure by the producing party, lawfully obtained from a third party having the right to disclose such Protected Material.

2. As used in this subdivision, all "Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material. With prior permission in writing from the designating party, the receiving party may destroy some or all of the Protected Material instead of returning it. Whether the Protected Material is returned or destroyed, the receiving party must submit a written certification to the producing party (and, if not the same person or entity, to the designating party) by the sixty day deadline that identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and that affirms that the receiving party has not retained any copies, abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material.

3. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in the Section entitled DURATION above.

## K.  MISCELLANEOUS

1. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

2. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.


Respectfully submitted,

| | |
|---|---|
| **PLAINTIFFS** | **DEFENDANTS** |
| **PETER J. MILLER,** | **PATRICK TREADO and** |
| **CLIFFORD HOYT, and** | **CHEMIMAGE CORPORATION** |
| **CAMBRIDGE RESEARCH AND** | |
| **INSTRUMENTATION, INC.** | |
| | |
| By their attorneys, | By their attorneys, |
| | |
| /s/ Teodor J. Holmberg | /s/ Anthony J. Fitzpatrick |
| Martin B. Pavane (admitted pro hac vice) | Anthony J. Fitzpatrick (BBO #564324) |
| Teodor J. Holmberg (BBO #634708) | Duane Morris LLP |
| Cohen, Pontani, Lieberman, and Pavane | 470 Atlantic Avenue, Suite 500 |
| 551 Fifth Avenue | Boston, MA 02210 |

New York, NY 10176
Tel. (212) 687-2770
Fax. (212) 972-5487
e-mail: tidge@cplplaw.com

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201


DATED:  January 31, 2006

Tel. 617-289-9220
Fax 617-289-9201
e-mail: ajfitzpatrick@duanemorris.com

Paul D. Weller (admitted pro hac vice)
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103
Tel. (215) 963-5530
eFax (215) 963-5001



# EXHIBIT A

|  |  |
|---|---|
| PETER J. MILLER, an individual, CLIFFORD HOYT, an individual, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC., a Delaware corporation, | |
| Plaintiffs, | Civil Action No. 05-10367-RWZ in the U.S. DISTRICT COURT FOR MASSACHUSETTS |
| v. | |
| PATRICK TREADO, an individual, and CHEMIMAGE CORP., a Delaware corporation, | |
| Defendants. | |

**AGREEMENT TO BE BOUND
BY THE PROTECTIVE ORDER
ENTERED IN THE
UNITED STATES DISTRICT COURT FOR MASSACHUSETTS
ON_____, 2005**

The undersigned hereby acknowledges that he or she has read the protective order in the case identified above, and that he or she understands the terms thereof, and that he or she agrees to be bound by such terms.

Dated:_____          _____

# EXHIBIT E



**COHEN PONTANI LIEBERMAN & PAVANE**
551 Fifth Avenue, New York, NY 10176  *phone* 212.687.2770  *fax* 212.972.5487  www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.

_____

Sidney R. Bresnick
Of Counsel

_____

Yunling Ren, Ph.D.
Julia S. Kim
Mindy H. Chettih
Vincent M. Fazzari
Alfred W. Froebrich
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Lisa A. Ferrari
Richard D. Margiano
Darren S. Mogil
David P. Badanes
James P. Doyle
Mher Hartoonian
Alphonso A. Collins
Jason S. Howell
Douglas D. Zhang
Edward V. DiLello
F. Brice Faller
Edward M. Reisner

_____

Enshan Hong
Technical Advisor

January 23, 2006

***VIA E-MAIL (CONFIRMATION BY MAIL)***

Paul D. Weller, Esq.
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Anthony J. Fitzpatrick, Esq.
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

Re:    Document Production/Protective Order in
       Cambridge Research & Instrumentation, Inc., Peter J. Miller
       and Clifford Hoyt  v. ChemImage Corporation and Patrick Treado
       Civ. No. 05-10367-RWZ (D.Mass.)
       <u>Our File No.: 34250-60L</u>

Dear Messrs. Weller and Fitzpatrick:

This letter is a request for a discovery conference under Local Rule 37.1 on Friday, January 27, 2006 at 3 p.m.  As you know, failure to respond to this request within 7 days may result in sanctions, including automatic allowance of any motion based on the discovery problems listed herein.

We have still not heard a response to our January 11, 2006 letter, in which we (at least temporarily) agreed to many of your limitations on the scope of discovery so that the process of document production may begin.  At this point, the only thing holding us up is the protective order, which awaits your revisions.  Please provide your revisions to the protective order as soon as possible so that we may finally begin document production.

We look forward to your response.

Very truly yours,
COHEN, PONTANI, LIEBERMAN & PAVANE

Teodor J. Holmberg

MBP/TJH/tdg

H:\34250 - C.R.I\-60L\ltrs to opp counsel\tdg to AJF+PDW - disc 02.doc

# EXHIBIT F



**COHEN PONTANI LIEBERMAN & PAVANE**
551 Fifth Avenue, New York, NY 10176  *phone* 212.687.2770  *fax* 212.972.5487  www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.
_____

Sidney R. Bresnick
Of Counsel
_____

Yunling Ren, Ph.D.
Julia S. Kim
Mindy H. Chettih
Vincent M. Fazzari
Alfred W. Froebrich
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Lisa A. Ferrari
Richard D. Margiano
Darren S. Mogil
David P. Badanes
James P. Doyle
Mher Hartoonian
Alphonso A. Collins
Jason S. Howell
Douglas D. Zhang
Edward V. DiLello
F. Brice Faller
Edward M. Reisner
_____

Enshan Hong
Technical Advisor

January 30, 2006

*VIA E-MAIL (CONFIRMATION BY MAIL)*

Paul D. Weller, Esq.
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Anthony J. Fitzpatrick, Esq.
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

Re:    Document Production/Protective Order in
       Cambridge Research & Instrumentation, Inc., Peter J. Miller
       and Clifford Hoyt  v. ChemImage Corporation and Patrick Treado
       Civ. No. 05-10367-RWZ (D.Mass.)
       <u>Our File No.: 34250-60L</u>

Dear Messrs. Weller and Fitzpatrick:

On the evening of January 23, 2006, we transmitted a letter requesting a discovery conference under Local Rule 37.1 (and we suggested 3 PM last Friday as a suitable time), but we have still not been contacted by you.  Accordingly, we will, by the end of this week, seek an order by the Court to (a) grant our protective order, and (b) compel production of all documents concerning U.S. Pat. No. 6,002,476 and U.S. Pat. App. Ser. No. 09/064,347 which are responsive to our document requests (e.g., document requests nos. 1 and 4).

Very truly yours,
COHEN, PONTANI, LIEBERMAN & PAVANE

Teodor J. Holmberg

MBP/TJH/tdg

H:\34250 - C.R.I\-60L\ltrs to opp counsel\tdg to AJF+PDW - disc 03.doc

# EXHIBIT G

Part one

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON
LAKE TAHOE

ANTHONY J. FITZPATRICK
DIRECT DIAL: 617.289.9220
E-MAIL: ajfitzpatrick@duanemorris.com

www.duanemorris.com

January 31, 2006

VIA E-MAIL AND REGULAR MAIL

Teodor J. Holmberg, Esq.
Cohen Pontani Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176-1022

> Re:   **Cambridge Research & Instrumentation, Inc., Peter J. Miller and
> Clifford Hoyt v. ChemImage Corporation and Patrick Treado**
> <u>**Civil No. 05-10367-(RWZ) (D. Mass.)**</u>

Dear Mr. Holmberg:

We respond as follows to your letter dated January 11, 2006:

1.   <u>Discovery Requests Propounded by Defendants</u>

<u>Interrogatory No. 7</u>

Interrogatory No. 7 goes to the heart of this litigation, and requires plaintiffs to describe in detail the basis for their contentions of inventorship with respect to each claim of the patent-in-suit. During the conference before Judge Zobel on October 25, 2005, plaintiffs agreed to supplement their original response to this Interrogatory, which was clearly deficient. During our discovery conference on November 30, 2005, plaintiffs agreed to supplement this Interrogatory by December 14, 2005. Plaintiffs have failed to honor this deadline. At this point, two months have passed since plaintiffs committed to supplement this Interrogatory, and seven weeks have passed since the agreed deadline for supplementation. We intend to file a Motion To Compel a response to this Interrogatory within the next several days, and will be seeking reimbursement for costs.

<u>Document Request No. 47</u>

Document Request No. 47 also goes to the heart of this litigation, and requires plaintiffs to produce all agreements whereby plaintiffs license intellectual property rights to liquid crystal tunable filter (LCTF) technology from a third-party. Plaintiffs contend that they are co-inventors

DuaneMorris

Teodor J. Holmberg, Esq.
January 31, 2006
Page 2

of the patent-in-suit because they claim to have invented LCTF technology. To the extent that plaintiffs license LCTF technology from third-parties, such licenses would clearly be relevant to plaintiffs' contention that they invented LCTF technology. You state that you do not believe that we "have adequately shown that the subject matter of document request no. 47 is relevant to this litigation." We believe that the Court will readily see the relevance of this Document Request, and therefore intend to file a Motion To Compel a response to this Document Request within the next few days.

2.    Discovery Requests Propounded by Plaintiffs

Document Request No. 1 – U.S. Pat. No. 6,002,476 and U.S. Pat. Appl. No. 09/064,347

In response to plaintiffs' assertion that we should produce documents concerning U.S. Patent No. 6,002,476 and U.S. Patent Appl. No. 09/064,347, we stand by our position that this patent and patent application are completely unrelated to the issue in this case, namely whether Miller and Hoyt co-invented subject matter claimed in the patent-in-suit (i.e., U.S. Patent No. 6,734,962). It strains the imagination to understand how a patent and patent application for which no claim of co-ownership is even being asserted are pertinent to this litigation. In addition, we strenuously disagree with plaintiffs' suggestion that U.S. Patent No. 6,002,476 and U.S. Patent Appl. No. 09/064,347 were based on a collaboration between CRI and ChemImage.

Document Request No. 4

We continue to stand by our objection to production of documents relating to the Covenant Not To Sue that was executed in connection with U.S. Patent No. 6,002,476 and U.S. Patent Appl. No. 09/064,347. Again, this patent and patent application are completely unrelated to the issue in this case, namely whether Miller and Hoyt co-invented subject matter claimed in the patent-in-suit (i.e., U.S. Patent No. 6,734,962). Plaintiffs have been unable to explain how a Covenant Not To Sue concerning a patent and patent application for which no claim of co-ownership is even being asserted could possibly lead to the discovery of admissible evidence in this litigation.

3.    Protective Order

We enclose a revised draft of the Protective Order, together with a black-line version showing our changes. As you will see, we have added a "Confidential – Attorneys Eyes Only" level of protection, and deleted the provision that would have allowed either side to freely disclose the other party's confidential information to the Patent Office.

DuaneMorris

Teodor J. Holmberg, Esq.
January 31, 2006
Page 3

Sincerely,

Anthony J. Fitzpatrick

AJF/lnw
Enclosures
cc:    Paul D. Weller, Esq.

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation,

                    Plaintiffs,

          v.                                          Civil Action No. 05-10367-RWZ

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

                    Defendants.

## STIPULATED [PROPOSED] PROTECTIVE ORDER

Subject to approval by the Court, plaintiffs Peter J. Miller, Clifford Hoyt and

Cambridge Research and Instrumentation, Inc. and defendants, Patrick Treado and

ChemImage Corp., hereby stipulate to the entry of the following [Proposed] Protective Order,

which shall govern all production of Protected Material (defined below), including documents

and things produced or filed by any party or non-party to this action.

## A. SCOPE

1. The protections conferred by this Order cover not only Protected Material (as defined below), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Material.

2. Discovery Material: all items or information, regardless of the medium or manner generated, stored, or maintained including, but not limited to, documents, things, testimony and information produced or generated in disclosures or responses to discovery in this action.

3. Protected Material: any Discovery Material that is designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" in accordance with this Order.

## B. DESIGNATION OF PROTECTED MATERIAL

1. Each party or non-party shall only designate as "CONFIDENTIAL" all or part of any document, thing, testimony or information that contain or constitute commercial, technical or business information which that party in good faith believes constitutes proprietary business information which information is not generally known and which that party would normally not reveal to third party or, if disclosed, would require such third party to maintain in confidence.

2. If a party or non-party believes in good faith that (a) certain information is of an especially sensitive commercial or proprietary nature, and (b) disclosure of such information to the persons described in paragraph B(4)(c) would pose an undue risk of competitive injury, the party or non-party may designate such information as "CONFIDENTIAL – ATTORNEYS' EYES ONLY."

3. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

   Designation in conformity with this Order requires:

   (a) Documents (apart from transcripts of depositions or other pretrial or trial proceedings): the producing party affix the legend "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" at the top or bottom of each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the producing party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

   (b) Depositions will be treated as CONFIDENTIAL – ATTORNEYS' EYES ONLY until 20 days after receipt of the transcript thereof. The producing party shall, within said 20 days, identify and designate any portions of such testimony as to which it requires protection from disclosure under this Order. Only those portions of the testimony that are appropriately designated for protection within the 20 days shall be covered thereafter by the provisions of this Stipulated Protective Order.

    (c) For information produced in other than documentary form, and for any other tangible items, the producing party shall affix in a prominent place on the exterior of said item the legend "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER". If only portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portions.

3.4. Inadvertent failure to designate appropriate material produced as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" shall not constitute a waiver of any otherwise valid claim for protection under this Order. A party may cure an inadvertent failure to place a legend or otherwise designate a document or other information at the time of its production as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" by so notifying the receiving party within ten (10) business days after the initial production, whereupon such Protected Material shall be treated as "CONFIDENTIAL" designated in the corrective notification. Upon receipt of a timely corrective notification, the receiving party shall immediately take all reasonable steps to retrieve the Protected Material and any copies thereof, and either

    (a) designate the Protected Material as in the manner specified in the corrective notification as either "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER", or

    (b) return the Protected Material to the producing party for proper designation. The cost of re-designation will be borne by the producing party.

Unless the producing party seeks to cure the inadvertent failure to designate the material as specified in this section, the producing party will have waived any right to designate said material.

4.5. If it comes to a Party's or a non-party's attention that information or items that it designated do not qualify for protection at all, that Party or non-party is obligated to promptly notify all other parties that it is withdrawing the mistaken designation.

## C.  CHALLENGING CONFIDENTIALITY DESIGNATIONS

1. A party shall not be obligated to challenge the propriety of any designation of Protected Material as "CONFIDENTIAL" at the time made, and failure to do so shall not preclude a subsequent challenge thereto.

2. In the event that any party disagrees at any stage of this action with any confidentiality designation, such party shall provide to the producing party written notice of its disagreement with the designation. Within seven (7) days of service of the written notice, the parties will have a conference in order to dispose of such dispute in good faith and on an informal basis. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the

circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.

3. Within seven (7) days of the conference, if the dispute cannot be resolved, the party challenging the designation may request appropriate relief from the Court by motion. The burden of proving that Protected Material has been properly designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" is on the designating party.

4. Designations that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, to impose unnecessary expenses and burdens on other parties, or to avoid disclosing information which it has a duty to disclose to an administrative agency), expose the designating party to sanctions.

## D. DISCLOSURE OF PROTECTED MATERIAL TO EXPERTS

1. [CRI to supply missing language] a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action and who is not a current employee of a Party or of a competitor of a Party's, and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party's. This definition includes a professional jury or trial consultant retained in connection with this litigation.

2. Protected Material may be disclosed by counsel of a receiving party to an expert, subject to the provisions of this section.

3. ~~Twenty~~Ten days before Protected Material is disclosed to an expert, the receiving party retaining said expert must serve upon the counsel of record:

   (a) written notice to counsel of record stating the name, address, and current employer of said expert;

   (b) a curriculum vitae of said expert, setting forth said expert's area of expertise, experience, qualifications, relevant work experience, etc.; and

   (c) an undertaking in the form of Exhibit A, attached hereto, signed by said expert.

4. If no party objects in writing to said expert, setting forth the grounds for such objection, within twenty days of service of the notice described above, Protected Material may be shown to said expert.

5. If a party objects to an expert, a conference between the parties will be held within seven days of service of the written objection. If agreement of the parties cannot be reached at said conference, then the objecting party must file a motion with the Court within seven days of said conference seeking to bar the expert. Failure to file such motion shall constitute a withdrawal of said objection.

## E. ACCESS TO AND USE OF PROTECTED MATERIAL

1. A receiving party may use Protected Material solely for the purpose of conducting this Action, not for any other litigation, domestics or foreign, and not for any other purpose whatsoever, unless a Court having jurisdiction over the Plaintiffs or Defendants shall order otherwise. Such Protected Material may be disclosed only to the categories of

persons and under the conditions described in this Order. When the litigation has been terminated, a receiving party must comply with the provisions of section below, entitled FINAL DISPOSITION.

2.  In the event that any Protected Material is used in any Court proceeding in connection with this action, it shall not lose its status as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" through such use, and the parties shall take all reasonable steps to protect the confidentiality of such Protected Material during such use.

3.  The receiving party of any Protected Material shall exercise the same standard of due and proper care with respect to the storage, custody, use, and dissemination of such Protected Material as is exercised by the receiving party with respect to their own proprietary information.

4.  Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose Protected Material designated as "CONFIDENTIAL" only to:

    (a) The receiving party's Outside Counsel of record in this action, employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation, and professional vendors which provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors to whom it is reasonably necessary to disclose the information for this litigation;

    (b) The receiving party's Experts (as defined and limited in this Order) to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by the Protective Order" (Exhibit A);

    (c) The receiving party's officers, directors, and employees to whom disclosure is reasonably necessary for this litigation;

    (d) The Court, jury, or other Court personnel, including, but not limited to, stenographers and videographers covering any deposition, hearing, or trial in this action;

    (e) Any individual whom the "CONFIDENTIAL" document or information clearly identifies as an author, addressee or recipient; and

    (f) Deponents or witnesses to whom disclosure is reasonably necessary and who have signed the attached "Agreement To Be Bound by the Protective Order" (Exhibit A).

5.  AnyUnless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose Protected Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

    (a) The receiving party's Outside Counsel of record in this action, employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation, and professional vendors which provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any

form or medium: etc.) and their employees and subcontractors to whom it is reasonably necessary to disclose the information for this litigation;

(b) The receiving party's Experts (as defined and limited in this Order) to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by the Protective Order" (Exhibit A);

(c) The Court, jury, or other Court personnel, including, but not limited to, stenographers and videographers covering any deposition, hearing, or trial in this action;

(d) Any individual whom the "CONFIDENTIAL" document or information clearly identifies as an author, addressee or recipient; and

(e) Deponents or witnesses to whom disclosure is reasonably necessary and who have signed the attached "Agreement To Be Bound by the Protective Order" (Exhibit A).

6. Any party may disclose or use, in any manner and/or for any purpose, information which they have designated as "CONFIDENTIAL"; or "CONFIDENTIAL —ATTORNEYS' EYES ONLY.".

6. ~~Any material, regardless of designation, which is material to a proceeding before the United States Patent and Trademark Office, may be submitted to the United States Patent and Trademark Office without fear of sanctions under this Order.~~

## F.   PROTECTED vs. PRIVILEGED MATERIAL

1. Nothing in this Order is intended to address the grounds of attorney-client privilege or work product, or to preclude any party from seeking relief or other protective orders from the Court as may be appropriate in regards to attorney-client privilege or work product.

2. The inadvertent production of any document or thing by any party shall be without prejudice to any claim by the producing party that such document or thing is protected by attorney-client privilege or protected from discovery as work product within the meaning of Fed.R.Civ.P. 26. If after documents are disclosed, a producing party asserts that such documents are protected by the attorney-client privilege or work product doctrine and were inadvertently produced, the receiving party shall take prompt steps to ensure that all known copies of such documents are returned promptly to the producing party. The cost, if any, for excising such documents by the receiving party shall be borne by the producing party. The receiving party may thereafter contest such claims of privilege or work product as if the materials had not been produced, but in contesting such claim shall not rely on any portion of the document other than the description set forth in the producing party's privilege log as per Fed. R. Civ. P. 26(b)(5) and the receiving party shall not assert that a waiver occurred as a result of the inadvertent production.

## G   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION.

1. If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any information or items designated in this action as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY", the receiving party must so notify the designating party, in writing (by e-mail, if possible) immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

2. The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all the material covered by the subpoena or order is the subject of this Protective Order. In addition, the receiving party must deliver a copy of this Stipulated Protective Order promptly to the Party in the other action that caused the subpoena or order to issue.

3. The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the designating party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued. The designating party shall bear the burdens and the expenses of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court.

## H.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a receiving party discloses, by inadvertence or otherwise, Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the receiving party must immediately:

    (a) notify in writing the designating party of the unauthorized disclosures;

    (b) use its best efforts to retrieve all copies of the Protected Material;

    (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and

    (d) request such person or persons to execute the "Agreement to Be Bound by the Protective Order" that is attached hereto as Exhibit A.

## I.   DURATION

Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until

    (a) a designating party agrees otherwise in writing;

    (b) a court order otherwise directs; or

    (c) the material otherwise becomes public through no fault of the receiving party.

## J.   FINAL DISPOSITION

1. Unless otherwise ordered or agreed in writing by the producing party, within sixty days after the final termination of this action, each receiving party must return all Protected Material to the producing party. Further, this Order shall survive the final termination of the Action and the Court shall retain jurisdiction to resolve any dispute concerning the use of any Protected Material designated "CONFIDENTIAL" or "CONFIDENTIAL –

ATTORNEYS' EYES ONLY", provided, however, that this Order shall not be construed:

    (a) to prevent any party or its attorneys from making use of Protected Material lawfully in their possession prior to its disclosure by the producing party;

    (b) to apply to Protected Material which appears in issued patents or printed publications;

    (c) to apply to Protected Material which is, or later becomes, publicly known through no fault of the receiving party; or

    (c) to apply to Protected Material which any party or its attorney has, after disclosure by the producing party, lawfully obtained from a third party having the right to disclose such Protected Material.

2.  As used in this subdivision, all "Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material. With prior permission in writing from the designating party, the receiving party may destroy some or all of the Protected Material instead of returning it. Whether the Protected Material is returned or destroyed, the receiving party must submit a written certification to the producing party (and, if not the same person or entity, to the designating party) by the sixty day deadline that identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and that affirms that the receiving party has not retained any copies, abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material.

3.  Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in the Section entitled DURATION above.

**K.  MISCELLANEOUS**

1.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

2.  By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

Respectfully submitted,

**PLAINTIFFS**
**PETER J. MILLER,**
**CLIFFORD HOYT, and**
**CAMBRIDGE RESEARCH AND**
**INSTRUMENTATION, INC.**

**DEFENDANTS**
**PATRICK TREADO and**
**CHEMIMAGE CORPORATION**

By their attorneys,

/s/ Teodor J. Holmberg
Martin B. Pavane (admitted pro hac vice)
Teodor J. Holmberg (BBO #634708)
Cohen, Pontani, Lieberman, and Pavane
551 Fifth Avenue
New York, NY 10176
Tel. (212) 687-2770
Fax. (212) 972-5487
e-mail: tidge@cplplaw.com

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201

DATED:  January 12, 2006

By their attorneys,

/s/ Anthony J. Fitzpatrick
Anthony J. Fitzpatrick (BBO #564324)
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Tel. 617-289-9220
Fax 617-289-9201
e-mail: ajfitzpatrick@duanemorris.com

Paul D. Weller (admitted pro hac vice)
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103
Tel. (215) 963-5530
eFax (215) 963-5001

- Page 9 of ~~12~~12 -

Stipulated {Proposed] Protective Order

# EXHIBIT A

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation,

        Plaintiffs,

        v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

        Defendants.

**Civil Action No. 05-10367-RWZ
in the
U.S. DISTRICT COURT
FOR MASSACHUSETTS**

### AGREEMENT TO BE BOUND
### BY THE PROTECTIVE ORDER
### ENTERED IN THE
### UNITED STATES DISTRICT COURT FOR MASSACHUSETTS
### ON_____, 2005

The undersigned hereby acknowledges that he or she has read the protective order in the case identified above, and that he or she understands the terms thereof, and that he or she agrees to be bound by such terms.

~~The undersigned hereby agrees that he or she will not provide non-litigation-related services to any party to this litigation, for a period of five years from the final disposition of this litigation including any and all appeals.~~

Dated:_____       _____

Stipulated {Proposed] Protective Order

# **EXHIBIT A**

~~BOS\142335.1~~

Document comparison done by DeltaView on Thursday, January 12, 2006 11:40:02 AM

| Input: | |
|---|---|
| Document 1 | interwovenSite://BOS/BOS/143335/1 |
| Document 2 | interwovenSite://bos/BOS/143334/1 |
| Rendering set | DM - Double Underline Strikethrough |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | Count |
|---|---|
| Insertions | 36 |
| Deletions | 13 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 49 |

# EXHIBIT G

Part two

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation,

                Plaintiffs,

                v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

                Defendants.

Civil Action No. 05-10367-RWZ

## STIPULATED [PROPOSED] PROTECTIVE ORDER

Subject to approval by the Court, plaintiffs Peter J. Miller, Clifford Hoyt and Cambridge Research and Instrumentation, Inc. and defendants, Patrick Treado and ChemImage Corp., hereby stipulate to the entry of the following [Proposed] Protective Order, which shall govern all production of Protected Material (defined below), including documents and things produced or filed by any party or non-party to this action.

## A.  SCOPE

1. The protections conferred by this Order cover not only Protected Material (as defined below), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Material.

2. Discovery Material: all items or information, regardless of the medium or manner generated, stored, or maintained including, but not limited to, documents, things, testimony and information produced or generated in disclosures or responses to discovery in this action.

3. Protected Material: any Discovery Material that is designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" in accordance with this Order.

## B.  DESIGNATION OF PROTECTED MATERIAL

1. Each party or non-party shall only designate as "CONFIDENTIAL" all or part of any document, thing, testimony or information that contain or constitute commercial, technical or business information which that party in good faith believes constitutes proprietary business information which information is not generally known and which that party would normally not reveal to third party or, if disclosed, would require such third party to maintain in confidence.

2. If a party or non-party believes in good faith that (a) certain information is of an especially sensitive commercial or proprietary nature, and (b) disclosure of such information to the persons described in paragraph E(4)(c) would pose an undue risk of competitive injury, the party or non-party may designate such information as "CONFIDENTIAL – ATTORNEYS' EYES ONLY."

3. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.
Designation in conformity with this Order requires:

   (a) Documents (apart from transcripts of depositions or other pretrial or trial proceedings): the producing party affix the legend "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" at the top or bottom of each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the producing party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

   (b) Depositions will be treated as CONFIDENTIAL – ATTORNEYS' EYES ONLY until 20 days after receipt of the transcript thereof. The producing party shall, within said 20 days, identify and designate any portions of such testimony as to which it requires protection from disclosure under this Order. Only those portions of the testimony that are appropriately designated for protection within the 20 days shall be covered thereafter by the provisions of this Stipulated Protective Order.

(c) For information produced in other than documentary form, and for any other tangible items, the producing party shall affix in a prominent place on the exterior of said item the legend "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER". If only portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portions.

4. Inadvertent failure to designate appropriate material produced as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" shall not constitute a waiver of any otherwise valid claim for protection under this Order. A party may cure an inadvertent failure to place a legend or otherwise designate a document or other information at the time of its production as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" by so notifying the receiving party within ten (10) business days after the initial production, whereupon such Protected Material shall be treated as designated in the corrective notification. Upon receipt of a timely corrective notification, the receiving party shall immediately take all reasonable steps to retrieve the Protected Material and any copies thereof, and either

(a) designate the Protected Material in the manner specified in the corrective notification as either "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER", or

(b) return the Protected Material to the producing party for proper designation. The cost of re-designation will be borne by the producing party.

Unless the producing party seeks to cure the inadvertent failure to designate the material as specified in this section, the producing party will have waived any right to designate said material.

5. If it comes to a Party's or a non-party's attention that information or items that it designated do not qualify for protection at all, that Party or non-party is obligated to promptly notify all other parties that it is withdrawing the mistaken designation.

## C. CHALLENGING CONFIDENTIALITY DESIGNATIONS

1. A party shall not be obligated to challenge the propriety of any designation of Protected Material as "CONFIDENTIAL" at the time made, and failure to do so shall not preclude a subsequent challenge thereto.

2. In the event that any party disagrees at any stage of this action with any confidentiality designation, such party shall provide to the producing party written notice of its disagreement with the designation. Within seven (7) days of service of the written notice, the parties will have a conference in order to dispose of such dispute in good faith and on an informal basis. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.

3.  Within seven (7) days of the conference, if the dispute cannot be resolved, the party challenging the designation may request appropriate relief from the Court by motion. The burden of proving that Protected Material has been properly designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" is on the designating party.
4.  Designations that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, to impose unnecessary expenses and burdens on other parties, or to avoid disclosing information which it has a duty to disclose to an administrative agency), expose the designating party to sanctions.

## D.  DISCLOSURE OF PROTECTED MATERIAL TO EXPERTS

1.  **[CRI to supply missing language]** a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action and who is not a current employee of a Party or of a competitor of a Party's and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party's. This definition includes a professional jury or trial consultant retained in connection with this litigation.
2.  Protected Material may be disclosed by counsel of a receiving party to an expert, subject to the provisions of this section.
3.  Ten days before Protected Material is disclosed to an expert, the receiving party retaining said expert must serve upon the counsel of record:
    (a) written notice to counsel of record stating the name, address, and current employer of said expert;
    (b) a curriculum vitae of said expert, setting forth said expert's area of expertise, experience, qualifications, relevant work experience, etc.; and
    (c) an undertaking in the form of Exhibit A, attached hereto, signed by said expert.
4.  If no party objects in writing to said expert, setting forth the grounds for such objection, within twenty days of service of the notice described above, Protected Material may be shown to said expert.
5.  If a party objects to an expert, a conference between the parties will be held within seven days of service of the written objection. If agreement of the parties cannot be reached at said conference, then the objecting party must file a motion with the Court within seven days of said conference seeking to bar the expert. Failure to file such motion shall constitute a withdrawal of said objection.

## E.  ACCESS TO AND USE OF PROTECTED MATERIAL

1.  A receiving party may use Protected Material solely for the purpose of conducting this Action, not for any other litigation, domestics or foreign, and not for any other purpose whatsoever, unless a Court having jurisdiction over the Plaintiffs or Defendants shall order otherwise. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been

terminated, a receiving party must comply with the provisions of section below, entitled FINAL DISPOSITION.

2.  In the event that any Protected Material is used in any Court proceeding in connection with this action, it shall not lose its status as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" through such use, and the parties shall take all reasonable steps to protect the confidentiality of such Protected Material during such use.

3.  The receiving party of any Protected Material shall exercise the same standard of due and proper care with respect to the storage, custody, use, and dissemination of such Protected Material as is exercised by the receiving party with respect to their own proprietary information.

4.  Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose Protected Material designated as "CONFIDENTIAL" only to:

   (a) The receiving party's Outside Counsel of record in this action, employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation, and professional vendors which provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors to whom it is reasonably necessary to disclose the information for this litigation;

   (b) The receiving party's Experts (as defined and limited in this Order) to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by the Protective Order" (Exhibit A);

   (c) The receiving party's officers, directors, and employees to whom disclosure is reasonably necessary for this litigation;

   (d) The Court, jury, or other Court personnel, including, but not limited to, stenographers and videographers covering any deposition, hearing, or trial in this action;

   (e) Any individual whom the "CONFIDENTIAL" document or information clearly identifies as an author, addressee or recipient; and

   (f) Deponents or witnesses to whom disclosure is reasonably necessary and who have signed the attached "Agreement To Be Bound by the Protective Order" (Exhibit A).

5.  Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose Protected Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

   (a) The receiving party's Outside Counsel of record in this action, employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation, and professional vendors which provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors to whom it is reasonably necessary to disclose the information for this litigation;

    (b) The receiving party's Experts (as defined and limited in this Order) to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by the Protective Order" (Exhibit A);

    (c) The Court, jury, or other Court personnel, including, but not limited to, stenographers and videographers covering any deposition, hearing, or trial in this action;

    (d) Any individual whom the "CONFIDENTIAL" document or information clearly identifies as an author, addressee or recipient; and

    (e) Deponents or witnesses to whom disclosure is reasonably necessary and who have signed the attached "Agreement To Be Bound by the Protective Order" (Exhibit A).

6. Any party may disclose or use, in any manner and for any purpose, information which they have designated as "CONFIDENTIAL" or "CONFIDENTIAL—ATTORNEYS' EYES ONLY.".

## F.  PROTECTED vs. PRIVILEGED MATERIAL

1. Nothing in this Order is intended to address the grounds of attorney-client privilege or work product, or to preclude any party from seeking relief or other protective orders from the Court as may be appropriate in regards to attorney-client privilege or work product.

2. The inadvertent production of any document or thing by any party shall be without prejudice to any claim by the producing party that such document or thing is protected by attorney-client privilege or protected from discovery as work product within the meaning of Fed.R.Civ.P. 26. If after documents are disclosed, a producing party asserts that such documents are protected by the attorney-client privilege or work product doctrine and were inadvertently produced, the receiving party shall take prompt steps to ensure that all known copies of such documents are returned promptly to the producing party. The cost, if any, for excising such documents by the receiving party shall be borne by the producing party. The receiving party may thereafter contest such claims of privilege or work product as if the materials had not been produced, but in contesting such claim shall not rely on any portion of the document other than the description set forth in the producing party's privilege log as per Fed. R. Civ. P. 26(b)(5) and the receiving party shall not assert that a waiver occurred as a result of the inadvertent production.

## G  PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION.

1. If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any information or items designated in this action as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY", the receiving party must so notify the designating party, in writing (by e-mail, if possible) immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

2. The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all the material covered by

Stipulated [Proposed] Protective Order

the subpoena or order is the subject of this Protective Order. In addition, the receiving party must deliver a copy of this Stipulated Protective Order promptly to the Party in the other action that caused the subpoena or order to issue.

3.  The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the designating party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued. The designating party shall bear the burdens and the expenses of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court.

## H.  UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a receiving party discloses, by inadvertence or otherwise, Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the receiving party must immediately:

(a)  notify in writing the designating party of the unauthorized disclosures;

(b)  use its best efforts to retrieve all copies of the Protected Material;

(c)  inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and

(d)  request such person or persons to execute the "Agreement to Be Bound by the Protective Order" that is attached hereto as Exhibit A.

## I.  DURATION

Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until:

(a)  a designating party agrees otherwise in writing;

(b)  a court order otherwise directs; or

(c)  the material otherwise becomes public through no fault of the receiving party.

## J.  FINAL DISPOSITION

1.  Unless otherwise ordered or agreed in writing by the producing party, within sixty days after the final termination of this action, each receiving party must return all Protected Material to the producing party. Further, this Order shall survive the final termination of the Action and the Court shall retain jurisdiction to resolve any dispute concerning the use of any Protected Material designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY", provided, however, that this Order shall not be construed:

(a)  to prevent any party or its attorneys from making use of Protected Material lawfully in their possession prior to its disclosure by the producing party;

(b)  to apply to Protected Material which appears in issued patents or printed publications;

(c)  to apply to Protected Material which is, or later becomes, publicly known through no fault of the receiving party; or

        (c) to apply to Protected Material which any party or its attorney has, after disclosure by the producing party, lawfully obtained from a third party having the right to disclose such Protected Material.

2.  As used in this subdivision, all "Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material. With prior permission in writing from the designating party, the receiving party may destroy some or all of the Protected Material instead of returning it. Whether the Protected Material is returned or destroyed, the receiving party must submit a written certification to the producing party (and, if not the same person or entity, to the designating party) by the sixty day deadline that identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and that affirms that the receiving party has not retained any copies, abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material.

3.  Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in the Section entitled DURATION above.

## K.  MISCELLANEOUS

1.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

2.  By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

Respectfully submitted,

**PLAINTIFFS**
**PETER J. MILLER,**
**CLIFFORD HOYT, and**
**CAMBRIDGE RESEARCH AND**
**INSTRUMENTATION, INC.**

**DEFENDANTS**
**PATRICK TREADO and**
**CHEMIMAGE CORPORATION**

By their attorneys,

By their attorneys,

/s/ Teodor J. Holmberg
Martin B. Pavane (admitted pro hac vice)
Teodor J. Holmberg (BBO #634708)
Cohen, Pontani, Lieberman, and Pavane
551 Fifth Avenue

/s/ Anthony J. Fitzpatrick
Anthony J. Fitzpatrick (BBO #564324)
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

New York, NY 10176
Tel. (212) 687-2770
Fax. (212) 972-5487
e-mail: tidge@cplplaw.com

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201


DATED:  January 31, 2006

Tel. 617-289-9220
Fax 617-289-9201
e-mail: ajfitzpatrick@duanemorris.com

Paul D. Weller (admitted pro hac vice)
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103
Tel. (215) 963-5530
eFax (215) 963-5001



# EXHIBIT A

| | |
|---|---|
| PETER J. MILLER, an individual, CLIFFORD HOYT, an individual, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC., a Delaware corporation,<br><br>     Plaintiffs,<br><br>      v.<br><br>PATRICK TREADO, an individual, and CHEMIMAGE CORP., a Delaware corporation,<br><br>     Defendants. | Civil Action No. 05-10367-RWZ<br>**in the**<br>**U.S. DISTRICT COURT**<br>**FOR MASSACHUSETTS** |

### AGREEMENT TO BE BOUND
### BY THE PROTECTIVE ORDER
### ENTERED IN THE
### UNITED STATES DISTRICT COURT FOR MASSACHUSETTS
### ON_____, 2005

The undersigned hereby acknowledges that he or she has read the protective order in the case identified above, and that he or she understands the terms thereof, and that he or she agrees to be bound by such terms.

Dated:_____   _____

# EXHIBIT H



**COHEN PONTANI LIEBERMAN & PAVANE**
551 Fifth Avenue, New York, NY 10176  *phone* 212.687.2770  *fax* 212.972.5487  www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.

_____

Sidney R. Bresnick
Of Counsel

_____

Yunling Ren, Ph.D.
Julia S. Kim
Mindy H. Chettih
Vincent M. Fazzari
Alfred W. Froebrich
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Lisa A. Ferrari
Richard D. Margiano
Darren S. Mogil
David P. Badanes
James P. Doyle
Mher Hartoonian
Alphonso A. Collins
Jason S. Howell
Douglas D. Zhang
Edward V. DiLello
F. Brice Faller
Edward M. Reisner

_____

Enshan Hong
Technical Advisor

February 2, 2006

***VIA E-MAIL (CONFIRMATION BY MAIL)***

Paul D. Weller, Esq.
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Anthony J. Fitzpatrick, Esq.
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

Re:    Document Production/Protective Order in
       Cambridge Research & Instrumentation, Inc., Peter J. Miller
       and Clifford Hoyt  v. ChemImage Corporation and Patrick Treado
       Civ. No. 05-10367-RWZ (D.Mass.)
       <u>Our File No.: 34250-60L</u>

Dear Messrs. Weller and Fitzpatrick:

I am rather surprised at the tone of your letter e-mailed on the night of January 31, 2005, which completely ignores (a) our January 23, 2006 request for a discovery teleconference under LR 37.1, and (b) our follow-up letter of January 30, 2006.  The follow-up letter, which mentioned a motion to grant our protective order and a motion to compel, was required because you did not bother to respond to our request for a teleconference, and the motions were the appropriate sanction under the local rules.  In short, we asked to talk and were greeted with a deafening silence.

The day after our January 30, 2006 letter, Paul called and left a voicemail message indicating that you were not ignoring our request for a discovery teleconference, would like to schedule one, and would get back to us in "the next 48 hours".  The problem, Paul said in his voicemail, was that he had been unable to "catch up" with Tony who had been "in depositions literally every day for the past two weeks".

That night you forwarded the above-mentioned letter, ignoring our request for a teleconference, and instead threatening us with two motions to compel, which "will be seeking reimbursement for costs".  Similarly to Paul's comments in his voicemail, we too have been busy in other cases, including depositions in other countries and states.  That combined with the holiday season, which among other things made it difficult to coordinate with our client, has slowed us down.  We are meeting with the client next week and expect to serve our supplemental response to interrogatory no. 7 shortly thereafter.

H:\34250 - C.R.I\-60L\ltrs to opp counsel\tdg to AJF+PDW - disc 04.doc



Page 2
February 2, 2006

We didn't threaten motions in our January 30, 2006 follow-up letter as some show of gamesmanship. We had asked to talk about the discovery issues and you hadn't responded in any fashion, which understandably worried us, since all it required was picking up a phone or jotting off an e-mail. After what sounded like an apologetic voicemail, you send us a letter which looks very much like a show of gamesmanship. We would prefer working this out as reasonable people; if you feel it is appropriate and necessary to bother the Court at this point, we certainly can't stop you.

In regards to the particular issues:

(a) As stated above, we will be meeting with the client next week and will serve our supplemental response to interrogatory no. 7 shortly thereafter.

(b) We do not think that Defendants' Doc. Req. No. 47 is relevant. Nevertheless, as we have mentioned before, we will raise the issue in our meeting with the client next week to see if they will be willing to produce the material under the protective order to avoid wasting time and money over an irrelevant matter that will have no effect on the case.

(c) You assert that U.S. Patent No. 6,002,476 and U.S. Pat. App. No. 09/064,347 are "completely unrelated to the issue in this case" and that "it strains the imagination" to understand how they are related to this case. We cannot agree and, unless you relent, we will seek redress with the Court.

(d) We do not see the need for the two-level confidentiality designations in your draft protective order. The technology being discussed is all over seven years old and the subject of multiple patents. Furthermore, we are fighting over inventorship, which means both of our clients (who are imputed co-inventors) will need to have access to the produced materials. We need to understand this as more than a hypothetical necessity: what kind of document would **both** be responsive to one of the document requests that you've agreed to answer **and** pose the risk of competitive injury by disclosure to our client? Our concerns about your protective order are, *inter alia*, (1) the possibility of key documents about inventorship being designated as "attorneys eyes only"; and (2) the cost and expense of having to get experts to interpret a large number of documents when they could be analyzed more easily and effectively by our client (keeping in mind, once again, that this is a co-inventorship suit between admitted collaborators). If you will tell us your concerns (e.g., the specific documents that would necessitate an "attorneys only" designation), we will try to reach a compromise that addresses all of our concerns.

Very truly yours,
COHEN, PONTANI, LIEBERMAN & PAVANE

Teodor J. Holmberg

MBP/TJH/tdg

# EXHIBIT I

## DuaneMorris*

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON
LAKE TAHOE

ANTHONY J. FITZPATRICK
DIRECT DIAL: 617.289.9220
E-MAIL: ajfitzpatrick@duanemorris.com

www.duanemorris.com

February 8, 2006

VIA E-MAIL AND REGULAR MAIL

Teodor J. Holmberg, Esq.
Cohen Pontani Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176-1022

> Re: **Cambridge Research & Instrumentation, Inc., Peter J. Miller and**
> **Clifford Hoyt v. ChemImage Corporation and Patrick Treado**
> **Civil No. 05-10367-(RWZ) (D. Mass.)**

Dear Mr. Holmberg:

I am writing in response to your letter dated February 2, 2006.

First, in response to your allegations of "gamesmanship," there has been no gamesmanship on our part. Our positions concerning the discovery issues in dispute were stated very clearly in my letter to you of December 9, 2005. Those positions have not changed in the interim. If there has been "gamesmanship," it has been on the part of the plaintiffs. On November 30, 2005, the plaintiffs agreed to provide a supplemental response to Interrogatory No. 7 by December 14. As you well know, that interrogatory asks the plaintiffs to articulate the basis for their claim of inventorship. When we spoke on November 30, Attorney Pavane indicated that the supplemental response would likely incorporate much of what the plaintiffs had said in their preliminary injunction motion papers. Thus, it did not appear that preparation of the response would be burdensome or time-consuming. Yet the supplemental response is now eight weeks overdue, and your letter of February 2, 2006 fails to specify a date certain for its delivery. The plaintiffs filed this case one year ago. Presumably, before they filed the case, the plaintiffs had investigated and knew the basis for their claim. They should disclose it in adequate detail, or dismiss the case.

Furthermore, it was our clear understanding from the November 30 discovery conference that the plaintiffs had withdrawn their objection to the defendants' request for production no. 47. I confirmed as much in my December 9 letter to you. Now we learn that you have reneged on that understanding, and it appears that neither you nor your colleagues have even discussed this issue (nor, it appears, the supplemental response to interrogatory no. 7) with your clients.

DuaneMorris

Teodor J. Holmberg, Esq.
February 8, 2006
Page 2

The indication in my letter of January 31, 2006 that the defendants would file motions to compel was not a "show of gamesmanship" in any way. On the contrary, it was in response to the plaintiffs' ongoing failure and refusal to meet their discovery obligations and agreements. If you still wish to have a further teleconference to discuss discovery issues, we are willing to do so. However, unfortunately we will be forced to file a motion to compel unless the plaintiffs provide by Friday, February 10: (i) their supplemental response to Interrogatory No. 7; and (ii) written confirmation of their agreement to produce documents in response to Defendants' Document Request No. 47.

Second, the defendants believe that there is a strong need for a "Confidential - Attorneys' Eyes Only" level of protection in the Protective Order. The plaintiffs have served broad document requests that seek information far beyond what is disclosed in the single patent-in-suit. Some of the documents sought by the plaintiffs contain commercially sensitive/proprietary information of ChemImage. For obvious reasons, ChemImage would be irreparably harmed if that information were to be revealed to CRI, which is a competitor.

It is not practical to explain at this stage, on a document-by-document basis, our reasons why specific documents need to be designated "Confidential - Attorneys' Eyes Only" under the Protective Order. Moreover, since no "Confidential - Attorneys' Eyes Only" level of protection currently exists between the parties, engaging in a document-by-document dialogue with you at this juncture risks disclosing to CRI's employees the very information that ChemImage needs to protect. Logically, the better course is to allow each side to designate, in good faith, information that merits "Confidential - Attorneys' Eyes Only" level of protection, and then permit each side to challenge the other side's designations under the procedures set forth in the Protective Order. Please let us know whether you are agreeable to our proposed changes to the Protective Order, and supply the language that was missing from section D1 of your original draft of the document.

Sincerely,

Anthony J. Fitzpatrick

AJF/lnw
cc:    Paul D. Weller, Esq.

# EXHIBIT J



**COHEN PONTANI LIEBERMAN & PAVANE**
551 Fifth Avenue, New York, NY 10176  *phone* 212.687.2770  *fax* 212.972.5487  www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.

———————

Sidney R. Bresnick
Of Counsel

———————

Yunling Ren, Ph.D.
Julia S. Kim
Mindy H. Chettih
Vincent M. Fazzari
Alfred W. Froebrich
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Lisa A. Ferrari
Richard D. Margiano
Darren S. Mogil
David P. Badanes
James P. Doyle
Mher Hartoonian
Alphonso A. Collins
Jason S. Howell
Douglas D. Zhang
Edward V. DiLello
F. Brice Faller
Edward M. Reisner

———————

Enshan Hong
Technical Advisor

February 10, 2006

*VIA E-MAIL (CONFIRMATION BY MAIL)*

Paul D. Weller, Esq.
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Anthony J. Fitzpatrick, Esq.
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

**CONFIRMATION**

Re:     Document Production/Protective Order in
        Cambridge Research & Instrumentation, Inc., Peter J. Miller
        and Clifford Hoyt  v. ChemImage Corporation and Patrick Treado
        Civ. No. 05-10367-RWZ (D.Mass.)
        <u>Our File No.: 34250-60L</u>

Dear Messrs. Weller and Fitzpatrick:

As discussed in our previous letter, we have met with our client and will be serving our supplemental answer to interrogatory no. 7 by Tuesday, February 14, 2006.

Regarding the protective order, we believe the burden is on defendants to show the need for an "attorney's eye only" designation, not on us to show there is no need.  Your suggestion that we merely accept this designation, for which we see no need, and then bear the burden of showing that the documents do not merit this designation places an undue burden on us and misconstrues the law, which frowns on protective orders in the first place.  If you will not agree to our last proposal we see no choice but to let the Court decide the issue.  If you can see some other way out of this impasse, let us know, but if we don't hear from you by next Wednesday we'll go ahead and file a motion for a protective order.

Regarding "allegations of 'gamesmanship'", perhaps we should all cool down the rhetoric.  We used term in our February 2, 2006 letter because your threat of multiple motions to compel and for costs seemed unnecessary.  Perhaps our choice of words was overly harsh.  We suggest



Page 2
February 10, 2006

from now on, we stick to the merits.  With that in mind, we suggest having a teleconference about discovery as soon as possible, in which we can discuss, among other things, an extension of discovery since it's already February and we have yet to exchange documents.  Please suggest whatever times are convenient for you so that we may schedule one as soon as possible.

Very truly yours,
COHEN, PONTANI, LIEBERMAN & PAVANE

Martin B. Pavane

MBP/TJH/tdg

# EXHIBIT K

**From:** Fitzpatrick, Anthony J.
**Sent:** Tuesday, March 14, 2006 3:51 PM
**To:** 'Tidge Holmberg'
**Cc:** pweller@morganlewis.com; Walker, Lindsey N.; Martin B. Pavane; Raymond Torres
**Subject:** RE: CRI v ChemImage :: Extended deadlines and confidentiality designations

**Sensitivity:** Confidential

Tidge:

I am writing in response to your e-mail of March 9.

1.    I have responded separately to your e-mail regarding your draft motion for extension of time.

2.    This is yet another change of position by the plaintiffs on an important discovery issue. It was your clients who proposed a draft confidentiality order several months ago, and as you will recall the parties agreed to hold off production of documents until that order was finalized. Yet now, several months later, your clients announce that they have no confidential documents at all. We do not understand why it has taken so long for your clients to make that determination. Nonetheless, all this being so, please produce your clients' documents immediately.

3.    Your clients' disregard for the parties' earlier agreement concerning document production is striking. As noted above, it was your clients who proposed a draft confidentiality order several months ago. Both sides acknowledged that discovery in this case would include confidential information, and so both sides agreed that a Protective Order would be necessary. Indeed, again as noted above, the parties agreed to hold off production of documents until that order was finalized. The one area of disagreement has been whether there would be a "highly confidential/attorneys' eyes only" level of confidentiality. Therefore, your assertion that we "have not provided [you] with any specific basis for the potential harm that requires that some of your documents be held as 'confidential'" is, quite simply, false -- the parties have previously agreed that such protection would be necessary in this case. Now, when your clients have made the (very belated) determination that their documents are not confidential, they renege on their prior agreements and simply announce that they will file a motion to compel. To the extent that your voicemail and e-mail are an attempt to fulfill your obligations under Local Rule 37.1 (and we do not concede that you have fulfilled those obligations), then you may represent the following to the Court in your motion to compel:

    (i)    The defendants will oppose your motion in light of the plaintiffs' reneging on their prior agreements concerning document production and their repeated changes in position on discovery issues; and

    (ii)    The defendants will request as sanctions an award of attorneys' fees and costs incurred in responding to the motion.

Tony

Anthony J. Fitzpatrick
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
617-289-9220 (phone)

1

617-289-9201 (fax)
ajfitzpatrick@duanemorris.com

-----Original Message-----
From: Tidge Holmberg [mailto:THolmberg@cplplaw.com]
Sent: Thursday, March 09, 2006 5:59 PM
To: Fitzpatrick, Anthony J.
Cc: pweller@morganlewis.com; Walker, Lindsey N.; Martin B. Pavane; Raymond Torres
Subject: CRI v ChemImage :: Extended deadlines and confidentiality designations
Importance: High
Sensitivity: Confidential

Dear Tony:

This e-mail is to confirm and elaborate on the voicemail message I left earlier at your number.

(1) Regarding our proposed amendments to the scheduling order, please provide the defendants' position on the proposed deadlines so that we may proceed as quickly as possible. If we do not hear anything by next Tuesday, 14 March 2006, we will proceed alone.

(2) Having reviewed the five or six documents in our production that we believed might have required confidentiality, we have conferred with our client and, because, inter alia, the documents are all more than ten years old, our client does not believe any confidentiality is required for any of the documents in our production.

(3) Because you have not provided us with any specific basis for the potential harm that requires that some of your documents be held as "confidential" and/or "confidential - attorneys' eyes only", we will be filing a motion to compel production, as that will bring the protective order issue to a head.

Best Regards,
Tidge

-------------------------------------------------

Teodor J. Holmberg
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, New York 10176
Phone: 212-687-2770
Fax: 212-972-5487
e-mail: tidge@cplplaw.com
CONFIDENTIALITY NOTICE
The information contained in this message is legally privileged and/or confidential information intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any use, dissemination, distribution, or copying of this message or its content is strictly prohibited. If you have received this message in error, please immediately notify us and erase it without making a copy. Thank you.