IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PETER MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.  Plaintiffs,  v.  PATRICK TREADO and CHEMIMAGE CORP.  Defendants. | : : : : : : : : : : : : | Case No. 05-10367 RWZ |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Defendants Patrick Treado and ChemImage Corporation (collectively "Defendants") submit this Memorandum of Law in support of their motion to compel Plaintiffs Cambridge Research and Instrumentation, Inc., Peter J. Miller, and Clifford Hoyt (collectively "Plaintiffs") to produce documents responsive to Request No. 47 of Defendants' First Set of Document Requests.

### PERTINENT FACTS

On February 24, 2005, Plaintiffs instituted this litigation with the filing of a complaint that challenges inventorship of the patent-in-suit, U.S. Patent Number 6,734,962 ("the '962 patent"). Count I of the complaint, the only count pending in this litigation, cites two alleged contributions by Plaintiffs to the invention of the subject matter of the '962 patent. The first contribution that Plaintiffs allege was Plaintiffs' conception of the use of a liquid crystal tunable filter ("LCTF") in the imaging spectrometer. See Complaint ¶ 31. Plaintiffs have sought to support their inventorship claims by demonstrating that the alleged basis of their contributions to the invention of the '962

patent were formulated in a document entitled "Small Business Innovation Research (SBIR) Phase II Proposal" ("SBIR Proposal"), prepared in 1996. Plaintiffs have alleged that the conception of the use of LCTF technology was formulated by Plaintiffs in the SBIR Proposal. See Complaint ¶¶ 11, 13.

On September 1, 2005, Defendants served their First Set of Document Requests upon Plaintiffs. A copy of Defendants' First Request for the Production of Documents Directed to Plaintiffs is attached hereto as Exhibit A. On October 3, 2005, Plaintiffs served their objections and responses. A copy of Plaintiffs' Response to Defendants' First Set of Document Requests is attached hereto as Exhibit B.

Defendants, in Request No. 47, sought the production of agreements whereby Plaintiffs license intellectual property rights to LCTF technology. Contrary to their theory of co-inventorship, Plaintiffs refused to produce responsive documents on the grounds that they believed such agreements were not relevant to claims or defenses in this litigation:

| **Request No. 47**. | All agreements whereby one or more Plaintiffs license intellectual property rights to liquid crystal tunable filter technology from a third-party. |
|---|---|
| **RESPONSE:** | Plaintiffs object to Request No. 47 as not relevant to any claim or defense being asserted in this litigation. Plaintiffs further object to Request No. 47 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, protective order, non-disclosure agreement, or other privilege or immunity. |

On October 20, 2005, Defendants requested a discovery conference pursuant to Local Rule 37.1 to address, inter alia, the deficiency in Plaintiffs' written response to Request No. 47. A copy of Defendants' October 20, 2005 letter is attached hereto as Exhibit C. This letter also detailed the relevance of the requested agreements to Plaintiffs' inventorship claims. In particular, the agreements are relevant to show that Plaintiffs are actually licensing technology that they claim, in this lawsuit, to have invented.

On November 30, 2005, the parties engaged in a discovery conference pursuant to Local Rule 37.1 wherein Plaintiffs withdrew their objection to Request No. 47.  On December 9, 2005, Defendants memorialized via letter the results of the discovery conference, including Plaintiffs' withdrawal of their objection and agreement to produce documents responsive to Request No. 47. A copy of Defendants' December 9, 2005 letter is attached hereto as Exhibit D.

More than a month later, in a letter dated January 11, 2006, Plaintiffs attempted to characterize their prior agreement to produce documents as a quid pro quo whereby Plaintiffs' production was contingent upon Defendants' concessions on certain issues related to Plaintiffs' request for production of documents.  Although Plaintiffs' counsel thought that production of responsive documents "would not be a problem" and that "plaintiff[s] would be willing to hand over those documents," Plaintiffs' letter suggested that "being reasonable and bargaining in good faith only make sense if both parties intend to do it.  A copy of Plaintiffs' January 11, 2006 letter is attached hereto as Exhibit E.

Thus, although Plaintiffs had clearly withdrawn their objection, they then reneged on their agreement in an attempt to gain concessions from Defendants on other discovery issues. Accordingly, Defendants again wrote to Plaintiffs demanding production of responsive documents and further describing the relevance of Plaintiffs' agreements licensing, from third parties, of technology that serves as the purported basis for their inventorship claims.  A copy of Defendants' January 31, 2006 letter is attached hereto as Exhibit F.

On February 2, 2006, Plaintiffs' counsel responded by indicating only that they would speak with their clients to see whether they would be willing to produce responsive documents "to avoid wasting time and money over an irrelevant matter that will have no effect on the case."  A copy of Plaintiffs' February 2, 2006 letter is attached hereto as Exhibit G.

7

Receiving no response from Plaintiffs, Defendants wrote on February 8, 2006 to inform Plaintiffs that in light of Plaintiffs having reneged on their agreement to produce responsive documents, Defendants would be filing a motion to compel. A copy of Defendants' February 8, 2006 letter is attached hereto as Exhibit H.

Although Plaintiffs withdrew their objection nearly four months ago, Plaintiffs have still not produced documents responsive to Defendants' Request No. 47. Indeed, Plaintiffs have refused to produce any documents in this case, and essentially have linked impermissibly their compliance with their discovery obligations to Defendants first giving in to Plaintiffs' discovery demands. See Plaintiffs' Memorandum of Support of Motion to Compel Production (Docket Entry No. 30), at 2.

## ARGUMENT

### A.    Plaintiffs' Objection Is Without Merit

This Circuit has plainly held that the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery. Fed. R. Civ. P. 26(b)(2); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 244 F.3d 189, 192 (1st Cir. 2001). Moreover, Federal Rule of Civil Procedure 26 broadly defines relevancy at the discovery stage of litigation. Ares-Serono, Inc. v. Organon Int'l B.V., 151 F.R.D. 215, 219 (D. Mass. 1993). A document is relevant and subject to discovery "if there is **any** possibility that information sought may be relevant to the subject matter of the action." Ares-Serono, Inc. v. Organon Int'l B.V., 151 F.R.D. 215, 219 (D. Mass. 1993)(*quoting* Gagne v. Reddy, 104 F.R.D. 454, 456 (D. Mass. 1984))(emphasis in original).

Defendants have requested that Plaintiffs produce any license agreements between Defendants and any third parties pertaining to liquid crystal tunable filter (LCTF) technology. Pursuant to Federal Rule of Civil Procedure 26(b)(1), Request No. 47 is designed to lead to the discovery of admissible evidence regarding Plaintiffs' claims of inventorship relating to LCTF technology, which serves as the basis for their lawsuit. Responsive documents are directly relevant

8

to the claims made by Plaintiffs in their complaint. See Complaint ¶ 31. Plaintiffs have nonetheless objected to Request No. 47 on the grounds that the agreements Plaintiffs have with third parties to license technology that they claim in this lawsuit to have invented are, amazingly, not relevant to any claim or defense in the litigation. Plaintiffs have no basis under the Federal Rules of Civil Procedure to object to Defendants' request.

Defendants' Request No. 47 calls for the production of documents directly relevant to claims made by Plaintiffs and, potentially, to defenses available to Defendants. Moreover, this request goes to the heart of this litigation. Plaintiffs have claimed that they are co-inventors of the patent-in-suit because they claim to have invented LCTF technology. To the extent that Plaintiffs license, or have licensed in the past, LCTF technology from third parties, the mere existence of such licenses would **refute** Plaintiffs' contention that they invented the technology. Essentially, Plaintiffs' licensing of technology that they claim to have invented is not only relevant to the subject matter of this lawsuit but cuts to the substantive basis for Plaintiffs' lawsuit.

Accordingly, Defendants hereby move pursuant to Federal Rule of Civil Procedure 37(a) to compel Plaintiffs to produce documents in response to Request No. 47. To the extent that Plaintiffs, in their objection to Request No. 47, seek to withhold relevant and otherwise discoverable documents responsive to the request on the basis of any claims of privilege, Defendants fully expect that Plaintiffs will properly document those claims and provide a privilege log pursuant to Federal Rule of Civil Procedure 26(b)(5).

### B.    Plaintiffs Have No Basis For Withholding Responsive Documents

Even though Plaintiffs' original objection was not proper under the Federal Rules of Civil Procedure, Plaintiffs later agreed to withdraw their objection and produce documents responsive to Defendants' Request No. 47. Their subsequent attempts to renege on that agreement, and to use

Request No. 47 as a bargaining chip in other discovery disputes with Defendants, are entirely improper.

Promptly upon receipt of Plaintiffs' objection to Request No. 47, Defendants requested a discovery conference, pursuant to Local Rule 37.1, to address the deficiency of Plaintiffs' objection. See Exhibit C. During the November 30, 2005 discovery conference, Defendants articulated the deficiencies in Plaintiffs' objection. Recognizing these deficiencies, Plaintiffs withdrew their objection. See Exhibit D. By doing so, Plaintiffs have waived any right to continue to withhold responsive documents. Thereafter, Plaintiffs attempted to retract their withdrawal of their objection so that they could negotiate reciprocal concessions from Defendants. See Exhibit E. Nearly one month later, Plaintiffs again wrote suggesting that they would be producing responsive documents after speaking with their client. See Exhibit G. Plaintiffs appeared to trivialize the significance of even resisting production of responsive documents, indicating that they might produce responsive documents as a means of avoiding "wasting time and money over an irrelevant matter that will have no effect on the case." See Exhibit G. Any subsequent attempts by Plaintiffs to abandon the withdrawal of their objection to production of documents responsive to Request No. 47 is a sham and is impermissible under the Federal Rules of Civil Procedure. Nothing within the Federal Rules of Civil Procedure suggests that one party's compliance with discovery is contingent upon the other party's reciprocal compliance.

Moreover, based on their withdrawal of the objection and their agreement to produce documents, Plaintiffs presently do not have a standing objection to Defendants' Request No. 47. Therefore, Defendants are entitled to an order compelling Plaintiffs to produce responsive documents.

### C. Defendants Are Entitled To Recover From Plaintiffs Expenses Incurred In Bringing This Motion

10

Defendants move to recover the reasonable expenses, including attorney's fees, that they have incurred in filing this motion to compel. Federal Rule of Civil Procedure 37(a)(4) provides that the Court "shall require . . . the party or deponent whose conduct necessitated the motion . . . to pay the moving party the reasonable expenses incurred in making the motion, including attorney's fees . . . ." Defendants believe that such an award is especially proper in this instance because Plaintiffs' initial objection was without merit. Moreover, since Plaintiffs withdrew their initial objection over four months ago, their obstinate refusal to produce responsive documents in the face of Defendants' repeated requests have prejudiced Defendants' ability to gather evidence to support their claims and defenses in this case.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court grant Defendants' motion to compel Plaintiffs' production of documents.

Respectfully submitted,

Date: March 28, 2006

/s/ Anthony J. Fitzpatrick
Anthony J. Fitzpatrick
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: 617.289.9220
Fax: 617.289.9201
e-mail: ajfitzpatrick@duanemorris.com

Counsel for Defendants,
Patrick Treado and ChemImage Corp.

OF COUNSEL:

Paul D. Weller
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5530
eFax: 215.963.5001
e-mail: pweller@morganlewis.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 28, 2006.

Date:  March 28, 2006                          /s/ Anthony J. Fitzpatrick
                                                                Anthony J. Fitzpatrick

DM2\676346.1

12

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MILLER, HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.  Plaintiffs, | : : : : | CIVIL ACTION |
| v. | : : | Case No. 05-1367 RWZ |
| PATRICK TREADO and CHEMIMAGE CORP.  Defendants. | : : : | |

## DEFENDANTS' FIRST REQUEST FOR THE PRODUCTION
## OF DOCUMENTS DIRECTED TO PLAINTIFFS

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants

Patrick J. Treado and ChemImage Corp., by and through their undersigned counsel,

hereby request that Plaintiffs, Peter J. Miller, Clifford Hoyt and Cambridge Research and

Instrumentation, Inc. produce the documents requested herein for inspection and copying

at the offices of Duane Morris LLP, 470 Atlantic Avenue, Suite 500, Boston, MA 02210

within thirty (30) days from the date of service hereof.  A written response to these

requests is required pursuant to Federal Rule of Civil Procedure 34.

In answering these requests, the following definitions and instructions shall apply.

## DEFINITIONS

1.   "Items" when used herein shall mean any tangible thing, including but not limited to, firearms, firearm cases, firearm accessories, weapons of any kind, art, paintings, collectibles, or any accompanying documents and any other related equipment or things.

2.   "Documents" when used herein shall mean all written, printed, unprinted, typed, computerized, computer-generated, computer-stored, tape recorded, and visually or orally reproduced material of any kind, whether or not privileged, and includes, but is not limited to, papers, writings, memoranda, correspondence, stenographic, handwritten or other notes, books, pamphlets, minutes, contracts, agreements, subpoenas, inter-office and intra-office communications, bulletins, circulars, procedures, diaries, records or notes of telephone conversations, bills, orders, receipts, charts, schedules, entries, prints, worksheets, lists, catalogues, computer printouts, e-mail, representations, reports, drawings, sketches, pictures, photographs, tape or other recordings, computer discs, films, and any tangible items or things of written, readable, graphic, audible or visual materials of any kind or character including data stored on magnetic media for audible or computer use or for word processing purposes, whether handwritten, typed, xeroxed, photostated, printed, duplicated, reproduced, recorded, videotaped, photographed, copied, microfilmed, micro-carded or transcribed by any means including, without limitation, each interim as well as final draft and any revision.

3.   "And" as well as "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the Interrogatory or Request for Production all responses that otherwise might be construed outside of its scope.

4.    "Miller" when used herein shall mean Plaintiff Peter J. Miller as well as his agents, officers, employees, attorneys, representatives, and any and all persons acting or purporting to act on his behalf.

5.    "Hoyt" when used herein shall mean Plaintiff Clifford Hoyt as well as his agents, officers, employees, attorneys, representatives, and any and all persons acting or purporting to act on his behalf.

6.    "Cambridge Research and Instrumentation, Inc." or "CRI" when used herein shall mean Plaintiff Cambridge Research and Instrumentation, Inc., as well as its agents, officers, employees, attorneys, representatives, and any and all persons acting or purporting to act on its behalf.

7.    "Plaintiffs," "you" and "your" when used herein shall mean the persons and/or entities as defined in paragraphs four (4), five (5) and (6) above.

8.    As used herein, any reference to the singular shall include the plural, and vice versa, to bring within the scope of the Request for Production information that might otherwise be construed outside of its scope.  The use of any masculine or feminine pronoun includes both the masculine and the feminine.

# INSTRUCTIONS

1.     In producing documents pursuant to these requests, you are required to furnish all documents in your possession, custody or control that are known or available to you, regardless of whether the documents are possessed by you or by any of your agents, attorneys, investigators, representatives, financial advisors, consultants, directors, officers, or employees. You must make a diligent search of your records (including but not limited to paper records, computerized records, electronic mail records and voice-mail records) and of other papers and materials in your possession or available to you or your attorneys, financial advisors, consultants, investigators, and other agents or representatives.

2.     Documents attached to each other, including but not limited to being attached by staple, clip, tape or "Post-It" note, should not be separated.

3.     If any of these requests cannot be answered in full, please answer to the extent possible and state with particularity the reason(s) why a more complete answer cannot be provided.

4.     No response to these requests should be left blank. If the response to a particular request is none or unknown, the words "none" or "unknown" must be written and supplied as the response. If the request is inapplicable, "n/a" must be written and supplied as the response.

5.     Where an objection is made to any request, the objection shall state with specificity all grounds on which the objection is based.

6.     For each document or part thereof called for by these requests that is withheld under a claim of privilege or work product, you shall furnish a list setting forth

4

for each such document or redacted portion thereof, if any, the following information:  (a) the nature of the document, e.g., letter, memorandum, telegram, etc.; (b) the name, address, occupation, title and business affiliation of each person who prepared, received, viewed and has or has had possession, custody or control of the document; (c) the date of the document; (d) a description of the subject matter of the document; and (e) a statement of the basis upon which the privilege or work product claim is made.

7.     If any document or part thereof called for by these requests has been destroyed, discarded, deleted or otherwise disposed of, you shall furnish a list setting forth, for each such document or part thereof, the following information:  (a) the nature of the document, e.g., letter, memorandum, telegram, etc.; (b) the name, address, occupation, title and business affiliation of each person who prepared, received, viewed and has or has had possession, custody or control of the document; (c) the date of the document; (d) a description of the subject matter of the document; (e) the date of destruction or other disposition; (f) a statement of the reasons for destruction or other disposition; (g) the name, address, occupation, title and business affiliation of each person who authorized destruction or other disposition; (h) the name, address, occupation, title and business affiliation of each person who destroyed or disposed of the document; and (i) the paragraph(s) of this request which call for the production of the document.

8.     Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, you must produce the documents requested as they are kept in the usual course of business or must organize and label them to correspond with the appropriate request.  In addition, you

should identify the location and custodian of each document produced by means of an index of production numbers.

9.      These requests are to be regarded as continuing to the extent set forth in Rule 26(d) of the Federal Rules of Civil Procedure and to the extent that the answers may be enlarged, diminished, or otherwise modified, you are required to provide supplemental answers, in accordance with that Rule, within ten (10) days of obtaining or becoming aware of additional information pertaining to those requests.

## REQUESTS FOR PRODUCTION

Please produce:

1. All documents evidencing or corroborating any conception by Plaintiffs of any subject matter claimed in U.S. Patent No. 6,734,962.

2. All documents evidencing or corroborating any reduction to practice by Plaintiffs of any subject matter claimed in U.S. Patent No. 6,734,962.

3. All documents evidencing or corroborating Plaintiff Hoyt's alleged conception of "the idea of using 'infinity space,' or infinity-corrected optics, in a Raman imaging microscope using an LCTF," as set forth in paragraph 10 of the Complaint.

4. All documents evidencing or corroborating the alleged communication from Plaintiff Hoyt to Patrick Treado of "the idea of using 'infinity space,' or infinity-corrected optics, in a Raman imaging microscope using an LCTF," as set forth in paragraph 10 of the Complaint.

5. All documents evidencing or corroborating Plaintiff Miller's alleged conception of the "new design based on an Evans split-element retarder filter," as set forth in paragraph 11 of the Complaint.

6 All documents evidencing or corroborating Plaintiff Miller's alleged reduction to practice of the "new design based on an Evans split-element retarder filter," as set forth in paragraph 11 of the Complaint.

7. All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the "new design based on an Evans split-element retarder filter," described in paragraph 11 of the Complaint.

8. All documents evidencing or corroborating any conception by any of the Plaintiffs of the "novel design ... devised to overcome this problem," as set forth in paragraph 11 of the Complaint.

7

9. All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the "novel design ... devised to overcome this problem," as set forth in paragraph 11 of the Complaint.

10. All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the "novel design ... devised to overcome this problem," described in paragraph 11 of the Complaint.

11. All documents evidencing or corroborating any conception by any of the Plaintiffs of the "model [that] was developed of this new design," as set forth in paragraph 11 of the Complaint.

12. All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the "model [that] was developed of this new design," as set forth in paragraph 11 of the Complaint.

13. All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the "model [that] was developed of this new design," described in paragraph 11 of the Complaint.

14. All documents evidencing or corroborating any conception by any of the Plaintiffs that the "new design ... should nearly treble the throughput of the LCTF," as set forth in paragraph 11 of the Complaint.

15. All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of a "new design ... [that] nearly treble[d] the throughput of the LCTF," as set forth in paragraph 11 of the Complaint.

16. All documents evidencing or corroborating any conception by any of the Plaintiffs that the "the long-wavelength limit will be extended from the present 700 nm to 1050 nm," as set forth in paragraph 13 of the Complaint.

17. All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the liquid crystal tunable filter new design referred to in paragraph 13 of the Complaint having a "long-wavelength limit ... extended from the present 700 nm to 1050 nm."

18. All documents evidencing or corroborating any conception by any of the Plaintiffs that the liquid crystal tunable filter referred to in Paragraph 13 of the Complaint offered "benefits in ... semiconductor analysis."

19. All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the liquid crystal tunable filter referred to in paragraph 13 of the Complaint in a semiconductor analysis application.

20. All documents evidencing or corroborating any conception by any of the Plaintiffs that the liquid crystal tunable filter referred to in Paragraph 13 of the Complaint offered "benefits in ... biomedical imaging."

21. All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the liquid crystal tunable filter referred to in paragraph 13 of the Complaint in a biomedical imaging application.

22. All documents evidencing or corroborating any conception by any of the Plaintiffs that the liquid crystal tunable filter referred to in Paragraph 13 of the complaint offered "benefits in ... pharmaceutical research."

23. All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the liquid crystal tunable filter referred to in paragraph 13 in a pharmaceutical research application.

24. All documents evidencing or corroborating any conception by any of the Plaintiffs of the "red-wavelength optimized Raman LCTFs," referred to in paragraph 16 of the Complaint.

9

25. All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the "red-wavelength optimized Raman LCTFs," referred to in paragraph 16 of the Complaint.

26. All documents evidencing or corroborating any conception by any of the Plaintiffs of the "high throughput (Split Evans) design Raman LCTFs," referred to in paragraph 16 of the Complaint.

27. All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the "high throughput (Split Evans) design Raman LCTFs," referred to in paragraph 16 of the Complaint.

28. All documents referring or relating to the "Evans split-element filters optimized for use in Raman imaging microscopes using near infrared radiation" that plaintiff CRI allegedly "built and sold to defendant ChemImage or its predecessor" prior to October 13, 1999, as set forth in Paragraph 18 of the Complaint.

29. All documents referring or relating to the alleged offer for sale and/or sale of "Raman imaging microscopes incorporating Evans split-element liquid crystal tunable filter[s]," as set forth in Paragraph 18 of the Complaint.

30. All documents evidencing or corroborating any conception by any of the Plaintiffs of the "refractive type infinity-corrected near infrared optimized microscope objective," referred to in paragraph 23 of the Complaint.

31. All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the "refractive type infinity-corrected near infrared optimized microscope objective," referred to in paragraph 23 of the Complaint.

32. All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the "refractive type infinity-corrected near infrared optimized microscope objective," referred to in paragraph 23 of the Complaint.

33. All documents referring or relating to the "previous collaborative work with CRI on Raman imaging microscopes with integrated Evans split-element filters and collected collimated light," referred to in paragraph 26 of the Complaint.

34. All documents evidencing communications with any of the Plaintiffs referring or relating to the U.S. Patent No. 6,734,962, or Plaintiffs' claims that Miller and Hoyt "contributed to the invention of the subject matter" thereof, as set forth in Paragraphs 31-32 of the Complaint.

35. All documents evidencing or corroborating any conception by Plaintiff Miller of the "use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system using near infrared radiation," as set forth in paragraph 31 of the Complaint.

36. All documents evidencing or corroborating any reduction to practice by Plaintiff Miller of the "use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system using near infrared radiation," as set forth in paragraph 31 of the Complaint.

37. All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the "use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system using near infrared radiation," as set forth in paragraph 31 of the Complaint.

38. All documents evidencing or corroborating any conception by Plaintiff Hoyt of "a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system using near infrared radiation," as set forth in paragraph 32 of the Complaint.

39. All documents evidencing or corroborating any reduction to practice by Plaintiff Hoyt of "a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system using near infrared radiation," as set forth in paragraph 32 of the Complaint.

40. All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of "a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system using near infrared radiation," as set forth in paragraph 32 of the Complaint.

41. All documents evidencing or corroborating any conception by Plaintiff Miller of the use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system for the purpose of selecting images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated area of a sample.

42. All documents evidencing or corroborating any reduction to practice by Plaintiff Miller of the use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system for the purpose of selecting images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated area of a sample.

43. All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system for the purpose of selecting images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated area of a sample.

44. All documents evidencing or corroborating any conception by Plaintiff Hoyt of the use of a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system that selects images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated area of a sample.

45. All documents evidencing or corroborating any reduction to practice by Plaintiff Hoyt of a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system that selects images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated area of a sample.

46. All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system that selects images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated area of a sample.

47. All agreements whereby one or more Plaintiffs license intellectual property rights to liquid crystal tunable filter technology from a third-party.

48. The complete file history of any domestic or foreign patents or patent applications filed by one or more Plaintiffs that describe or claim subject matter described in U.S. Patent No. 6,734,962 or Exhibits, A, B or C to the Complaint.

49. All documents that refer or relate to Exhibits, A, B, C , D or E to the Complaint including, without limitation, all prior drafts of Exhibits, A, B, C or D to the Complaint and any written communications that refer or relate to Exhibits, A, B, C, D or E to the Complaint.

50. All communications with third-parties that refer or relate to Exhibits, A, B , C, D or E to the Complaint.

51. All communications between any of the Plaintiffs and any of the Defendants referring or relating to any of the SBIR Proposals identified in the Complaint.

52. All documents upon which you intend to rely at trial.

53. All documents that support or refute the allegations in the Complaint.

54. All documents that discuss U.S. Patent No. 6,734,962.

55. All documents identified in responding to Defendants' First Set Of Interrogatories.

56. All documents upon which you relied in answering Defendants' First Set Of Interrogatories.

57. For each expert that you will offer at trial, (a) a current curriculum vitae, (b) all documents upon which the expert relied in issuing his or her opinion(s), (c) all transcripts of any testimony by the expert, and (d) all publications by the expert.

58. All expert reports for experts that you intend to offer at trial.

Date: September 1, 2005

Anthony J. Fitzpatrick, BBO # 564324
Christopher S. Kroon, BBO # 660286
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: 617.289.9220
Fax: 617.289.9201
e-mail: ajfitzpatrick@duanemorris.com

Counsel for Defendants,
Patrick Treado and ChemImage Corp.

OF COUNSEL:

Paul D. Weller
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5530
eFax: 215.963.5001
e-mail: pweller@morganlewis.com

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

PETER J. MILLER, CLIFFORD HOYT, and     :
CAMBRIDGE RESEARCH AND     :
INSTRUMENTATION, INC.     :
    Plaintiffs,     :
    :     Case No. 05-10367 RWZ
    v.     :
    :
PATRICK TREADO and CHEMIMAGE CORP.     :
    Defendants.     :
    :

## CERTIFICATE OF SERVICE

I, Christopher S. Kroon, hereby certify that on this 1st day of September, 2005, I caused copies the following documents:

    1) Defendants' First Request For The Production Of Documents Directed To Plaintiffs;
and
    2) Defendants' First Set Of Interrogatorie : Directed To Plaintiffs;

to be served upon the following counsel of record in the manner indicated below:

**VIA HAND-DELIVERY TO:**

Brian L. Michaelis, Esq.
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111

**VIA OVERNIGHT MAIL TO:**

Martin B. Pavane, Esq.
Teodor J. Holmberg
Cohen, Pontani, Lieberman and Pavane
551 Fifth Avenue
New York, NY 10176

CHRISTOPHER S. KROON, ESQ., BBO# 660286
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210-2205
Tel: (617) 289-9200
Fax: (617) 289-9201
Email: cskroon@duanemorris.com

# EXHIBIT B

Part one

# IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation,

        Plaintiffs,

        v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

        Defendants.

**Civil Action No. 05-10367-RWZ**

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' FIRST SET OF DOCUMENT REQUESTS (Nos. 1- 58)

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs, Peter J.
Miller, Clifford Hoyt and Cambridge Research and Instrumentation, Inc. (collectively "Plaintiffs")
hereby respond to Defendants, Patrick Treado and Chemimage Corp.'s (hereinafter "Defendants")
First Request for the Production of Documents directed to Plaintiffs, numbered 1-58 ("Requests").

These responses are given without prejudice to their revision or supplementation if further
discovery or investigation so indicates. Plaintiffs' responses shall not be deemed to constitute
admissions that any statement or characterization is complete.

## GENERAL OBJECTIONS

1. Plaintiffs object to the Requests and the Definitions and Instructions to the extent that they purport to impose on Plaintiffs' obligations exceeding those imposed by Rules 26 and 34 of the Federal Rules of Civil Procedure and the Local Rules of this Court.

2. Plaintiffs object to the Definitions and Instructions attached to the Requests to the extent they purport to enlarge, expand, or alter in any way the plain meaning and scope of any specific Requests(s) on the ground that such enlargement, expansion, or alteration renders such demands vague, ambiguous, unintelligible, unduly broad, and uncertain.

3. Plaintiffs object to all Requests insofar as all Requests begin with the phrase "[a]ll documents evidencing or corroborating . . .". Such a phrase is overly broad and unduly burdensome insofar as it calls for the production of documents and things that are neither relevant to the subject matter involved in this action nor reasonably calculated to lead to the discovery of admissible evidence. As such, this phrase will be interpreted as meaning documents relevant to the subject matter involved in this action.

4. Plaintiffs object to all Requests asking for the identification of documents and things (a) not currently in their possession, custody, or control, (b) in the custody, control or possession of persons or entities over which Plaintiffs exercises no control, or (c) which no longer exist. Plaintiffs further object to all Requests, which refer to persons, entities, or events not known to them.

5. Plaintiffs object generally to the Requests to the extent they seek the production of documents, things or information protected by the attorney-client privilege, work product protection, or any other privilege or immunity from discovery. Plaintiffs will not disclose such documents, things or information and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege, protection or immunity with respect thereto.

6. Plaintiffs object to Defendants' Definition No. 1 as irrelevant.

7. Plaintiffs object to Defendants' Definitions 4, 5, and 6 to the extent that they purport to include counsel, and to the extent they purport to include any persons or entities which Plaintiffs do not control and who are not parties to this action.

8. Plaintiffs will produce relevant documents and things responsive to these requests to the extent they exist, are within Plaintiffs' possession, custody or control, are not subject to any privilege, protection or immunity, and can be identified in a reasonable search.

9.  If any privileged documents are inadvertently produced by Plaintiffs, such inadvertent production of privileged documents shall not be deemed a waiver of privilege, and Plaintiffs reserve the right to recall such documents, and all copies thereof.

10. Plaintiffs' response to the Requests are made without waiving or intending to waive, but rather preserving and intending to preserve:
    (a) All questions as to the competence, relevance, materiality, privilege, and/or admissibility as evidence, for any purpose, of the responses provided by Plaintiffs or the subject matter thereof, in any aspect of this or any other action, arbitration, proceeding or investigation;
    (b) The right to object on any ground to the use of the responses, documents and things provided by Plaintiffs or the subject matter thereof, in any aspect of this or any other action, arbitration, proceeding or investigation;
    (c) The right to object at any time to any other set of Requests; and
    (d) The right to revise, supplement, correct, add to, or clarify Plaintiffs' responses and objections to these Requests.

11. Plaintiffs' written responses to Defendants' Requests should not be construed as:
    (a) A waiver of the General Objections or the objections asserted in response to specific Requests;
    (b) An admission that any such documents or things exist; or
    (c) An agreement that Requests for similar documents or things will be treated in a similar manner.

12. On September 12, 2005, Counsel for Plaintiffs suggested to Counsel for Defendants that there be a mutually agreed upon cut-off date after which privileged documents created by a Counsel and/or all correspondence between Counsel and their client concerning this litigation need not be logged on the privilege logs. As stated by Counsel for Plaintiffs, the purpose of the cut-off date was to avoid the inordinately large privilege logs which would be created by logging in all such communications and work product after the start of this litigation. Counsel for Defendants replied that such an approach was not "appropriate" and did not agree to a cut-off date. Counsel for Plaintiffs believes that refusing such an innocuous and cost-saving measure is unnecessarily contentious, and intend to bring the matter to the attention of the Judge at the scheduled October 25, 2005 trial conference. Unless ordered otherwise, Plaintiffs will not include on their privilege log communications and work product generated after the filing of the Complaint.

13. In reference to LR 34.1(a)(3), Plaintiffs believe the incorporation by reference of the General Objections in each response to the Requests is adequate for stating each objection "separately" for each Request; however, if not adequate, Plaintiffs reserve the right to supplement each response with the text of each General Objection.

14. All three Plaintiffs are responding collectively to these Requests as a matter of convenience. However such collective response does not indicate an intent to treat all Plaintiffs as a single entity for this or any other purpose; to the contrary each Plaintiff reserves its right to individually respond to future discovery requests, as appropriate.

Subject to and without waiver of its foregoing General Objections, Plaintiffs responds to the Requests as follows:

1. **All documents evidencing or corroborating any conception by Plaintiffs of any subject matter claimed in U.S. Patent No. 6,734,962.**

**RESPONSE:**

Plaintiffs object to Request No. 1 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

2. **All documents evidencing or corroborating any reduction to practice by Plaintiffs of any subject matter claimed in U.S. Patent No. 6,734,962.**

**RESPONSE:**

Plaintiffs object to Request No. 2 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

3. **All documents evidencing or corroborating Plaintiff Hoyt's alleged conception of "the idea of using 'infinity space,' or infinity-corrected optics, in a Raman imaging microscope using an LCTF," as set forth in paragraph 10 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 3 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

4. **All documents evidencing or corroborating the alleged communication from Plaintiff Hoyt to Patrick Treado of "the idea of using 'infinity space,' or infinity-corrective optics, in a Raman imaging microscope using an LCTF," as set forth in paragraph 10 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 4 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

5. **All documents evidencing or corroborating Plaintiff Miller's alleged conception of the "new design based on an Evans split-element retarder filter," as set forth in paragraph 11 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 5 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

6. **All documents evidencing or corroborating Plaintiff Miller's alleged reduction to practice of the "new design based on an Evans split-element retarder filter," as set forth in paragraph 11 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 6 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

7. **All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the "new designed based on an Evans split-element retarder filter," as set forth in paragraph 11 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 7 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

8. **All documents evidencing or corroborating any conception by any of the Plaintiffs of the "novel design ... devised to overcome this problem," as set forth in paragraph 11 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 8 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

9. **All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the "novel design ... devised to overcome this problem," as set forth in paragraph 11 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 9 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

10. **All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the "novel design ... devised to overcome this problem," as set forth in paragraph 11 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 10 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

11. **All documents evidencing or corroborating any conception by any of the Plaintiff of the "model [that] was developed of this new design," as set forth in paragraph 11 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 11 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

12. **All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the "model [that] was developed of this new design," as set forth in paragraph 11 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 12 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

13. **All documents evidencing or corroborating any communication from any Plaintiff to Defendant of the "model [that] was developed of this new design," as set forth in paragraph 11 of the Complaint.**

**RESPONSE:** ·

Plaintiffs object to Request No. 13 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

14. **All documents evidencing or corroborating any conception by any of the Plaintiffs that the "new design ... should nearly treble the throughput of the LCTF," as set forth in paragraph 11 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 14 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

15. **All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of a "new design ... should nearly treble the throughput of the LCTF," as set forth in paragraph 11 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 15 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

16. **All documents evidencing or corroborating any conception by any of the Plaintiffs that the "the long-wavelength limit will be extended from the present 700 nm to 1050 nm," as set forth in paragraph 13 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 16 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

17. **All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the liquid crystal tunable filter new design referred to in paragraph 13 of the Complaint having a "long-wavelength limit ...extended from the present 700 nm to 1050 nm."**

**RESPONSE:**

Plaintiffs object to Request No. 17 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

18. **All documents evidencing or corroborating any conception by any of the Plaintiffs that the liquid crystal tunable filter referred to in paragraph 13 of the Complaint offered "benefits ...semiconductor analysis."**

**RESPONSE:**

Plaintiffs object to Request No. 18 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

19. **All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the liquid crystal tunable filter referred to in paragraph 13 of the Complaint in a semiconductor analysis application.**

**RESPONSE:**

Plaintiffs object to Request No. 19 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

20. **All documents evidencing or corroborating any conception by any of the Plaintiffs that the liquid crystal tunable filter referred to in paragraph 13 of the Complaint offered "benefits in...biomedical imaging."**

**RESPONSE:**

Plaintiffs object to Request No. 20 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

21. **All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs that the liquid crystal tunable filter referred to in paragraph 13 of the Complaint in a biomedical imaging application.**

**RESPONSE:**

Plaintiffs object to Request No. 21 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

# EXHIBIT B

part two

22. **All documents evidencing or corroborating any conception by any of the Plaintiffs that the liquid crystal tunable filter referred to in paragraph 13 of the Complaint offered "benefits in ...pharmaceutical research."**

**RESPONSE:**

Plaintiffs object to Request No. 22 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

23. **All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the liquid crystal tunable filter referred to in paragraph 13 in a pharmaceutical research application.**

**RESPONSE:**

Plaintiffs object to Request No. 23 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

24. **All documents evidencing or corroborating any conception by any of the Plaintiffs of the "red-wavelength optimized Raman LCTFs," referred to in paragraph 16 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 24 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

25. **All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the "red-wavelength optimized Raman LCTFs," referred to in paragraph 16 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 25 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

26. **All documents evidencing or corroborating any conception by any of the Plaintiffs of the "high throughput (Split Evans) design Raman LCTFs," referred to in paragraph 16 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 26 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

27. **All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the "high throughput (Split Evans) design Raman LCTFs," referred to in paragraph 16 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 27 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

28. **All documents referring or relating to the "Evans split-element filters optimized for use in Raman imaging microscopes using near infrared radiation" that Plaintiff CRI allegedly "built and sold to defendant ChemImage or its predecessor" prior to October 13, 1999, as set forth in Paragraph 18 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 28 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

29. **All documents referring or relating to the alleged offer for sale and/or sale of "Raman imaging microscopes incorporating Evans split-element liquid crystal tunable filter[s]," as set forth in paragraph 18 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 29 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

30. **All documents evidencing or corroborating any conception by any of the Plaintiffs of the "refractive type infinity-corrected near infrared optimized microscope objective," referred to in paragraph 23 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 30 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

31. All documents evidencing or corroborating any reduction to practice by any of the Plaintiffs of the "refractive type infinity-corrected near infrared optimized microscope objective," referred to in paragraph 23 of the Complaint.

**RESPONSE:**

Plaintiffs object to Request No. 31 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

32. All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the "refractive type infinity-corrected near infrared optimized microscope objective," referred to in paragraph 23 of the Complaint.

**RESPONSE:**

Plaintiffs object to Request No. 32 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

33. All documents referring or relating to the "previous collaborative work with CRI on Raman imaging microscope with integrated Evans split-element filters and collected collimated light," referred to in paragraph 26 of the Complaint.

**RESPONSE:**

Plaintiffs object to Request No. 33 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

34. **All documents evidencing communications with any of the Plaintiffs referring or relating to the U.S. Patent No. 6,734,962, or Plaintiffs' claims that Miller and Hoyt "contributed to the invention of the subject matter" thereof, as set forth in paragraph 31-32 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 34 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

35. **All documents evidencing or corroborating any conception by Plaintiff Miller of the "use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system using near infrared radiation," as set forth in paragraph 31 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 35 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

36. **All document evidencing or corroborating any reduction to practice by Plaintiff Miller of the "use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system using near infrared radiation," as set forth in paragraph 31 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 36 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

37. **All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the "use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system using near infrared radiation," as set forth in paragraph 31 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 37 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

38. **All documents evidencing or corroborating any conception by Plaintiff Hoyt of "a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system using near infrared radiation," as set forth in paragraph 32 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 38 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

39. **All documents evidencing or corroborating any reduction to practice by Plaintiff Hoyt of "a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system using near infrared radiation," as set forth in paragraph 32 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 39 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

40. **All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of "a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system using near infrared radiation," as set forth in paragraph 32 of the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 40 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

41. **All documents evidencing or corroborating any conception by Plaintiff Miller of the use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system for the purpose of selecting images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated area of a sample.**

**RESPONSE:**

Plaintiffs object to Request No. 41 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

42. **All document evidencing or corroborating any reduction to practice by Plaintiff Miller of the use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system for the purpose of selecting images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated area of a sample.**

**RESPONSE:**

Plaintiffs object to Request No. 42 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

43. **All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the use of an Evans Split Element liquid crystal tunable filter in a chemical imaging system for the purpose of selecting images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated area of a sample.**

**RESPONSE:**

Plaintiffs object to Request No. 43 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

44. **All documents evidencing or corroborating any conception by Plaintiff Hoyt of the use of a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system that selects images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated sample.**

**RESPONSE:**

Plaintiffs object to Request No. 44 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

45. **All documents evidencing or corroborating any reduction to practice by Plaintiff Hoyt of the use of a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system that selects images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated sample.**

**RESPONSE:**

Plaintiffs object to Request No. 45 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

46. **All documents evidencing or corroborating any communication from any Plaintiff to any Defendant of the use of a refractive type infinity-corrected microscope objective as the collecting/collimating device in a chemical imaging system that selects images of near infrared wavelength radiation light transmitted, reflected or emitted from an illuminated sample.**

**RESPONSE:**

Plaintiffs object to Request No. 46 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

47. **All agreements whereby one or more Plaintiffs license intellectual property rights to liquid crystal tunable filter technology from a third-party.**

**RESPONSE:**

Plaintiffs object to Request No. 47 as not relevant to any claim or defense being asserted in this litigation. Plaintiffs further object to Request No. 47 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, protective order, non-disclosure agreement, or other privilege or immunity.

48. **The complete file history of any domestic or foreign patents or patent applications filed by one or more Plaintiffs that describe or claim subject matter described in U.S. Patent No. 6,734,962 or Exhibits, A, B or C to the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 48 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

49. **All documents that refer or relate to Exhibits, A, B, C, D or E to the Complaint including, without limitation, all prior drafts of Exhibits, A, B, C or D to the Complaint and any written communication that refers or relate to Exhibits, A, B, C, D or E to the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 49 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced

50. **All communications with third-parties that refer or related to Exhibits, A, B, C, D or E to the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 50 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

51. **Any communications between any of the Plaintiffs and any of the Defendants referring or relating to any of the SBIR Proposals identified in the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 51 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

**52. All documents upon which you intend to rely at trial.**

**RESPONSE:**

Plaintiffs object to Request No. 52 as premature, as discovery has just begun and no schedule for a pretrial order or exchange of exhibits has been entered. Plaintiffs will respond to this request at the appropriate time as determined by, and in the matter required by, the Federal Rules of Civil Procedure, the Local Rules or Court order.

**53. All documents that support or refute the allegations in the Complaint.**

**RESPONSE:**

Plaintiffs object to Request No. 53 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Plaintiffs further object to Request No. 53 as premature, as discovery has just begun and no schedule for expert discovery has been entered. Plaintiffs further object to Request No. 53 to the extent that it seeks documents that "refute" the allegations in the Complaint, as such a request requires Plaintiffs to execute judgment on Defendants' behalf as to what documents Defendants may consider as refuting such arguments, and to the extent Request No. 53 seeks Plaintiffs' Counsel's work product. Subject to the foregoing objections and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

**54. All documents that discuss U.S. Patent No. 6,734,962.**

**RESPONSE:**

Plaintiffs object to Request No. 54 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objections and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

**55. All documents identified in responding to Defendants' First Set of Interrogatories.**

**RESPONSE:**

Plaintiffs object to Request No. 55 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, and to the objections to Defendants' Interrogatories, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

**56. All document upon which you relied in answering Defendants' First Set of Interrogatories.**

**RESPONSE:**

Plaintiffs object to Request No. 56 to the extent it seeks the production of documents and things protected by the attorney-client privilege, work product protection, or other privilege or immunity. Subject to the foregoing objection and the General Objections, to the extent responsive documents and things exist and are identified in a reasonable search, and are not subject to a claim of privilege or immunity, they will be produced.

**57. For each expert that you will offer at trial, (a) a current curriculum vitae, (b) all documents upon which the expert relied in issuing his or her opinion(s), (c) all transcripts of any testimony by the expert, and (d) all publication by the expert.**

**RESPONSE:**

The July 30, 2005 Joint Statement agreed to by the parties provides a schedule for the exchange of information regarding expert witnesses. At least on this basis, Plaintiffs object to Request No. 57 as premature. Plaintiffs will respond to this request at the appropriate time as determined by, and in the matter required by, the Federal Rules of Civil Procedure, the Local Rules or Court order.

**58. All expert reports for experts that you intend to offer at trial.**

**RESPONSE:**

The July 30, 2005 Joint Statement agreed to by the parties provides a schedule for the exchange of information regarding expert witnesses. At least on this basis, Plaintiffs object to Request No. 58 as premature. Plaintiffs will respond to this request at the appropriate time as determined by, and in the matter required by, the Federal Rules of Civil Procedure, the Local Rules or Court order.

Respectfully submitted,

**PETER J. MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.,**

By their attorneys:

Dated: October 3, 2005

Martin B. Pavane
Teodor J. Holmberg (BBO# 634708)
COHEN, PONTANI, LIEBERMAN AND PAVANE
551 Fifth Avenue
New York, New York 10176
Tel. (212) 687-2770
Fax (212) 972-5487
E-mail: **tidge@cplplaw.com**

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201
E-mail: **BMichaelis@brownrudnick.com**

## CERTIFICATE OF SERVICE

I hereby certify that I am serving a true copy of the foregoing document (identified in the top right-hand corner of this certificate) on the date indicated below via electronic mail upon Counsel for the Defendants at the following e-mail addresses:

afitzpatrick@duanemorris.com

pweller@morganlewis.com

Dated: October 3, 2005

_____
Martin B. Pavane
Teodor J. Holmberg (BBO# 634708)
COHEN, PONTANI, LIEBERMAN AND PAVANE
551 Fifth Avenue
New York, New York 10176
Tel. (212) 687-2770
Fax (212) 972-5487
E-mail: **tidge@cplplaw.com**

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201
E-mail: **BMichaelis@brownrudnick.com**

# EXHIBIT C

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON
WESTCHESTER

ANTHONY J. FITZPATRICK
DIRECT DIAL: 617.289.9220
E-MAIL: ajfitzpatrick@duanemorris.com

www.duanemorris.com

October 20, 2005

Teodor J. Holmberg, Esquire
Cohen Pontani Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176-1022

Re:    **Cambridge Research and Instrumentation, Inc., Peter J. Miller and Clifford
Hoyt v. ChemImage Corporation and Patrick Treado
Civil Action No. 05-10367-RWZ (D. Mass.)**

Dear Mr. Holmberg:

   This letter is a request for a discovery conference pursuant to Local Rule 37.1, to address certain deficiencies in Plaintiffs' written responses to our discovery requests.

   In ChemImage's Interrogatory No. 7, we asked Plaintiffs to identify each claim in U.S. Patent No. 6,734,962 that they contend Miller and/or Hoyt invented either individually, or jointly with one or more persons. For each such claim, the Interrogatory asked Plaintiffs to identify "the specific language from the claim corresponding to such contribution," and to identify all documents and communications that refer or relate to the contributions described. In their response, Plaintiffs maintain that Miller and/or Hoyt "contributed to the subject matter of each claim in U.S. Patent No. 6,734,962." However, in response to our request that Plaintiffs identify specific language from the claims corresponding to such contributions, Plaintiffs failed to identify any language from claims 2, 5-11, or 13-16 of the patent-in-suit. At this point in the litigation, nothing could be more fundamental than an identification of the patent claim elements that Miller and Hoyt contend that they co-invented. We ask that you provide a complete response to our Interrogatory No. 7 for each claim of the patent-in-suit, identifying the specific language from the claim corresponding to the alleged contribution from Hoyt and/or Miller.

   We also note that Plaintiffs have objected to the production of documents responsive to our Request No. 47, which called for "all agreements whereby one or more plaintiffs license intellectual property rights to liquid tunable crystal filter technology from a third-party." Based on the Complaint, it appears that Plaintiffs now contend that they "contributed" the LCTF technology that is described in the patent-in-suit. To the extent that Plaintiffs contend that they invented such LCTF technology, any agreement whereby Plaintiffs licensed such technology

DuaneMorris

Teodor J. Holmberg, Esquire
October 20, 2005
Page 2

from a third-party would directly refute Plaintiffs' inventorship claim.  Such agreements are clearly relevant and should be produced.

        We suggest that the discovery conference to address these issues occur at the same time as the discovery conference you have requested.  As I indicated in my e-mail message to you earlier today, we are available for such a conference after the status conference before Judge Zobel on Tuesday, October 25.

                                    Sincerely,

                                    Anthony J. Fitzpatrick

AJF/lnw
cc:    Paul Weller, Esq.

# EXHIBIT D

DuaneMorris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON

ANTHONY J. FITZPATRICK
DIRECT DIAL: 617.289.9220
E-MAIL: ajfitzpatrick@duanemorris.com

www.duanemorris.com

December 9, 2005

VIA EMAIL AND REGULAR MAIL

Teodor J. Holmberg, Esq.
Cohen Pontani Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176-1022

> **Re:** **Miller, et al. v. Treado, et al.**
> **United States District Court, District of Massachusetts**
> **Case No. 05-10367**

Dear Tidge:

I am writing further to our discovery conference of November 30, 2005.

1. Discovery Requests Propounded by Defendants:

This will confirm that the plaintiffs have agreed as follows:

(a) The plaintiffs will supplement their response to the defendants' interrogatory no. 7, by providing a detailed and adequate response to each sub-part of the interrogatory no later than December 14, 2005. Given the significance of this interrogatory, please be advised that, should the supplemental response be inadequate in any respect, the defendants will file a motion to compel a complete and adequate response.

(b) The plaintiffs have withdrawn their objection to the defendants request for production no. 47, and will produce documents responsive to the request.

2. Document Requests Propounded by Plaintiffs:

(a) Request No. 1:

The plaintiffs have withdrawn sub-parts (f) and (h) of request no. 1. As to the remaining sub-parts of this request, the defendants will produce responsive documents concerning the following patent and patent applications: (i) U.S. Provisional Patent Application No. 60/239,969

DuaneMorris

Teodor J. Holmberg, Esq.
December 9, 2005
Page 2

(the provisional application upon which the patent-in-suit is based); (ii) U.S. Patent Application No. 09/976,391 (the patent application that matured into the patent-in-suit); (iii) U.S. Patent No. 6,734,962 (the patent-in-suit); and (iv) U.S. Reissue Application No. 11/103,423 (the reissue application corresponding to the patent-in-suit).

The plaintiffs have not asserted any claim of inventorship with respect to the remaining five patents and patent applications listed in your letter of October 18. Furthermore, of those five patents and applications, two (Application No. 09/064,0347 and Patent No. 6,002,476) have no priority or continuity claim in common with the above-referenced patent and patent applications. The remaining three applications claim priority back to the patent in suit, and hence come in time after the application that gave rise to the patent in suit. Unless and until the plaintiffs can articulate with specificity why they believe documents pertaining to these other patents and patent applications are discoverable in this case, the defendants will not agree to produce them.

    (b)    Request No. 4:

The defendants continue to object to Request No. 4 on the grounds of the attorney-client privilege and the work product doctrine. Furthermore, evidence concerning the Covenant Not To Sue would be inadmissible under Fed. R. Evid. 408. Thus, to the extent that Request No. 4 would cover documents not within the scope of the attorney-client privilege or the work product doctrine, the request is not reasonably calculated to lead to the discovery of admissible evidence.

    (c)    Request No. 6:

The defendants will agree to produce documents concerning (i) the purported collaboration between CRI and ChemImage on the Small Business Innovation Research (SBIR) grant from the National Science Foundation, and (ii) any other purported collaborations between CRI and ChemImage relating to the inventions claimed in the patent in suit. To the extent that Request No. 6 seeks other documents, the defendants continue to object to the request on the ground *inter alia* that it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence.

    (d)    Request No. 8:

As previously indicated, the defendants will produce documents concerning sub-part (a) of Request No. 8. We continue to object to sub-parts (b)-(d) of Request No. 8, on the ground that none of those sub-parts pertains to a purported collaboration between the individual parties to this litigation, and hence those subparts are not reasonably calculated to the discovery of admissible evidence.

DuaneMorris

Teodor J. Holmberg, Esq.
December 9, 2005
Page 3


    (e)    Request No. 12:

ChemImage has no documents responsive to this request.

    (f)    Objection to Document Requests Beyond Patent Claims 3 and 4:

As you know, the defendants have objected to several of the plaintiffs' document requests to the extent those requests seek documents pertaining to claims other than claims 3 and 4 of the patent in suit, on the ground that in their complaint the plaintiffs assert claims of co-inventorship only with respect to claims 3 and 4. As we discussed during the discovery conference, if the plaintiffs' supplemental response to the defendants' interrogatory no. 7 provides adequate information concerning claims other than claims 3 and 4, then the plaintiffs will reconsider this objection.

    Sincerely,

    Anthony J. Fitzpatrick

AJF/lnw
cc:    Paul D. Weller, Esq.

# EXHIBIT E

# cplp

**COHEN PONTANI LIEBERMAN & PAVANE**
551 Fifth Avenue, New York, NY 10176  *phone* 212.687.2770  *fax* 212.972.5487  www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.

———————

Sidney R. Bresnick
Of Counsel

———————

Yunling Ren, Ph.D.
Julia S. Kim
Mindy H. Chettih
Vincent M. Fazzari
Alfred W. Froebrich
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Lisa A. Ferrari
Richard D. Margiano
Darren S. Mogil
David P. Badanes
James P. Doyle
Mher Hartoonian
Alphonso A. Collins
Jason S. Howell
Douglas D. Zhang
Edward V. DiLello
F. Brice Faller
Edward M. Reisner

———————

Enshan Hong
Technical Advisor

January 11, 2006

***VIA E-MAIL (CONFIRMATION BY MAIL)***

Paul D. Weller, Esq.
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Anthony J. Fitzpatrick, Esq.
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

Re:    November 30, 2005 Discovery Conference in
       Cambridge Research & Instrumentation, Inc., Peter J. Miller
       and Clifford Hoyt  v. ChemImage Corporation and Patrick Treado
       Civ. No. 05-10367-RWZ (D.Mass.)
       <u>Our File No.: 34250-60L</u>

Dear Messrs. Weller and Fitzpatrick:

In response to your letter of December 9, 2005:

1. **<u>Discovery Requests Propounded by Defendants</u>**

As stated in your letter, plaintiffs have agreed to supplement their response to defendants' interrogatory no. 7. We agreed to attempt to provide it by December 14, 2005, which we were unable to do, as, we note, you have been unable to send us a revised draft of the protective order (without which, it appears, neither party will produce documents). We will provide our supplemental response as soon as possible. Please provide your revisions to the draft protective order we sent you on November 10, 2005 as soon as possible so that both sides can begin to produce documents.

Regarding plaintiffs' objection to defendants' document requests no. 47, we stated very clearly in the teleconference that we would confer with the client, but that we thought it would not be a problem. However, this was in the context of a conversation in which you stated you would go back to your client and see if there would be any movement on the various document requests for which the defendants refused to provide any documents at all or whose scope defendants unjustifiably narrowed. We do not believe you have adequately shown that the subject matter of document request no. 47 is relevant to this litigation. However, in the spirit of good faith bargaining, we indicated that we thought plaintiff would be willing to hand over those documents. Frankly, it was just a matter of practicality: we don't want to waste the Court's time and our clients' money on this issue. However, being reasonable and bargaining in good faith only make sense if both parties intend to do it.



Page 2
January 11, 2006

2.  **Discovery Requests Propounded by Plaintiffs**

    (a) Plaintiffs have *provisionally* withdrawn subparts (f) and (g) of document request no. 1, i.e., without prejudice to plaintiffs re-asserting those sub-parts if it becomes clear discovery is needed in those areas. Basically, discovery has just started; let's see how things evolve.

    (b) In defendants' response to document request no. 1, defendants narrowed the list of twenty patents and patent applications in plaintiffs' document request no. 1 to four patents and patent applications. In the teleconference, we agreed to *provisionally* narrow down the list to those four plus U.S. Pat. No. 6,002,476 and U.S. Pat. App. No. 09/064,347 because that patent and patent application recite practically identical subject matter as the patent-in-suit, resulted from the same collaboration of CRi and ChemImage that led to plaintiffs' present inventorship claim, and led to the exact same dispute about inventorship as the present litigation, except, in that case, defendants executed a Covenant Not to Sue. You indicated you would "go back to the client" with our offer. The response? Defendants refuse to budge. You have threatened, in your letter, to file a motion to compel if you think the interrogatory answer we agreed to supplement is "inadequate in any respect". Similarly, we expect the defendants to produce documents concerning U.S. Pat. No. 6,002,476 and U.S. Pat. App. No. 09/064,347 in response to document request no. 1; if defendants do not produce them, we will file a motion to compel with the Court.

    (c) Plaintiffs' document request no. 4 refers directly to the Covenant Not To Sue that defendants executed in regards to U.S. Pat. No. 6,002,476 and U.S. Pat. App. No. 09/064,34; we expect any non-privileged responsive documents responsive thereto will be produced by defendants.

    (d) Regarding your objections to Request Nos. 6 and 8, we are willing to *provisionally* hold in abeyance the original scope of those requests, thereby allowing you to produce documents according to the limitations you have proposed. However, this in no way prejudices our right to later assert the full scope of those requests; we do this mostly out of a desire to get the production process started.

We look forward to your response.


Very truly yours,
COHEN, PONTANI, LIEBERMAN & PAVANE



Teodor J. Holmberg

MBP/TJH/tdg

# EXHIBIT F

Part one

DuaneMorris®·

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON
LAKE TAHOE

ANTHONY J. FITZPATRICK
DIRECT DIAL: 617.289.9220
*E-MAIL:* ajfitzpatrick@duanemorris.com

*www.duanemorris.com*

January 31, 2006

VIA E-MAIL AND REGULAR MAIL

Teodor J. Holmberg, Esq.
Cohen Pontani Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176-1022

Re:    **Cambridge Research & Instrumentation, Inc., Peter J. Miller and
Clifford Hoyt v. ChemImage Corporation and Patrick Treado
Civil No. 05-10367-(RWZ) (D. Mass.)**

Dear Mr. Holmberg:

We respond as follows to your letter dated January 11, 2006:

1.    Discovery Requests Propounded by Defendants

Interrogatory No. 7

Interrogatory No. 7 goes to the heart of this litigation, and requires plaintiffs to describe in detail the basis for their contentions of inventorship with respect to each claim of the patent-in-suit. During the conference before Judge Zobel on October 25, 2005, plaintiffs agreed to supplement their original response to this Interrogatory, which was clearly deficient. During our discovery conference on November 30, 2005, plaintiffs agreed to supplement this Interrogatory by December 14, 2005. Plaintiffs have failed to honor this deadline. At this point, two months have passed since plaintiffs committed to supplement this Interrogatory, and seven weeks have passed since the agreed deadline for supplementation. We intend to file a Motion To Compel a response to this Interrogatory within the next several days, and will be seeking reimbursement for costs.

Document Request No. 47

Document Request No. 47 also goes to the heart of this litigation, and requires plaintiffs to produce all agreements whereby plaintiffs license intellectual property rights to liquid crystal tunable filter (LCTF) technology from a third-party. Plaintiffs contend that they are co-inventors

DuaneMorris

Teodor J. Holmberg, Esq.
January 31, 2006
Page 2

of the patent-in-suit because they claim to have invented LCTF technology. To the extent that plaintiffs license LCTF technology from third-parties, such licenses would clearly be relevant to plaintiffs' contention that they invented LCTF technology. You state that you do not believe that we "have adequately shown that the subject matter of document request no. 47 is relevant to this litigation." We believe that the Court will readily see the relevance of this Document Request, and therefore intend to file a Motion To Compel a response to this Document Request within the next few days.

2.     Discovery Requests Propounded by Plaintiffs

Document Request No. 1 – U.S. Pat. No. 6,002,476 and U.S. Pat. Appl. No. 09/064,347

In response to plaintiffs' assertion that we should produce documents concerning U.S. Patent No. 6,002,476 and U.S. Patent Appl. No. 09/064,347, we stand by our position that this patent and patent application are completely unrelated to the issue in this case, namely whether Miller and Hoyt co-invented subject matter claimed in the patent-in-suit (i.e., U.S. Patent No. 6,734,962). It strains the imagination to understand how a patent and patent application for which no claim of co-ownership is even being asserted are pertinent to this litigation. In addition, we strenuously disagree with plaintiffs' suggestion that U.S. Patent No. 6,002,476 and U.S. Patent Appl. No. 09/064,347 were based on a collaboration between CRI and ChemImage.

Document Request No. 4

We continue to stand by our objection to production of documents relating to the Covenant Not To Sue that was executed in connection with U.S. Patent No. 6,002,476 and U.S. Patent Appl. No. 09/064,347. Again, this patent and patent application are completely unrelated to the issue in this case, namely whether Miller and Hoyt co-invented subject matter claimed in the patent-in-suit (i.e., U.S. Patent No. 6,734,962). Plaintiffs have been unable to explain how a Covenant Not To Sue concerning a patent and patent application for which no claim of co-ownership is even being asserted could possibly lead to the discovery of admissible evidence in this litigation.

3.     Protective Order

We enclose a revised draft of the Protective Order, together with a black-line version showing our changes. As you will see, we have added a "Confidential – Attorneys Eyes Only" level of protection, and deleted the provision that would have allowed either side to freely disclose the other party's confidential information to the Patent Office.

DuaneMorris

Teodor J. Holmberg, Esq.
January 31, 2006
Page 3

Sincerely,

Anthony J. Fitzpatrick

AJF/lnw
Enclosures
cc:    Paul D. Weller, Esq.

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER J. MILLER, an individual,<br>CLIFFORD HOYT, an individual, and<br>CAMBRIDGE RESEARCH AND<br>INSTRUMENTATION, INC.,<br>a Delaware corporation,<br><br>        Plaintiffs,<br><br>        v.<br><br>PATRICK TREADO, an individual, and<br>CHEMIMAGE CORP., a Delaware<br>corporation,<br><br>        Defendants. | Civil Action No. 05-10367-RWZ |

## <u>STIPULATED [PROPOSED] PROTECTIVE ORDER</u>

Subject to approval by the Court, plaintiffs Peter J. Miller, Clifford Hoyt and

Cambridge Research and Instrumentation, Inc. and defendants, Patrick Treado and

ChemImage Corp., hereby stipulate to the entry of the following [Proposed] Protective Order,

which shall govern all production of <u>Protected Material (defined below), including</u> documents

and things produced or filed by any party or non-party to this action.

## A.  SCOPE

1.  The protections conferred by this Order cover not only Protected Material (as defined below), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Material.

2.  Discovery Material: all items or information, regardless of the medium or manner generated, stored, or maintained including, but not limited to, documents, things, testimony and information produced or generated in disclosures or responses to discovery in this action.

3.  Protected Material: any Discovery Material that is designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" in accordance with this Order.

## B.  DESIGNATION OF PROTECTED MATERIAL

1.  Each party or non-party shall only designate as "CONFIDENTIAL" all or part of any document, thing, testimony or information that contain or constitute commercial, technical or business information which that party in good faith believes constitutes proprietary business information which information is not generally known and which that party would normally not reveal to third party or, if disclosed, would require such third party to maintain in confidence.

2.  If a party or non-party believes in good faith that (a) certain information is of an especially sensitive commercial or proprietary nature, and (b) disclosure of such information to the persons described in paragraph B(4)(c) would pose an undue risk of competitive injury, the party or non-party may designate such information as "CONFIDENTIAL – ATTORNEYS' EYES ONLY."

3.  Except as otherwise provided in this Order, or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

    Designation in conformity with this Order requires:

    (a)  Documents (apart from transcripts of depositions or other pretrial or trial proceedings): the producing party affix the legend "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" at the top or bottom of each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the producing party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

    (b)  Depositions will be treated as CONFIDENTIAL – ATTORNEYS' EYES ONLY until 20 days after receipt of the transcript thereof. The producing party shall, within said 20 days, identify and designate any portions of such testimony as to which it requires protection from disclosure under this Order. Only those portions of the testimony that are appropriately designated for protection within the 20 days shall be covered thereafter by the provisions of this Stipulated Protective Order.

(c) For information produced in other than documentary form, and for any other tangible items, the producing party shall affix in a prominent place on the exterior of said item the legend "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER". If only portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portions.

3.4. Inadvertent failure to designate appropriate material produced as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" shall not constitute a waiver of any otherwise valid claim for protection under this Order. A party may cure an inadvertent failure to place a legend or otherwise designate a document or other information at the time of its production as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" by so notifying the receiving party within ten (10) business days after the initial production, whereupon such Protected Material shall be treated as "CONFIDENTIAL" designated in the corrective notification. Upon receipt of a timely corrective notification, the receiving party shall immediately take all reasonable steps to retrieve the Protected Material and any copies thereof, and either

(a) designate the Protected Material as in the manner specified in the corrective notification as either "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER", or

(b) return the Protected Material to the producing party for proper designation. The cost of re-designation will be borne by the producing party.

Unless the producing party seeks to cure the inadvertent failure to designate the material as specified in this section, the producing party will have waived any right to designate said material.

4.5. If it comes to a Party's or a non-party's attention that information or items that it designated do not qualify for protection at all, that Party or non-party is obligated to promptly notify all other parties that it is withdrawing the mistaken designation.

## C.  CHALLENGING CONFIDENTIALITY DESIGNATIONS

1. A party shall not be obligated to challenge the propriety of any designation of Protected Material as "CONFIDENTIAL" at the time made, and failure to do so shall not preclude a subsequent challenge thereto.

2. In the event that any party disagrees at any stage of this action with any confidentiality designation, such party shall provide to the producing party written notice of its disagreement with the designation. Within seven (7) days of service of the written notice, the parties will have a conference in order to dispose of such dispute in good faith and on an informal basis. In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the

circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.

3. Within seven (7) days of the conference, if the dispute cannot be resolved, the party challenging the designation may request appropriate relief from the Court by motion. The burden of proving that Protected Material has been properly designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" is on the designating party.

4. Designations that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, to impose unnecessary expenses and burdens on other parties, or to avoid disclosing information which it has a duty to disclose to an administrative agency), expose the designating party to sanctions.

## D.  DISCLOSURE OF PROTECTED MATERIAL TO EXPERTS

1. [CRI to supply missing language] a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action and who is not a current employee of a Party or of a competitor of a Party's, and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party's. This definition includes a professional jury or trial consultant retained in connection with this litigation.

2. Protected Material may be disclosed by counsel of a receiving party to an expert, subject to the provisions of this section.

3. ~~Twenty~~Ten days before Protected Material is disclosed to an expert, the receiving party retaining said expert must serve upon the counsel of record:

    (a) written notice to counsel of record stating the name, address, and current employer of said expert;

    (b) a curriculum vitae of said expert, setting forth said expert's area of expertise, experience, qualifications, relevant work experience, etc.; and

    (c) an undertaking in the form of Exhibit A, attached hereto, signed by said expert.

4. If no party objects in writing to said expert, setting forth the grounds for such objection, within twenty days of service of the notice described above, Protected Material may be shown to said expert.

5. If a party objects to an expert, a conference between the parties will be held within seven days of service of the written objection.  If agreement of the parties cannot be reached at said conference, then the objecting party must file a motion with the Court within seven days of said conference seeking to bar the expert.  Failure to file such motion shall constitute a withdrawal of said objection.

## E.  ACCESS TO AND USE OF PROTECTED MATERIAL

1. A receiving party may use Protected Material solely for the purpose of conducting this Action, not for any other litigation, domestics or foreign, and not for any other purpose whatsoever, unless a Court having jurisdiction over the Plaintiffs or Defendants shall order otherwise. Such Protected Material may be disclosed only to the categories of

persons and under the conditions described in this Order. When the litigation has been terminated, a receiving party must comply with the provisions of section below, entitled FINAL DISPOSITION.

2.  In the event that any Protected Material is used in any Court proceeding in connection with this action, it shall not lose its status as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" through such use, and the parties shall take all reasonable steps to protect the confidentiality of such Protected Material during such use.

3.  The receiving party of any Protected Material shall exercise the same standard of due and proper care with respect to the storage, custody, use, and dissemination of such Protected Material as is exercised by the receiving party with respect to their own proprietary information.

4.  Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose Protected Material designated as "CONFIDENTIAL" only to:

    (a)  The receiving party's Outside Counsel of record in this action, employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation, and professional vendors which provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors to whom it is reasonably necessary to disclose the information for this litigation;

    (b)  The receiving party's Experts (as defined and limited in this Order) to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by the Protective Order" (Exhibit A);

    (c)  The receiving party's officers, directors, and employees to whom disclosure is reasonably necessary for this litigation;

    (d)  The Court, jury, or other Court personnel, including, but not limited to, stenographers and videographers covering any deposition, hearing, or trial in this action;

    (e)  Any individual whom the "CONFIDENTIAL" document or information clearly identifies as an author, addressee or recipient; and

    (f)  Deponents or witnesses to whom disclosure is reasonably necessary and who have signed the attached "Agreement To Be Bound by the Protective Order" (Exhibit A).

5.  ~~Any~~Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose Protected Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

    (a)  The receiving party's Outside Counsel of record in this action, employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation, and professional vendors which provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any

form or medium; etc.) and their employees and subcontractors to whom it is reasonably necessary to disclose the information for this litigation;

(b) The receiving party's Experts (as defined and limited in this Order) to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by the Protective Order" (Exhibit A);

(c) The Court, jury, or other Court personnel, including, but not limited to, stenographers and videographers covering any deposition, hearing, or trial in this action;

(d) Any individual whom the "CONFIDENTIAL" document or information clearly identifies as an author, addressee or recipient; and

(e) Deponents or witnesses to whom disclosure is reasonably necessary and who have signed the attached "Agreement To Be Bound by the Protective Order" (Exhibit A).

6. Any party may disclose or use, in any manner and/or for any purpose, information which they have designated as "CONFIDENTIAL"- or "CONFIDENTIAL —ATTORNEYS' EYES ONLY.".

6. Any material, regardless of designation, which is material to a proceeding before the United States Patent and Trademark Office, may be submitted to the United States Patent and Trademark Office without fear of sanctions under this Order.

## F.  PROTECTED vs. PRIVILEGED MATERIAL

1. Nothing in this Order is intended to address the grounds of attorney-client privilege or work product, or to preclude any party from seeking relief or other protective orders from the Court as may be appropriate in regards to attorney-client privilege or work product.

2. The inadvertent production of any document or thing by any party shall be without prejudice to any claim by the producing party that such document or thing is protected by attorney-client privilege or protected from discovery as work product within the meaning of Fed.R.Civ.P. 26. If after documents are disclosed, a producing party asserts that such documents are protected by the attorney-client privilege or work product doctrine and were inadvertently produced, the receiving party shall take prompt steps to ensure that all known copies of such documents are returned promptly to the producing party. The cost, if any, for excising such documents by the receiving party shall be borne by the producing party. The receiving party may thereafter contest such claims of privilege or work product as if the materials had not been produced, but in contesting such claim shall not rely on any portion of the document other than the description set forth in the producing party's privilege log as per Fed. R. Civ. P. 26(b)(5) and the receiving party shall not assert that a waiver occurred as a result of the inadvertent production.

## G  PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION.

1.  If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any information or items designated in this action as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY", the receiving party must so notify the designating party, in writing (by e-mail, if possible) immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

2.  The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all the material covered by the subpoena or order is the subject of this Protective Order. In addition, the receiving party must deliver a copy of this Stipulated Protective Order promptly to the Party in the other action that caused the subpoena or order to issue.

3.  The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the designating party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued. The designating party shall bear the burdens and the expenses of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court.

## H.  UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a receiving party discloses, by inadvertence or otherwise, Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the receiving party must immediately:

(a)  notify in writing the designating party of the unauthorized disclosures;

(b)  use its best efforts to retrieve all copies of the Protected Material;

(c)  inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and

(d)  request such person or persons to execute the "Agreement to Be Bound by the Protective Order" that is attached hereto as Exhibit A.

## I.  DURATION

Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until

(a)  a designating party agrees otherwise in writing;

(b)  a court order otherwise directs; or

(c)  the material otherwise becomes public through no fault of the receiving party.

## J.  FINAL DISPOSITION

1.  Unless otherwise ordered or agreed in writing by the producing party, within sixty days after the final termination of this action, each receiving party must return all Protected Material to the producing party. Further, this Order shall survive the final termination of the Action and the Court shall retain jurisdiction to resolve any dispute concerning the use of any Protected Material designated "CONFIDENTIAL" or "CONFIDENTIAL –

ATTORNEYS' EYES ONLY", provided, however, that this Order shall not be construed:

    (a) to prevent any party or its attorneys from making use of Protected Material lawfully in their possession prior to its disclosure by the producing party;

    (b) to apply to Protected Material which appears in issued patents or printed publications;

    (c) to apply to Protected Material which is, or later becomes, publicly known through no fault of the receiving party; or

    (c) to apply to Protected Material which any party or its attorney has, after disclosure by the producing party, lawfully obtained from a third party having the right to disclose such Protected Material.

2. As used in this subdivision, all "Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material. With prior permission in writing from the designating party, the receiving party may destroy some or all of the Protected Material instead of returning it. Whether the Protected Material is returned or destroyed, the receiving party must submit a written certification to the producing party (and, if not the same person or entity, to the designating party) by the sixty day deadline that identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and that affirms that the receiving party has not retained any copies, abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material.

3. Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in the Section entitled DURATION above.

**K. MISCELLANEOUS**

1. Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

2. By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

Respectfully submitted,

**PLAINTIFFS**
**PETER J. MILLER,**
**CLIFFORD HOYT, and**
**CAMBRIDGE RESEARCH AND**
**INSTRUMENTATION, INC.**

**DEFENDANTS**
**PATRICK TREADO and**
**CHEMIMAGE CORPORATION**

By their attorneys,

/s/ Teodor J. Holmberg
Martin B. Pavane (admitted pro hac vice)
Teodor J. Holmberg (BBO #634708)
Cohen, Pontani, Lieberman, and Pavane
551 Fifth Avenue
New York, NY 10176
Tel. (212) 687-2770
Fax. (212) 972-5487
e-mail: tidge@cplplaw.com

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201

DATED:  January 12, 2006

By their attorneys,

/s/ Anthony J. Fitzpatrick
Anthony J. Fitzpatrick (BBO #564324)
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Tel. 617-289-9220
Fax 617-289-9201
e-mail: ajfitzpatrick@duanemorris.com

Paul D. Weller (admitted pro hac vice)
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103
Tel. (215) 963-5530
eFax (215) 963-5001

Stipulated {Proposed] Protective Order

# **EXHIBIT A**

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation,

                    Plaintiffs,

                    v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

                    Defendants.

Civil Action No. 05-10367-RWZ
in the
U.S. DISTRICT COURT
FOR MASSACHUSETTS

**AGREEMENT TO BE BOUND
BY THE PROTECTIVE ORDER
ENTERED IN THE
UNITED STATES DISTRICT COURT FOR MASSACHUSETTS
ON_____, 2005**

The undersigned hereby acknowledges that he or she has read the protective order in the case identified above, and that he or she understands the terms thereof, and that he or she agrees to be bound by such terms.

~~The undersigned hereby agrees that he or she will not provide non-litigation related services to any party to this litigation, for a period of five years from the final disposition of this litigation including any and all appeals.~~

Dated:_____          _____

- Page 10 of ~~12~~12 -

# **EXHIBIT A**

BOS\143335.1

Document comparison done by DeltaView on Thursday, January 12, 2006 11:40:02 AM

| Input: | |
|---|---|
| Document 1 | interwovenSite://BOS/BOS/143335/1 |
| Document 2 | interwovenSite://bos/BOS/143334/1 |
| Rendering set | DM - Double Underline Strikethrough |

| Legend: |
|---|
| Insertion |
| Deletion |
| Moved from |
| Moved to |
| Style change |
| Format change |
| Moved deletion |
| Inserted cell |
| Deleted cell |
| Moved cell |
| Split/Merged cell |
| Padding cell |

| Statistics: | Count |
|---|---|
| Insertions | 36 |
| Deletions | 13 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 49 |

# EXHIBIT F

Part two

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PETER J. MILLER, an individual, CLIFFORD HOYT, an individual, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> PATRICK TREADO, an individual, and CHEMIMAGE CORP., a Delaware corporation, <br><br> Defendants. | Civil Action No. 05-10367-RWZ |

## STIPULATED [PROPOSED] PROTECTIVE ORDER

Subject to approval by the Court, plaintiffs Peter J. Miller, Clifford Hoyt and Cambridge Research and Instrumentation, Inc. and defendants, Patrick Treado and ChemImage Corp., hereby stipulate to the entry of the following [Proposed] Protective Order, which shall govern all production of Protected Material (defined below), including documents and things produced or filed by any party or non-party to this action.

## A. SCOPE

1. The protections conferred by this Order cover not only Protected Material (as defined below), but also any information copied or extracted therefrom, as well as all copies, excerpts, summaries, or compilations thereof, plus testimony, conversations, or presentations by parties or counsel to or in court or in other settings that might reveal Protected Material.

2. <u>Discovery Material</u>: all items or information, regardless of the medium or manner generated, stored, or maintained including, but not limited to, documents, things, testimony and information produced or generated in disclosures or responses to discovery in this action.

3. <u>Protected Material</u>: any Discovery Material that is designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" in accordance with this Order.

## B. DESIGNATION OF PROTECTED MATERIAL

1. Each party or non-party shall only designate as "CONFIDENTIAL" all or part of any document, thing, testimony or information that contain or constitute commercial, technical or business information which that party in good faith believes constitutes proprietary business information which information is not generally known and which that party would normally not reveal to third party or, if disclosed, would require such third party to maintain in confidence.

2. If a party or non-party believes in good faith that (a) certain information is of an especially sensitive commercial or proprietary nature, and (b) disclosure of such information to the persons described in paragraph E(4)(c) would pose an undue risk of competitive injury, the party or non-party may designate such information as "CONFIDENTIAL – ATTORNEYS' EYES ONLY."

3. Except as otherwise provided in this Order, or as otherwise stipulated or ordered, material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

   Designation in conformity with this Order requires:

   (a) <u>Documents</u> (apart from transcripts of depositions or other pretrial or trial proceedings): the producing party affix the legend "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" at the top or bottom of each page that contains protected material. If only a portion or portions of the material on a page qualifies for protection, the producing party also must clearly identify the protected portion(s) (e.g., by making appropriate markings in the margins).

   (b) <u>Depositions</u> will be treated as CONFIDENTIAL – ATTORNEYS' EYES ONLY until 20 days after receipt of the transcript thereof. The producing party shall, within said 20 days, identify and designate any portions of such testimony as to which it requires protection from disclosure under this Order. Only those portions of the testimony that are appropriately designated for protection within the 20 days shall be covered thereafter by the provisions of this Stipulated Protective Order.

    (c) For information produced in other than documentary form, and for any other tangible items, the producing party shall affix in a prominent place on the exterior of said item the legend "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER".  If only portions of the information or item warrant protection, the producing party, to the extent practicable, shall identify the protected portions.

4. Inadvertent failure to designate appropriate material produced as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" shall not constitute a waiver of any otherwise valid claim for protection under this Order.  A party may cure an inadvertent failure to place a legend or otherwise designate a document or other information at the time of its production as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" by so notifying the receiving party within ten (10) business days after the initial production, whereupon such Protected Material shall be treated as designated in the corrective notification.  Upon receipt of a timely corrective notification, the receiving party shall immediately take all reasonable steps to retrieve the Protected Material and any copies thereof, and either

    (a) designate the Protected Material in the manner specified in the corrective notification as either "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY - SUBJECT TO PROTECTIVE ORDER" , or

    (b) return the Protected Material to the producing party for proper designation. The cost of re-designation will be borne by the producing party.

Unless the producing party seeks to cure the inadvertent failure to designate the material as specified in this section, the producing party will have waived any right to designate said material.

5. If it comes to a Party's or a non-party's attention that information or items that it designated do not qualify for protection at all, that Party or non-party is obligated to promptly notify all other parties that it is withdrawing the mistaken designation.

## C.  CHALLENGING CONFIDENTIALITY DESIGNATIONS

1. A party shall not be obligated to challenge the propriety of any designation of Protected Material as "CONFIDENTIAL" at the time made, and failure to do so shall not preclude a subsequent challenge thereto.

2. In the event that any party disagrees at any stage of this action with any confidentiality designation, such party shall provide to the producing party written notice of its disagreement with the designation.  Within seven (7) days of service of the written notice, the parties will have a conference in order to dispose of such dispute in good faith and on an informal basis.  In conferring, the challenging party must explain the basis for its belief that the confidentiality designation was not proper and must give the designating party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the chosen designation.

3.  Within seven (7) days of the conference, if the dispute cannot be resolved, the party challenging the designation may request appropriate relief from the Court by motion. The burden of proving that Protected Material has been properly designated as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" is on the designating party.

4.  Designations that are shown to be clearly unjustified, or that have been made for an improper purpose (e.g., to unnecessarily encumber or retard the case development process, to impose unnecessary expenses and burdens on other parties, or to avoid disclosing information which it has a duty to disclose to an administrative agency), expose the designating party to sanctions.

## D.  DISCLOSURE OF PROTECTED MATERIAL TO EXPERTS

1.  **[CRI to supply missing language]** a person with specialized knowledge or experience in a matter pertinent to the litigation who has been retained by a Party or its counsel to serve as an expert witness or as a consultant in this action and who is not a current employee of a Party or of a competitor of a Party's and who, at the time of retention, is not anticipated to become an employee of a Party or a competitor of a Party's. This definition includes a professional jury or trial consultant retained in connection with this litigation.

2.  Protected Material may be disclosed by counsel of a receiving party to an expert, subject to the provisions of this section.

3.  Ten days before Protected Material is disclosed to an expert, the receiving party retaining said expert must serve upon the counsel of record:
    (a)  written notice to counsel of record stating the name, address, and current employer of said expert;
    (b)  a curriculum vitae of said expert, setting forth said expert's area of expertise, experience, qualifications, relevant work experience, etc.; and
    (c)  an undertaking in the form of Exhibit A, attached hereto, signed by said expert.

4.  If no party objects in writing to said expert, setting forth the grounds for such objection, within twenty days of service of the notice described above, Protected Material may be shown to said expert.

5.  If a party objects to an expert, a conference between the parties will be held within seven days of service of the written objection. If agreement of the parties cannot be reached at said conference, then the objecting party must file a motion with the Court within seven days of said conference seeking to bar the expert. Failure to file such motion shall constitute a withdrawal of said objection.

## E.  ACCESS TO AND USE OF PROTECTED MATERIAL

1.  A receiving party may use Protected Material solely for the purpose of conducting this Action, not for any other litigation, domestics or foreign, and not for any other purpose whatsoever, unless a Court having jurisdiction over the Plaintiffs or Defendants shall order otherwise. Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order. When the litigation has been

terminated, a receiving party must comply with the provisions of section below, entitled FINAL DISPOSITION.

2.  In the event that any Protected Material is used in any Court proceeding in connection with this action, it shall not lose its status as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY" through such use, and the parties shall take all reasonable steps to protect the confidentiality of such Protected Material during such use.

3.  The receiving party of any Protected Material shall exercise the same standard of due and proper care with respect to the storage, custody, use, and dissemination of such Protected Material as is exercised by the receiving party with respect to their own proprietary information.

4.  Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose Protected Material designated as "CONFIDENTIAL" only to:

    (a) The receiving party's Outside Counsel of record in this action, employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation, and professional vendors which provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors to whom it is reasonably necessary to disclose the information for this litigation;

    (b) The receiving party's Experts (as defined and limited in this Order) to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by the Protective Order" (Exhibit A);

    (c) The receiving party's officers, directors, and employees to whom disclosure is reasonably necessary for this litigation;

    (d) The Court, jury, or other Court personnel, including, but not limited to, stenographers and videographers covering any deposition, hearing, or trial in this action;

    (e) Any individual whom the "CONFIDENTIAL" document or information clearly identifies as an author, addressee or recipient; and

    (f) Deponents or witnesses to whom disclosure is reasonably necessary and who have signed the attached "Agreement To Be Bound by the Protective Order" (Exhibit A).

5.  Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose Protected Material designated as "CONFIDENTIAL – ATTORNEYS' EYES ONLY" only to:

    (a) The receiving party's Outside Counsel of record in this action, employees of said Outside Counsel to whom it is reasonably necessary to disclose the information for this litigation, and professional vendors which provide litigation support services (e.g., photocopying; videotaping; translating; preparing exhibits or demonstrations; organizing, storing, retrieving data in any form or medium; etc.) and their employees and subcontractors to whom it is reasonably necessary to disclose the information for this litigation;

    (b) The receiving party's Experts (as defined and limited in this Order) to whom disclosure is reasonably necessary for this litigation and who have signed the "Agreement to Be Bound by the Protective Order" (Exhibit A);

    (c) The Court, jury, or other Court personnel, including, but not limited to, stenographers and videographers covering any deposition, hearing, or trial in this action;

    (d) Any individual whom the "CONFIDENTIAL" document or information clearly identifies as an author, addressee or recipient; and

    (e) Deponents or witnesses to whom disclosure is reasonably necessary and who have signed the attached "Agreement To Be Bound by the Protective Order" (Exhibit A).

6. Any party may disclose or use, in any manner and for any purpose, information which they have designated as "CONFIDENTIAL" or "CONFIDENTIAL—ATTORNEYS' EYES ONLY.".

## F.  PROTECTED vs. PRIVILEGED MATERIAL

1. Nothing in this Order is intended to address the grounds of attorney-client privilege or work product, or to preclude any party from seeking relief or other protective orders from the Court as may be appropriate in regards to attorney-client privilege or work product.

2. The inadvertent production of any document or thing by any party shall be without prejudice to any claim by the producing party that such document or thing is protected by attorney-client privilege or protected from discovery as work product within the meaning of Fed.R.Civ.P. 26. If after documents are disclosed, a producing party asserts that such documents are protected by the attorney-client privilege or work product doctrine and were inadvertently produced, the receiving party shall take prompt steps to ensure that all known copies of such documents are returned promptly to the producing party. The cost, if any, for excising such documents by the receiving party shall be borne by the producing party. The receiving party may thereafter contest such claims of privilege or work product as if the materials had not been produced, but in contesting such claim shall not rely on any portion of the document other than the description set forth in the producing party's privilege log as per Fed. R. Civ. P. 26(b)(5) and the receiving party shall not assert that a waiver occurred as a result of the inadvertent production.

## G   PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION.

1. If a receiving party is served with a subpoena or an order issued in other litigation that would compel disclosure of any information or items designated in this action as "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY", the receiving party must so notify the designating party, in writing (by e-mail, if possible) immediately and in no event more than three court days after receiving the subpoena or order. Such notification must include a copy of the subpoena or court order.

2. The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all the material covered by

the subpoena or order is the subject of this Protective Order. In addition, the receiving party must deliver a copy of this Stipulated Protective Order promptly to the Party in the other action that caused the subpoena or order to issue.

3. The purpose of imposing these duties is to alert the interested parties to the existence of this Protective Order and to afford the designating party in this case an opportunity to try to protect its confidentiality interests in the court from which the subpoena or order issued. The designating party shall bear the burdens and the expenses of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court.

## H. UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

If a receiving party discloses, by inadvertence or otherwise, Protected Material to any person or in any circumstance not authorized under this Stipulated Protective Order, the receiving party must immediately:

(a) notify in writing the designating party of the unauthorized disclosures;

(b) use its best efforts to retrieve all copies of the Protected Material;

(c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order; and

(d) request such person or persons to execute the "Agreement to Be Bound by the Protective Order" that is attached hereto as Exhibit A.

## I. DURATION

Even after the termination of this litigation, the confidentiality obligations imposed by this Order shall remain in effect until

(a) a designating party agrees otherwise in writing;

(b) a court order otherwise directs; or

(c) the material otherwise becomes public through no fault of the receiving party.

## J. FINAL DISPOSITION

1. Unless otherwise ordered or agreed in writing by the producing party, within sixty days after the final termination of this action, each receiving party must return all Protected Material to the producing party. Further, this Order shall survive the final termination of the Action and the Court shall retain jurisdiction to resolve any dispute concerning the use of any Protected Material designated "CONFIDENTIAL" or "CONFIDENTIAL – ATTORNEYS' EYES ONLY", provided, however, that this Order shall not be construed:

(a) to prevent any party or its attorneys from making use of Protected Material lawfully in their possession prior to its disclosure by the producing party;

(b) to apply to Protected Material which appears in issued patents or printed publications;

(c) to apply to Protected Material which is, or later becomes, publicly known through no fault of the receiving party; or

      (c) to apply to Protected Material which any party or its attorney has, after disclosure by the producing party, lawfully obtained from a third party having the right to disclose such Protected Material.

2.  As used in this subdivision, all "Protected Material" includes all copies, abstracts, compilations, summaries or any other form of reproducing or capturing any of the Protected Material. With prior permission in writing from the designating party, the receiving party may destroy some or all of the Protected Material instead of returning it. Whether the Protected Material is returned or destroyed, the receiving party must submit a written certification to the producing party (and, if not the same person or entity, to the designating party) by the sixty day deadline that identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and that affirms that the receiving party has not retained any copies, abstracts, compilations, summaries or other forms of reproducing or capturing any of the Protected Material.

3.  Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, transcripts, legal memoranda, correspondence or attorney work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order as set forth in the Section entitled DURATION above.

## K.  MISCELLANEOUS

1.  Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

2.  By stipulating to the entry of this Protective Order no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Stipulated Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

Respectfully submitted,

| **PLAINTIFFS** | **DEFENDANTS** |
| --- | --- |
| **PETER J. MILLER,** | **PATRICK TREADO and** |
| **CLIFFORD HOYT, and** | **CHEMIMAGE CORPORATION** |
| **CAMBRIDGE RESEARCH AND** | |
| **INSTRUMENTATION, INC.** | |

By their attorneys,

By their attorneys,

/s/ Teodor J. Holmberg
Martin B. Pavane (admitted pro hac vice)
Teodor J. Holmberg (BBO #634708)
Cohen, Pontani, Lieberman, and Pavane
551 Fifth Avenue

/s/ Anthony J. Fitzpatrick
Anthony J. Fitzpatrick (BBO #564324)
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

New York, NY 10176
Tel. (212) 687-2770
Fax. (212) 972-5487
e-mail: tidge@cplplaw.com

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201

DATED:  January 31, 2006

Tel. 617-289-9220
Fax 617-289-9201
e-mail: ajfitzpatrick@duanemorris.com

Paul D. Weller (admitted pro hac vice)
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103
Tel. (215) 963-5530
eFax (215) 963-5001



# **EXHIBIT A**

| |
|---|
| PETER J. MILLER, an individual, CLIFFORD HOYT, an individual, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC., a Delaware corporation, |
| Plaintiffs, |
| v. |
| PATRICK TREADO, an individual, and CHEMIMAGE CORP., a Delaware corporation, |
| Defendants. |

Civil Action No. 05-10367-RWZ
in the
U.S. DISTRICT COURT
FOR MASSACHUSETTS

### AGREEMENT TO BE BOUND
### BY THE PROTECTIVE ORDER
### ENTERED IN THE
### UNITED STATES DISTRICT COURT FOR MASSACHUSETTS
### ON_____, 2005

The undersigned hereby acknowledges that he or she has read the protective order in the case identified above, and that he or she understands the terms thereof, and that he or she agrees to be bound by such terms.

Dated:_____     _____

# EXHIBIT G



**COHEN PONTANI LIEBERMAN & PAVANE**
551 Fifth Avenue, New York, NY 10176 *phone* 212.687.2770 *fax* 212.972.5487 www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.

———————

Sidney R. Bresnick
Of Counsel

———————

Yunling Ren, Ph.D.
Julia S. Kim
Mindy H. Chettih
Vincent M. Fazzari
Alfred W. Froebrich
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Lisa A. Ferrari
Richard D. Margiano
Darren S. Mogil
David P. Badanes
James P. Doyle
Mher Hartoonian
Alphonso A. Collins
Jason S. Howell
Douglas D. Zhang
Edward V. DiLello
F. Brice Faller
Edward M. Reisner

———————

Enshan Hong
Technical Advisor

February 2, 2006

***VIA E-MAIL (CONFIRMATION BY MAIL)***

Paul D. Weller, Esq.
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Anthony J. Fitzpatrick, Esq.
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

Re:     Document Production/Protective Order in
        Cambridge Research & Instrumentation, Inc., Peter J. Miller
        and Clifford Hoyt v. ChemImage Corporation and Patrick Treado
        Civ. No. 05-10367-RWZ (D.Mass.)
        <u>Our File No.: 34250-60L</u>

Dear Messrs. Weller and Fitzpatrick:

I am rather surprised at the tone of your letter e-mailed on the night of January 31, 2005, which completely ignores (a) our January 23, 2006 request for a discovery teleconference under LR 37.1, and (b) our follow-up letter of January 30, 2006. The follow-up letter, which mentioned a motion to grant our protective order and a motion to compel, was required because you did not bother to respond to our request for a teleconference, and the motions were the appropriate sanction under the local rules. In short, we asked to talk and were greeted with a deafening silence.

The day after our January 30, 2006 letter, Paul called and left a voicemail message indicating that you were not ignoring our request for a discovery teleconference, would like to schedule one, and would get back to us in "the next 48 hours". The problem, Paul said in his voicemail, was that he had been unable to "catch up" with Tony who had been "in depositions literally every day for the past two weeks".

That night you forwarded the above-mentioned letter, ignoring our request for a teleconference, and instead threatening us with two motions to compel, which "will be seeking reimbursement for costs". Similarly to Paul's comments in his voicemail, we too have been busy in other cases, including depositions in other countries and states. That combined with the holiday season, which among other things made it difficult to coordinate with our client, has slowed us down. We are meeting with the client next week and expect to serve our supplemental response to interrogatory no. 7 shortly thereafter.



Page 2
February 2, 2006

We didn't threaten motions in our January 30, 2006 follow-up letter as some show of gamesmanship. We had asked to talk about the discovery issues and you hadn't responded in any fashion, which understandably worried us, since all it required was picking up a phone or jotting off an e-mail. After what sounded like an apologetic voicemail, you send us a letter which looks very much like a show of gamesmanship. We would prefer working this out as reasonable people; if you feel it is appropriate and necessary to bother the Court at this point, we certainly can't stop you.

In regards to the particular issues:

(a) As stated above, we will be meeting with the client next week and will serve our supplemental response to interrogatory no. 7 shortly thereafter.

(b) We do not think that Defendants' Doc. Req. No. 47 is relevant. Nevertheless, as we have mentioned before, we will raise the issue in our meeting with the client next week to see if they will be willing to produce the material under the protective order to avoid wasting time and money over an irrelevant matter that will have no effect on the case.

(c) You assert that U.S. Patent No. 6,002,476 and U.S. Pat. App. No. 09/064,347 are "completely unrelated to the issue in this case" and that "it strains the imagination" to understand how they are related to this case. We cannot agree and, unless you relent, we will seek redress with the Court.

(d) We do not see the need for the two-level confidentiality designations in your draft protective order. The technology being discussed is all over seven years old and the subject of multiple patents. Furthermore, we are fighting over inventorship, which means both of our clients (who are imputed co-inventors) will need to have access to the produced materials. We need to understand this as more than a hypothetical necessity: what kind of document would **both** be responsive to one of the document requests that you've agreed to answer **and** pose the risk of competitive injury by disclosure to our client? Our concerns about your protective order are, *inter alia*, (1) the possibility of key documents about inventorship being designated as "attorneys eyes only"; and (2) the cost and expense of having to get experts to interpret a large number of documents when they could be analyzed more easily and effectively by our client (keeping in mind, once again, that this is a co-inventorship suit between admitted collaborators). If you will tell us your concerns (e.g., the specific documents that would necessitate an "attorneys only" designation), we will try to reach a compromise that addresses all of our concerns.

Very truly yours,
COHEN, PONTANI, LIEBERMAN & PAVANE

Teodor J. Holmberg

MBP/TJH/tdg

# EXHIBIT H

$$\underline{\text{Duane}}\underline{\text{Morris}}^\bullet$$

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
LOS ANGELES
CHICAGO
HOUSTON
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
ALLENTOWN
WILMINGTON
HARRISBURG
PRINCETON
LAKE TAHOE

ANTHONY J. FITZPATRICK
DIRECT DIAL: 617.289.9220
E-MAIL: ajfitzpatrick@duanemorris.com

www.duanemorris.com

February 8, 2006

VIA E-MAIL AND REGULAR MAIL

Teodor J. Holmberg, Esq.
Cohen Pontani Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176-1022

Re:   **Cambridge Research & Instrumentation, Inc., Peter J. Miller and
        Clifford Hoyt v. ChemImage Corporation and Patrick Treado
        Civil No. 05-10367-(RWZ) (D. Mass.)**

Dear Mr. Holmberg:

I am writing in response to your letter dated February 2, 2006.

First, in response to your allegations of "gamesmanship," there has been no gamesmanship on our part. Our positions concerning the discovery issues in dispute were stated very clearly in my letter to you of December 9, 2005. Those positions have not changed in the interim. If there has been "gamesmanship," it has been on the part of the plaintiffs. On November 30, 2005, the plaintiffs agreed to provide a supplemental response to Interrogatory No. 7 by December 14. As you well know, that interrogatory asks the plaintiffs to articulate the basis for their claim of inventorship. When we spoke on November 30, Attorney Pavane indicated that the supplemental response would likely incorporate much of what the plaintiffs had said in their preliminary injunction motion papers. Thus, it did not appear that preparation of the response would be burdensome or time-consuming. Yet the supplemental response is now eight weeks overdue, and your letter of February 2, 2006 fails to specify a date certain for its delivery. The plaintiffs filed this case one year ago. Presumably, before they filed the case, the plaintiffs had investigated and knew the basis for their claim. They should disclose it in adequate detail, or dismiss the case.

Furthermore, it was our clear understanding from the November 30 discovery conference that the plaintiffs had withdrawn their objection to the defendants' request for production no. 47. I confirmed as much in my December 9 letter to you. Now we learn that you have reneged on that understanding, and it appears that neither you nor your colleagues have even discussed this issue (nor, it appears, the supplemental response to interrogatory no. 7) with your clients.

DuaneMorris

Teodor J. Holmberg, Esq.
February 8, 2006
Page 2

The indication in my letter of January 31, 2006 that the defendants would file motions to compel was not a "show of gamesmanship" in any way. On the contrary, it was in response to the plaintiffs' ongoing failure and refusal to meet their discovery obligations and agreements. If you still wish to have a further teleconference to discuss discovery issues, we are willing to do so. However, unfortunately we will be forced to file a motion to compel unless the plaintiffs provide by Friday, February 10: (i) their supplemental response to Interrogatory No. 7; and (ii) written confirmation of their agreement to produce documents in response to Defendants' Document Request No. 47.

Second, the defendants believe that there is a strong need for a "Confidential - Attorneys' Eyes Only" level of protection in the Protective Order. The plaintiffs have served broad document requests that seek information far beyond what is disclosed in the single patent-in-suit. Some of the documents sought by the plaintiffs contain commercially sensitive/proprietary information of ChemImage. For obvious reasons, ChemImage would be irreparably harmed if that information were to be revealed to CRI, which is a competitor.

It is not practical to explain at this stage, on a document-by-document basis, our reasons why specific documents need to be designated "Confidential - Attorneys' Eyes Only" under the Protective Order. Moreover, since no "Confidential - Attorneys' Eyes Only" level of protection currently exists between the parties, engaging in a document-by-document dialogue with you at this juncture risks disclosing to CRI's employees the very information that ChemImage needs to protect. Logically, the better course is to allow each side to designate, in good faith, information that merits "Confidential - Attorneys' Eyes Only" level of protection, and then permit each side to challenge the other side's designations under the procedures set forth in the Protective Order. Please let us know whether you are agreeable to our proposed changes to the Protective Order, and supply the language that was missing from section D1 of your original draft of the document.

Sincerely,

Anthony J. Fitzpatrick

AJF/lnw
cc:    Paul D. Weller, Esq.