**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation,

               Plaintiffs,

                 v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

              Defendants.

**Civil Action No. 05-10367-RWZ**

***FILED
VIA
ECF***

**PLAINTIFF'S [PROPOSED] REPLY TO
DEFENDANT'S OPPOSITION [D.E. 55] TO
PLAINTIFF'S MOTION [D.E. 40] FOR LEAVE TO FILE AN AMENDED COMPLAINT**

       Peter J. Miller, Clifford Hoyt, and Cambridge Research and Instrumentation, Inc.,
(collectively, "plaintiffs" or "CRI") respectfully submit this [Proposed] Reply as an addendum to
plaintiffs' motion [D.E. 56] for leave to file a reply to defendants' opposition [D.E. 55] to
plaintiffs' motion [D.E. 40] for leave to file an amended complaint.

       **[\*\*\*\*NOTE\*\*\*\*: THIS MEMORANDUM HAS BEEN REDACTED.
AN UNREDACTED VERSION OF THIS MEMORANDUM
IS BEING FILED BY HAND WITH A MOTION TO IMPOUND. ]**

9387_4.DOC

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

## TABLE OF CONTENTS

A.  THERE IS GOOD CAUSE TO ALLOW THE AMENDED COMPLAINT TO BE ENTERED

    (1)  The Deadline for Amending the Pleadings Should
Be Extended as were All the Other Deadlines
in the Amended Scheduling Order ...................................................................1

    (2)  Events Since the Filing of the [Proposed] Amended
Complaint Have Made It Clear that Plaintiffs Must Plead
These Causes of Action to Resolve this Dispute..........................................1

B.  THERE IS NO "SUBSTANTIAL PREJUDICE" TO DEFENDANTS

    (1)  Discovery Has Just Begun..................................................................................4

    (2)  Denying Leave to File the [Proposed] Amended Complaint will Lead to Neither
Defendants' Savings of Costs Nor to Judicial Economy ....................................5

C.  NONE OF THE CAUSES OF ACTION ADDED IN THE AMENDED COMPLAINT ARE FUTILE

    (1)  Counts 6 (Fraud), 7 (Conversion), and 9 (Civil Conspiracy)
Are Not Barred by the Statute of Limitations ...............................................5

    (2)  Count 2 (Breach of Implied Covenant of Good Faith
and Fair Dealing) is Not Barred                      ...................................7

    (3)  Count 4 (Intentional and/or Negligent Misrepresentation,
Common Law Fraud, and/or Fraudulent Inducement) Is Not
Barred                                      ...........................................................8

    (4)  Count 5 (Breach of Fiduciary Duty) States a Claim
Upon Which Relief Can Be Granted ...............................................................9

    (5)  Count 6 (Conversion) States a Claim Upon Which
Relief Can Be Granted, or, at the Least,
the Law is Undecided on this Point................................................................11

    (6)  Count 8 (RICO) States a Claim Upon Which
Relief Can Be Granted ....................................................................................12

    (7)  The Fact that Counts 3, 6, 7, 8, and 9 "are based,
at least in part" on Plaintiffs' Claims of Inventorship of
Currently Pending Patent Applications is No Basis to Claim
those Counts "Are Not Properly Before This Court".....................................15

    (8)  Plaintiffs' Prayer for Reformation is
Not Barred as a Matter of Law.......................................................................17

    (9)  Plaintiffs' Prayer for Rescission is
Not Barred as a Matter of Law.......................................................................18

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

### - *REDACTED VERSION* -

**A.     THERE IS GOOD CAUSE TO ALLOW THE AMENDED COMPLAINT TO BE ENTERED**

**(1)     THE DEADLINE FOR AMENDING THE PLEADINGS SHOULD
BE EXTENDED AS WERE ALL THE OTHER DEADLINES
IN THE AMENDED SCHEDULING ORDER**

As explained in plaintiffs' Memorandum [D.E. 41] in support of plaintiffs' Motion [D.E. 40] for Leave to File an Amended Complaint, plaintiffs had originally asked defendants to extend the deadline for filing an amended complaint, but defendents refused.  Thus, all of the other deadlines (discovery, dispositive motions, etc.) were extended in the assented-to amended scheduling order [D.E. 29], but the deadline for filing an amended complain was not.

In a similar case, when some of the deadlines were changed by an amended scheduling order, but the existing deadline for filing dispositive motions was not, the First Circuit upheld the District Court's decision to allow the deadline for filing dispositive motions to be extended as well.  *Vulcan Tools of P.R. v. Makita U.S.A., Inc.*, 357 F.3d 152, 154-155 (1st Cir. 2004) ("…, the court could have concluded that the 'good cause' Makita demonstrated for extending the discovery deadline was also good cause for lifting the deadline for filing dispositive motions.").

**(2)     EVENTS SINCE THE FILING OF THE [PROPOSED] AMENDED COMPLAINT
HAVE MADE IT CLEAR THAT PLAINTIFFS MUST PLEAD
THESE CAUSES OF ACTION TO RESOLVE THIS DISPUTE**

In deciding this motion, the Court must "examine the totality of the circumstances and exercise sound discretion in light of the pertinent balance of equitable considerations."  *Quaker State Oil Ref. Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517 (1st Cir. 1979).  One recent "circumstance" highlights why the pertinent balance of equitable considerations weigh in favor of granting plaintiffs' motion.

**_REDACTED VERSION; FILED VIA ECF_**
**_(unredacted version being filed by hand)_**

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

### *- REDACTED VERSION -*

Last Friday, June 30, 2006, defendants filed, under seal, their opposition to plaintiffs' motion [D.E. 50] to compel documents and things responsive plaintiffs' request nos. 1 and 10(a). Plaintiffs' motion to compel seeks an order to produce documents and things regarding U.S. Patent No. 6,002,476 ("the '476 patent") and U.S. Pat. App. Ser. No. 09/064,347 ("the '347 application"), the application from which the '476 patent issued. As explained in detail in plaintiffs' memorandum in support of the motion to compel, the subject matter claimed in the '962 patent-in-suit that plaintiffs assert they at least co-invented is the **_same subject matter_** claimed in the '476 patent (and '347 application), and the **_same subject matter_** which resulted from the collaboration between CRI and ChemIcon (ChemImage's previous name) in the mid-1990's ("the CRI/ChemIcon collaboration"). See, e.g., pp. 5-9, plaintiffs' memorandum [D.E. 51] in support of  motion to compel [D.E. 50].

The relevance of '476 patent and the '347 application to the present suit is thus simple and clear. In their June 30, 2006 opposition, defendants disingenuously argue that the subject matter of the '962 patent-in-suit and the '476 patent is not the same because the '476 patent is directed to Raman imaging, while the '962 patent-in-suit is **_not_** directed to Raman imaging. See, e.g., pp. 2-5, Defendant's June 30, 2006 Opposition [not yet entered]. That is just wrong.

Two months *after* plaintiffs filed this suit, defendants filed an application to reissue the '976 patent-in-suit, in which they offered an amendment (yet to be entered by the Patent Office) that deleted words from the independent claims of the '962 patent-in-suit so that the claims

*REDACTED VERSION; FILED VIA ECF*
*(unredacted version being filed by hand)*

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

### - *REDACTED VERSION* -

would *no longer cover* Raman imaging. **Exhibit 1**, Amendment submitted with Defendant's

Reissue Oath, CRI003096-7, CRI003455-6 and CRI002962-6.[*]

In other words, defendants themselves have explicitly argued before the Patent Office that

the claims of the '976 patent-in-suit cover Raman imaging.

This also lays bare the true reason for the reissue application: to excise the subject matter

which resulted from the CRI/ChemIcon collaboration, the same subject matter that is also

claimed in the '476 patent. By this artifice, defendants seek to avoid the result of any judgment

by this Court regarding the inventorship of the claims in the '976 patent-in-suit. At the same

time, defendants seek to avoid discovery by arguing that the claims of the '976 patent-in-suit do

not cover Raman imaging.

This is not the only conduct by defendants after the filing of the original complaint

designed to subvert any unfavorable judgment concerning the presently pending cause of action

for the correction of inventorship of the '976 patent-in-suit. Defendants have also improperly

revived an abandoned patent application which claimed priority from the '976 patent in order to

file more continuation and continuation-in-part applications claiming priority from the '976

patent, including three applications filed *on March 2, 2006*, at least one of which already claims

the invention resulting from the CRI/ChemIcon collaboration. See, e.g., ¶¶54-61, [Proposed]

Amended Complaint (Ex. 1 to [D.E. 40]).

---

[*] Specifically, defendants deleted the word "scattered" because "[a]s a result of the inclusion of the term "scattered", …, it appears the '962 patent claims more than the applicants were entitled to claim … in view of the Prior Art." p. CRI002963, **Ex. 1**. The "prior art" is the article "Liquid Crystal Tunable Filter Raman Chemical Imaging", co-written by plaintiffs Miller and Hoyt and defendant Treado, and the term "scattered" refers to Raman imaging ("Raman chemical imaging involves Raman scattering and measures the energy (i.e., wavelength) difference between the known incident light and the light that is <u>scattered</u> upon striking a sample (i.e., inelastic scattering)." emphasis in original). *Id.*

*REDACTED VERSION; FILED VIA ECF*
*(unredacted version being filed by hand)*

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

Since the filing of the original complaint, defendants have engaged in multiple actions designed to negate the results of any future judgment in plaintiffs' favor on presently pending Count 1 (correction of inventorship of the '962 patent-in-suit), i.e., by filing the reissue application, and by filing new applications which claim priority to the '962 patent-in-suit and which claim the same technology resulting from the CRI/ChemIcon collaboration. When plaintiffs filed the original complaint, they believed it would resolve the issue of defendants' wrongful appropriation of subject matter invented by plaintiffs. As is clearly evident, this is no longer true.

Plaintiffs believe, at least for the foregoing reasons, that the totality of the circumstances and the pertinent balance of equitable considerations weigh in favor of granting plaintiffs leave to file the [Proposed] Amended Complaint.


**B.    THERE IS NO "SUBSTANTIAL PREJUDICE" TO DEFENDANTS**

**(1)    DISCOVERY HAS JUST BEGUN**

As of March of this year, there had been no substantive discovery. Documents were first exchanged the week before plaintiffs' Motion [D.E. 40] for Leave to File an Amended Complaint was filed; as of today, no deposition notices nor subpoenas have been served, and, obviously, no depositions have been taken. Discovery has just begun, and no substantial prejudice would result from extending the scope of discovery at this early stage.

*REDACTED VERSION; FILED VIA ECF*
*(unredacted version being filed by hand)*

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

**(2)    DENYING LEAVE TO FILE THE [PROPOSED] AMENDED COMPLAINT
WILL LEAD TO NEITHER DEFENDANTS' SAVINGS OF COSTS
NOR TO JUDICIAL ECONOMY**

Defendants claim prejudice because if the [Proposed] Amended Complaint is entered, they will have "to dramatically revise their strategy and planning" and "would also incur substantial additional costs in both fact and expert discovery, at the summary judgment briefing stage, and at trial to properly defend against the nine additional counts." p. 17, Defendants' Opposition [D.E. 55].

Defendants will incur these costs whether or not leave to file the [Proposed] Amended Complaint is granted. If leave is not granted, plaintiffs will pursue these claims by filing a new complaint in the District Court of Massachusetts, alleging the same new nine counts pled in the instant [Proposed] Amended Complaint. On the other hand, the loss in judicial efficiency and economy, by having two separate cases concerning the same subject matter, will be substantial.

**C.    NONE OF THE CAUSES OF ACTION ADDED IN THE AMENDED COMPLAINT ARE FUTILE**

**(1)    COUNTS 4 (FRAUD), 6 (CONVERSION), AND 9 (CIVIL CONSPIRACY)
ARE NOT BARRED BY THE STATUTE OF LIMITATIONS**

Defendants allege that at least Counts 4 (Fraud), 6 (Conversion), and 9 (Civil Conspiracy) are time-barred by Massachusetts three year statute of limitations (Mass. G.L. c. 260, §2A) because the '391 application which became the '962 patent-in-suit was published on August 22, 2002.

First, under Mass. G.L. c. 260, §12, the statute of limitations will be tolled 'if the wrongdoer either 'concealed the existence of the cause of action through some affirmative act

*REDACTED VERSION; FILED VIA ECF*
*(unredacted version being filed by hand)*

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

done with intent to deceive' or breached a fiduciary duty of full disclosure." *Stark v. Adv. Magnetics, Inc.*, 50 Mass. App. Ct. 226, 233 (2000).

*Stark v. Adv. Magnetics, Inc.*, 50 Mass. App. Ct. 226, 234 (2000) ("However, if defendants had the fiduciary duty to disclose the facts and failed fully to do so, the fact would not preclude the tolling of the statute until such time as the plaintiff acquired actual knowledge of the facts.").

Second, because Counts 4 (Fraud), 6 (Conversion), and 9 (Civil Conspiracy) are based in Massachusetts state law, the "liberal relation-back" rule of Mass. R.Civ.P. 15(c) applies.  See, e.g., *Covel v. Safetech, Inc.*, 90 F.R.D. 427, 430 (D.Mass. 1981) ("… relation-back is controlled by the Massachusetts rule rather than Fed.R.Civ.P. 15(c) when the claim arises under Massachusetts law."); *Sigros v. Walt Disney World, Co.*, 190 F.Supp. 165, 168 ("The Massachusetts rule regarding relation-back is substantially more liberal than Fed.R.Civ.P. 15 … "). "Amendments may relate back to the initial pleading … if they are either for 'the cause or for recovery for the injury for which the [original] action was intended to be brought.'" *Wood v. Jaeger-Sykes, Inc.*, 27 Mass. App. Ct. 199, 202 (1989).

The injury for which this action was originally brought was defendants' attempt to patent the technology invented during that CRI/ChemIcon collaboration in the mid-1990's.  Because the fraud, conversion, and civil conspiracy counts are for the same injury (defendants' attempts

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

### - *REDACTED VERSION* -

to misappropriate technology invented by plaintiffs), the fraud, conversion, and civil conspiracy counts relate back to the original complaint [D.E. 1]. Mass.R.Civ.P. 15(c). Thus, even if defendants' proffered date of August 2005 is accepted as the tolling date for the statute of limitations, these counts still stand because they "relate back" to February, 2005, the date the original complaint was filed.

Lastly, at best, defendants have established there are disputed issues of material fact regarding the application of the statute of limitations such that it would be inappropriate at this stage to find these causes of action to be futile. Cf., *Stark v. Adv. Magnetics, Inc.*, 50 Mass. App. Ct. 226, 234 (2000) ("The issue is dependent on the resolution of disputed issues of material fact, such as whether the parties' relationship was one of trust and confidence; … . In light thereof, the tort claims could not be disposed of by summary judgment on the statute of limitations ground."); *Levesque v. Ojala*, 2005 Mass. Super. LEXIS 646 (Mass. Super. Ct. Dec. 8, 2005) ("Where compliance with a statute of limitations is at issue, 'factual disputes concerning when a plaintiff knew or should have known of his cause(s) of action are to be resolved by the jury,'" citing *Patsos v. First Albany Corp.*, 433 Mass. 323, 329 (2001)).

    **(2)**    **COUNT 2 (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING) IS NOT BARRED**

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

The implied covenant of good faith and fair dealing demands that neither party to a contract shall do anything that will seriously impinge upon the right of the other party to reap the benefits of that contract. *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471, 583 N.E.2d 806 (1991). The duty of good faith and fair dealing concerns *the manner of performance*. *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). In this case, the

**(3)    COUNT 4 (INTENTIONAL AND/OR NEGLIGENT MISREPRESENTATION, COMMON LAW FRAUD, AND/OR FRAUDULENT INDUCEMENT) IS NOT BARRED**.

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

This is incorrect as a matter of law, as recently pointed out by this Court:

> For similar reasons, CSI's reference to the existence of integration clauses in the MLA and the Sales Agreement is unavailing. While an integration clause may preclude a party from claiming reliance on prior oral representations that contradict the explicit terms of an agreement, [citation omitted], it does not prevent a party from seeking to avoid an agreement by pleading that it was fraudulently induced to enter into the agreement, see Armstrong v. Rohm & Haas Co., 349 F. Supp. 2d 71, 76 (D.Mass. 2004); accord Pizzeria Uno v. Independence Mail Group, No. 94-5546, 1995 WL 419932, at *5 (Mass. Super. July 13, 1995).
>
> Indeed, under Massachusetts law, it is well settled that clauses "attempting to protect a party against the consequences of his own fraud are against public policy and void where fraud inducing the contract is shown." Bates v. Southgate, 31 N.E.2d 551, 558 (Mass. 1941); accord VMark Software, Inc. v. EMC Corp., 642 N.E.2d 587, 594, n. 11 (Mass. App. Ct. 1994). With respect to Lycos's claim of fraudulent misrepresentation, therefore the integration clauses are irrelevant.

pp. 9-10, Dec. 6, 2005 Order in *Computer Sales Int'l v. Lycos. Inc. et al.*, D. Mass. Civ. No. 05-10017-RWZ

   **(4)    COUNT 5 (BREACH OF FIDUCIARY DUTY)
          STATES A CLAIM UPON WHICH
          RELIEF CAN BE GRANTED**

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

Fiduciary duties exist "when a party to a contract expressly reposes a trust or confidence in the other party" or "where the contract or transaction was intrinsically fiduciary and, therefore, required perfect good faith." *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 412 F.3d 215, 242 (1st Cir. Mass. 2005) (quoting 26 Richard A. Lord, Williston on Contracts, §69:23 (4th ed. 2004)).

The "futility" of a cause of action in an amended complaint is measured by the same standard applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6), *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1ˢᵗ Cir. 1996), i.e., dismissal is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief." *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). The issue "is not whether ... plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (citation omitted), *cert. denied*, 519 U.S. 808, 136 L. Ed. 2d 14 (1996).

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

### - *REDACTED VERSION* -

Based on the facts pled in the [Proposed] Amended Complaint, the issue of whether such a fiduciary relationship was re-established is, at the very least, a disputed issue of material fact. *Stark v. Adv. Magnetics, Inc.*, 50 Mass. App. Ct. 226, 234 (2000) ("The issue is dependent on the resolution of disputed issues of material fact, such as whether the parties' relationship was one of trust and confidence; whether the plaintiff relied upon the defendants' specialized knowledge or judgment; whether the defendants were aware of the plaintiffs' reliance upon them; and whether the defendants abused the plaintiff's trust and confidence to the plaintiff's disadvantage.").

**(5)    COUNT 6 (CONVERSION) STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED, OR, AT THE LEAST, THE LAW IS UNDECIDED ON THIS POINT**

Defendants assert that plaintiffs' claim of conversion must fail because Massachusetts law does not recognize a cause of action for conversion of intangible property.  This is not a correct statement of the present state of the law, which is undecided on the matter.  See *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,* 412 F.3d 215, 230-1 (1st Cir. Mass. 2005) ("Under a more refined statement of Massachusetts law, only a defendant that 'wrongfully exercises acts of ownership' has committed conversion. *In re Halmar Distributors, Inc., 968 F.2d 121, 129 (1st Cir. 1992)* (emphasis added) (internal citation omitted). Since QLT jointly owned the property at issue and since it did nothing to prevent MEEI from exercising its own rights in the property, QLT did not 'wrongfully exercise acts of ownership,' *id.*, and thus, no conversion occurred. **Hence, it is unnecessary for us to address the district court's analysis of whether intangible property, such as patent rights, can be the subject of a conversion claim**." – emphasis added).

- 11 -

*REDACTED VERSION; FILED VIA ECF*
*(unredacted version being filed by hand)*

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

### - *REDACTED VERSION* -

Because it has not yet been decided that a claim of conversion can ***not*** be maintained for patent rights under Massachusetts state law, such a claim of conversion can not be denied on the basis that it is a futile cause of action.

**(6)    COUNT 8 (RICO) STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

Defendants assert that plaintiffs have not shown the requisite elements of a RICO claim.

First, defendants allege that four of the five instances of mail or wire fraud alleged by plaintiffs are not predicate acts under RICO because they "relate to the preparation, filing, and/or prosecution of various patent applications submitted to the PTO," and "inequitable conduct before the PTO cannot qualify as an act of mail fraud or wire fraud for purposes of the [RICO] predicate act requirement."  However, plaintiffs are not claiming that inequitable conduct constituted the mail or wire fraud, nor that the PTO was the victim of the mail or wire fraud.  The acts by defendants were in order to defraud plaintiffs of their rights in plaintiffs' invention,

Moreover, the acts underlying the instances are not limited to communications with the PTO, but also included communications between "defendants' attorneys, with each other, with plaintiffs, and/or by one or more employees, officers, and/or directors of ChemImage communicating with one or more other employees, officers, and/or directors of ChemImage" during the preparation, filing, and/or prosecution of various patent applications submitted to the PTO.  All four instances constitute predicate acts under RICO.

REDACTED VERSION; FILED VIA ECF
(unredacted version being filed by hand)

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

Second, based on defendants' erroneous failure to consider four of the five alleged instances of mail/wire fraud in plaintiffs' complaint, defendants claim that "a pattern of racketeering activity" has not been shown. However, since all five alleged instances are predicate acts under the RICO statute, plaintiffs have adequately shown such a pattern.

Third, defendants allege that plaintiffs have not pled the RICO claim with the specificity required by Fed.R.Civ.P. 9(b). p. 31, Defendants' Opposition [D.E. 55]. To cite one example to

That is specific enough. See, e.g., pp. 3-4, May 19, 2003 Order in *Lycos, Inc. v. Internet Venture Works, Inc.*, D. Mass. Civ. No. 02-11383-RWZ ("In the present case, plaintiff has alleged that the parties negotiated the Settlement Agreement in December 1999 and early January 2000, that plaintiff entered into the agreement because of defendants' representations that it would negotiate the purchase order in good faith, and that defendant never negotiated or intended to negotiate in good faith. Without a doubt, these allegations put defendants on notice abut the scope of the fruad claims with the requisite degree of precision. To require more would place an undue

- 13 -

**REDACTED VERSION; FILED VIA ECF**
*(unredacted version being filed by hand)*

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

### - *REDACTED VERSION* -

burden on plaintiff to allege facts that are 'peculiarly with the defendants' control' [citing *New England Data Servs. V. Becher*, 829 F.2d 286, 289 (1st Cir. 1987)]. The First Amended Complaint satisfies Fed. R. Civ. P. 9(b).")

Fourth, defendants allege that plaintiffs' RICO claims are "fundamentally flawed and cannot be sustained as a matter of law" because plaintiffs "do not distinguish between the alleged RICO person and RICO enterprise" because "[p]laintiffs simply refer to the actions of Defendants ChemImage *and* Treado." p. 33 (emphasis in original), Defendants' Opposition [D.E. 55]. Defendants confuse defendant ChemImage's status as both a "person" under 18 U.S.C. 1961(3) and an "enterprise affecting interstate commerce" under 18 U.S.C. 1962 with the "RICO enterprises" that both defendants ChemImage and Treado have engaged in; namely, the "schemes or artifices to defraud" described in ¶¶128-129 of the [Proposed] Amended Complaint. To make the record clear, each of ChemImage and Treado is a "RICO person" (or, more exactly, a "RICO defendant"), and the schemes and artifices to defraud plaintiffs described in ¶¶128-129 of the [Proposed] Amended Complaint are the "RICO enterprises" each "RICO person" has participated in.

In the cases which defendants cite, the flawed complaints did not identify the RICO defendant (usually a company) *separately* from the "RICO enterprise" which the RICO defendant was engaged in. See, e.g., *Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44.

By contrast, the [Proposed] Amended Complaint adequately identifies the separate RICO enterprises with the operative langauge "scheme or artifice to defraud" from the RICO defendants themselves.

- 14 -

***REDACTED VERSION; FILED VIA ECF***
***(unredacted version being filed by hand)***

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

**(7)    THE FACT THAT COUNTS 3, 6, 7, 8, AND 9
        "ARE BASED, AT LEAST IN PART" ON PLAINTIFFS'
        CLAIMS OF INVENTORSHIP OF PENDING PATENT
        APPLICATIONS IS NO BASIS TO ARGUE THAT THOSE COUNTS
        "ARE NOT PROPERLY BEFORE THIS COURT"**

Defendants assert that "[t]o the extent plaintiffs' Counts III, VI, VII, VIII, and IX depend on resolution of the issue of inventorship of the subject matter of the Pending Patent Applications, those Counts fail because there is no cause of action as to those applications." p. 34, Defendants' Opposition [D.E. 55].  Defendants then proceed with a lengthy digression concerning the jurisdiction over inventorship claims provided by 35 U.S.C. §256, the jurisdiction under 35 U.S.C. §116, and the subject matter jurisdiction provided by 28 U.S.C. §1338(a). Defendants appear to be arguing that since a claim of co-inventorship underlies the state law causes of action, and it is not possible to claim co-inventorship of a pending application under either by 35 U.S.C. §256 or 35 U.S.C. §116, "this Court is unable to grant any relief." p. 36, Defendants' Opposition [D.E. 55].  Defendants subsequently argue there can be no "justiciable dispute" between the parties. pp. 36-38, Defendants' Opposition [D.E. 55].

Defendants are wrong or, at the least, misguided: each of these causes of action arises under state law, not federal law, regardless of the fact that the issue of inventorship may underlie them all.  This Court is empowered to hear these state claims because of supplemental jurisdiction under 28 U.S.C. §1367.  See, ¶6 "Jurisdiction", of the [Proposed] Amended Complaint, Ex. 1 to [D.E. 40]; and, e.g., *Stark v. Advanced Magnetics*, 29 F.3d 1570, 1578 (Fed. Cir. 1994) (where plaintiff asserted breach of the duty of good faith and fair dealing, breach of implied contract, unjust enrichment, misappropriation of trade secrets, conversion, negligent

**_REDACTED VERSION; FILED VIA ECF_**
**_(unredacted version being filed by hand)_**

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

### *- REDACTED VERSION -*

misrepresentation, misrepresentation, and unfair trade practices under Massachusetts law concerning several patents — "It was not disputed that the district court is empowered to hear those state law claims, for the requirements of supplemental jurisdiction, <u>28 U.S.C. §1367,</u> are met. As explained in <u>United Mine Workers v. Gibbs, 383 U.S. 715, 16 L. Ed. 2d 218, 86 S. Ct. 1130 (1966),</u> there is a substantial federal claim; the federal and state claims derive from common operative facts; and the plaintiff would normally expect to try all of the claims in a single proceeding.").

Furthermore, even if pending patent applications (which, as patent applications, can not be subject to a lawsuit for correction of inventorship under federal law, i.e., 35 U.S.C. §256, as defendants point out) underlie some of the state law causes of action, that fact does not affect their present justiciability as ***state*** law causes of action.  See, e.g., *Kleinerman v. Snitzer*, 754 F. Supp. 1 (D. Mass. 1990), quoting *Becher v. Contoure Laboratories, Inc*., 279 U.S. 388, 391 (1929) (Holmes, J.) ("Oppenheimer's right was independent of and ***prior to*** any arising out of the patent law, and it seems a strange suggestion that the assertion of that right can be removed from the cognizance of the tribunals established to protect it by its opponent going into the patent office for a later title."—emphasis added; the "tribunals" Holmes refers to are state courts determining state law causes of action, such as fraud).

Similarly to *Kleinerman* and *Becher*, even though plaintiffs' Counts 3, 6, 7, 8, and 9 in the [Proposed] Amended Complaint require an interpretation of federal inventorship law, they arise as separate causes of action under Massachusetts state law, and are thus ripe for disposition.

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

**(8)    PLAINTIFFS' PRAYER FOR REFORMATION
        IS NOT BARRED AS A MATTER OF LAW**

Citing only *Mistry Prabhudas Manji Eng. OVT. LTD. V. Raytheon Engineers & Constructors, Inc.*, 213 F.Supp.2d 20, 28 (D.Mass. 2002), defendants allege that reformation is not available as a remedy because "Massachusetts law is clear that '[a] court may only grant reformation of the terms of a contract on misrepresentation grounds if the misrepresentation went to the writing itself, and not to the misrepresentation of some other fact.'." p. 38, Defendants' Opposition [D.E. 55].

*Mistry Prabhudas* was decided completely and entirely on Pennsylvania law, not Massachusetts law. See, e.g., *Mistry Prabhudas*, 213 F.Supp.2d at 23 ("The parties agree that Pennsylvania law applies to this action, based on the express choice of law provisions of the CCU and CPU contracts."). Indeed, the sentence that defendants quote is dicta made in the context of the Court determining that plaintiffs' "fraud in the inducement" argument was time-barred under Pennsylvania law. *Mistry Prabhudas*, 213 F.Supp.2d at 28.

Moreover, defendants' statement of "Massachusetts law" is directly contrary to Massachusetts' law concerning the implied covenant of good faith and fair dealing, which has been used to void portions of a contract, while leaving other portions of the contract intact, even though the "misrepresentation did not go to the writing itself". See, e.g., *President and Fellows of Harvard College v. PECO Energy Co.*, 57 Mass. App. Ct. 888 (2003); *Turkanjian v. Rockland Trust Co.*, 57 Mass. App. Ct. 173 (2003); and *Krapf v. Krapf*, 439 Mass. 97 (2003).

The remedy of reformation is not barred as a matter of law.

*REDACTED VERSION; FILED VIA ECF*
*(unredacted version being filed by hand)*

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

(9)    **PLAINTIFFS' PRAYER FOR RESCISSION
IS NOT BARRED AS A MATTER OF LAW**

Defendants allege that rescission is not available as a remedy because "actions for rescission must be brought with reasonable promptness." p. 40, Defendant's Opposition [D.E. 55] (quoting *Elias Bros. Restaurants, Inc. v. Acorn Enterprises*, 831 F.Supp. 920, 927-8 (D. Mass. 1993)).

First, defendants separate the remedy from the cause of action, and then argue the remedy is time-barred, while avoiding any mention of whether the cause of action (which gave rise to such remedy) is itself time-barred. This makes no sense. If the cause of action is not time-barred, and the remedy is available under that cause of action, then the remedy must also be available. As discussed above, none of the causes of action in the [Proposed] Amended Complaint are time-barred.

Second, none of the cases cited by defendants support their argument. In the first quoted case, *Elias Bros. Restaurants*, the Court was analyzing whether the defendants had an *independent* cause of action for rescission, since the Court had already decided that the defendant had no claim for fraudulent inducement. Not surprisingly, the Court found the defendants did not have such an independent cause of action for almost the same reason that the defendants did not have a fraudulent inducement claim. See, e.g., *Elias Bros. Restaurants*, 831 F.Supp. at 928 ("The defendants admit to having knowledge of Elias' alleged misrepresentations in January of 1990, and yet they continued to reap the benefits of the franchise agreements and operate their businesses as Big Boy restaurants for a period of over three years. It is beyond cavil that the

_REDACTED VERSION; FILED VIA ECF_
_(unredacted version being filed by hand)_

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

### - _REDACTED VERSION_ -

defendants have not come close to exercising 'reasonable promptness' in asserting their claim for rescission."). By contrast, the remedy of rescission arises under many of the causes of action in the [Proposed] Amended Complaint, and will rise or fall as a remedy with those causes of action.

_Dorn v. Astra USA_, 975 F.Supp. 388, 394 (D. Mass. 1997) states that "[o]ne who wishes to repudiate a contract on grounds that it was obtained under duress must do so within a reasonable amount of time." _In re Boston Shipyard Corp._, 886 F.2d 451 also concerns a contract allegedly obtained under duress. Obviously, these cases are inapposite here, where plaintiffs are not claiming duress, but, _inter alia_, fraudulent inducement. _Solomon v. Birger_, 19 Mass. App. Ct. 634 (1985) concerns the application of the statute of limitations, and, as stated above, all of the causes of action in the [Proposed] Amended Complaint are within the statute of limitations.

Defendants state that "Massachusetts law teaches that 'what is a reasonable time depends on all the circumstances of the case.' _Mathewson Corp. v. Allied Marine Indust., Inc. of Falmouth_, 343 Mass. 686, 691 (1962)." Besides misnaming the case (it is actually _Powers, Inc. v. Wayside, Inc. of Falmouth_), defendants completely misconstrue the context: the Court was determining if the plaintiff had exercised its contractual option to rescind an offer within a "reasonable time" after the execution of the contract. See, e.g., _Powers, Inc. v. Wayside, Inc. of Falmouth_, 343 Mass. 686, 691 (1962) ("We hold that in the light of the provisions of the original contract, the circumstances under which it was executed, and the nature of the property which was its subject, the exercise of the option by Powers on April 22, 1960, almost ten months after it arose, was, as a matter of law, too late …").

The remedy of rescission is not barred as a matter of law.

***REDACTED VERSION; FILED VIA ECF***
*(unredacted version being filed by hand)*

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

## CONCLUSION

For the reasons stated above, and in plaintiffs' original motion papers, the Court should grant leave for plaintiffs to file the [Proposed] Amended Complaint, Ex. 1 to [D.E. 40].

Respectfully submitted,

**PETER J. MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.,**

Dated: July 6, 2006

 /s/ Teodor Holmberg
Martin B. Pavane
Teodor J. Holmberg (BBO# 634708)
COHEN PONTANI LIEBERMAN & PAVANE
551 Fifth Avenue
New York, New York 10176
Tel. (212) 687-2770
E-mail: tidge@cplplaw.com

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
E-mail:  BMichaelis@brownrudnick.com

***REDACTED VERSION; FILED VIA ECF***
*(unredacted version being filed by hand)*

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 55] to
Plaintiff's Motion [D.E. 40] for leave to file an Amended Complaint

*- REDACTED VERSION -*

## CERTIFICATE OF SERVICE

     I hereby certify that the foregoing **redacted** copy of the document identified in the top right-hand portion of this page and filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 6, 2006.

        /s/ Teodor Holmberg         
        Teodor J. Holmberg (BBO# 634708)

     I also hereby certify that a complete **unredacted** copy of this document identified in the top right-hand corner of this page is being filed by hand with the Court, as an attachment to a Motion to Impound, and that a complete **unredacted** copy of this document is being served on July 6, 2006, by first class mail, on:

         Anthony J. Fitzpatrick, Esq.
         DUANE MORRIS LLP
         470 Atlantic Avenue, Suite 500
         Boston, MA 02210
         617-289-9220 (phone)
         617-289-9201 (fax)
         ajfitzpatrick@duanemorris.com

         Paul D. Weller, Esq.
         MORGAN, LEWIS & BOCKIUS LLP
         1701 Market Street
         Philadelphia, PA 19103
         215-963-5530 (phone)
         215-963-5001 (fax)
         pweller@morganlewis.com

        /s/ Teodor Holmberg         
        Teodor J. Holmberg (BBO# 634708)

# EXHIBIT 1

PATENT
Attorney Docket No. 56751-5008RE

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Application of: | ) |
| U.S. Patent No. 6,734,962 | ) |
|     Issue Date: May 11, 2004 | ) |
|     Filing Date: October 12, 2001 | ) |
| | ) |
| Reissue Application No.:  (Not Assigned) | ) |
| | ) |
| For:   NEAR INFRARED CHEMICAL IMAGING | ) |
|        MICROSCOPE | ) |

---

### PRELIMINARY AMENDMENT

---

Mail Stop Reissue
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

Prior to the examination of the above-identified application on the merits, please

enter the following amendments.

Amendments to the Specification are reflected on page 2 of this paper.

Amendments to the Claims are reflected on page 3 of this paper.

Remarks begin on page 5 of this paper.

### EXPRESS MAIL CERTIFICATE (37 C.F.R. § 1.10)

Express Mail Label No. EV260286646US     Date of Deposit   4/11/05

I hereby certify that this paper, and the papers and/or fees referred to herein as transmitted, submitted or enclosed, are being deposited with the U.S. Postal Service "Express Mail Post Office to Addressee" service under 37 C.F.R. § 1.10 on the date indicated above and is addressed to Mail Stop Reissue, Commissioner of Patents P.O. Box 1450 Alexandria, VA 22313-1450.

Name Alison B. Weisberg       Signature_____

CRI003096

Attorney Docket No. 56751-5008 RE
Page 2

## IN THE SPECIFICATION

Please replace the Abstract with the following:

A chemical imaging system is provided which uses a near infrared radiation microscope. The system includes an illumination source which illuminates an area of a sample using light in the near infrared radiation wavelength and light in the visible wavelength. A multitude of spatially resolved spectra of transmitted, reflected[,] or emitted [or scattered] near infrared wavelength radiation light from the illuminated area of the sample is collected and a collimated beam is produced therefrom. A near infrared imaging spectrometer is provided for selecting [a] near infrared radiation images of the collimated beam. The spectrometer comprises a liquid crystal tunable filter. The [filtered] selected images are collected by a detector for further processing. The visible wavelength light from the illuminated area of the sample is simultaneously detected providing for the simultaneous visible and near infrared chemical imaging analysis of the sample. Two efficient means for performing three dimensional near infrared chemical imaging microscopy are provided.

CRI003097

Attorney Docket No. 56751-5008 RE
Page 3

## IN THE CLAIMS

Please amend claims 1, 12, and 13.

1. (Amended) A near infrared radiation chemical imaging system comprising:

a) an illumination source for illuminating an area of a sample using light in the near infrared radiation wavelength;

b) a device for collecting a spectrum of near infrared wavelength radiation light transmitted, reflected[,] or emitted [or scattered] from said illuminated area of said sample and producing a collimated beam therefrom;

c) a near infrared imaging spectrometer for selecting [a] near infrared radiation images of said collimated beam, wherein the spectrometer comprises a liquid crystal tunable filter; and

d) a detector for collecting said selected [filtered] near infrared images.

12. (Amended) A chemical imaging system comprising:

a) an illumination source for illuminating an area of a sample using light in the near infrared radiation wavelength and light in the visible wavelength;

b) a device for collecting a spectrum of near infrared wavelength radiation light transmitted, reflected[,] or emitted [or scattered] from said illuminated area of said sample and producing a collimated beam therefrom;

c) a near infrared imaging spectrometer for selecting [a] near infrared radiation images of said collimated beam, wherein the spectrometer comprises a liquid crystal tunable filter;

d) detector for collecting said selected [filtered] near infrared images; and

CRI003455

Attorney Docket No.  56751-5008 RE
Page 4

e) a device for detecting said visible wavelength light from said illuminated area

of said sample.

13. (Amended) A chemical imaging method comprising the steps of:

a) illuminating an area of a sample using light in the near infrared radiation

wavelength and light in the visible wavelength;

b) collecting a spectrum of near infrared wavelength radiation light transmitted,

reflected[,] or emitted [or scattered] from said illuminated area of said sample and

producing a collimated beam therefrom;

c) filtering said collimated beam to produce [a] near infrared radiation images of

said collimated beam while simultaneously detecting said optical wavelength light

from said illuminated area of said sample, wherein the filtering is performed using

a liquid crystal tunable filter;

d) collecting said filtered near infrared images; and

e) processing said collected near infrared images to produce a chemical image of

said sample.

CRI003456

Attorney Docket No.  56751-5008 RE
Page 5

## REMARKS

The Abstract has been amended to secure substantial correspondence between the claims, the remainder of the specification and the drawings, in accordance with 37 C.F.R. § 1.173(f).

### Statements of Status/Support for Changes to the Claims under 37 C.F.R. §1.173(c)

The status of the claims is as follows.  Claims 1-16 were allowed in the parent application leading to U.S. Patent No. 6,734,962 (the "'962 patent").  Claims 1, 12, and 13 are amended by way of this amendment.  The basis for the amendment is as follows.

As issued, claims 1 and 12 of the '962 patent are directed to a near infrared radiation chemical imaging system that includes "a device for collecting a spectrum of near infrared wavelength radiation light transmitted, reflected, emitted or scattered from said illuminated area of said sample and producing a collimated beam therefrom".  Similarly, claim 13 is directed to a chemical imaging method that includes "collecting a spectrum of near infrared wavelength radiation light transmitted, reflected, emitted or scattered from said illuminated area of said sample and producing a collimated beam therefrom."

Further, claims 1 and 12 of the issued '962 patent refer to a near infrared imaging spectrometer, without further description of the type of filter included in the spectrometer.  Similarly, claim 13 includes a filtering step, without reference to the type of filter used to perform the step.

Two articles were submitted to the Patent and Trademark Office for consideration during the prosecution of the '962 patent:  Patrick J. Treado, Ira W. Levin, and E. Neil Lewis, "Indium Antimonide (InSb) Focal Plan Array (FPA) Detection for Near-Infrared

CRI002962

Attorney Docket No. 56751-5008 RE
Page 6

Imaging Microscopy", Applied Spectroscopy 48, 607 (1994) ("Acousto-Optic Tunable

Filter Reference"); and H. Morris, C. Hoyt, P. Filler and P. Treado, "Liquid Crystal

Tunable Filter Raman Chemical Imaging", Vol. 50, Applied Spectroscopy, No. 6, pp.

805-811 (1996) ("Raman Spectroscopy Reference"). The Acousto-Optic Tunable Filter

Reference and the Raman Spectroscopy Reference are referred to collectively herein as

Prior Art.

The Acousto-Optic Tunable Filter Reference discloses near infrared spectroscopy

using a refractive optical microscope and an acousto-optic tunable filter to display

spectroscopic images of biological and polymeric systems. The Raman Spectroscopy

Reference discloses use of a liquid crystal tunable filter suitable for high definition

Raman chemical imaging. Raman chemical imaging involves Raman scattering and

measures the energy (i.e., wavelength) difference between the known incident light and

the light that is scattered upon striking a sample (i.e., inelastic scattering). The resulting

Raman scattered light is referred to as inelastically scattered light.

As a result of the inclusion of the term "scattered", and failure to specify that the

type of filter used is a "liquid crystal tunable filter" in claims 1, 12 and 13, it appears that

the '962 patent claims more than the applicants were entitled to claim in claims 1, 12 and

13 in view of the Prior Art.

The applicants failed to appreciate this error during the prosecution of the patent

application. However, the oversight was not a result of any deceptive intent. In fact, the

Prior Art was submitted by the applicants during the prosecution of the '962 patent, was

considered by the examiner, and is listed on the face of the '962 patent.

Attorney Docket No.  56751-5008 RE
Page 7

Claims 1, 12 and 13 of the present reissue application have been amended such that they claim subject matter that does not read on the Prior Art, as follows.  Element (b) of claims 1 and 12, and step (b) of claim 13, include the term "scattered".  Claims 1, 12 and 13 have been amended to delete this term.  Support for this amendment can be found in the '962 patent at column 3, line 22 – 25, column 4, lines 57 – 67, and in the claims as originally filed in the application that matured into the '962 patent.  Element (c) of claims 1 and 12 fails to specify the type of filter included in the spectrometer.  Similarly, claim 13 fails to indicate the type of filter that performs the filtering step (c).  Claims 1, 12 and claim 13 have been amended to specify, respectively, that the "spectrometer comprises a liquid crystal tunable filter" and the "filtering is performed using a liquid crystal tunable filter."  Support for this amendment can be found in the '962 patent at column 4, lines 45 – 56 and in more detail at column 5, lines 31 – 41.

In addition, the reissue claims seek to remove the following apparent typographical errors which were discovered during the preparation of the present reissue application.  The following amendments to the claims have thus been made in order to bring the claims into compliance with 35 U.S.C. § 112, second paragraph.

Element (d) of claim 1 recites "a detector for collecting said filtered near infrared images", referring back to element (c) which recites "a near infrared imaging spectrometer for selecting a near infrared radiation image" (emphasis added).  Thus, element (c) of claim 1 has been amended to include the plural term "images" and element (d) of claim 1 has been amended to include the term "said selected near infrared images" rather than "said filtered near infrared images", thereby providing proper antecedent basis in this claim.

CRI002964

Element (d) of claim 12 recites "a detector for collecting said filtered near infrared images", referring back to element (c) which recites "a near infrared imaging spectrometer for selecting a near infrared radiation image" (emphasis added).  Thus, element (c) of claim 12 has been amended to include the plural term "images" and element (d) of claim 12 has been amended to include the term "said selected near infrared images" rather than "said filtered near infrared images", thereby providing proper antecedent basis in this claim.

Step (d) of claim 13 recites "collecting said filtered near infrared images", referring back to element (c) which recites "filtering said collimated beam to produce a near infrared radiation image".  Thus, step (c) of claim 13 has been amended to include the plural term "images", thereby providing proper antecedent basis for this claim.

Accordingly, claims 1, 12, and 13 have been amended to reflect these corrections. Claims 1-16 are now pending.

In accordance with 37 C.F.R. § 1.178(b), applicants hereby call to the attention of the Patent Office the following proceeding in which the '962 patent is currently involved: Cambridge Research & Instrumentation, Inc., et al. v. ChemImage Corporation et al., action no. 05 10367(RWZ) (D. Mass).  This action is currently pending.  A complaint has been filed, a copy of which is attached hereto.  The applicants request that this reissue application be examined at this time and not be stayed pending the outcome of the litigation.

The applicants respectfully request consideration of the subject application in view of the above amendments and remarks. Applicants looks forward to a favorable Office Action on the merits.

Respectfully submitted,

Daniel H. Golub
Reg. No. 33,701
Alison B. Weisberg
Reg. No. 45,206
Sharon B. McCullen
Reg. No. 54,303
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215)963-5055 (Phone)
(215)963-5001 (Fax)

Dated: 4/11/05

# EXHIBIT 2

## FILED UNDER SEAL