## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation,

        Plaintiffs,

        v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

        Defendants.

**Civil Action No. 05-10367-RWZ**

## PLAINTIFFS'
## ASSENTED-TO MOTION FOR LEAVE TO FILE
## A REPLY BRIEF TO DEFENDANTS' OPPOSITION [D.E. 63] TO
## PLAINTIFFS' MOTION TO COMPEL PRODUCTION [D.E. 50]

Pursuant to LR 7.1(b)(3), the plaintiffs, Peter J. Miller, Clifford Hoyt, and Cambridge Research and Instrumentation, Inc., hereby request leave to file a reply brief to defendants', Patrick Treado's and ChemImage Corp.'s, opposition [D.E. 63] to plaintiffs' motion to compel defendants to produce documents and things responsive to plaintiffs' request nos. 1 and 10(a) [D.E. 50].

Because defendants have agreed to the relief requested herein, the granting of the requested relief is within the Court's discretion, and a memorandum under LR 7.1(b)(1) is not required.

A redacted copy of the proposed reply brief is attached hereto. A motion to impound an unredacted copy of the proposed reply is being filed concurrently.

Plaintiffs' Assented-To Motion for Leave to File a Reply to
Defendants' Opposition [D.E. 63] to
Plaintiff's Motion to Compel Production  [D.E. 50]

Respectfully submitted,

**PETER J. MILLER, CLIFFORD HOYT,
and CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,**

By their attorneys:

Dated: July 11, 2006                 _/s/ Teodor Holmberg_____
Martin B. Pavane
Teodor J. Holmberg (BBO# 634708)
COHEN, PONTANI, LIEBERMAN & PAVANE
551 Fifth Avenue
New York, New York 10176
Tel. (212) 687-2770
E-mail: tidge@cplplaw.com


Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
E-mail:  BMichaelis@brownrudnick.com


## LOCAL RULE 7.1(a)(2) CERTIFICATION

Counsel for plaintiffs conferred with counsel for defendants in a good faith attempt to
resolve or narrow the issue presented in this motion.  Counsel for defendants agreed to the filing
of this motion.

 _/s/ Teodor Holmberg_____
Teodor J. Holmberg (BBO# 634708)

## CERTIFICATE OF SERVICE

I hereby certify that the document identified in the top right-hand portion of this page and
filed through the ECF system will be sent electronically to the registered participants as
identified on the Notice of Electronic Filing (NEF) and a paper copy will be sent to those
indicated as non-registered participants on July 11, 2006.

 _/s/ Teodor Holmberg_____
Teodor J. Holmberg (BBO# 634708)

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation,

           Plaintiffs,

             v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

           Defendants.

**Civil Action No. 05-10367-RWZ**

***FILED
VIA
ECF***

**PLAINTIFF'S [PROPOSED] REPLY TO
DEFENDANT'S OPPOSITION [D.E. 63] TO
PLAINTIFF'S MOTION TO COMPEL PRODUCTION [D.E. 50]**

Peter J. Miller, Clifford Hoyt, and Cambridge Research and Instrumentation, Inc., (collectively, "plaintiffs" or "CRI") respectfully submit this [proposed] reply brief to defendants', Patrick Treado's and ChemImage Corp.'s, opposition [D.E. 63] to plaintiffs' motion to compel defendants to produce documents and things responsive to plaintiffs' request nos. 1 and 10(a) [D.E. 50].

**[****NOTE****: THIS MEMORANDUM HAS BEEN REDACTED.
A MOTION TO IMPOUND IS BEING FILED, REQUESTING
THE UNREDACTED VERSION BE FILED UNDER SEAL.]**

*REDACTED VERSION; FILED VIA ECF*
*(motion to impound unredacted version being filed)*                    Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 63] to
Plaintiff's Motion to Compel Production  [D.E. 50]

*– REDACTED –*

## I.  THE '476 PATENT AND '347 APPLICATION ARE HIGHLY RELEVANT AS SHOWN BY DEFENDANTS' ARGUMENTS TO THE PATENT OFFICE

Defendants argue that '476 patent and the '347 application from which it issued are not relevant because the '476 patent and the '347 application are directed to Raman imaging, while the '962 patent-in-suit is ***not*** directed to Raman imaging.  See, e.g., pp. 2-5, Defendant's June 30, 2006 Opposition [D.E. 63] (hereinafter, "Def.'s Opp.").  That is just wrong.  Moreover, that argument directly contradicts arguments the defendants have made to the Patent Office in their reissue application (which has yet to be accepted by the Patent Office).

Two months *after* plaintiffs filed this suit, defendants filed an application to reissue the '962 patent-in-suit, in which they offered an amendment (yet to be entered by the Patent Office) that deleted the word "scattered" from the independent claims of the '962 patent-in-suit, making the following argument:

> The Raman Spectroscopy reference[1] discloses use of a liquid crystal tunable filter suitable for high definition Raman Chemical imaging. Raman chemical imaging involves Raman scattering and measures the energy (i.e., wavelength) difference between the known incident light and the light that is <u>scattered</u> upon striking a sample (i.e., inelastic scattering). The resulting Raman scattered light is referred to as inelastically scattered light.
>
>   As a result of the inclusion of the term "scattered", and failure to specify that the type of filter used is a "liquid crystal tunable filter" in claims 1, 12, and 13, it appears the '962 patent claims more than the applicants were entitled to claim in claims 1, 12, and 13 in view of the Prior Art.

**Exhibit A**, Amendment submitted with Defendant's Reissue Oath, CRI003096-7, CRI003455-6 and CRI002962-6.

---

[1] This reference is the article "Liquid Crystal Tunable Filter Raman Chemical Imaging", co-written by plaintiffs Miller and Hoyt and defendant Treado, vol. 50, *Applied Spectroscopy*, No. 6, pp. 805-811 (1996), one of the two pieces of "Prior Art" referenced in defendants' reissue application.

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 63] to
Plaintiff's Motion to Compel Production  [D.E. 50]

*– REDACTED –*

In other words, in ChemImage's reissue application for the '962 patent-in-suit, defendants themselves argued that the present claims of the '962 patent-in-suit ***do*** cover Raman imaging.[2] Yet defendants now argue to this Court that the claims of the '962 patent-in-suit ***do not*** cover Raman imaging.

The claims of the '962 patent-in-suit ***do*** cover Raman imaging.  Thus, as explained in detail in plaintiffs' memorandum [D.E. 51] in support of plaintiffs' motion to compel [D.E. 50], the subject matter of the '962 patent-in-suit is the same as the subject matter recited in the claims of the '476 patent (and discussed in the '347 application from which it issued), and is the same as the technology resulting from the mid-1990's collaboration between plaintiffs and defendants.

For this reason and the others presented in plaintiffs' memorandum [D.E. 51], and as detailed in plaintiffs' motion to compel [D.E. 50], the '476 patent and the '347 application from which it issued are clearly relevant to plaintiffs' inventorship claim in this case, and defendants should be compelled to produce all documents and things concerning them in response to request no. 1.

## II. PLAINTIFFS' REQUEST NO. 1(h) IS NOT "OVERBROAD"

### A. BOTH "IN-BOUND" AND "OUT-BOUND" AGREEMENTS ARE RELEVANT AS ARE ANY AGREEMENTS CONCERNING THE '476 PATENT AND '347 APPLICATION

Defendants argue that plaintiffs' request no. 1(h) is "overbroad" because (a) it covers both "in-bound" licenses (i.e., where one licenses rights from another party) and "out-bound" licenses

---

[2] In fact, defendants' entire purpose behind the yet-to-be-accepted reissue application is to ***remove*** Raman imaging from the scope of the claims of the '962 patent-in-suit, thereby removing the subject matter claimed in the '476 patent, and removing the subject matter resulting from the collaboration between plaintiffs and defendants in the mid-1990's.  By this artifice, defendants are trying to avoid the result of any judgment by this Court regarding the inventorship of the claims in the '962 patent-in-suit.

### – *REDACTED* –

(i.e., where one licenses rights to another party); and (b) insofar as it refers to the '476 patent and the '347 application from which it issued.  The clear relevance of the '476 patent and the '347 application is discussed above.

Regardless of the "in-bound" vs. "out-bound" distinction, any agreement which conveys rights in the subject matter of this lawsuit ***between the parties to this lawsuit*** would clearly be relevant.[3]

Concerning agreements ***with third parties***, defendants' own arguments show the relevance of both "in-bound" and "out-bound" agreements.  See, e.g., *Atchison Casting Corp. v. Marsh, Inc.,* 216 F.R.D. 225, 227 (D. Mass. 2003) ("Plaintiff's own description of its lawsuit demonstrates that the settlement agreement is relevant").  As noted, defendants argue incorrectly that the claims of the '962 patent-in-suit do not cover Raman imaging.  Determining exactly what is covered by the claims, i.e., claim construction, is the first step in determining inventorship.  *Trovan, Ltd. v. Sokymat SA*, 299 F.3d 1292, 1304 (Fed. Cir. 2002) ("…independent claim construction analysis … is the first step in determining inventorship.").  For example, if defendants have licensed rights to the '962 patent-in-suit, and in that license made it clear that ChemImage believes Raman imaging is covered under that license (and thus covered by the claims of the '962 patent-in-suit), that would be relevant to plaintiffs' inventorship claim.  Likewise, an agreement concerning the '476 patent might clarify its coverage vis-à-vis the '962 patent-in-suit.

The test of relevance is "any probability it might be relevant": that test has been met here, and defendants should be compelled to produce all documents and things responsive to request no.

---

[3] This is discussed in greater detail in Sect. II.B below.

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 63] to
Plaintiff's Motion to Compel Production  [D.E. 50]

*– REDACTED –*

1(h).  *United States v. Mass. Indus. Fin. Agency*, 162 F.R.D. 410, 414 (D. Mass. 1995) ("As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any probability it might be relevant to the subject matter of the action.").

**B.    CHEMIMAGE'S ATTEMPT TO REWRITE HISTORY IS UNAVAILING AS IS ITS ATTEMPT TO RECAST REQUEST 1(h) AS A "BACK DOOR"**

Lacking meritorious arguments against plaintiffs' request no. 1(h), defendants attack plaintiffs' motives for serving it, and, as background for this *ad hominem* attack, create a

**– *REDACTED* –**

e.g., ¶¶32-36,  [Proposed] Amended Complaint, attached to [D.E. 41].  Second, as stated by the

Federal Circuit:

> It is elementary that inventorship and ownership are separate issues. . . .
> Inventorship is a question of who actually invented the subject matter
> claimed in a patent. Ownership, however, is a question of who owns legal
> title to the subject matter claimed in a patent, patents having the attributes
> of personal property.
>
> . . . .
>
> **Who ultimately possesses ownership rights in that subject matter has no
> bearing whatsoever on the question of who actually invented that subject
> matter**. [Citations omitted.]

*Sewall v. Walters*, 21 F.3d 411, 417 (emphasis added) (Fed. Cir. 1994)

limitation on discovery.  Fed.R.Civ.P. 26(b)(1) ("Relevant information need not be admissible at

the trial if the discovery appears reasonably calculated to lead to the discovery of admissible

evidence."); Wright & Miller, FEDERAL PRACTICE & PROCEDURE, §2007 ("To understand the

reason for the wide scope of discovery permitted by the federal rules, it should be kept in mind

that a clear distinction is made between the right to obtain information by discovery and the right

to use it at the trial.").

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 63] to
Plaintiff's Motion to Compel Production  [D.E. 50]

*– REDACTED –*

memorandum [D.E. 51] and herein, the requested subject matter is relevant to the presently

pending inventorship claim, and, thus, defendants should be compelled to produce all documents

and things responsive to request no. 1(h).

– *REDACTED* –

### III. DEFENDANTS' RESPONSE TO
### PLAINTIFFS' REQUEST NOS. 10(a) AND 1(a)-(g)

#### A.    DEFENDANTS HAVE ONLY RESPONDED
#### TO THEIR OWN REWRITTEN VERSION
#### OF PLAINTIFFS' DOCUMENT REQUEST 10(a)

"For the sake of completeness," defendants have now produced, *for the first time*, "documents responsive to Request No. 10(a)" as an exhibit to their opposition.  See p. 10, n. 13, Def.'s Opp. [D.E. 63], and Exhibit 6 thereto.  Defendants provide no explanation why these responsive documents were not produced before, and had plaintiffs not filed this motion, it is doubtful defendants would have ever produced them.  Plaintiffs' doubts concerning defendants' response to request no. 10(a) are not assuaged by this paltry and belated addition of nine pages to their document production.

Plaintiffs' request 10(a) reads:

> All documents and things concerning … Evans Split-Element LCTF technology, including, but not limited to, its development and all inventive contributions thereto;

p. 6, Ex. 1 to Def.'s Opp. [D.E. 63].

Defendants do not argue that plaintiffs' request no. 10(a) lacks relevance.  Instead, they attempt to avoid request 10(a) by sleight of hand, asserting they have fully responded to ***their own rewritten*** version of plaintiffs' request no. 10:

> Defendants have conducted an appropriate search for documents responsive to Plaintiffs' Request No. 10(a) and have produced non-privileged responsive documents ***as set forth in Defendants' Response to Plaintiffs' First Set of Requests for Documents and Things***.

p. 10, Def.'s Opp. [D.E. 63], emphasis added.

*– REDACTED –*

In defendants' response to plaintiffs' first set of requests for documents and things, defendants rewrote plaintiffs' request no. 10 as follows:

> …any documents and things … concerning the conception and actual and/or constructive reduction to practice of claims 3 and 4 of the patent-in-suit (including any such documents and things that concern LCTF technology).

p. 7, Ex. 1 to Def.'s Opp. [D.E. 63].

Plaintiffs have the right to all documents and things responsive to request no. 10(a) as written by plaintiffs, and defendants have no right to limit the scope of that request as they have by rewriting it in their response.

The only documents concerning Evans Split-Element LCTF technology (the true subject of request no. 10(a)) produced by defendants are the nine pages belatedly produced as Ex. 6 to Def.'s Opp. [D.E. 63], and documents from the Patent Office.  Defendants must have more documents than that concerning such technology.

Consider publicly available documents, such as defendant Patrick Treado's sworn statement submitted to the Patent Office regarding the Evans Split Element LCTF. **Exhibit B**, Treado's Rule 1.132 Declaration, CRI001867-CRI001874, CRI001869 ("Prior to my invention, the Evans Split-Element filter was thought not to have sufficient spectral resolution for Raman spectroscopy applications.  Today, due to my work, it is becoming widely recognized that Evans Split Element LCTFs are a superior technology for Raman imaging when incorporated into a well designed chemical imaging system.").  Although in his declaration defendant Treado swears he conceived using an Evans Split-Element LCTF in a Raman imaging system, and made such a

*– REDACTED –*

combination "widely recognized" through his work, defendants claim to have no substantive documentation concerning the Evans Split-Element LCTF.

Additional proof that defendants have not produced all documents responsive to request no. 10(a) is even more simple and direct: **Ex. B** is a responsive, non-privileged document, a copy of which is very likely to be in the files of ChemImage, and certainly must be in the prosecution files of ChemImage's patent attorney (and thus in the possession, custody, or control of defendant ChemImage).  Yet defendants have not produced a copy of **Ex. B** in this litigation (plaintiffs' **Ex. B** was obtained from the Patent Office).

At least on this basis, plaintiffs request that the Court grant plaintiffs' proposed order compelling defendants to produce documents and things in response to plaintiffs' request 10(a).

**B.    DEFENDANTS ALSO HAVE ONLY RESPONDED
TO THEIR OWN REWRITTEN VERSION
OF SUB-PARTS 1(a)-(g) OF PLAINTIFFS' REQUEST NO. 1**

Defendants' position in regarding request 10(a) makes it clear that defendants are also relying on their rewrite of sub-parts (a)-(g) of plaintiffs' request no. 1 to avoid compliance.  With the same sleight of hand as in their response to request 10(a), defendants assert that:

> To the extent that Plaintiffs are indeed moving to compel documents responsive to Request No. 1, sub-parts (a)-(g) with respect to the '962 patent and related applications, Defendants have already produced non-privileged responsive documents ***as set forth in Defendants' Response to Plaintiffs' First Set of Requests for Documents and Things***, a copy of which is attached hereto as Exhibit 6 [it is actually Ex. 1].  The motion therefore, is moot to these requests.

p. 19, Def.'s Opp. [D.E. 63], emphasis added.

As they did with plaintiffs' request no. 10(a), defendants have rewritten sub-parts (a)-(g) of request no. 1 to refer to "the subject matter of claims 3 and 4 of the patent-in-suit" and/or "the

*– REDACTED –*

conception and actual and/or constructive reduction to practice of claims 3 and 4 of the patent-in-suit" (see, e.g., pp. 3, 4, and 5 of Ex. 1 to Def.'s Opp. [D.E. 63]), rather than "any of the listed patents or patent applications" as written in plantiffs' request no. 1. pp. 1-2 of  Ex. 1 to Def.'s Opp. [D.E. 63].  Plaintiffs have the right to all documents and things responsive to request no. 1 as written, and defendants have no right to limit the scope of that request as they have in their response.

Defendants disingenuously claim that "[p]laintiffs have never questioned the completeness of Defendants' production of documents in response to Plaintiffs' Request No. 1, sub-parts (a)-(g) with respect to the '962 patent and related applications."  p. 9, Def.'s Opp. [D.E. 63].  Not so. Plaintiffs questioned the limitations posed in defendants' written response from the very beginning.  See, e.g., **Exhibit C**, Oct. 17, 2005 letter from CRI counsel to ChemImage counsel ("Regarding Request Nos. 1(b), 1(c), 1(d), 1(g), 2, 3, 5, 7, 9, 10, 11, and 13, you have completely ignored the wording of each individual request.  Your response in each case is one or another version of 'we'll produce documents …concerning the conception and actual and/or constructive reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit,' … First, for many of these requests, this response is a nonsensical *non sequitor*. … Second, and perhaps more importantly, even where this response is arguably related to the Request, the Request is improperly narrowed by the response.").   Only when defendants finally made their first production of documents, on May 11, 2006, did plaintiffs confirm that defendants had indeed impermissibly narrowed the scope of production in regards to sub-parts (a)-(g) of  request no. 1.

In light of defendants' conduct regarding plaintiffs' request no. 10(a), and in light of the likelihood that defendants are playing the same semantic games in regards to sub-parts (a)-(g) of

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 63] to
Plaintiff's Motion to Compel Production  [D.E. 50]

*– REDACTED –*

request no. 1, plaintiffs request that the Court grant the proposed order compelling production of documents and things responsive to sub-parts (a)-(e) and (g)[4] of request no. 1 accompanying plaintiffs' motion to compel [D.E. 50].  If defendants are not playing games, defendants can confirm that they have complied with that portion of the order once it is granted.  If defendants are playing games, the order will put a stop to it.

## CONCLUSION

For the reasons stated above, and in plaintiffs' memorandum [D.E. 51] in support of plaintiffs' motion to compel [D.E. 50], the Court should order defendants to produce all documents and things responsive to plaintiffs' request nos. 1 and 10(a), as detailed in the proposed order.

Respectfully submitted,

**PETER J. MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.,**

Dated:  July 11, 2006

 /s/ Teodor Holmberg
Martin B. Pavane (admitted *pro hac vice*)
Teodor J. Holmberg (BBO# 634708)
COHEN PONTANI LIEBERMAN & PAVANE
551 Fifth Avenue
New York, New York 10176
E-mail: tidge@cplplaw.com

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
E-mail:  BMichaelis@brownrudnick.com

---

[4] Plaintiffs only requested sub-parts (a)-(e) and (g)-(h) in their proposed order.

Plaintiffs' [Proposed] Reply to
Defendants' Opposition [D.E. 63] to
Plaintiff's Motion to Compel Production  [D.E. 50]

*– REDACTED –*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **redacted** copy of the document identified in the top right-hand corner of this page and filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on July 11, 2006.

A motion to impound the complete **unredacted** version is being filed concurrently. Pursuant to instructions from the Clerk of the Court, an unredacted copy of the document listed above will be served, by hand, with the Court upon entry of the aforementioned motion to impound.

As a courtesy, a complete **unredacted** copy of this document is being served on July 11, 2006, via e-mail and by first class mail, on:

| | |
|---|---|
| Anthony J. Fitzpatrick, Esq. | Paul D. Weller, Esq. |
| DUANE MORRIS LLP | MORGAN, LEWIS & BOCKIUS LLP |
| 470 Atlantic Avenue, Suite 500 | 1701 Market Street |
| Boston, MA 02210 | Philadelphia, PA 19103 |
| 617-289-9220 (phone) | 215-963-5530 (phone) |
| 617-289-9201 (fax) | 215-963-5001 (fax) |
| ajfitzpatrick@duanemorris.com | pweller@morganlewis.com |

  /s/ Teodor Holmberg
Teodor J. Holmberg (BBO# 634708)

# EXHIBIT A

PATENT
Attorney Docket No. 56751-5008RE

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

|  |  |
|---|---|
| In re Application of: | ) |
| U.S. Patent No. 6,734,962 | ) |
|     Issue Date: May 11, 2004 | ) |
|     Filing Date: October 12, 2001 | ) |
|  | ) |
| Reissue Application No.: (Not Assigned) | ) |
|  | ) |
| For:   NEAR INFRARED CHEMICAL IMAGING | ) |
|        MICROSCOPE | ) |

---

### PRELIMINARY AMENDMENT

---

Mail Stop Reissue
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

Prior to the examination of the above-identified application on the merits, please

enter the following amendments.

Amendments to the Specification are reflected on page 2 of this paper.

Amendments to the Claims are reflected on page 3 of this paper.

Remarks begin on page 5 of this paper.

### EXPRESS MAIL CERTIFICATE (37 C.F.R. § 1.10)

Express Mail Label No. <u>EV260286646US</u>    Date of Deposit  <u>4/11/05</u>

I hereby certify that this paper, and the papers and/or fees referred to herein as transmitted, submitted or
enclosed, are being deposited with the U.S. Postal Service "Express Mail Post Office to Addressee" service
under 37 C.F.R. § 1.10 on the date indicated above and is addressed to Mail Stop Reissue, Commissioner of
Patents P.O. Box 1450 Alexandria, VA 22313-1450.

Name <u>Alison B. Weisberg</u>       Signature_____

CRI003096

Attorney Docket No.  56751-5008 RE
Page 2

## IN THE SPECIFICATION

Please replace the Abstract with the following:

A chemical imaging system is provided which uses a near infrared radiation microscope. The system includes an illumination source which illuminates an area of a sample using light in the near infrared radiation wavelength and light in the visible wavelength.  A multitude of spatially resolved spectra of transmitted, reflected[,] or emitted [or scattered] near infrared wavelength radiation light from the illuminated area of the sample is collected and a collimated beam is produced therefrom.  A near infrared imaging spectrometer is provided for selecting [a] near infrared radiation images of the collimated beam.  The spectrometer comprises a liquid crystal tunable filter.  The [filtered] selected images are collected by a detector for further processing.  The visible wavelength light from the illuminated area of the sample is simultaneously detected providing for the simultaneous visible and near infrared chemical imaging analysis of the sample.  Two efficient means for performing three dimensional near infrared chemical imaging microscopy are provided.

Attorney Docket No. 56751-5008 RE
Page 3

## IN THE CLAIMS

Please amend claims 1, 12, and 13.

1. (Amended) A near infrared radiation chemical imaging system comprising:

a) an illumination source for illuminating an area of a sample using light in the near infrared radiation wavelength;

b) a device for collecting a spectrum of near infrared wavelength radiation light transmitted, reflected[,] or emitted [or scattered] from said illuminated area of said sample and producing a collimated beam therefrom;

c) a near infrared imaging spectrometer for selecting [a] near infrared radiation images of said collimated beam, wherein the spectrometer comprises a liquid crystal tunable filter; and

d) a detector for collecting said selected [filtered] near infrared images.

12. (Amended) A chemical imaging system comprising:

a) an illumination source for illuminating an area of a sample using light in the near infrared radiation wavelength and light in the visible wavelength;

b) a device for collecting a spectrum of near infrared wavelength radiation light transmitted, reflected[,] or emitted [or scattered] from said illuminated area of said sample and producing a collimated beam therefrom;

c) a near infrared imaging spectrometer for selecting [a] near infrared radiation images of said collimated beam, wherein the spectrometer comprises a liquid crystal tunable filter;

d) detector for collecting said selected [filtered] near infrared images; and

Attorney Docket No. 56751-5008 RE
Page 4

e) a device for detecting said visible wavelength light from said illuminated area of said sample.

13. (Amended) A chemical imaging method comprising the steps of:

a) illuminating an area of a sample using light in the near infrared radiation wavelength and light in the visible wavelength;

b) collecting a spectrum of near infrared wavelength radiation light transmitted, reflected[,] or emitted [or scattered] from said illuminated area of said sample and producing a collimated beam therefrom;

c) filtering said collimated beam to produce [a] near infrared radiation images of said collimated beam while simultaneously detecting said optical wavelength light from said illuminated area of said sample, wherein the filtering is performed using a liquid crystal tunable filter;

d) collecting said filtered near infrared images; and

e) processing said collected near infrared images to produce a chemical image of said sample.

CRI003456

Attorney Docket No. 56751-5008 RE
Page 5

## REMARKS

The Abstract has been amended to secure substantial correspondence between the claims, the remainder of the specification and the drawings, in accordance with 37 C.F.R. § 1.173(f).

### Statements of Status/Support for Changes to the Claims under 37 C.F.R. §1.173(c)

The status of the claims is as follows. Claims 1-16 were allowed in the parent application leading to U.S. Patent No. 6,734,962 (the "'962 patent"). Claims 1, 12, and 13 are amended by way of this amendment. The basis for the amendment is as follows.

As issued, claims 1 and 12 of the '962 patent are directed to a near infrared radiation chemical imaging system that includes "a device for collecting a spectrum of near infrared wavelength radiation light transmitted, reflected, emitted or scattered from said illuminated area of said sample and producing a collimated beam therefrom". Similarly, claim 13 is directed to a chemical imaging method that includes "collecting a spectrum of near infrared wavelength radiation light transmitted, reflected, emitted or scattered from said illuminated area of said sample and producing a collimated beam therefrom."

Further, claims 1 and 12 of the issued '962 patent refer to a near infrared imaging spectrometer, without further description of the type of filter included in the spectrometer. Similarly, claim 13 includes a filtering step, without reference to the type of filter used to perform the step.

Two articles were submitted to the Patent and Trademark Office for consideration during the prosecution of the '962 patent: Patrick J. Treado, Ira W. Levin, and E. Neil Lewis, "Indium Antimonide (InSb) Focal Plan Array (FPA) Detection for Near-Infrared

Attorney Docket No.  56751-5008 RE
Page 6

Imaging Microscopy", Applied Spectroscopy 48, 607 (1994) ("Acousto-Optic Tunable

Filter Reference"); and H. Morris, C. Hoyt, P. Filler and P. Treado, "Liquid Crystal

Tunable Filter Raman Chemical Imaging", Vol. 50, Applied Spectroscopy, No. 6, pp.

805-811 (1996) ("Raman Spectroscopy Reference").  The Acousto-Optic Tunable Filter

Reference and the Raman Spectroscopy Reference are referred to collectively herein as

Prior Art.

      The Acousto-Optic Tunable Filter Reference discloses near infrared spectroscopy

using a refractive optical microscope and an acousto-optic tunable filter to display

spectroscopic images of biological and polymeric systems.  The Raman Spectroscopy

Reference discloses use of a liquid crystal tunable filter suitable for high definition

Raman chemical imaging.  Raman chemical imaging involves Raman scattering and

measures the energy (i.e., wavelength) difference between the known incident light and

the light that is <u>scattered</u> upon striking a sample (i.e., inelastic scattering).  The resulting

Raman scattered light is referred to as inelastically scattered light.

      As a result of the inclusion of the term "scattered", and failure to specify that the

type of filter used is a "liquid crystal tunable filter" in claims 1, 12 and 13, it appears that

the '962 patent claims more than the applicants were entitled to claim in claims 1, 12 and

13 in view of the Prior Art.

      The applicants failed to appreciate this error during the prosecution of the patent

application.  However, the oversight was not a result of any deceptive intent.  In fact, the

Prior Art was submitted by the applicants during the prosecution of the '962 patent, was

considered by the examiner, and is listed on the face of the '962 patent.

CRI002963

Attorney Docket No.  56751-5008 RE
Page 7

Claims 1, 12 and 13 of the present reissue application have been amended such that they claim subject matter that does not read on the Prior Art, as follows.  Element (b) of claims 1 and 12, and step (b) of claim 13, include the term "scattered".  Claims 1, 12 and 13 have been amended to delete this term.  Support for this amendment can be found in the '962 patent at column 3, line 22 – 25, column 4, lines 57 – 67, and in the claims as originally filed in the application that matured into the '962 patent.  Element (c) of claims 1 and 12 fails to specify the type of filter included in the spectrometer.  Similarly, claim 13 fails to indicate the type of filter that performs the filtering step (c).  Claims 1, 12 and claim 13 have been amended to specify, respectively, that the "spectrometer comprises a liquid crystal tunable filter" and the "filtering is performed using a liquid crystal tunable filter."  Support for this amendment can be found in the '962 patent at column 4, lines 45 – 56 and in more detail at column 5, lines 31 – 41.

In addition, the reissue claims seek to remove the following apparent typographical errors which were discovered during the preparation of the present reissue application.  The following amendments to the claims have thus been made in order to bring the claims into compliance with 35 U.S.C. § 112, second paragraph.

Element (d) of claim 1 recites "a detector for collecting said filtered near infrared images", referring back to element (c) which recites "a near infrared imaging spectrometer for selecting a near infrared radiation image" (emphasis added).  Thus, element (c) of claim 1 has been amended to include the plural term "images" and element (d) of claim 1 has been amended to include the term "said selected near infrared images" rather than "said filtered near infrared images", thereby providing proper antecedent basis in this claim.

CRI002964

Attorney Docket No. 56751-5008 RE
Page 8

Element (d) of claim 12 recites "a detector for collecting said filtered near infrared images", referring back to element (c) which recites "a near infrared imaging spectrometer for selecting a near infrared radiation image" (emphasis added). Thus, element (c) of claim 12 has been amended to include the plural term "images" and element (d) of claim 12 has been amended to include the term "said selected near infrared images" rather than "said filtered near infrared images", thereby providing proper antecedent basis in this claim.

Step (d) of claim 13 recites "collecting said filtered near infrared images", referring back to element (c) which recites "filtering said collimated beam to produce a near infrared radiation image". Thus, step (c) of claim 13 has been amended to include the plural term "images", thereby providing proper antecedent basis for this claim.

Accordingly, claims 1, 12, and 13 have been amended to reflect these corrections. Claims 1-16 are now pending.

In accordance with 37 C.F.R. § 1.178(b), applicants hereby call to the attention of the Patent Office the following proceeding in which the '962 patent is currently involved: Cambridge Research & Instrumentation, Inc., et al. v. ChemImage Corporation et al., action no. 05 10367(RWZ) (D. Mass). This action is currently pending. A complaint has been filed, a copy of which is attached hereto. The applicants request that this reissue application be examined at this time and not be stayed pending the outcome of the litigation.

Attorney Docket No. 56751-5008 RE
Page 9

The applicants respectfully request consideration of the subject application in view of the above amendments and remarks. Applicants looks forward to a favorable Office Action on the merits.

Respectfully submitted,

Daniel H. Golub
Reg. No. 33,701
Alison B. Weisberg
Reg. No. 45,206
Sharon B. McCullen
Reg. No. 54,303
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103
(215)963-5055 (Phone)
(215)963-5001 (Fax)

Dated:   4/11/05

CRI002966

# EXHIBIT B

THE UNITED STATES PATENT AND TRADEMARK OFFICE

Group Art Unit 2877                    :

Examiner K. P. Hantis                  :

In re application of                   :

PATRICK TREADO                         :    CHEMICAL IMAGING SYSTEM

Serial No. 09/064,347                  :

Filed April 22, 1998                   :

### RULE 1.132 DECLARATION OF PATRICK TREADO

I, Patrick Treado, do declare and state as follows:

1.    I am the sole inventor of United States Patent Application Serial No. 09/064,347 for a Chemical Imaging System.

2.    I have been active in the field of Raman imaging since 1986. Since then, I have made use of a number of approaches for fully utilizing Raman imaging. Since 1991, I have studied the use of tunable filters, including those based on liquid crystals and acousto-optics, used in connection with a Raman imaging system.

3.    Persons having ordinary skill in the art of Raman imaging would not have thought to use an Evans Split Element liquid crystal tunable filter (LCTF) in place of traditional liquid crystal filters.

4.    The -Evans Split Element filter was invented for color imaging and display which is very different than Raman imaging. Typically, these LCTFs are characterized by high speed, high throughput, broad spectral bandpasses, but reduced out of passband rejection efficiency, and inhomogeneous response across the filter. Requirements of color filters are very

CRI001867

different than the requirements of a Raman imaging spectrometer. To those practiced in the art of color imaging, Raman imaging would be far afield and a non-obvious application. Color imaging relies on high light levels to form images in real-time. Raman imaging is forced to rely on low light levels to form images relatively slowly where most of the light is background fluorescence light and only a small fraction is Raman light. In Raman imaging, high performance instrumentation is employed including high power lasers and ultrasensitive imaging detectors.

5.    To those practiced in the art of Raman imaging, color imaging filter characteristics would teach away from their potential use as Raman imaging devices. One of the principal trends in Raman spectroscopy and imaging involved the use of multichannel detectors to capture spectra and images. These multichannel detectors helped to revolutionize traditional Raman spectroscopy which had relied on single element detectors in combination with scanning spectrometers. The operation of color filters teaches away from the art because they rely upon scanning of the spectral dimension in order to build up the color (i.e. spectral) information. To those practiced in the art of Raman spectroscopy, the concept of relying upon a spectral dimension scanning approach goes against recent trends. I recognized that much of the Raman spectrum is redundant and only a minimum number of spectral bands need to be scanned in order to build up sufficient information to analyze a material of interest.

6.    Prior to my invention, Evans Split Element LCTFs were never previously envisioned for Raman imaging. Other researchers in the field of Raman imaging were not active in the tunable filter field. The Treado/Morris article appeared in 1989. The Sharp patent was issued in June 1996. The Raman imaging community is small and has several technical forums

2

for communication where those skilled in the art actively participate. If the invention was obvious it would have been reduced to practice prior to my invention.

7.      Prior to my invention, the Evans Split Element filter was thought to not have sufficient spectral resolution for Raman spectroscopy applications. Today, due to my work, it is becoming widely recognized that Evans Split Element LCTFs are a superior technology for Raman imaging when incorporated into a well designed chemical imaging system. However, those practiced in Raman spectroscopy and imaging prior to 1998 would have assessed the performance of Evans Split Element technology based on traditional measures of Raman instrument performance and would likely have rejected the technology. For example, it is widely believed that a Raman spectrometer has to have resolution of at least 4 $cm^{-1}$ in order to be an effective instrument. Applicant has demonstrated superior system performance using an LCTF that has a spectral resolution of 8 $cm^{-1}$.

8.      Based on its wavelength operating range (visible wavelengths) the Evans Split Element filter was thought to not be applicable for Raman imaging of fluorescent samples. To those practiced in the art of Raman spectroscopy, it would be expected that Raman spectrometers could only be effective when background fluorescence (a source of interference when performing a Raman experiment) was not present. Strategies for eliminating background fluorescence have been developed and accepted as essential by the Raman spectroscopy community. These strategies teach away from the use of a Evans Split Element LCTF operating under conditions discussed in the application – with green wavelength laser sources. Namely, that Evans Split Element LCTFs employed in imaging mode can be used to investigate highly fluorescent species using visible laser illumination and detection. I have recognized that the key to imaging fluorescent samples is that the impurities that typically cause fluorescence are often

3

not homogeneously distributed throughout the sample and are spatially localized within the material. With the imaging capability of the Evans Split Element filter, the spatially resolved fluorescence interference can often be differentiated from the Raman information that is diagnostic of the sample material of interest.

9.      To those practiced in the art of solid-state tunable filters, the Evans Split Element filter is relatively slow (msec tuning speed) as a scanning imaging spectrometer when compared to alternative technologies. The Evans Split Element filter is much slower than other tunable filters such as acousto-optic tunable filters (AOTFs) (microsec tuning speed). The use of AOTFs in Raman imaging was pioneered by me and AOTFs represented state of the art technology when I first used them. Because they were state of the art, a perception developed in the Raman imaging community that AOTFs were suitable for Raman imaging despite key limitations, including low spectral resolution and poor imaging performance. To those practiced in the art, AOTFs would have appeared to be superior to Evans Split Element technology on the basis of tuning speed. However, I recognized that tuning speed is a minor consideration in Raman imaging, because overall image acquisition time is dominated by the low light level conditions which require long signal acquisition times (1-30 secs). The subsecond tuning speeds provided by tunable filters, including Evans Split Element filters, are adequate.

10.     Narrow bandpass Evans Split Element filter have an inherently low peak transmittance. For example, the filter can transmit 10% of the light presented to it on average. The low peak transmittance teaches away from its use in a low light level imaging technique like Raman imaging. The peak transmittance of the Evans Split Element filter is relatively low compared with competitive, dispersive Raman spectrometer technology such as volume holographic diffraction gratings that produce greater than 50% transmittance. However, what is

4

not appreciated by those practiced in the art within the Raman community is that the clear

aperture of the Evans Split Element LCTF is substantially larger than the clear aperture of even

the most efficient dispersive spectrometers. As a result, the total throughput of the Evans Split

Element filter is comparable to or better than competitive technology.

       11.    Liquid crystal optics are susceptible to temperature drift. The Evans Split

Element filter spectral performance is susceptible to temperature induced drift. The drift is more

significant than dispersive Raman spectroscopy technology. As a result, to those practiced in the

art of Raman spectroscopy, the poor temperature drift performance of the technology would

teach away from the technology. A drift compensation approach based on capacitance coupled

feedback has been effectively employed by the manufacturer of the Evans Split Element filter.

The drift compensation approach would increase in complexity with the number of liquid crystal

cells employed in the device. As a result, to those practiced in the art of Evans Split Element

filter manufacturing, fabricating a multi-element Evans Split Element filter with adequate

temperature compensation would have been viewed as impractical. In order to achieve broad

tunability (500-750 nm) and narrow spectral bandpass 8 cm$^{-1}$ (0.25 nm @ 500 nm)

simultaneously, the Evans Split Element LCTF requires more than 20 liquid crystal elements.

Each of the stages that comprises the Split Element liquid crystal filter passes several bandpasses

simultaneously. Optimizing the Evans Split Element filter to pass a single passband and reject

out of band light is a daunting fabricating challenge, but as it turns out, it can be accomplished on

a routine basis.

       12.    Fabricating an ultra-narrow bandpass Evans Split Element filter would

have been viewed as impractical. Evans Split Element liquid crystal filters were invented for

color imaging and display applications. In those applications, spectral bandpasses of ten to a

5

CRI001871

hundred nanometers are typically employed. For Raman imaging, filters with bandpasses of less than 10 cm$^{-1}$ are required. To those practiced in the art of Evans Split Element filter technology, it would appear impractical to fabricate such a device. Given that the technology had been envisioned for color imaging applications, to those practiced in the art of Raman spectroscopy, it would have appeared impractical that such a device could be fabricated to produce such a narrow spectral bandpass. In essence, the manufactured technology taught away from the art.

13.    The inhomogeneous response of the Evans Split Element filter due to off-axis effects teaches away from the use of the device for Raman imaging in two ways. First, inhomogeneous distribution of transmittance in the Evans Split Element filter teaches away from the art. The inhomogeneous transmittance is attributed to an off-axis effect that has been well characterized and previously described (Title and Rosenberg, 1979; Deng, Ai and Wang, 1997). To those practiced in the art of Raman imaging, Raman imaging contrast is based on local intensity variations across the image field of view. Inhomogeneous transmittance would present a real challenge because the Raman intensity images would have superimposed an inhomogeneous transmittance pattern due to the Evans Split Element filter that cannot be compensated using traditional Raman image data processing schemes. I recognized that the inhomogeneous transmittance does not affect the spectral performance of the Evans Split Element filter and Raman imaging data processing of the spectral patterns is an effective approach.

14.    The software used in my invention employs a data processing means that corrects for brightness differences - based on multivariate image analysis. Specifically, Raman chemical images that are displayed by my invention are based on spectral shapes and not based

6

CRI001872

on spectral intensity. As a result, local intensity variations that arise from the inhomogeneous transmittance are compensated.

15.     Second, I recognized that the inhomogeneous response of the Evans Split Element filter also manifests itself as inhomogeneous out-of-band rejection efficiency across the Evans Split Element filter. The inhomogeneous out-of-band rejection efficiency teaches away from the art. It is widely recognized that typical Raman applications are background limited. This means that the interference species present in the sample limit the ability to probe the sample. A typical interference is fluorescence background due to impurities in the sample. Another interference is the laser illumination stray light that appears in the microscope due to inefficient mirrors and optical filters. My invention employs carefully placed intermediate apertures that reduce the laser illumination stray light component.

16.     However, when a fluorescence background is present, the inhomogeneous out-of-band rejection efficiency cannot be compensated with intermediate apertures. I recognized that the use of spectral patterns recognition approach that compensates for inhomogeneous transmittance also compensates for inhomogeneous out-of-band rejection efficiency. The software used in my invention employs a data processing means that corrects for out-of-band rejection differences - based on multivariate image analysis. As a result, Raman chemical images displayed by my invention that are based on spectral shapes and local intensity variations that arise from the inhomogeneous out-of-band rejection efficiency are compensated.

I declare that the foregoing is true and correct, that all statements made on information and belief are believed to true, and, further, that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine,

7

imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that any

false statements may jeopardize the validity of this Declaration and the above-identified patent.

_____
Patrick Treado

8

CRI001874

# EXHIBIT C



**COHEN PONTANI LIEBERMAN & PAVANE**
551 Fifth Avenue, New York, NY 10176  *phone* 212.687.2770  *fax* 212.972.5487  www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.

Sidney R. Bresnick
Of Counsel

Yunling Ren, Ph.D.
Julia S. Kim
Mindy H. Chettih
Vincent M. Fazzari
Alfred W. Froebrich
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Lisa A. Ferrari
Richard D. Margiano
Darren S. Mogil
David P. Badanes
James P. Doyle
Mher Hartoonian
Alphonso A. Collins
Jason S. Howell
Douglas D. Zhang
Edward V. DiLello

Enshan Hong
Technical Advisor

October 17, 2005

***VIA E-MAIL (CONFIRMATION BY MAIL)***

Paul D. Weller
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103

Anthony J. Fitzpatrick, Esq.
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

Re:    Cambridge Research & Instrumentation, Inc.,
       Peter J. Miller and Clifford Hoyt
       v. ChemImage Corporation and Patrick Treado
       Civ. No. 05-10367-RWZ (D.Mass.)
       <u>Our File No.: 34250-60L</u>

Dear Messrs. Weller and Fitzpatrick:

This letter is a request for a discovery conference under Local Rule 37.1 on Friday, October 21, 2005 at 3 p.m.  As you know, failure to respond to this request within 7 days may result in sanctions, including automatic allowance of any motion based on the discovery problems listed herein.

In the discovery conference, we would like to discuss a number of problems in your written response to our First Set of Requests for the Production of Documents and Things.

When we requested a cut-off date for our privilege logs, you rebuffed us, stating in your e-mail of September 14, 2005, that "[w]e do not believe that such an approach is appropriate, and will not agree to it in any case."  Nevertheless, in your response to our discovery requests, you have unilaterally pronounced that you will not list on your privilege log protected documents that were created on or after December 29, 2004.  We agree to this date, although it is earlier than the date we suggested, and thus we will also list no such materials after that date on our privilege log. We request that in the future we work together to resolve these differences.  Frankly, we do not understand why you couldn't have suggested your cut-off date back in September 14, 2005, and we hope this is not a harbinger of discovery negotiations to come.

We had asked in the Instructions to our First Set of Requests for Documents and Things that you contact us if you had any objections or problems with our Requests so that we could "reduce the burden on CHEMIMAGE, if possible, while achieving the appropriate scope of production, and to work out any differences without involving the court."  In fact, we asked that you consider our

H:\34250 - C.R.I\-60L\ltrs to opp counsel\tdg to AJF+PW def's prod.doc



Page 2
October 17, 2005

instructions as a request for a discovery conference under LR 37.1. Instead of contacting us in an attempt to find common ground, you have served us with a response indicating that you will not provide *any* documents in response to half of our Requests and largely ignoring most of the other Requests. While it is possible that we will not agree on many discovery matters, the earlier we attempt to resolve our differences or at least clarify our points of disagreement, the smoother the discovery process will be for all parties and, with sincere effort on both sides, we can hopefully avoid getting the Court involved.

We would like to discuss the following items in the discovery conference:

(1)     Although we asked for documents and things concerning 20 different patent and patent applications in Request No. 1, you only agreed to produce documents and things concerning three applications (the provisional application from which the patent-in-suit claims priority, the application which matured into the patent-in-suit, and the presently pending reissue application) and the patent-in-suit. We will agree to narrow the scope of Request No. 1 to include the patent-in-suit, the three applications you indicated, U.S. Pat. App. No. 09/064,347 ("the '347 application"), and U.S. Pat. No. 6,002,476 ("the '476 patent"). Because the '347 application and the '476 patent concern material related to the material in the patent-in-suit, and they were also based on a collaboration between CRI and ChemImage, they are relevant.

(2)     You have not objected or otherwise responded to Request Nos. 1(a) and 1(e). Thus, we are left to conclude that you will produce all non-privileged documents responsive to these Requests. If that is not the case, please provide an appropriate written response to these Requests by this Friday, October 21, 2005.

(3)     In regards to Request Nos. 1(f), 1(h), 4, 6(b), 6(c), 6(d), 6(e), 6(f), 6(g), 8, and 12, you have not indicated that you will produce *any* responsive non-privileged documents. Please confirm that you are not providing any documents responsive to those Requests. We would be happy to discuss your objections in the discovery conference and will consider any reasonable and appropriate change in the scope of these Requests in order to avoid having the Court become involved.

(4)     Regarding Request Nos. 1(b), 1(c), 1(d), 1(g), 2, 3, 5, 7, 9, 10, 11, and 13, you have completely ignored the wording of each individual Request. Your response in each case is one or another version of "we'll produce documents ...concerning the conception and actual and/or constructive reduction to practice of the subject matter of claims 3 and 4 of the patent-in-suit, which are recited in Count I of the Complaint as the purported bases for Plaintiffs' co-inventorship claims".

First, for many of these Requests, this response is a nonsensical *non sequitur*. For example, how is this a response to Request No. 11, which concerns the organization and structure of ChemImage, or Request No. 13, which concerns the location and gathering of any responsive documents?

Second, and perhaps more importantly, even where this response is arguably related to the Request, the Request is improperly narrowed by the response.



Page 3
October 17, 2005

Although Claims 3 and 4 are mentioned as examples in the Complaint, they are by no means the "bases for Plaintiffs' co-inventorship claims". In fact, Plaintiffs assert that they are at least co-inventors, and perhaps sole inventors, of Claim 1 of the '962 patent. Plaintiffs' assertion of co-inventorship/sole inventorship of Claim 1 of the '962 patent is completely consistent with the wording of the Complaint.

We would be happy to discuss your objections in the discovery conference and will consider any reasonable and appropriate change in the scope of these Requests in order to avoid having the Court become involved. However, we will not accept your unreasonable and inappropriate "generic" response to these various Requests.

(5)    Regarding Request No. 6(a), concerning any collaborations between Plaintiff CRI and Defendant ChemImage, you responded that you will only produce documents regarding the NSF SBIR collaboration. We believe all collaborations between the parties are legally and factually relevant. Please provide your basis for asserting you need only produce documents concerning the NSF SBIR collaboration. We would be happy to discuss your basis in the discovery conference and will consider any reasonable and appropriate change in the scope of these Requests in order to avoid having the Court become involved. However, we will not accept your drastic narrowing of the scope of this Request.

(6)    We would like to confirm the earlier telephone conversation between Tony and Tidge in which it was stated that:

   (a)    each side will produce their documents, as well as their privilege logs, on October 28, 2005; and

   (b)    Defendants are amenable to a Protective Order in this case–Plaintiffs will prepare a draft Order which Defendants will review.

We look forward to your response.

Very truly yours,
COHEN, PONTANI LIEBERMAN & PAVANE

Teodor J. Holmberg

MBP/TJH/tdg