## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation,

               Plaintiffs,

               v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

               Defendants.

**Civil Action No. 05-10367-RWZ**

### PLAINTIFFS' MEMORANDUM IN SUPPORT OF
### PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
### THAT THE DISCOVERY SOUGHT BY DEFENDANTS THROUGH DEPOSITION
### NOT BE HAD, OR, IN THE ALTERNATIVE, THAT SUCH DISCOVERY MAY BE
### HAD ONLY THROUGH CONTENTION INTERROGATORIES OR, IN THE
### ALTERNATIVE, THAT SUCH DISCOVERY BE APPROPRIATELY LIMITED IN
### SCOPE

Plaintiffs Cambridge Research and Instrumentation, Inc., Peter J. Miller, and Clifford Hoyt

(collectively, "CRI") pursuant to LR 7.1(b)(1), hereby present a memorandum of reasons,

including citations of proper authorities, in support of the accompanying motion for a protective

order that the discovery sought by defendants through deposition not be had under Fed.R.Civ.P.

26(c)(1); or, in the alternative, that such discovery may be had only by means of contention

interrogatories under Fed.R.Civ.P. 26(c)(3); or, in the alternative, that such discovery be

appropriately limited in scope under Fed.R.Civ.P. 26(b)(2).

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

## **INTRODUCTION**

Protective orders are appropriate when "justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense". *See* Fed.R.Civ.P. 26(c).

During plaintiff Peter J. Miller's October 17, 2006, deposition, counsel for ChemImage harangued Miller, a layman with no legal training or background, for conclusions of law regarding inventorship in hypothetical situations. Despite Miller's efforts to answer these questions (by tying them to specific facts that he knew about), despite Miller's explanations that he did not know the legal terminology involved, despite Miller's complaints that the questions were "too abstract" (as they were not tied to any facts or specific examples), and over counsel for CRI's objections, counsel for ChemImage persisted in seeking legal opinions based on hypothetical and ill-defined factual situations. After forty-five minutes of such questions, counsel for CRI finally instructed the witness to stop answering, and counsel for ChemImage moved on to other topics, and the deposition continued.

The question which counsel for CRI instructed Miller not to answer is one of two questions that are the subject of this motion for a protective order under Rule 26(c). The other question also asked for an expert legal opinion, and thus was improper for seeking an expert legal opinion from a lay witness. In addition, the question involved an issue (i.e., novelty) completely irrelevant to inventorship, even though this Court has limited the scope of fact discovery in this action to the issue of inventorship. Based on this limited scope, for example, counsel for ChemImage instructed one of the named inventors of the '962 patent-in-suit not to answer a question during his deposition. See **Exhibit 1**, Nelson Deposition excerpts, pp. 112-116, *see,*

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

*e.g.*, p. 113:19-21 (counsel for ChemImage asking "what is the relevance of this to the issue of co-inventorship?" before instructing witness not to answer).[1]

This Court should grant the protective order (1) preventing counsel for ChemImage from asking Miller these two questions (i.e., order that no such discovery be had under Fed.R.Civ.P. 26(c)(1)); or (2) in the alternative, order that such discovery may be had, but only by means of contention interrogatories, under Fed.R.Civ.P. 26(c)(3); and/or (3) in the alternative, order that such discovery, whether by deposition or contention interrogatory, be limited, under Fed.R.Civ.P. 26(b)(2), to the factual basis for CRI's legal contentions concerning inventorship of the claims in the '962 patent-in-suit.

## STATEMENT OF FACTS

On September 28, 2006, the Court held a pre-trial conference in which it was decided that, *inter alia*, the scope of fact discovery would be limited to the issue of inventorship.  *See, e.g.,* Sept. 28, 2006 Elec. Docket Entry ("Inventorship only").  The Court subsequently decided two motions based on this narrowing of subject matter for fact discovery.  *See, e.g.,* Sept. 29, 2006 Order [D.E. 83] (CRI's motion to compel "granted as to document requests relating to the inventorship claim and denied as to document requests relating to the other claims"); and Oct. 27, 2006 Order [D.E. 85].

On October 17, 2006, plaintiff Peter J. Miller was deposed for over eight (8) hours, excluding all breaks.  Miller had been designated by CRI as a 30(b)(6) witness for certain topics, and also had been noticed as an individual.  *See*, **Exhibit 2**, ChemImage's Notices of Deposition.

---

[1] Counsel for ChemImage has yet to file a motion for a protective order under Fed.R.Civ.P. 26(c) concerning this question.

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

Throughout the deposition, Miller answered counsel for ChemImage's questions on a wide range of subjects.

The morning session was uneventful, but, after the lunch break, counsel for ChemImage began asking argumentative and hypothetical questions looking for legal opinions on inventorship. After Miller answered a question about manufacturing parts for a third party manufacturer (or "OEM"), ChemImage asked:

> Where a third party comes to CRI and asks for one of its products for incorporation of a larger system, does CRI consider itself a co-inventor of the larger system?

**Exhibit 3**, Miller's Deposition, p. 87:9-12.

Counsel for CRI objected, but allowed Miller to answer the question as best he could. Miller gave an almost two minute response to the question. **Ex. 3**, pp. 87:15-88:11. Not satisfied with the answer, counsel for ChemImage persisted with argumentative and hypothetical questions:

> Going back to the situation where the third party comes and buys a product from CRI, take the obvious example, liquid crystal tunable filter, and incorporates it into a larger system. Is it CRI's position that they're a co-inventor of the larger system?

**Ex. 3**, p. 89:5-10.

Once again, counsel for CRI objected, but allowed Miller to answer the question as best he could. *See* **Ex. 3**, p. 89:13-24. Continuing with his argumentative and hypothetical questions, counsel for ChemImage asked (misstating Miller's testimony):

> [When the customer] asks for, lack of a better descriptor, a customized LCTF, a liquid crystal tunable filter, for incorporation into a broader system, I take it from your answer that CRI would take the position that they were a co-inventor of the larger system based on the customization of the liquid crystal tunable filter?

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

**Ex. 3**, p. 90:1-10.

Counsel for CRI again objected, but allowed Miller to answer the question as best he could.  Miller volunteered a real-life example where CRI made a customized LCTF for a third party, and how the inventorship issue and ownership rights were handled in that case.  **Ex. 3**, pp. 90:13-91:18.[2]  Counsel for ChemImage pressed on:

> Has that been the case in all instances where CRI has produced a component part, a subcomponent for the broader system, that CRI takes the position as they are a co-inventor of the broader system?

**Ex. 3**, p. 91:19-22.

After objecting, counsel for CRI again allowed the witness to answer the question as best he could.  **Ex. 3**, pp. 92:1-94:2.  Counsel for ChemImage persisted:

> I guess the way we have gotten down this road, I asked you whether you thought CRI was the co-inventor of the broader system made by [name omitted][3], and you had answered I don't know if there's a patent or patentable matter in the broader system.  And I guess what—how would that affect your position on whether you're a co-inventor of the broader system?

**Ex. 3**, p. 100:12-19.

Once again, counsel for CRI objected, but allowed Miller to answer the question as best he could.  The witness answered that he did not know "what the legal standard is" for co-inventorship.  **Ex. 3**, p. 101:2.  Counsel for ChemImage asked for the witness's definition of "inventor under the patent law", to which the witness responded with his "high-tech engineer's layman understanding of that".  **Ex. 3**, pp. 101:16-102:3.  Counsel for ChemImage continued:

---

[2] The Court has previously indicated its desire to have as many documents unsealed as possible. *See, e.g.*, Sept. 29, 2006 Order [D.E. 83] ("The parties have agreed to unseal as many documents as possible.  The court thanks the parties for their efforts.").  In order to keep this memorandum unsealed, only small portions of Miller's deposition transcript, which have been designated confidential in its entirety, are quoted herein, and certain portions are described/paraphrased so as to not make confidential information public.  No quotation in this memorandum constitutes a waiver of confidentiality of other portion of Miller's deposition transcript.

[3] See Footnote 2.

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

Under your definition, taking that as face value, do you need to know how the entire system operates to be a co-inventor of that system?

**Ex. 3**, p. 102:4-7.

Counsel for CRI objected, and counsel for ChemImage restated the question:

Using your definition of co-inventor, if you don't know how the broader system operates—[A.   Right.]—but you've made, as you've described, a significant contribution to the broader system say by building a component of the broader system, do you still consider yourself a co-inventor of the broader system?

**Ex. 3**, p. 102:11-17.

Counsel for CRI objected again, and Miller answered:

I don't know what system you're talking about.  If you're making reference to, for example, the [name omitted][4] one, I don't even know what it is.  I don't know what context you're looking for me to answer.

**Ex. 3**, p. 102:19-22.

Despite this answer, counsel for ChemImage continued to ask the same question, over the objections of CRI's counsel, finally leading to:

Q.  If you've made a significant contribution in a broader system, accepting the definition of inventorship you gave a moment ago, Mr. Miller, and you don't know how the broader system works, do you still consider yourself a co-inventor of the broader system?
MR. HOLMBERG: Objection.
A.  So then to answer it, it's a little bit, to my mind still, a bit of an abstract question, meaning, if I--
MR. PAVANE:  Excuse me.  This is Marty Pavane.  I'm going to interject a further objection.  We're going to seek a protective order.  There seems to be at this point, you're way far afield.  What you're doing is nothing more than asking this witness hypothetical questions as an expert, and he's not an expert.  He's here to answer fact questions about what happened here, not hypothetical questions about different situations.  And we'll move for a protective order on this, so move on to your next line of questioning.

**Ex. 3**, p. 104:9-105:5.

---

[4] See Footnote 2.

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

Counsel for CRI instructed the witness not to answer, and thus now seeks a protective order concerning this question which seeks an expert legal opinion based on a vague set of hypothetical facts.  CRI also seeks a protective order concerning another question at Miller's deposition, which also sought an expert legal opinion, but on an irrelevant issue.  Thus, there are two questions at dispute in this motion (the "Disputed Inquiries"):[5]

> (1) "If you've made a significant contribution in a broader system, accepting the definition of inventorship you gave a moment ago, Mr. Miller, and you don't know how the broader system works, do you still consider yourself a co-inventor of the broader system?" **Ex. 3**, p. 104:9-13.

> (2) "Mr. Miller do you consider there to be any novel invention set forth in the '962 patent?" **Ex. 3**, p. 94:5-6.

On October 27, 2006, counsel for CRI requested confirmation from counsel for ChemImage that ChemImage was still insisting on seeking answers to the two Disputed Inquiries above.  *See* **Exhibit 4**, CRI's October 27, 2006 letter.  On November 3, 2006, counsel for ChemImage confirmed that it was.  *See* **Exhibit 5**, ChemImage's November 3, 2006 letter.

In "the spirit of LRs 7.1(a)(2) and 37.1(a)," counsel for CRI suggested a compromise in a letter dated November 13, 2006.  *See* **Exhibit 6**, Counsel for CRI's November 13, 2006 letter.  Specially, counsel for CRI suggested:

> … if you serve contention interrogatories on these questions, our client will provide written answers in accordance with the Federal Rules.  We believe contention interrogatories are the appropriate means for obtaining answers to your questions.  See, e.g., *Smithkline Beecham Corporation v. Apotex Corp.*, 2004 WL 739959, *2 ("…, a party may properly resist a Rule 30(b)(6) deposition on grounds that the information sought is more appropriately discoverable through contention interrogatories.").  Furthermore, contention interrogatories address both the defendants' right to obtain answers concerning the contentions of plaintiffs and our concern that the non-lawyer

---

[5] There were other instances where counsel for CRI instructed Miller not to answer, but each one was either resolved or subsequently answered (see, e.g., **Ex. 3**, pp. 56:17-57:23; pp. 58:13-63:7; and pp. 97:1-98:11).

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

plaintiff deponents were being asked to provide plaintiffs' legal contentions in the context of a deposition.  See, e.g., *Smithline*, at *3:

> … Although Alphapharm contends that it seeks the facts, opinions, and subjective beliefs of Smithkline, our review of the disputed questions reveals that Alphapharm was asking Smithkline's witness to take a legal position with respect to certain statements in Smithkline's patents.  It would be very difficult for a non-attorney witness to answer such questions at a deposition.  A better method would be for Smithkline to respond to interrogatories because than it would be able to receive input from both its attorneys and persons familiar with the patents. *See Exxon Research* [*& Eng'g Co. v. United States*], 44 Fed. Cl. [597,] at 601 [(Fed.Cl. 1999)] (holding that contention interrogatories were more appropriate than depositions to inquire about claim construction).  Accordingly, we will require Smithkline to respond … through interrogatories.

We will await a written response to our proposed compromise before filing our motion for a protective order (which will also suggest this compromise).

On November 16, 2006, counsel for ChemImage rejected counsel for CRI's proposal, arguing that CRI "cannot tell Defendants how they should conduct discovery" and that the suggestion for contention interrogatories was only "a means of deflecting attention from the actual issue resulting from their impermissible instruction to Peter Miller not to answer questions during his deposition on October 17th."  *See* **Exhibit 7**, Counsel for ChemImage's November 16, 2006 letter.

## THE LAW

As stated by the Supreme Court:

> We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case.  ...   But discovery, like all matters of procedure, has ultimate and necessary boundaries.  As indicated by Rules 30(b) [now 26(c)]

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

> and (d) and 31(d), limitations inevitably arise when it can be shown that the
> examination is being conducted in bad faith or in such a manner as to annoy,
> embarrass or oppress the person subject to the inquiry. And as Rule 26(d)
> provides, further limitations come into existence when the inquiry touches
> upon the irrelevant or encroaches upon the recognized domains of privilege.

*Hickman v. Taylor*, 329 U.S. 495, 507-508 (1947).

Rule 26(c) authorizes the court to make orders for the protection of parties and persons from whom discovery is being sought, and provides "ample powers of the district court to prevent abuse"—"[w]ith this authority in hand, judges should not hesitate to exercise appropriate control over the discovery process". *Herbert v. Lando*, 441 U.S. 153, 177 (1979). The moving party must show good cause for a protective order. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986), *cert. denied* 479 U.S. 1043.

Besides an order "that the disclosure or discovery not be had," a motion for a protective order under Rule 26(c) may seek an order "that the discovery be had only by a method of discovery other than that selected by the party seeking discovery". Fed.R.Civ.P. 26(c)(1) and (3). Furthermore, pursuant to a motion under Fed.R.Civ.P. 26(c), the scope of discovery "may be limited by the court if it determines that: … (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account …the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2); *see also*:

> The court may order that certain matters not be inquired into, or that the scope
> of the discovery be limited to certain matters. Ever since the days of the
> former equity bill of discovery there has been applied to discovery "the
> principle of judicial parsimony," by which, when one issue may be
> determinative of a case, the court has discretion to stay discovery on other
> issues until the critical issue has been decided.

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

Vol. 20, Wright & Kane, FEDERAL PRACTICE & PROCEDURE, §88 (2006) (citing *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689 (1933)).

Legal contentions are not a proper subject for factual discovery. *Goss Int'l Americas, Inc. v. Man Roland, Inc.*, 2006 WL 1134930, at *1 (D.N.H.) (where deposing attorney asked deponent questions concerning claim construction, and defending attorney refused to continue deposition—"Counsel for Goss was correct in objecting, because claim construction is a question of law, and legal contentions are not a proper subject for factual discovery."). Indeed, as quoted in counsel for CRI's November 13, 2006 letter above, contention interrogatories, rather than depositions of fact witnesses, are the appropriate means to obtain the legal contentions of the opponent. *Smithkline Beecham Corp. v. Apotex Corp.*, 2004 WL 739959, at *2 (E.D. Pa) (ruling that legal positions should be ascertained by means of interrogatories rather than deposition); *In re Indep. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (granting protective order against Rule 30(b)(6) deposition inquiry into legal conclusions, on grounds that producing responses to such questions was "overbroad, inefficient, and unreasonable"); *McCormick-Morgan, Inc. v. Teledyne Indus., Inc.*, 134 F.R.D. 275, 287-88 (N.D.Ca. 1991), *rev'd in unrelated part*, 765 F. Supp. 611 (N.D.Ca. 1991) (ordering both parties to use contention interrogatories rather than Rule 30(b)(6) deposition to ascertain other side's legal position); *United States v. District Council of New York City*, 1992 U.S. Dist. LEXIS 12307, at *48 (S.D.N.Y. August 18, 1992). This is especially true in a patent case, where "the bases for contentions do not consist exclusively of relatively straightforward facts or evidence, as might be true, by contrast, in a case arising out of a traffic accident." *McCormick-Morgan*, 134 F.R.D. at 287.

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

A fact witness, in contrast to an expert witness, "is not the proper witness to respond to hypothetical facts or circumstances." *Hartzell Mfg., Inc. v. American Chemical Technologies, Inc.*, 899 F.Supp. 405, 409 (D. Minn. 1995) (ordering that the lay witness not be asked such questions in a deposition). It is clear that "[u]nder the Federal Rules of Evidence, speculative opinion testimony by lay witnesses … is generally considered inadmissible." *Washington v. Dept. of Transportation*, 8 F.3d 296, 300 (5th Cir. 1993); *Freedom Wireless, Inc. v. Boston Communications Group, Inc*., 369 F.Supp.2d 155, 157 (D.Mass. 2005) (striking inventor's lay witness testimony as it fell "within the realm of expert opinion").

## ARGUMENT

ChemImage's Disputed Inquiries improperly seek legal opinions from Miller, a layman with no legal training. In both his capacity as a designated 30(b)(6) witness for CRI, and as an individual, Miller was a fact witness. Fed.R.Civ.P. 30(b)(6); *see also* Fed.R.Evid. Rules 701, 702 (recognizing the difference between lay and expert witnesses).

The First Disputed Inquiry required Miller to speculate whether, (i) if he had made a hypothetical "significant contribution" to a hypothetical "broader system", and (ii) he did not know "how the broader system works", he would consider himself a "co-inventor" of the hypothetical and undefined "broader system". First, inventorship is a legal question (see, e.g., *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1460 (Fed. Cir. 1998)), and thus, this request for a legal opinion is not a proper one for a fact witness at deposition. To the extent that it is reasonable to make such an inquiry, it is more appropriately made in a contention interrogatory.

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

However, this inquiry is neither reasonable nor appropriate, whether made in a deposition or a contention interrogatory. The terms of the question itself are so vague and hypothetical as to render the question meaningless. See, e.g., *Williams v. Thomas Jefferson University*, 54 F.R.D. 615, 617 (E.D.Pa. 1972) ("Hypothetical questions must be based upon facts of record, for example, the testimony of a witness who has been subjected to cross examination"). In *Williams*, the Court did not allow hypothetical questions in the deposition of a surgeon, where the questions were "not founded upon a definite statement of facts"—"They ask what might be observed during the course of surgery [based on a broad description of a hypothetical injury]. At best the answers would have to be speculative and might differ according to a variety of unstated background circumstances." *Id.*

For over forty-five minutes, counsel for ChemImage had been asking, and Miller had been doing his best to answer, broad and vague requests for legal opinions about inventorship based on a set of ill-defined and vague hypothetical facts. During that forty-five minutes, there were no attempts to anchor the terms "significant contribution", "broader system", or "knowing how a broader system works" to any defined facts (hypothetical or not), or to any documents in this case. Counsel for ChemImage did not ask if Miller had made a "significant contribution" to the '962 patent-in-suit, or, if he thought he had, what that "significant contribution" was. Counsel for ChemImage did not ask Miller about the "broader system" in the '962 patent-in-suit, or, *a fortiori*, how the "broader system" in the '962 patent-in-suit "works". Counsel for ChemImage did not ask a single question about why plaintiffs contend that Miller was a co-inventor of the '962 patent-in-suit. Instead, counsel for ChemImage chose to ask increasingly complicated, vague, and hypothetical legal questions, without any stated relationship to the facts of this case.

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

The Second Disputed Inquiry required Miller to form a legal opinion as to whether there was a "novel invention" in the '962 patent-in-suit (an issue irrelevant to inventorship). "Novelty" is a term of art in patent law, and concerns the requirement that an invention be "new" as defined by 35 U.S.C. §102(a), (e), or (g). *See, e.g.*, 1 Donald S. Chisum, CHISUM ON PATENTS, §3.01. ChemImage's inquiry involves legal concepts and terminology, and therefore, as in *Smithkline*, *McCormick-Morgan*, and *Goss Int'l*, such inquiry is not a proper question for a fact witness. *See also, e.g., Williams*, 54 F.R.D. at 617 ("However, as propounded, the question is ambiguous and involves legal concepts beyond the training of a doctor. Question 8 is also improper because of its use of the legal term, 'negligence'"). To the extent that it is reasonable to make such an inquiry, it is more appropriately made in a contention interrogatory.

However, this inquiry is not appropriate at this time, whether made in a deposition or a contention interrogatory. Novelty is *completely irrelevant* to the inventorship of the '962 patent-in-suit. "Inventorship is a question of who actually invented the subject matter claimed in a patent," *Beech Aircraft Corp. v. EDO Corp.*, 990 F.2d 1237, 1248 (Fed. Cir. 1993). As explained in *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994), "conception is the touchstone of inventorship, the completion of the mental part of invention." Conception requires "an idea that was definite and permanent enough that one skilled in the art could understand the invention." *Id.* at 1228. Novelty is unrelated to conception. Indeed, even if the '962 patent-in-suit was invalid for lack of novelty, plaintiffs would still have the right to be named inventors. *See, e.g., Frank's Casing Crew & Rental Tools, Inc. v. PMR Techs., Ltd.*, 292 F.3d 1363, 1377 (Fed. Cir. 2002) (the court ordered the trial court to determine inventorship, despite the fact the patent had been ruled invalid—"Nothing in the

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

statute governing a court's power to correct inventorship, 35 U.S.C. §256, however, prevents a court from correcting the inventorship of an unenforceable patent").

This Court has stayed the other areas of discovery in this case, in order that the "critical issue" of inventorship be determined first. *See, e.g.,* Sept. 28, 2006 Elec. Docket Entry; Sept. 29, 2006 Order [D.E. 83]; and Oct. 27, 2006 Order [D.E. 85]. It is manifestly unfair to limit CRI's scope of discovery to the inventorship issue, but allow ChemImage to pursue discovery through deposition on novelty, an issue irrelevant to inventorship. "The principle of judicial parsimony" should fall equally on all parties. *See, e.g.*, Vol. 20, Wright & Kane, FEDERAL PRACTICE & PROCEDURE, §88 (2006) ("'the principle of judicial parsimony' by which, when one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided.") (citing *Sinclair Ref. Co. v. Jenkins Petroleum Process Co.*, 289 U.S. 689 (1933)).

Miller should not be forced to return to a deposition and answer either of the Disputed Inquiries. If the Court finds that either of these questions should be answered, the appropriate means of discovery are contention interrogatories. Moreover, on the basis of Rule 26(b)(2), the scope of discovery should be appropriately narrowed so that (a) the question on the issue of novelty (which is irrelevant to the present action) is eliminated, unless and until the stay of discovery on issues unrelated to inventorship has been lifted, and (b) the factual basis (e.g., the "significant contribution", the "broader system", and "knowing how a broader system works") for the disputed hypothetical question has a definitive and clear foundation.

## **CONCLUSION**

At least on the basis of the above, plaintiffs respectfully request that the Court:

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

(1)  grant a protective order barring ChemImage from asking Miller the Disputed Inquiries (i.e., order that such discovery not be had, pursuant to Fed.R.Civ.P. 26(c)(1)); or

(2)  in the alternative, order that such discovery may be had, but *only* by means of contention interrogatories, under Fed.R.Civ.P. 26(c)(3); or

(3)  in the alternative, order that such discovery, whether by deposition or contention interrogatory, be limited, under Fed.R.Civ.P. 26(b)(2), to CRI's contentions concerning inventorship of the claims in the '962 patent-in-suit.

Respectfully submitted,

**PETER J. MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.,**

By their attorneys:

Dated:  December 22, 2006          /s/ Teodor Holmberg
                                   Martin B. Pavane (admitted *pro hac vice*)
                                   Teodor J. Holmberg (BBO# 634708)
                                   COHEN, PONTANI, LIEBERMAN & PAVANE LLP
                                   551 Fifth Avenue
                                   New York, New York 10176
                                   Tel. (212) 687-2770
                                   E-mail: tidge@cplplaw.com

                                   Brian L. Michaelis (BBO# 555159)
                                   Erin E. McLaughlin (BBO# 647750)
                                   BROWN RUDNICK BERLACK ISRAELS LLP
                                   One Financial Center
                                   Boston, MA 02111
                                   Tel. (617) 856-8200
                                   E-mail:  BMichaelis@brownrudnick.com

Memorandum in Support of Plaintiffs' Motion For a Protective Order
that the Discovery Sought by Defendants through Deposition Not be Had,
or, In the Alternative, Be Had through Contention Interrogatories
or, In the Alternative, Be Limited in Scope

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the document identified in the top right-hand portion of this page and filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated: December 22, 2006                          /s/ Teodor Holmberg_____

                                                  Teodor J. Holmberg (BBO# 634708)

# EXHIBIT 1

# FILED UNDER SEAL

# EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

PETER MILLER, CLIFFORD HOYT, and     :
CAMBRIDGE RESEARCH AND     :
INSTRUMENTATION, INC.     :

          Plaintiffs,     :
                     :          **Case No. 05-10367 RWZ**

          v.     :

PATRICK TREADO and CHEMIMAGE CORP.     :

          Defendants.     :

## NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30

TO:     Martin B. Pavane, Esq.
       Teodor J. Holmberg, Esq.
       COHEN, PONTANI, LIEBERMAN AND PAVANE
       551 Fifth Avenue
       New York, New York 10176
       Tel. (212) 687-2770
       Fax (212) 972-5487

       Brian L. Michaelis, Esq.
       Erin E. McLaughlin, Esq.
       BROWN RUDNICK BERLACK ISRAELS LLP
       One Financial Center
       Boston, MA 02111
       Tel. (617) 856-8200
       Fax (617) 856-8201

       Pursuant to Fed. R. Civ. P. 30, defendants Patrick Treado and ChemImage Corp. hereby

give notice that they will take the deposition of Peter Miller on Friday, July 28, 2006, beginning

at 9:30 a.m. at the offices of Duane Morris, LLP, 470 Atlantic Avenue, Suite 500, Boston, MA.

       The deposition will take place before a notary public or other officer authorized by law to

administer oaths, and will be recorded by videotape and by stenographic means.  The

examination will continue from day to day until completed.  You are invited to attend and cross-examine.

Respectfully submitted,

PATRICK TREADO AND CHEMIMAGE CORP.

By their attorneys,

Anthony J. Fitzpatrick (BBO # 564324)
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: 617.289.9220
Fax: 617.289.9201
e-mail:  ajfitzpatrick@duanemorris.com

Paul D. Weller (admitted *pro hac vice*)
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA  19103
Telephone: 215.963.5530
eFax:  215.963.5001
e-mail:  pweller@morganlewis.com

July 20, 2006

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Notice Of Deposition Pursuant To Fed. R. Civ. P. 30 to Peter Miller, was caused to be served on July 20, 2006, on counsel for Cambridge Research and Instrumentation, Inc. in accordance with the Joint Statement And Proposed Pretrial Schedule to the following e-mail addresses:

mpavane@cplplaw.com
tidge@cplplaw.com
wmason@cplplaw.com
mmcmeo@cplplaw.com
scantres@cplplaw.com

Anthony J. Fitzpatrick

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

PETER MILLER, CLIFFORD HOYT, and     :
CAMBRIDGE RESEARCH AND               :
INSTRUMENTATION, INC.                :
                                     :
                Plaintiffs,          :
                                     :         **Case No. 05-10367 RWZ**
        v.                           :
                                     :
PATRICK TREADO and CHEMIMAGE CORP.   :
                                     :
                Defendants.          :

---

## NOTICE OF DEPOSITION TO PLAINTIFF CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC., PURSUANT TO FED. R. CIV. P. 30(b)(6)

TO:    Martin B. Pavane, Esq.
       Teodor J. Holmberg, Esq.
       COHEN, PONTANI, LIEBERMAN AND PAVANE
       551 Fifth Avenue
       New York, New York 10176
       Tel. (212) 687-2770
       Fax (212) 972-5487

       Brian L. Michaelis, Esq.
       Erin E. McLaughlin, Esq.
       BROWN RUDNICK BERLACK ISRAELS LLP
       One Financial Center
       Boston, MA 02111
       Tel. (617) 856-8200
       Fax (617) 856-8201

       Pursuant to Fed. R. Civ. P. 30(b)(6), defendants Patrick Treado and ChemImage Corp.

hereby give notice that they will take the deposition on oral examination of the person or persons

at Cambridge Research and Instrumentation, Inc. ("CRI") having the most knowledge of the

matters set forth in the attached Schedule A.  The deposition will be begin at 9:30 a.m. on

Monday, July 31, 2006, at the offices of Duane Morris, LLP, 470 Atlantic Avenue, Suite 500,

Boston, MA, and will continue from day to day until completed.

The deposition will take place before a notary public or other officer authorized by law to

administer oaths, and will be recorded by videotape and by stenographic means.    Pursuant to

Fed. R. Civ. P. 30(b)(6), CRI is required to designate the person or persons having the most

knowledge of the matters set forth in the attached Schedule A.[1]  CRI is requested to identify the

person or persons designated to testify and the subject matter as to which each designated person

will testify on or before July 31, 2006.

You are invited to attend and cross-examine.

Respectfully submitted,

PATRICK TREADO AND CHEMIMAGE CORP.

By their attorneys,

Anthony J. Fitzpatrick (BBO # 564324)
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: 617.289.9220
Fax: 617.289.9201
e-mail:  ajfitzpatrick@duanemorris.com

Paul D. Weller (admitted *pro hac vice*)
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5530
eFax:  215.963.5001
e-mail:  pweller@morganlewis.com

July 20, 2006

---

[1]  In the event the Court allows Plaintiffs' Motion for Leave to Amend, Defendants reserve the
right to supplement or amend the matters listed in Schedule A.

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Notice Of Deposition Pursuant To Fed. R. Civ. P. 30(b)(6) was caused to be served on July 20, 2006, on counsel for Cambridge Research and Instrumentation, Inc. in accordance with the Joint Statement And Proposed Pretrial Schedule to the following e-mail addresses:

mpavane@cplplaw.com
tidge@cplplaw.com
wmason@cplplaw.com
mmcmeo@cplplaw.com
scantres@cplplaw.com


Anthony J. Fitzpatrick

DM2\773437.1

## SCHEDULE A

**I.    DEFINITIONS**

The following definitions apply:

A.    "*CHEMIMAGE*" - means the corporate entity presently known as ChemImage Corporation (and previously known as ChemIcon, Inc.), including, but not limited to, its past and present officers, directors, employees, agents, representatives, attorneys, accountants, partners, corporate parent(s), subsidiaries, affiliates, predecessors, and successors (including, but not limited to, ChemIcon, Inc.). Thus, defendant Patrick Treado is encompassed within this definition.

B.    "*CRI*" - means Cambridge Research and Instrumentation, Inc., including, but not limited to, its past and present officers, directors, employees, agents, representatives, attorneys, accountants, partners, corporate parent(s), subsidiaries, affiliates, predecessors, and successors. Thus, plaintiffs Peter J. Miller and Clifford Hoyt are encompassed within this definition.

C.    "*the '962 patent*" refers to U.S. Pat. No. 6,734,962.

D.    "*and*" and "*or*" - shall be construed to give them the broadest, most expansive meaning, which includes, without limitation, reading such terms in the disjunctive or conjunctive, as necessary, to give them a broader meaning.

E.    As used herein, the singular form shall include the plural and vice versa whenever such a dual construction shall serve to widen the scope of the topic.

F.    The term "*Concerning*" means relating to, referring to, describing, evidencing or constituting.

G.    The term "*Communication*" means the transmittal or reception of information (in the form of facts, ideas, inquiries, or otherwise).

H.    The term "*Document*" is used herein as being equal in scope to the usage of this term in Massachusetts Local Rule 26.5 and Federal Rule of Civil Procedure 34(a), including, but not limited to, any writings, drawings, graphs, charts, photographs, phonorecords, and other date compilations from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of this term.

**II.    TOPICS**

A.    The article "Imaging Spectrometers for Fluorescence and Raman Microscopy: Acousto-Optic and Liquid Crystal Tunable Filters", Applied Spectroscopy, vol. 48, no. 7, 1994 (e.g., CRI002409-18), by H. Morris, C. Hoyt, and P. Treado, including, but not limited to:

4

1.  the decision to prepare the article or any article/presentation covering any of the subject matter of the article, including, but not limited to, who was involved in any such decisions, when any such decisions were made, and the level of involvement of anyone who was involved in any such decisions;

2.  the preparation and submission of the article, including, but not limited to, the writing of the article, all the people who were involved in writing the article, and the level of involvement of anyone was involved in the preparation and submission of the article (including, but not limited to, the substantive contribution of each);

3.  any meetings or communications with anyone concerning the preparation of the article; and

4.  all documents concerning any aspect of any of the aforesaid matters, including, but not limited to, the present location of all such documents.

B.  The Small Business Innovation Research (SBIR) proposals filed by CRI with the participation of Patrick Treado, including, but not limited to:

1.  the Small Business Innovation Research (SBIR) Phase I Proposal entitled "High Definition Raman Imaging Microscope" filed with the National Science Foundation (NSF) in June 1994, including, but not limited to, the participation of Patrick Treado as a consultant, the circumstances leading up to his participation as a consultant and any communications with anyone concerning his role and participation as a consultant;

2.  the Small Business Innovation Research (SBIR) Phase I Proposal entitled "High Definition Raman Imaging Microscope" filed with the National Science Foundation (NSF) in June 1995, including, but not limited to, the participation of Patrick Treado as a consultant, the circumstances leading up to his participation as a consultant and any communications with anyone concerning his role and participation as a consultant;

3.  the Small Business Innovation Research (SBIR) Phase II Proposal entitled "High Definition Raman Imaging Microscope" filed with the National Science Foundation (NSF) in October 1996 including, but not limited to, the participation of Patrick Treado as a consultant, the circumstances leading up to his participation as a consultant and any communications with anyone concerning his role and participation as a consultant;

4.  the Small Business Innovation Research (SBIR) Phase III Follow-on Funding Commitment Statement signed by Patrick Treado, then President of ChemIcon, attached to the SBIR Phase II Proposal, including, but not limited to, the circumstance leading up to the execution of the statement and any communications with anyone concerning the statement;

5

5.    any and all work performed by Patrick Treado, personnel of ChemImage, or any other person, related to any of the aforesaid proposals; and

6.    all documents concerning any aspect of any of the aforesaid proposals, including, but not limited to, the present location of all such documents.

C.    The purported conception of the use of an Evans Split-Element liquid crystal tunable filter in the Raman imaging system in the aforesaid SBIR proposals, as discussed in the Final Report (see, e.g., CRI000645), including, but not limited to:

1.    the timing of said conception;

2.    the contribution of any contributor to said conception, including, but not limited to, any contributor's identity, involvement, and level of involvement;

3.    any meetings or communications with anyone concerning said conception;

4.    the testing of the concept of using such a filter, including, but not limited to, the timing of said testing, the implementation of said testing, and the results from said testing;

5.    the construction of such a filter, including, but not limited to, the timing of said construction, the design of said construction, and the results from said construction; and

6.    all documents concerning any aspect of any of the aforesaid matters, including, but not limited to, the present location of all such documents.

D.    The alleged collaboration between CRI and Patrick Treado and/or ChemImage in the 1990's, as shown by, but not limited to, (i) Treado's January 27, 1993 telephone call to Hoyt (see, e.g., CRI000131-2); (ii) Treado's October 15, 1993 letter (CRI0000119); (iii) the aforesaid Applied Spectroscopy article; (iv) the aforesaid SBIR proposals, and (iv) sales (see, e.g., June 13, 1996 letter, CRI000462), including, but not limited to:

1.    any meetings or communications regarding said collaboration, including, but not limited to, any documents concerning such meetings or communications and the present location of such documents;

2.    any technology developed jointly or shared during said collaboration, including, but not limited to, the capabilities and design of any imaging system embodying and/or incorporating any such technology;

3.    transfer of any devices, including by sale, from CRI to ChemImage, including, but not limited to, for example, the aforesaid October 15, 1993 Treado letter (CRI0000119), the aforesaid June 13, 1996 letter

6

(CRI000462), purchase orders (CRI000461, 465, 471, 1125), and Treado's November 12, 1996 fax letter (CRI001124-5);

4. any agreements between CRI and ChemImage concerning any technology resulting from said collaboration, including, but not limited to, for example, the October 24, 1996 follow-up commitment letter (CRI003487-8), Treado's May 21, 1998 letter (CI02331-4), Foukal's June 2, 1998 letter (CI02335), the August Treado-Miller e-mails (CI02614), Treado's meeting notes (CI02619-22); and

5. all documents concerning any aspect of any of the aforesaid matters, including, but not limited to, the present location of all such documents.

E. Plaintiffs' alleged development of Liquid Crystal Tunable Filter (LCTF) technology (including NIR versions of the LCTF, and split-retarder designs) at CRI, including, but not limited to:

1. the timing of any conception or development of such technology at CRI;

2. the contribution of any contributor to said conception or development, including, but not limited to, any contributor's identity, involvement, and level of involvement;

3. any meetings or communications with anyone concerning said conception or development;

4. the design, modeling and testing of the technology, including, but not limited to, the timing of said testing, the implementation of said testing, and the results from said testing;

5. the construction of such technology, including, but not limited to, the timing of said construction, the design of said construction, and the results from said construction; and

6. all documents concerning any aspect of any of the aforesaid matters, including, but not limited to, the present location of all such documents.

F. Plaintiffs' alleged incorporation of LCTF units into optical systems and/or microscopes including collimated beams, including, but not limited to:

1. the timing of any conception or development of such technology at CRI;

2. the contribution of any contributor to said conception or development, including, but not limited to, any contributor's identity, involvement, and level of involvement;

3. any meetings or communications with anyone concerning said conception or development;

7

    4.    the design, modeling and testing of the technology, including, but not limited to, the timing of said testing, the implementation of said testing, and the results from said testing;

    5.    the construction of such technology, including, but not limited to, the timing of said construction, the design of said construction, and the results from said construction; and

    6.    all documents concerning any aspect of any of the aforesaid matters, including, but not limited to, the present location of all such documents.

G.    Plaintiffs' alleged design of LCTFs for exploratory testing of LCTFs for chemical imaging and NIR Raman imaging prior to the decision to pursue an NSF grant for optimized work of this type, including, but not limited to:

    1.    the timing of any conception or development of such technology at CRI;

    2.    the contribution of any contributor to said conception or development, including, but not limited to, any contributor's identity, involvement, and level of involvement;

    3.    any meetings or communications with anyone concerning said conception or development;

    4.    the design, modeling and testing of the technology, including, but not limited to, the timing of said testing, the implementation of said testing, and the results from said testing;

    5.    the construction of such technology, including, but not limited to, the timing of said construction, the design of said construction, and the results from said construction; and

    6.    all documents concerning any aspect of any of the aforesaid matters, including, but not limited to, the present location of all such documents.

H.    Plaintiffs' alleged conception of, and any development concerning, incorporating LCTFs in microscopes having infinity-corrected objectives, including, but not limited to:

    1.    the timing of any conception or development of such technology at CRI;

    2.    the contribution of any contributor to said conception or development, including, but not limited to, any contributor's identity, involvement, and level of involvement;

    3.    any meetings or communications with anyone concerning said conception or development;

4.   the design, modeling and testing of the technology, including, but not limited to, the timing of said testing, the implementation of said testing, and the results from said testing;

5.   the construction of such technology, including, but not limited to, the timing of said construction, the design of said construction, and the results from said construction; and

6.   all documents concerning any aspect of any of the aforesaid matters, including, but not limited to, the present location of all such documents.

I.   Plaintiffs' alleged exploitation of LCTF technology as imaging spectrometers in infrared for remote sensing chemical imaging, including, but not limited to:

1.   the timing of any conception or development of such technology at CRI;

2.   the contribution of any contributor to said conception or development, including, but not limited to, any contributor's identity, involvement, and level of involvement;

3.   any meetings or communications with anyone concerning said conception or development;

4.   the design, modeling and testing of the technology, including, but not limited to, the timing of said testing, the implementation of said testing, and the results from said testing;

5.   the construction of such technology, including, but not limited to, the timing of said construction, the design of said construction, and the results from said construction; and

6.   all documents concerning any aspect of any of the aforesaid matters, including, but not limited to, the present location of all such documents.

J.   The basis for CRI's contention that Peter J. Miller contributed to the subject matter of each of claims 1-13 of United States Patent No. 6,734,962.

K.   The basis for CRI's contention that Clifford Hoyt contributed to the subject matter of each of claims 1-13 of United States Patent No. 6,734,962.

L.   Any and all harm or damages allegedly suffered by CRI with respect to the allegations in the Complaint including, without limitation, any impairment in CRI's ability to market its products resulting from the existence of the '962 patent.

M.   All agreements whereby one or more Plaintiffs license intellectual property rights to liquid crystal tunable filter technology from any third-party/parties.

9

N.  Any merger of CRI and ChemImage, including but not limited to, any investigations, discussions, negotiations, or offer to merge by either CRI or ChemImage.

O.  Any offer to Patrick Treado of a position at CRI, including but not limited to, any negotiations and communications related to any offer to Patrick Treado of a position at CRI.

P.  Any system of storing and/or searching documents at CRI from 1994 to the present, including, but not limited to:

1.  any storage facilities, such as file cabinets, storage rooms, and/or electronic storage media, and a general description of the contents thereof;

2.  any computer system which is or was used in any way for the receiving, storing, and/or organizing of documents;

3.  any policy, standard procedure or practice maintained for any period of time by any department (or any other organizational unit) and/or individual for receiving, storing, and/or otherwise organizing documents, including any document retention policy; and

4.  the identity of any personnel responsible for any period of time in any way for the receiving, storing, and/or organizing of documents.

Q.  The corporate and organizational structure of CRI from 1994 to the present, including but not limited to, its personnel, directors, parents and subsidiaries, as well as all persons or entities with an ownership interest in CRI.

R.  The response to Defendants' first set of requests for documents and things, including, but not limited to:

1.  the identity of all people involved with the search for responsive documents;

2.  the level of involvement of each person involved with the search for responsive documents;

3.  the areas, locations, and/or storage facilities searched for responsive documents;

4.  the method and/or manner used in performing the search for responsive documents;

5.  the period of time it took to perform the search for responsive documents, and the date(s) on which the search took place; and

6.     the identity of all people at CRI who have seen defendants' first set of requests for documents and things in its entirety, and when each person first saw defendants' first set of requests for documents and things.

# EXHIBIT 3

# FILED UNDER SEAL

# EXHIBIT 4



**COHEN PONTANI LIEBERMAN & PAVANE**
551 Fifth Avenue, New York, NY 10176  *phone* 212.687.2770  *fax* 212.972.5487  www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.

———————

Sidney R. Bresnick
Of Counsel

———————

Julia S. Kim
Mindy H. Chettih
Vincent M. Fazzari
Alfred W. Froebrich
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Lisa A. Ferrari
Richard D. Margiano
Darren S. Mogil
David P. Badanes
Mher Hartoonian
Alphonso A. Collins
Douglas D. Zhang
Edward V. DiLello
Edward M. Reisner
Bradley M. Marazas

———————

Enshan Hong
Technical Advisor

October 27, 2006

**_VIA E-MAIL_**

Paul D. Weller, Esq.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

Anthony J. Fitzpatrick, Esq.
Duane Morris, LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

Re:    Motion for Protective Order in
        Miller et al. v. Treado et al.
        Civ. No. 05-10367-RWZ (D.Mass.)
        <u>Our File No.: 34250-60L</u>

Dear Messrs. Weller and Fitzpatrick:

At last week's deposition of Peter Miller, there were a few instances in which we objected to the question, instructed the witness not to answer the question, and indicated we would seek a protective order. We are preparing the motion for a protective order, however, in order to save time and narrow the issues, we request that you confirm that you continue to seek answers to the following questions, and, if so, whether you wish to narrow the subject matter of your inquiry:

- "Mr. Miller do you consider there to be any novel invention set forth in the '962 patent?" Miller Deposition, p. 94:5-6.

- "If you've made a significant contribution in a broader system, accepting the definition of inventorship you gave a moment ago, Mr. Miller, and you don't know how the broader system works, do you still consider yourself a co-inventor of the broader system?" Miller Deposition, p. 104:9-13.

We will defer our motion for a protective order until we hear from you.

Very truly yours,
COHEN, PONTANI, LIEBERMAN & PAVANE LLP

/s/ Martin B. Pavane

MBP/TJH/tdg

cc:    Kenneth Racowski, Esq.
        Christopher S. Kroon, Esq.

# EXHIBIT 5

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel:  215.963.5000
Fax:  215.963.5001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Kenneth L. Racowski**
215.963.5593
kracowski@morganlewis.com

November 3, 2006

**VIA E-MAIL**

Tidge Holmberg, Esquire
Cohen, Pontani, Lieberman and Pavane
551 Fifth Avenue
New York, NY 10176

RE:    **Miller, et al. v. Treado, et al., No.: 05-10367 RWZ (D. Mass.)**
       **CRI's Motion for Protective Order relating to Peter Miller deposition**

Dear Mr. Holmberg:

We are writing in response to your letter dated October 27, 2006.

First, we are concerned that Plaintiffs have not yet moved for a Protective Order as a result of having prevented Defendants' questioning of Peter Miller during his October 17th deposition. During the deposition, as you know, Plaintiffs' counsel improperly instructed the witness, Mr. Miller, not to answer two direct questions, and related lines of questioning.  Nonetheless, Plaintiffs' counsel insisted at least three times during the deposition that Plaintiffs would seek a Protective Order.  While we appreciate the fact that you have asked us (10 days after the first day of Mr. Miller's deposition) whether we will continue to seek answers to our questions, we remind Plaintiffs of their obligation to promptly file a motion for a Protective Order or immediately agree to resume Mr. Miller's deposition.

Second, as you requested, Defendants again restate the position reflected in the record of Mr. Miller's deposition, that is, we will seek answers to the questioning that Plaintiffs' counsel improperly prevented Mr. Miller from answering during his deposition.  Defendants intend to resume Mr. Miller's deposition to seek answers to these lines of questions, and follow-up questions arising as a result of Mr. Miller's responses.

Philadelphia  Washington  New York  Los Angeles  San Francisco  Miami  Pittsburgh  Princeton
Chicago  Palo Alto  Dallas  Harrisburg  Irvine  Boston  London  Paris  Brussels  Frankfurt  Tokyo

1-PH/2523128.2

Morgan Lewis
COUNSELORS AT LAW

Tidge Holmberg, Esquire
November 3, 2006
Page 2


Given the present full schedule of depositions over the remaining few weeks of discovery, we ask that by close of business on **Monday, November 6, 2006**, Plaintiffs either file a Motion for Protective Order or provide a date on which Defendants can resume Mr. Miller's deposition.

Sincerely,

Kenneth L. Racowski

1-PH/2523128.2

# EXHIBIT 6



**COHEN PONTANI LIEBERMAN & PAVANE**
551 Fifth Avenue, New York, NY 10176  *phone* 212.687.2770  *fax* 212.972.5487  www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.

———————

Sidney R. Bresnick
Of Counsel

———————

Julia S. Kim
Mindy H. Chettih
Vincent M. Fazzari
Alfred W. Froebrich
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Lisa A. Ferrari
Richard D. Margiano
Darren S. Mogil
David P. Badanes
Mher Hartoonian
Alphonso A. Collins
Douglas D. Zhang
Edward V. DiLello
Edward M. Reisner
Bradley M. Marazas

———————

Enshan Hong
Technical Advisor

November 13, 2006

***VIA E-MAIL***

Kenneth L. Racowski, Esq.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

Re:    Motion for Protective Order concerning
       Peter Miller's Deposition in
       Miller et al. v. Treado et al.
       Civ. No. 05-10367-RWZ (D.Mass.)
       Our File No.: 34250-60L

Dear Ken:

In written response to your letter of November 3, 2006 (we had discussed CRI's position on the matter in a teleconference the night of November 3rd), we will be moving for a protective order regarding the questions identified in our October 27, 2006 letter.

However, in the spirit of LRs 7.1(a)(2) and 37.1(a), we suggest the following compromise: if you serve contention interrogatories on these questions, our client will provide written answers in accordance with the Federal Rules. We believe contention interrogatories are the appropriate means for obtaining answers to your questions. See, e.g., *Smithkline Beecham Corporation v. Apotex Corp.*, 2004 WL 739959, *2 ("..., a party may properly resist a Rule 30(b)(6) deposition on grounds that the information sought is more appropriately discoverable through contention interrogatories."). Furthermore, contention interrogatories address both the defendants' right to obtain answers concerning the contentions of plaintiffs and our concern that the non-lawyer plaintiff deponents were being asked to provide plaintiffs' legal contentions in the context of a deposition. See, e.g., *Smithline*, at *3:

> ... Although Alphapharm contends that it seeks the facts, opinions, and subjective beliefs of Smithkline, our review of the disputed questions reveals that Alphapharm was asking Smithkline's witness to take a legal position with respect to certain statements in Smithkline's patents. It would be very difficult for a non-attorney witness to answer such questions at a deposition. A better method would be for Smithkline to respond to interrogatories because than it would be able to receive input from both its attorneys and persons familiar with the patents. See *Exxon Research* [& *Eng'g Co. v. United States*], 44 Fed. Cl. [597,] at 601 [(Fed.Cl. 1999)] (holding that contention interrogatories were more appropriate than depositions to inquire about claim construction). Accordingly, we will require Smithkline to respond ... through interrogatories.

18860_2.DOC

November 13, 2006
Page 2


We will await a written response to our proposed compromise before filing our motion for a protective order (which will also suggest this compromise).

Very truly yours,
COHEN, PONTANI, LIEBERMAN & PAVANE LLP

/s/ Tidge Holmberg

MBP/TJH/tdg

cc:    Paul D. Weller, Esq.
       Anthony J. Fitzpatrick, Esq.
       Christopher S. Kroon, Esq.

# EXHIBIT 7

Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103-2921
Tel: 215.963.5000
Fax: 215.963.5001
www.morganlewis.com

# Morgan Lewis
C O U N S E L O R S   A T   L A W

**Ken Racowski**
215.963.5593
kracowski@morganlewis.com

November 16, 2006


Tidge Holmberg
Cohen, Pontani, Lieberman & Pavane
551 Fifth Avenue
New York, NY 10176

Dear Mr. Holmberg:

I am writing in response to your letter dated November 13, 2006.

First, at no time in correspondence or any telephone conversations have I, or anyone on behalf of Defendants, suggested anything other than CRI must promptly move for a Protective Order or immediately provide a date upon which Defendants can continue the deposition of Peter Miller.

Second, Plaintiffs simply cannot tell Defendants how they should conduct discovery. Plaintiffs suggest Defendants serve contention interrogatories only as a means of deflecting attention from the actual issue resulting from their impermissible instruction to Peter Miller not to answer questions during his deposition on October 17th.

During Mr. Miller's deposition, Plaintiffs' counsel improperly instructed Mr. Miller not to answer Defendants' questions on relevance grounds. After giving this instruction not to answer, Plaintiffs' counsel repeatedly insisted that Plaintiffs would move for a Protective Order. Since that time, Defendants have repeatedly reminded Plaintiffs of their obligation to promptly move for a Protective Order. For reasons unknown, however, Plaintiffs have completely ignored their obligation to do so, despite the passage of some 4 weeks.

Defendants again request that Plaintiffs immediately provide a date on which we can resume the deposition of Peter Miller.


Very truly yours,

*Ken Racowski/DHG*

Ken Racowski/DHG


Philadelphia  Washington  New York  Los Angeles  San Francisco  Miami  Pittsburgh  Princeton
Chicago  Palo Alto  Dallas  Harrisburg  Irvine  Boston  London  Paris  Brussels  Frankfurt  Tokyo