

COHEN PONTANI LIEBERMAN & PAVANE LLP
551 Fifth Avenue, New York, NY 10176 *phone* 212.687.2770 *fax* 212.972.5487 www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.
Julia S. Kim
Alfred W. Froebrich
Lisa A. Ferrari
Alan J. Morrison

Sidney R. Bresnick
Of Counsel

Mindy H. Chettih
Vincent M. Fazzari
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Richard D. Margiano
Darren S. Mogil
David P. Badanes
Mher Hartoonian
Alphonso A. Collins
Douglas D. Zhang
Edward V. DiLello
Edward M. Reisner
Bradley M. Marazas
F. Brice Faller
Marilyn Neiman

Enshan Hong
Technical Advisor

March 20, 2007

***Filed via ECF***

Judge Rya W. Zobel
U.S. District Court of Massachusetts
John Joseph Moakley Courthouse
1 Courthouse Way
Boston, MA 02210

Re: Docket No. 05-10367-RWZ
Miller et al. v. Treado et al.
Our File No.: 34250-60L

Dear Judge Zobel:

At the pretrial conference on the above-identified litigation scheduled for this Thursday, March 22, 2007, at 3:00 PM in Courtroom 12, counsel for plaintiffs would like to raise the following issues:

**(1) Defendants' Reissue Proceeding**

On January 31, 2007, defendants filed an amendment in their pending proceeding before the Patent Office to reissue U.S. App. Ser. No. 6,734,962 ("the '962 patent-in-suit"), in which they ask the Patent Office to ***completely delete*** Claims 1-6. The inventorship claim currently being litigated in this action is based on Claims 1, 3, and 4 of the '962 patent-in-suit. *See*, *e.g.*, ¶¶31-32 of the Complaint [D.E. 1]. Defendants' motive is clear: to moot the present action by having the Patent Office reissue the '962 patent-in-suit without Claims 1, 3, and 4. Although the Court denied plaintiffs' previous motion to order defendants to stop their reissue proceeding [D.E. 11], defendants at that time had only slightly amended the claims of the '962 patent-in-suit. Because defendants have now asked the Patent Office to completely delete the basis for this lawsuit from the '962 patent-in-suit, plaintiffs believe it is appropriate for the Court to revisit the topic of defendants' reissue proceeding. If the Court decides it is acceptable, plaintiffs will file a second motion to order defendants to stop their reissue proceeding.

In this regard, it should be noted that defendants have apparently suggested to the Patent Office Examiner, in undocumented telephone interviews, that this Court has stayed all actions on the '962 patent-in-suit, which thereby requires, under Patent Office rules, that the Examiner hasten the examination and reissuance of the patent. At the least, plaintiffs ask that defendants be required to file a statement with the Patent Office, unambiguously informing the Patent Office that there is an inventorship claim concerning Claims 1, 3, and 4 of the '962 patent-in-suit actively being litigated in the District Court of Massachusetts.



**(2) Discovery concerning Defendants' Malpractice Lawsuit on the '962 Patent-in-suit**

Plaintiffs have discovered that, before the complaint in the instant action was filed, the law firm that prosecuted the '962 patent-in-suit, Buchanan Ingersoll, had sued defendants in Pennsylvannia State Court for unpaid bills totaling $668,181.33. After the complaint in this action was filed, on May 23, 2005, defendants entered a single counter-claim for malpractice against Buchanan Ingersoll in the Pennsylvania case, on the sole basis that "Buchanan breached [the] duty to exercise reasonable care by drafting and prosecuting patent claims [in the '962 patent-in-suit] that were unnecessarily overbroad in light of the Prior Art" (the "Prior Art" consists of two articles, one of which was written by defendant Treado and plaintiffs Hoyt and Miller, and was the outcome of the collaboration between plaintiffs and defendants which is the factual basis of the present inventorship action).

The focus of the malpractice suit in Pennsylvannia is the breadth of the subject matter claimed in the '962 patent-in-suit—there can be no argument that the Pennsylvannia lawsuit is not "relevant to the subject matter involved in [this] action". Despite this, defendants have not produced a single document from that lawsuit (not even the publicly-disclosed documents, such as the original complaint), and have told plaintiffs that the "documents regarding [the] legal malpractice action between ChemImage and Buchanan Ingersoll have absolutely nothing to do with Plaintiffs' inventorship claim regarding the '962 Patent." Plaintiffs have complied with LR 37.1 concerning defendants' withholding of all documents from their malpractice lawsuit based on the claims in the '962 patent-in-suit, but it seems the Court might provide a quick answer on this matter at the conference, thereby obviating the need for motion practice.

**(3) Defendants' Noncompliance with the Stipulated Protective Order**

Plaintiffs have also fully complied with LR 37.1 on another issue, which seems too trivial to bring up with the Court, except for the fact that defendants have refused to respond in any way to our communications on the subject.

When the protective order in this case was originally being debated, the parties came up with a compromise to limit the access to material designated "CONFIDENTIAL" to only two people (besides the lawyers, experts, etc.)—two people for the defendants, two people for the plaintiffs:

> 4. Unless otherwise ordered by the court or permitted in writing by the designating party, a receiving party may disclose Protected Material only to:
> (a) The receiving party's Outside Counsel …
> (b) The receiving party's Experts (as defined and limited in this Order) …
> (c) ***Two individuals designated by the receiving party*** from among the officers, directors, and employees of the receiving party who have signed the "Agreement to be Bound by the Protective Order" (Exhibit A);

Stipulated Protective Order [D.E. 38-2], p. 5, §E.4 (emphasis added)

Plaintiffs duly designated plaintiff Peter Miller as one of the two designated individuals under §E.4(c) of the Stipulated Protective Order, and, when defendants asked plaintiffs to

provide any Agreements signed by any designated individuals, plaintiffs promptly forwarded Miller's signed Agreement. By contrast, plaintiffs have asked defendants for their signed Agreement(s) four times in the last three months, and defendants have not responded.

If defendants are obeying the Stipulated Protective Order, there are only two choices. One, defendants have a signed Agreement by one or both of the individuals designated under §E.4(c) of the Stipulated Protective Order, but are refusing to produce the signed Agreement(s) to plaintiffs for some unknown reason. Two, no one at ChemImage, including Patrick Treado, has signed the Agreement, as required under the Stipulated Protective Order, and thus no one at ChemImage, including Patrick Treado, has had access to any information designated "CONFIDENTIAL" by plaintiffs in this lawsuit.

Such a trivial matter as producing a signed Agreement should not require the Court's intervention; however, defendants' complete lack of response has made plaintiffs justifiably nervous about who, on defendants' side, has had access to plaintiffs' CONFIDENTIAL information. Plaintiffs seek the Court's assistance in directing defendants to produce the Agreements signed by their designated individuals, thereby obviating the need for motion practice.

**(4) <u>Scope of Discovery</u>**

It is plaintiffs' understanding that discovery has been limited to the inventorship issue in this action. *See*, *e.g.*, this Court's Order [D.E. 83]; and Feb. 7, 2007 Elec. Order on Plaintiffs' Motion for a Protective Order [D.E. 92] on questions in Peter Miller's deposition. A deposition is scheduled for Friday, March 23, 2007, the day after the Court conference, and plaintiffs would like the Court's assistance in preventing defendants from "going off the reservation", so to speak. As plaintiffs have told defendants, plaintiffs believe that the deponent, Barry Logue, knows nothing substantive about who invented what in the collaboration between plaintiffs and defendants in the 1990's. However, as an ex-salesperson and a present investor with plaintiff CRI, a privately-held company, Mr. Logue may know sensitive business information completely unrelated to the inventorship issue in this case. Based on defendants' in-depth questioning concerning sensitive business information completely unrelated to the inventorship issue in past depositions, plaintiffs ask that the Court confirm the present scope of discovery is limited to the inventorship issue. Mr. Logue, a third party witness, should not have to endure hours of questions about the sensitive business information of plaintiff CRI.

**(5) <u>Defendants' Motion [D.E. 100] to Amend the Scheduling Order</u>**

This pending motion has been completely briefed by the parties.

cplp

Judge Rya Zobel
District Court of Massachusetts
March 20, 2007
Page 4


Very truly yours,

**COHEN PONTANI LIEBERMAN & PAVANE LLP**

**for Plaintiffs Peter J. Miller, Clifford Hoyt,
and Cambridge Research & Instrumentation**

/s/ Teodor J. Holmberg
(BBO#634708)

cc (via ECF):  Paul D. Weller, Esq.
Anthony J. Fitzpatrick, Esq.
Christopher S. Kroon, Esq.