IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **PETER J. MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.,**<br><br>　　　　**Plaintiffs,**<br><br>　v.<br><br>**PATRICK TREADO and CHEMIMAGE CORP.,**<br><br>　　　　**Defendants** | **CIVIL ACTION NO. 05 10367 RWZ** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I.　INTRODUCTION**

On February 24, 2005, Plaintiffs commenced this litigation by filing a five-count Complaint seeking a declaratory judgment that Plaintiffs Peter J. Miller ("Miller") and Clifford Hoyt ("Hoyt") are co-inventors of certain claims of U.S. Patent No. 6,734,962 (the "'962 Patent"), and, at the same time, that those patent claims are invalid because they, *inter alia*, fail to satisfy the non-obviousness requirement in 35 U.S.C. § 103. In response to a motion to dismiss filed by Defendants, Plaintiffs withdrew all of their claims except Count 1 of the Complaint. Reduced to its essence, Count 1 asserts that Plaintiffs are co-inventors of claims 1, 3 and 4 of the '962 Patent. For the reasons set forth below, this co-inventorship claim fails as a matter of law.

The '962 Patent contains sixteen patent claims. Plaintiffs have repeatedly acknowledged to this Court that co-inventorship allegations in Count 1 are limited to claims 1, 3 and 4 of the

'962 Patent. As the decisional authorities make clear, Plaintiffs cannot prevail unless they prove that Miller and Hoyt made a *significant* contribution to a *patentable* aspect of claims 1, 3 and 4. *Levin v. Septodont, Inc.,* 34 Fed. Appx. 65, 72; 63 U.S.P.Q.2d 1395, 1400 (4th Cir. 2002) ("the significance of an alleged joint inventor's contribution should be assessed by asking whether the contribution helped to make the invention patentable"; person who contributed only to non-novel and/or non-obvious elements of patent claim did not qualify as joint inventor); *Sewall v. Walters,* 21 F.3d 411, 417 (Fed. Cir. 1994) (patent claimed combination of five elements a-e; novel aspect rested in element b; joint inventorship claim rejected where alleged co-inventor "admitted that he did not contribute to the placement of element b . . . [and] did not even understand the purpose or function of element b in the apparatus."). Furthermore, Plaintiffs cannot succeed unless they make their showing of significant contribution to these claims by ***clear and convincing evidence.*** *Ethicon, Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456, 1461 (Fed. Cir.), *cert. denied*, 525 U.S. 923 (1998) ("To show co-inventorship, however, the alleged co-inventor or co-inventors must prove their contribution to the conception of the claims by clear and convincing evidence.") (citing *Hess v. Advanced Cardiovascular Sys. Inc.*, 106 F.3d 976 (Fed. Cir.), *cert. denied*, 177 S. Ct. 2459 (1997)).

The Court can enter summary judgment against Plaintiffs on their co-inventorship claim based upon the undisputed facts. Even assuming *arguendo,* for purposes of this motion, that Plaintiffs Miller and Hoyt made contributions to claims 1, 3 and 4 of the '962 Patent, there is no dispute that these contributions did *not* make the claimed inventions *patentable*.

After Plaintiffs filed their Complaint alleging, *inter alia*, the invalidity of claims 1, 3 and 4 of the '962 Patent, Defendants filed an application to reissue the patent to correct any errors in the scope of the patent claims. On September 25, 2006, the United States Patent and Trademark

Office ("PTO") found that claims 1-6 of the '962 Patent were *unpatentable* for obviousness, and consequently those claims were deleted from the patent. Thus, the PTO confirmed Plaintiffs' own position in their Complaint that claims 1, 3 and 4 are invalid for obviousness under 35 U.S.C. §103. Defendants' expert Dr. Edward Yeung also has confirmed what Plaintiffs have admitted and the PTO found, namely that claims 1-6 of the '962 Patent are invalid for obviousness. This point, therefore, is not in dispute.

The foregoing facts are the only ones necessary for the Court to enter summary judgment against Plaintiffs. *See, e.g., Garrett Corp. v. United States,* 422 F.2d 874, 881 n.5 (Ct. Cl. 1970) (where a patent claim was invalid for obviousness, "the question of inventorship of its subject matter is moot."). The law is plain that a contribution is significant and hence rises to the level of inventorship *only if the contribution helps to make the claimed invention patentable*. *Levin v. Septodont, Inc.,* 34 Fed. Appx. at 72; 63 U.S.P.Q.2d at 1400; *Sewall v. Walters,* 21 F.3d at 417; *Garrett Corp. v. United States,* 422 F.2d at 881 n.5. In this case, however, it is beyond dispute that the system described in claims 1-6 is *unpatentable*. Thus, Plaintiffs cannot establish that they made a contribution that helped to make the claimed system *patentable*. Accordingly, Defendants are entitled to summary judgment on Count 1 of the Complaint as a matter of law.

## II.   STATEMENT OF MATERIAL UNDISPUTED FACTS:

### A.   The Subject Matter Of The '962 Patent

The '962 Patent describes a chemical imaging system that produces chemical images of a sample. '962 Patent [Exh. A[1]], col. 3, line 42- col. 4, line 8. The system has a broad range of applications, for example: in the pharmaceutical and biotechnology industries, to aid in drug

---

[1]   All references to exhibits are made with respect to Exhibits A-H attached to the Declaration of Anthony J. Fitzpatrick, Esquire, submitted herewith.

development; in forensics laboratories, to analyze forensic evidence; and in connection with homeland security, to detect biological and chemical warfare agents.

The '962 Patent discloses a system that detects chemical images from *near infrared light* collected from a sample. '962 Patent [Exh. A], Abstract. Various components work in concert to produce near infrared chemical images, including:

    a)    a near infrared illumination source for illuminating a sample using light in the near infrared radiation wavelength;

    b)    a device (e.g., an objective) for collecting a spectrum of near infrared wavelength radiation light from the sample and producing a collimated beam therefrom;

    c)    a near infrared imaging spectrometer (e.g., a near infrared liquid crystal tunable filter ("LCTF")); and

    d)    a near infrared detector for collecting near infrared images.

Aspects of the '962 Patent relating to collection and detection of *near infrared* chemical images are described in *claims 1-6* of the patent. '962 Patent [Exh. A], col. 14, line 20-col. 15, line 6.

The system described in the '962 Patent includes further components (in addition to the *near infrared* imaging components described in the paragraph above) that collect and detect chemical images from *visible light*.[2] These further components include, for example:

    a)    an illumination source (*e.g.,* a visible light source) for illuminating a sample using light in the visible optical wavelengths; and

    b)    a device (*e.g.,* a visible light detector) for detecting visible wavelength light from the illuminated area of the sample.

---

[2]    Near infrared wavelength light and visible wavelength light correspond to different portions of the radiation spectrum.

4

***Claims 7-13*** of the '962 Patent describe a ***combined*** system that includes both: (i) the near infrared imaging components described in the paragraph above, and (ii) the visible wavelength imaging components. '962 Patent [Exh. A], col. 15, line 7 – col. 16, line 6.

Set forth below is an annotated version of Figure 1 of the '962 Patent. '962 Patent [Exh. A], fig. 1 and col. 4, line 57- col. 5, line 25. The **blue** elements perform ***near infrared*** imaging and are described in claims 1-6 of the '962 Patent. The **blue** elements are those that the PTO found obvious in view of prior art as part of the reissue proceedings initiated by Defendants. The **red** elements perform ***visible*** imaging. The **blue** and **red** elements together correspond to claims 7-13 of the '962 Patent. Claims 7-13 are patentable, because they describe a system that performs both ***near infrared*** and ***visible*** imaging, in combination.



### B.     Proceedings Before The PTO To Reissue The '962 Patent

As referenced above, after Plaintiffs filed their Complaint, Defendants filed an application to reissue the '962 Patent to correct any errors in the scope of the patent claims. In connection with this reissue application, Defendants filed a copy of the Complaint with the PTO, so that the Patent Examiner would be fully aware of Plaintiffs' allegations, including their allegations that claims 1, 3 and 4 of the '962 Patent were invalid for obviousness. Preliminary Amendment dated April 11, 2005 at 8 (referencing copy of Complaint supplied to PTO) [Exh. B]. During the reissue proceedings, the Patent Examiner considered a significant number of prior art references, including prior art that was not considered when the '962 Patent was originally examined by the PTO.

On September 25, 2006, Patent Examiner Layla Lauchman found that claims 1-6 were unpatentable for obviousness under 35 U.S.C. § 103 in view of prior art. Specifically, the Patent Examiner rejected claims 1-6 as obvious in view of U.S. Patent No. 5,943,129 ("the '129 Prior Art Patent"). Official Action dated September 25, 2006 at 2-5 [Exh. C]. The Patent Examiner identified this prior art on her own during the course of the reissue proceedings. None of the parties had identified the '129 Prior Art Patent as being pertinent. Ironically, this prior art was authored by Plaintiffs Hoyt and Miller, who chose for their own reasons to allow it to be made a matter of public record. More significantly, however, having authored the very art that destroyed claims 1-6 of the '962 Patent, Plaintiffs cannot now argue the patentability of those claims here.[3]

---

3    Indeed, in a later sworn report to the federal government, Plaintiffs represented under penalty of ***perjury*** that they had made ***no inventions*** during performance of the so-called "SBIR work" that serves as the basis for the co-inventorship claims in this case. Small Business Innovation Research (SBIR) Phase II Report, CI02570 [Exh. F] ("No Inventions have been made during the Phase II project".).

In response to the PTO's Official Action rejecting claims 1-6, Defendants deleted claims 1-6 from the '962 Patent. Amendment dated October 16, 2006 at 6 [Exh. D]. Claims 7-13 remained intact as the Patent Examiner had found that those claims were patentable. See Exh. C, at 4-5. Following deletion of claims 1-6, the Patent Examiner issued a Notice of Allowance on April 2, 2007 in connection with the reissue application. Notice of Allowability dated March 17, 2007. [Exh. E]. The '962 Patent is scheduled to be reissued (without original claims 1-6) in the next few months. During the conference with the Court on March 22, 2007, Plaintiffs' counsel conceded that Plaintiffs would not be making a co-inventorship claim with respect to any of the claims remaining in the reissue patent.

    **C.    Plaintiffs' Co-Inventorship Allegations Are Limited To Unpatentable Claims Of The '962 Patent**

Defendants' motion for summary judgment is predicated on the following undisputed facts: (i) Plaintiffs' co-inventorship allegations are limited to claims 1-6 of the '962 Patent, and (ii) claims 1-6 of the '962 Patent are unpatentable for obviousness under 35 U.S.C. § 103. Each of these facts is of record in this case:

    **1.    Plaintiffs' Co-Inventorship Allegations Are Limited To Claims 1-6 Of The '962 Patent**

Most recently, in their letter to the Court dated March 20, 2007, Plaintiffs again unequivocally acknowledged that their claim for co-inventorship is based on Claims 1, 3 and 4 of the '962 Patent, and that the deletion of claims 1-6 would "*completely* delete the basis of this lawsuit from the '962 patent-in-suit." In particular, Plaintiffs stated as follows:

> On January 31, 2007, defendants filed an amendment in their pending proceeding before the Patent Office to reissue U.S. App. Ser. No. 6,734,962 ("the '962 patent-in-suit"), in which they ask the Patent Office to ***completely delete*** Claims 1-6. The inventorship claim currently being litigated in this action is based on Claims 1, 3 and 4 of the '962 patent-in-suit. See, e.g., ¶¶31-32 of the Complaint [D.E. 1] . . . . Defendants' motive is clear: to

>moot the present action by having the Patent Office reissue the '962 patent-in-suit without Claims 1, 3, and 4. Although the Court denied plaintiffs' previous motion to order defendants to stop their reissue proceeding [D.E. 11], defendants at that time had only slightly amended the claims of the '962 patent-in-suit. Because defendants have now asked the Patent Office to ***completely delete the basis for this lawsuit from the '962 patent-in-suit***, plaintiffs believe it is appropriate for the Court to revisit the topic of defendants' reissue proceeding.

Letter from T. Holmberg to Judge Zobel dated March 20, 2007 (emphasis supplied) [Exh. G].

### 2. Claims 1-6 Of The '962 Patent Are Obvious Under 35 U.S.C. § 103

As mentioned above, the Patent Examiner found that claims 1-6 are unpatentable for obviousness in view of prior art. The Patent Examiner's findings with respect to claims 1-6 validate (albeit on the basis of different prior art) Plaintiffs' allegations in their Complaint wherein Plaintiffs maintained that claims 1, 3 and 4 of the '962 Patent were invalid for obviousness under 35 U.S.C. §103. *See, e.g.,* ¶60 of the Complaint [D.E. 1] ("Wherefore plaintiffs ask the Court to declare one or more claims, including but not limited to, claims 1, 3 and 4, of the '962 patent, invalid . . . as obvious under 35 U.S.C. §103.").

Defendants' expert Dr. Edward Yeung has independently confirmed what Plaintiffs admit and the PTO found, namely that claims 1-6 of the '962 patent are invalid for obviousness. *See* Declaration of E. Yeung, at Page 20, lines 22-23 [Exh. H]. Plaintiffs have no contrary evidence with respect to the obviousness of claims 1-6 under 35 U.S.C. § 103.[4]

---

[4] Even if they had any such evidence (which they do not), Plaintiffs are foreclosed from offering evidence that claims 1-6 of the '962 Patent are patentable over the prior art. During the deposition of Plaintiff Miller, defendants asked Mr. Miller the following question: "Mr. Miller do you consider there to be any novel invention set forth in the '962 Patent?" Miller Deposition 94:5-6; 95: 8-9 [See Exhibit 3 to Plaintiffs' Motion to Seal Exhibits 1 and 3 to Plaintiffs' Motion for Protective Order [D.E. 94]]. In response, Plaintiffs instructed Mr. Miller not to answer on the grounds that the question was "irrelevant" to the issue of inventorship. Given Plaintiffs' refusal to answer questions during depositions concerning the patentability (over prior art) of claims 1-6 '962 Patent, Plaintiffs are foreclosed from offering testimony on this topic at trial.

Thus, Plaintiffs cannot dispute with any evidence, much less clear and convincing evidence, the fact that claims 1-6 of the '962 patent are unpatentable over the prior art. Accordingly, Defendants are entitled to summary judgment as a matter of law.

### III.   LAW AND ARGUMENT:

#### A.   Summary Judgment Is Appropriate In This Case

Summary judgment is as appropriate where no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This conclusion applies equally in patent cases as in any other case. *See, e.g., Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994).

Once the movant has met its initial burden of production, the responding party must set forth specific facts showing there is a genuine issue of material fact that requires trial -- *i.e.*, the responding party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); Fed. R. Civ. P. 56(e). "The mere existence of a scintilla of evidence in support of the [responding party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [responding party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252.

Inventorship is a question of law, applied to relevant facts. *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1352 (Fed. Cir. 1998). In this case, (i) Plaintiffs acknowledge that their co-inventorship allegations are limited to claims 1-6 of the '962 Patent; and (ii) claims 1-6 of the '962 Patent are unpatentable for obviousness under 35 U.S.C. §103. Nothing further is required for this Court to enter summary judgment against Plaintiffs.

B.  **Plaintiffs Face A Clear And Convincing Evidence Standard Of Proof That They Cannot Meet**

The exacting legal standard in this case only confirms that summary judgment should be entered against Plaintiffs.  Plaintiffs cannot prevail in this case unless they prove, ***by clear and convincing evidence***, that Plaintiffs Miller and Hoyt are co-inventors of the subject matter claimed in the '962 Patent.  *See Ethicon, Inc. v. U.S. Surgical Corp.,* 135 F.3d 1456, 1461 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 923 (1998) ("To show co-inventorship, however, the alleged co-inventor or co-inventors must prove their contribution to the conception of the claims by clear and convincing evidence.") (citing *Hess v. Advanced Cardiovascular Sys. Inc.*, 106 F.3d 976 (Fed. Cir. 1997), *cert. denied*, 177 S. Ct. 2459 (1997)).

In *Anderson v. Liberty Lobby, Inc.,* the Supreme Court held that, in a case where the standard of proof is clear and convincing evidence, the court ***must*** take that standard into account when deciding a motion for summary judgment.  *Id.* at 254-55 ("Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.").  Thus, in addressing summary judgment in an inventorship case, the Court must ask whether a reasonable fact-finder[5] could find by clear and convincing evidence that the party claiming inventorship is entitled to a decision in its favor.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 254-55; *Fina Oil & Chemical Co., v. Ewen*, 123 F.3d 1466, 1472 (Fed. Cir. 1997) (affirming district court's dismissal of inventorship claim on summary judgment for failure to meet clear and convincing burden).

---

[5]  In this case, the fact-finder is the Court itself, because as Plaintiffs' counsel acknowledged at the March 22, 2007 pretrial conference, correction of inventorship is an equitable remedy tried to the Court without a jury.

10

### C. Plaintiffs Must Prove That They Made A "Significant" Contribution To Claims 1-6 Of The '962 Patent, *i.e.*, A Contribution That Made Those Claims Patentable

The Court must decide whether Plaintiffs have established that they are co-inventors of the '962 Patent. As explained by the Federal Circuit in *Pannu v. Iolab Corp.*, 155 F. 3d 1344, 1351 (Fed. Cir. 1988), a party alleging co-inventorship must, in order to prevail:

> (1) contribute in some *significant* manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is *not insignificant* in quality, when that contribution is measured against the dimension of the full invention, and (3) *do more than merely explain to the real inventors well-known concepts and/or the current state of the art*. (Emphasis supplied.)

In this case, determining whether Plaintiffs have met their burden is refreshingly simple, because there is no dispute that Plaintiffs did *not* make a significant contribution to the '962 Patent.

A contribution is "significant" only if "the contribution makes the invention patentable by making it novel (as required by 35 U.S.C. § 102) or non-obvious (as required by 35 U.S.C. § 103)." *Levin et al. v. Septodont, Inc.*, 34 Fed. Appx. 65, 72; 63 U.S.P.Q. 2d 1395, 1400 (4th Cir. 2002). *See also, Coca-Cola Company v. Pepsico, Inc.*, 2004 U.S. Dist. LEXIS 30375, at *128 (N.D. Ga. 2004) ("the significance of an alleged joint inventor's contribution [under Pannu] should be assessed by asking whether the contribution helped to make the invention patentable.")

Significantly, "a person who contributed only to the non-novel and/or obvious elements of a claim" *cannot* be called an inventor. *Levin*, 34 Fed. Appx. at 73; 63 U.S.P.Q. 2d at 1401. *See also Garret Corp. v. United States*, 422 F.2d at 881 (colleague who worked closely with the named inventor on the subject matter of patent was not an inventor of claim 3 because colleague's only alleged contribution to that claim was "an idea held to be obvious in view of prior art"; claim of inventorship as to claim 2 dismissed as moot because claim had been held obvious in light of prior art). Courts routinely look at the prosecution history of the patent before

11

the PTO in assessing whether an alleged joint-inventor's contribution helped to make the claim patentable. *Levin*, 34 Fed. Appx. at 74-75; 63 U.S.P.Q. 2d at 1401-1402; *Coca-Cola Company*, 2004 U.S. Dist. LEXIS 30375, at *128.

In *Levin*, the parties disputed whether Dr. Kilday (the alleged co-inventor) made a "significant" contribution to a mouth rinse under the *Pannu* standard. The defendant (Septodont) argued that "the critical question [of joint inventorship] is who conceived, as that term is used in the patent law, the subject matter of the claims [in the patent]," and that the Court's task is simply to determine whether the alleged co-inventor's contribution is recited in the patent claims. Applying this standard, Septodont argued that the alleged co-inventor (Dr. Kilday) must have been a co-inventor because active ingredients of the mouth rinse originally suggested by Dr. Kilday (*i.e.,* benzocaine and phenol) were featured prominently in the claims of the patent. There was no dispute that Dr. Kilday originally suggested benzocaine and phenol as active ingredients for the mouth rinse. However, the Levins argued (and the Court agreed) that "the fact that Dr. Kilday's contributions appear in the claims for the mouth rinse is not enough to make him a joint inventor under *Pannu* . . . . because it was not what made the invention non-obvious and thus subject to [a] patent":

> The Levins suggest, then, that whether a contribution counts as "significant" under the Pannu standard for joint inventorship depends on the extent to which the contribution makes the invention patentable by making it novel (as required by 35 U.S.C. §102) or non-obvious (as required by 35 U.S.C. §103). … We agree with the Levins that ***the significance of an alleged joint inventor's contribution should be assessed by asking whether the contribution helped to make the invention patentable***.

*Levin*, 34 Fed. Appx. at 72; 63 U.S.P.Q. 2d at 1400 (emphasis added).

In concluding that the prominent appearance of Dr. Kilday's contributions in the claims of the patent was ***insufficient*** to make him a joint inventor, the Court reasoned as follows:

12

> Reflection on the basic principles of patent law also supports our conclusion that a person does not qualify as an inventor simply because his contributions to an invention appear in the claims of the patent. A patentable invention need not be novel and non-obvious in every respect – it is enough if the claimed subject matter is an improvement over the prior art in one limited respect. ***We find it implausible to say that a person who contributed only to the non-novel and/or obvious elements of a claim can be called an inventor***. A simple example illustrates the point. The claims of a patent for the proverbial "better mousetrap" would necessarily include many elements that were present in ordinary, non-patentable mousetraps, but surely ***the only inventor of the new mousetrap is the person who conceived the features that made the new mousetrap an improvement over prior art***. A person who told the real inventor about the features of existing mousetraps and their shortcomings is not an inventor because he does no more than explain "well known concepts and/or the current state of the art.

*Levin*, 34 Fed. Appx. at 73; 63 U.S.P.Q. 2d at 1400-1401 (citations omitted, emphasis added).

In determining that Dr. Kilday's contribution (*i.e.,* benzocaine and phenol as the active ingredients for the mouth rinse) did not help to make the invention patentable, the Court analyzed the history of the patent in the PTO. As originally filed, the patent claimed a mouth rinse that included, *inter alia*, a topical anesthetic (preferably benzocaine) and an antiseptic (preferably phenol). The Patent Examiner initially rejected the application on the ground that the claims were obvious in light of the prior art. In response to the rejection, the patent application was amended "to emphasize that the innovative aspect of the mouth rinse was the use of polyethylene glycol and propylene glycol as non-alcoholic solvents to suspend the active ingredients (benzocaine and phenol) in liquid form." *Levin*, 34 Fed. Appx. at 74; 63 U.S.P.Q. 2d at 1402. The Patent Examiner found that this aspect of the mouth rinse was innovative, and the patent application was ultimately allowed. Based on this prosecution history, the Court reasoned as follows:

> We agree with the Levins that the most plausible interpretation of the prosecution history for the mouth rinse patent is that the patent examiner regarded the idea of a mouth rinse with benzocaine and

> phenol to be obvious and only approved the patent when he understood the uniqueness of the non-alcoholic solvent … This is the aspect of the mouth rinse that was not obvious in light of the prior art, and it was solely the contribution of the Eastman scientists. We therefore conclude that the Eastman scientists are properly named in the '657 patent as the sole inventors of the mouth rinse . . . . In sum, we hold that Dr. Kilday was not a joint inventor under Pannu because his contributions did not help to make the mouth rinse patentable.

*Levin*, 34 Fed. Appx. at 75; 63 U.S.P.Q. 2d at 1402.[6]

This reasoning is neither surprising nor controversial. In *Sewall v. Walters*, 21 F.3d 411 (Fed. Cir. 1994), the patent at issue claimed an improved medical imaging system comprising five elements, a-e. Of those five elements, the court found that only one element, the placement of element b, was novel and non-obvious. The plaintiff sought to be added as an inventor to the patent. In determining the correct inventors, the Federal Circuit properly focused its analysis on which party conceived of the placement of element b. The Federal Circuit concluded that since the plaintiff "did not contribute to the placement of element b" and "did not even understand the purpose or function of element b in the apparatus", as a matter of law, he could not be a co-inventor of the patent because he did not contribute to the patentable aspect of the invention. *Id.* at 417.

In view of *Levin* and *Sewall*, Plaintiffs in this case must show by clear and convincing evidence that they made a contribution that made the '962 Patent claims novel (as required by 35 U.S.C. § 102) and non-obvious (as required by 35 U.S.C. § 103), and hence patentable. Plaintiffs cannot satisfy this burden as a matter of law.

---

[6] *See also Coca-Cola Company*, 2004 U.S. Dist. LEXIS 30375, at *128-129 ("the prosecution history before the Court reveals that the limitations recited in the Coca-Cola Patents of an evacuation structure … did not assist in the obtainment of the relevant patents, and for this additional reason, the Court concludes that Mr. Rutter cannot be said to be the joint inventor of the patented invention under the Federal Circuit's Pannu standard.")

**D.    Plaintiffs Cannot Satisfy Their Burden To Show That They Helped To Make The System Patentable Because Claims 1-6 Of The '962 Patent Are Obvious In View Of Prior Art**

As discussed above, claims 1-6 of the '962 Patent described a system for collection and detection of near infrared chemical images.  Claims 7-13 describe a combined system that includes both near infrared imaging components and a visible wavelength imagery system, in combination.  During prosecution of the reissue application, the Patent Examiner found that the near infrared chemical imaging system described in claims 1-6 was *unpatentable* for obviousness, but that claims 7-13 were *patentable* because the prior art failed to teach a *near infrared chemical imaging system in combination with a visible imaging system*.  Thus, the prosecution history of the '962 Patent makes clear that the Patent Examiner regarded the idea of a near infrared chemical imaging system standing alone as obvious, and only allowed the patent to reissue based on the uniqueness of combining a near infrared chemical imaging system with a visible imaging system, as set forth in claims 7-13.

As a matter of law, Plaintiffs' co-inventorship claim fails.  Even assuming, *arguendo,* that Plaintiffs made contributions to claims 1-6 of the '962 patent, there is no dispute that those contributions did not help make the chemical imaging system patentable.  Plaintiffs have no evidence to the contrary.  Indeed, for this precise reason, at the outset of this lawsuit, Plaintiffs challenged claims 1, 3 and 4 of the '962 Patent in their Complaint as invalid based on the prior art.  *See, e.g.*, ¶ 60 of the Complaint [D.E.I].  Plaintiffs, therefore, did not make a significant contribution to the '962 Patent under the reasoning of *Levin* and the other relevant decisional authorities, and Plaintiffs cannot be co-inventors of the '962 Patent.

A contrary result would allow a party to be a co-inventor of a patent where the party did nothing to render the patent novel.   Such a result would defy logic and the law.  Defendants are entitled to summary judgment in their favor.

15

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Motion for Summary Judgment with respect to Count 1 of the Complaint.

> Respectfully submitted,
>
> PATRICK TREADO AND CHEMIMAGE CORP.
>
> By their attorneys,
>
> /s/ Anthony J. Fitzpatrick
> Anthony J. Fitzpatrick (BBO #564324)
> Christopher S. Kroon (BBO #660286)
> DUANE MORRIS LLP
> 470 Atlantic Avenue, Suite 500
> Boston, MA 02210
> Telephone: 857.488.4220
> Fax: 857.488.4201
> e-mail: ajfitzpatrick@duanemorris.com
> cskroon@duanemorris.com
>
> Paul D. Weller (admitted *pro hac vice*)
> Morgan, Lewis & Bockius LLP
> 1701 Market Street
> Philadelphia, PA 19103
> Telephone: 215.963.5530
> Fax: 215.963.5005
> e-mail: pweller@morganlewis.com

June 15, 2007

## **CERTIFICATE OF SERVICE**

      I, Christopher S. Kroon, Esquire, hereby certify that this document filed through the ECF system will be sent electronically in accordance with the District of Massachusetts electronic filing procedures to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on June 15, 2007.

                                                                /s/ Christopher S. Kroon
                                                                Christopher S. Kroon