IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

PETER MILLER, CLIFFORD HOYT, and
CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.

                Plaintiffs,

        v.

PATRICK TREADO and CHEMIMAGE CORP.

                Defendants.

Case No. 05-10367 RWZ

**REDACTED VERSION**

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO DISMISS THIS ACTION WITHOUT PREJUDICE UNDER RULE 41(A)(2)

Defendants ChemImage Corporation ("ChemImage") and Patrick Treado (collectively, "Defendants") hereby submit their memorandum in opposition to the motion to dismiss this action without prejudice under Rule 41(a)(2) filed by Peter Miller, Clifford Hoyt, and Cambridge Research Instrumentation, Inc. (collectively "Plaintiffs" or "CRI").

## I.    INTRODUCTION

For the last two and a half years, Defendants have been forced to expend over $1.5 million in expenses and countless hours of internal resources defending a frivolous patent co-inventorship claim, in which Plaintiffs alleged that Peter Miller and Cliff Hoyt were co-inventors of the patent-in-suit (the "'962 Patent"). Despite extensive document discovery and depositions, Plaintiffs -- who bear a clear and convincing burden of proof -- have failed to produce even a single laboratory notebook entry evidencing their alleged work on the '962 patent. During his

deposition, Plaintiff Miller testified that ████████████████████████████.[1] The

other supposed co-inventor, Plaintiff Hoyt, testified that ██████████████████

████████████████████████████.[2] Rather than seeking a resolution of this

action on the merits, Plaintiffs have spent years filing numerous motions and pleadings in order

to distract the Court from their utter lack of proof. These numerous motions and pleadings were

vexatious, and interposed for the purpose of making this matter more expensive for Defendants

to defend.

At various point in this saga, Plaintiffs filed and voluntarily withdrew *without prejudice*

thirteen (13) other state and federal law claims against defendants including claims for civil

conspiracy and violation of the RICO statute. Many of these state and federal law claims were

predicated on Plaintiffs' frivolous patent co-inventorship claim, and will fail as a matter of law if

the patent co-inventorship claim is finally adjudicated. Faced with the likelihood of an imminent

adverse ruling on the merits of their patent co-inventorship claim, Plaintiffs now seek a dismissal

of this action *without prejudice* so that they can force Defendants, and the Court, to re-litigate

from scratch the identical patent co-inventorship question in the context of the previously-

dismissed state and federal law claims. As Plaintiffs stated:

> There is a final reason why this dismissal should be granted
> without prejudice, rather than with prejudice. As was discussed
> at the September 27, 2006 teleconference with this Court, many
> of the state and federal law claims … rely on whether plaintiffs
> invented the subject matter claimed in the '962 patent-in-suit.
> … *[T]he inventorship of the '962 patent-in-suit as originally
> issued* is still *relevant* to those state and federal law claims,
> which have never been litigated.

Plaintiffs' Memo. in Supp. of Plaintiffs' Motion to Dismiss, at 4-5 (emphasis added).

---

[1] Miller Deposition, 224: 1-18, Exh. A hereto.

[2] Hoyt Deposition, 190:1-12, Exh. B hereto.

While Plaintiffs concede that the inventorship of the '962 Patent remains relevant, they simultaneously argue, in an effort to support their Rule 41(a)(2) motion, that the issue of inventorship is now moot as a result of the reissue proceeding. Memo. in Supp. of Plaintiffs' Motion to Dismiss, at 3 ("the reissue patent will not claim plaintiffs' invention"). Plaintiffs' inability to construct a consistent argument on the relevance of the inventorship issue serves only to emphasize the lack of merit in their argument that this action should be dismissed without prejudice.

Significantly, Plaintiffs deliberately ignore the nature of the reissue proceeding. The reissue proceeding resulted in the finding by the U.S. Patent and Trademark Office ("PTO") that portions of the claims in the '962 Patent were invalid over the prior art, and the subsequent deletion of these invalid portions from the patent. This result, however, does not excuse in any way Plaintiffs' decision to bring their meritless claim of co-inventorship of those portions of the '962 Patent that were not patentable, and hence not subject to a claim of co-inventorship. Put differently, just because the reissue proceeding has now confirmed the meritless nature of Plaintiffs' co-inventorship claim does not render moot Plaintiffs' decision to prosecute a baseless co-inventorship claim for two and one-half years. Plaintiffs' admission that they have no claim as a result of the reissue proceedings, if anything, shows that summary judgment should be entered against them pursuant to Defendants' pending summary judgment motion, and/or that this case should be dismissed *with prejudice*.

In short, after years of litigation, Defendants are entitled to a final adjudication of Count 1. As the decisional authorities make clear, Plaintiffs should not be permitted to "pick up their ball and go home," only to re-litigate, yet again, the issues presented in Count 1 in some future action. Accordingly, and for the reasons more fully set forth below, Defendants respectfully

request that the Court deny Plaintiffs' Motion to Dismiss this Action Without Prejudice Under

Rule 41(a)(2) and enter an Order dismissing with prejudice Plaintiffs' Complaint.

## II.    BACKGROUND

In December, 2004, CRI asserted that the '962 Patent impaired CRI's ability to market its

products, alleged that Peter Miller was a co-inventor of the '962 Patent, and demanded a

covenant not to sue from ChemImage. See Complaint, Docket No. 1 [Exh.G]. When

ChemImage declined to provide the covenant not to sue, Plaintiffs brought suit against

Defendants by filing a Complaint containing the following five (5) counts:

- Count 1    Correction of Inventorship of '962 Patent

- Count 2    Unenforceability of the '962 Patent For Inequitable Conduct in
                  Misrepresenting Inventorship

- Count 3    Unenforceability of the '962 Patent For Inequitable Conduct in
                  Failing to Disclose Material Information

- Count 4    Unenforceability of the '077 and '481 Applications For Inequitable
                  Conduct in the Parent '092 Patent

- Count 5    Invalidity of the '962 Patent

See Complaint, Docket No. 1. Thus, from the inception of this action, Plaintiffs asserted that

they were co-inventors (Count 1) of a portion of a patent that they full well *knew* was invalid

over the prior art (Count 5). In response to Defendants' Motion to Dismiss [Docket No. 2], CRI

voluntarily withdrew Counts 2 through 5 without prejudice [see Docket No. 7, at 1], leaving

Plaintiffs' claim for co-inventorship as the sole count.

Prior to Plaintiffs' withdrawal of Counts 2-5, and in response to Plaintiffs' allegations (in

Count 5) that the '962 Patent was invalid over the prior art, Defendants filed an application with

the PTO for re-issuance of the '962 Patent. As part of the re-issue application, Defendants filed

a copy of Plaintiffs' Complaint from this action and numerous prior art references with the PTO,

so as to permit the PTO to evaluate patentability of the claims and narrow the patent so that it was distinguishable from the prior art. Despite Plaintiffs' agreement that the '962 Patent (as originally issued) contained invalid claims, Plaintiffs sought to enjoin Defendants from pursuing the reissue application. See Docket No. 11. Following extensive briefing, the Court properly denied Plaintiffs' requested injunction. See Court's Order dated October 31, 2005 (Listed on Docket between Docket Nos. 28 and 29).

CRI's litigation of its co-inventorship claim continued into discovery, where Plaintiffs evaded responding to Defendants' contention interrogatory requesting Plaintiffs to identify the bases for their claim of co-inventorship.[3] Even though Plaintiffs had been litigating their co-inventorship claim for more than eight (8) months, Plaintiffs failed to identify any specific contribution that they had made to the claims of the '962 Patent.[4] In response to Defendants' Motion to Compel, Plaintiffs responded to the interrogatory by contending that they *co-invented claims 1-13* of the original '962 Patent.[5]

The parties now know that this contention (made early in the litigation) was specious, because Plaintiffs admit in their Rule 41(a)(2) motion to dismiss that they made *no contribution* to the reissue patent, which includes *claims 7-13* of the original '962 Patent. Plaintiffs' response to the contention interrogatory identified hundreds of "supporting" documents and listed numerous third party witnesses with "knowledge" of Plaintiffs' co-inventorship of the patent. It took years of discovery, including 9 depositions, numerous interviews with third-party witnesses, and consultation with expensive experts for Defendants to confirm the utter irrelevance of these "documents" and "witnesses" that Plaintiffs originally contended were supportive of their claims.

---

[3]    See Interrogatory No. 7 of Defendants' First Set of Interrogatories, Exh. C hereto.

[4]    See Plaintiffs' Response to Defendants' First Set of Interrogatories, Exh. D hereto.

On May 18, 2006 – almost eighteen months from the filing of their original Complaint and while discovery on the co-inventorship claim was well underway - Plaintiffs filed a motion seeking leave to file a massive Amended Complaint. See Docket Nos. 41, 42, and 43. Plaintiffs' proposed Amended Complaint included ten (10) counts, one hundred sixty (160) paragraphs, and thirty-four (34) exhibits, and sought to transform a discrete co-inventorship case into an expanded action with the following nine new counts:

- Count 2        Breach of Covenant of Good Faith and Fair Dealing

- Count 3        Unjust Enrichment

- Count 4        Intentional and/or Negligent Misrepresentation, Common Law Fraud,
  and/or         Fraudulent Inducement

- Count 5        Breach of Fiduciary Duty

- Count 6        Conversion and/or Misappropriation of Patentable Invention

- Count 7        Unfair and/or Deceptive Acts Under Mass. Gen. L., Ch. 93A, §§ 2 and 11

- Count 8        Claims Under the Racketeer Influenced and Corrupt Organizations
  (RICO)             Act, 18 U.S.C. §§ 1961-1968

- Count 9        Common Law Civil Conspiracy

- Count 10       Correction of Inventorship of '476 Patent (Alternate Relief Contingent on
                 Rescission of the 2000 Covenant Not to Sue

As Plaintiffs concede, the new counts were causes of action predicated on Plaintiffs' frivolous claim of co-inventorship. Plaintiffs' proposed Amended Complaint contained dozens of paragraphs that were taken verbatim from Counts 2 through 5, which had previously been voluntarily dismissed by Plaintiffs. Plaintiffs' Motion to Amend (which was ultimately stayed) caused further extensive briefing and enormous expense to Defendants.

---

[5]    See Plaintiffs' Supplemental Response to Defendants' First Set of Interrogatories, p. 13, Exh. E hereto.

On August 21, 2006, with their motion to amend still pending before this Court, Plaintiffs

filed a duplicative second civil action against Defendants in this Court, docketed as <u>Cambridge

Research and Instrumentation, Inc., et al. v. ChemImage Corp., et al.</u>, 06-CA-11479 (RWZ) (the

"Second Action"). The allegations in this Second Action were identical to those set forth in

Plaintiffs' proposed Amended Complaint in this action, causing even further briefing and

expense to Defendants. Plaintiffs moved to consolidate the Second Action with this litigation

[<u>see</u> Docket Nos. 77, 78], and that motion was stayed by the Court. <u>See</u> Electronic Order, dated

September 27, 2006. Plaintiffs subsequently dismissed all counts in the Second Action without

prejudice. <u>See</u> Notice of Voluntary Dismissal, attached hereto as Exhibit I.

As mentioned above, in response to contention interrogatories, Plaintiffs identified

numerous people purportedly having knowledge of Plaintiffs' alleged contribution(s) to the

invention of the '962 Patent. <u>See</u> Exh. E hereto. In preparing for trial, Defendants expended

significant time and resources investigating and preparing for depositions of these individuals.

However, during depositions and discovery, Defendants learned that many of the individuals

previously identified by CRI actually had *no* knowledge of Plaintiffs' alleged inventive

contributions. The following chart demonstrates the inconsistencies between Plaintiffs' written

discovery responses and their sworn testimony:

| Persons Identified As Having Knowledge of Plaintiffs' Co-Inventorship Claims In Plaintiffs' Interrogatory <u>Response</u> | Testimony of Peter Miller/Barry Logue and/or Admissions by CRI |
|---|---|
| Dr. Ken Spring | ███████████████████████████ ███████████████████████████ ███████████████████████████ ██████████████████████████[6] |

---

[6] <u>See</u> Miller Deposition, at 242: 4-10 [Exh. A hereto].



| Dr. Greg Bearman | ████████████████████ |
| Dr. Tom Chrien | ████████████████████ |
| Ernst Keller | ████████████████████ |
| Tracey Golini | ████████████████████ |
| Barry Logue | ████████████████████ |

In December 2006, the parties identified their respective experts, and Defendants proceeded to expend substantial costs having two experts prepare extensive reports. Plaintiffs, however, after initially designating two experts, inexplicably failed to serve any expert reports. After Plaintiffs signaled by their expert designations that Defendants would need to prepare expert reports, and thereby caused Defendants to expend substantial resources on expert reports, Plaintiffs failed to serve any expert reports of their own.

---

[7] See Miller Deposition, at 240:12-241:3 [Exh. A hereto]. Note, Miller's co-inventorship claim was limited to systems using the Evans design. See Complaint, Docket No. 1, ¶31.

[8] See Miller Deposition, at 241:4-9 [Exh. A hereto].

[9] See Miller Deposition, at 242:17-20 [Exh. A hereto].

[10] See Plaintiffs' letter dated May 21, 2007, Exh. F hereto.

[11] See Logue Deposition, at 73 [Exh. G hereto].

On March 22, 2007, the Court conducted a pre-trial conference, establishing a trial date of September 10, 2007 and a final pre-trial conference date of August 15, 2007. See Electronic Order, dated March 22, 2007.

Beginning on April 27, 2007, the parties engaged in unsuccessful settlement discussions for more than one month. Before these negotiations ended, Defendants informed Plaintiffs that Defendants intended to file a motion for summary judgment. Armed with this knowledge, Plaintiffs immediately filed the present Rule 41(a)(2) motion to dismiss on June 14, 2007, one day before Defendants filed their motion for summary judgment.

Plaintiffs' behavior in connection with their motion to dismiss underscores the vexatious nature of this litigation and their overall approach. Just by way of further example, on June 14, 2007 -- the same day Plaintiffs filed their Rule 41(a)(2) motion to dismiss -- Plaintiffs' counsel sent Defendants an e-mail seeking dates for deposing Defendants' experts (Dr. Pochi Yeh and Dr. Ed Yeung). See T. Holmberg e-mail dated June 14, 2007, attached as Exh. H. At the same time, however, Plaintiffs refused to comply with Federal Rule of Civil Procedure 26(b)(4)(C), which requires Plaintiffs to pay the reasonable expenses associated with these expert depositions.

In this fashion, Plaintiffs have been litigating their claim of co-inventorship against Defendants for nearly two and a half years—since February 2005. As a result of the length and vexatiousness of this litigation, Defendants have expended approximately $1.5 Million in legal fees and costs. After two and one-half years and $1.5 Million, Defendants are finally in position to end this litigation by way of their summary judgment motion. Under these circumstances, no authority permits the relief that Plaintiffs are now seeking – the unconditional dismissal without prejudice of this lawsuit with the right to bring the claim again. The Court should not permit Plaintiffs to avoid the consequences of their actions, which they have brought upon themselves.

Accordingly, as more fully set forth below, Defendants respectfully request that the Court enter

an Order denying Plaintiffs' motion to dismiss without prejudice and entering summary

judgment in favor of Defendants and/or dismissing this action with prejudice.

## III.    ARGUMENT

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that "an action shall not

be dismissed at the plaintiff's instance save upon order of the court and upon such terms and

conditions as the court deems proper." See. Fed. R. Civ. P. 41(a)(2).  While the allowance of a

plaintiff's motion for voluntary dismissal lies within a court's discretion, see Doe v. Urohealth

Systems, Inc., 216 F.3d 157, 160 (1st Cir. 2000), the First Circuit has made clear that a reviewing

court must consider the stage of the litigation, the effort and expense spent in defending the

action, excessive delay and lack of diligence on the part of plaintiff in prosecuting the action,

insufficient explanation for the need to take a dismissal, and whether a motion for summary

judgment has been filed by defendant.  See Doe, 216 F.3d at 160; Fremaint v. Ford Motor Co.,

258 F. Supp. 2d 24, 31-33 (D.P.R. 2003); Guptill v. Martin, 228 F.R.D. 62, 65 (D. Me. 2005).

Plaintiffs fail to meet their burden under these factors.  This litigation is at an extremely

late stage, Defendants have incurred substantial expense defending the action, Plaintiffs have

offered no legitimate explanation for their "need" to take a dismissal, and a motion for summary

judgment is pending.  Plaintiffs' motion to dismiss without prejudice should be denied.

### A.    Plaintiffs' Motion Should Be Denied And The Action Should Be Dismissed
        With Prejudice

In reversing a district court's order of dismissal of an action without prejudice, the First

Circuit in Doe held:

> We do think that a plaintiff cannot conduct a serious ... claim in
> a federal court, provoke over a year's worth of discovery and
> motion practice, allow the case to reach the stage at which the
> defendant filed a full scale summary judgment motion, and then

> when matters seemed to be going badly for plaintiff simply
> dismiss its case and begin all over again …

<u>Doe</u>, 216 F.3d at 163.  The First Circuit's reasoning in <u>Doe</u> is controlling here.

Like the defendant in <u>Doe</u>, Defendants in the present action have spent enormous resources, financial and otherwise, in defending against Plaintiffs' meritless action.  <u>Id.</u> at 161. Defendants have produced thousands of documents, responded to numerous interrogatories, deposed Plaintiffs' witness, endured numerous depositions taken by Plaintiffs, engaged in extensive motion practice, developed expert reports, and filed a motion for summary judgment which is currently pending.  The denial of Plaintiff Rule 41(a)(2) motion is more than justified under these facts.

In <u>Fremaint v. Ford Motor Co.</u>, 258 F. Supp. 2d 24 (D.P.R. 2003), a district court denied a plaintiff's Rule 41(a)(2) motion and refused to grant a voluntary dismissal without prejudice under even less compelling circumstances.   The court reasoned that: "For over a year and a half defendant invested substantial resources to defend itself against plaintiff's claims.  Principles of judicial economy and fairness militate against . . . dismissing this case without prejudice." <u>Fremaint</u>, <u>Id.</u> at 33.  In contrast, the present Defendants have been forced to defend themselves against Plaintiffs' meritless claim for two and one-half years—365 days longer than the defendant in <u>Fremaint</u>.

Notably, the court in <u>Fremaint</u> observed that the plaintiff's Rule 41(a)(2) motion in that case was impermissibly based on the desire to avoid a pending adverse ruling: "Faced with the dire consequences of an apparently unwinnable case at trial, plaintiff, at the eleventh hour, opted to seek this dismissal." <u>Fremaint</u>, 258 F. Supp. 2d at 32.  As in <u>Fremaint</u>, Plaintiffs' Rule 41(a)(2) motion in this case is intended to avoid Defendants' motion for summary judgment.  As with the plaintiff in <u>Fremaint</u>, at the eleventh hour, Plaintiffs have now sought a dismissal to

11

evade entry of judgment against them.  The law does not permit such a result.  See, e.g., Glasso v. Eisman et al., 310 F. Supp. 569, 572 (S.D.N.Y. 2004) ("I conclude that the dismissal without prejudice sought by the plaintiff is entirely unwarranted.  Defendant has expended considerable time, money ($20,000 in legal fees to date) and effort litigating this action.  Discovery has concluded, and defendant has brought a motion for summary judgment... It is quite clear that plaintiff's motive is to avoid an adverse judgment that will forever bind him."); Deere & Company v. MTD Holdings Inc., 2004 WL 1432554, *2-3 (S.D.N.Y. 2004) ("...operating a business under the constant threat of litigation after the same issues have been litigated nearly four years at a cost of $6 million dollars would clearly be prejudicial to MTD"); 103 Investors I.L.P. v. Square D. Company, 222 F. Supp.2d 1263, 1271-1272 (D. Kansas 2002), aff. in part, rev. in part on other grounds, 372 F.3d 1213 (10th Cir. 2004) ("The present state of litigation weighs strongly against dismissal without prejudice.  The case is on the eve of trial.  The parties and the Court have expended considerable judicial resource getting the case to this point."); American Yachts, Ltd. v. Great Lakes Yacht Sales, Inc., 2002 WL 31399407, *2 (N.D. Ill. 2002) ("...such dismissal would result in plain legal prejudice to the Defendants at this stage of the litigation.  Defendant has extended resources throughout the life of the case and prepared for trial"); and Mosley v. JLG Industries, Inc., 189 Fed. Appx. 874, 876 (11th Cir. 2006) ("In denying Plaintiff's Rule 41(a)(2) motion, the district court noted the time that had passed since the case was filed, the many motions filed, and the discovery produced.  These factors supported the Defendants' claims that, in this case, considerable time had been expended and expenses incurred. ... Based on these considerations and the late stage of the litigation, the district court found that Defendants would be prejudiced by a dismissal without prejudice.").

It bears emphasis that, if Plaintiffs were allowed to dismiss this action without prejudice, Defendants would be left in no better position than they were at the start of this litigation. Yet, for the past 2.5 years Defendants have vigorously defended against this action brought by Plaintiffs. The defense against this vexatious litigation has cost ChemImage, a small company, $1.5 Million in attorneys' fees and costs. A dismissal without prejudice would have no res judicata effect, leaving Plaintiffs free to bring their claims against Defendants again. Therefore, a dismissal without prejudice would render a complete nullity the enormous amount of time and money expended by Defendants in this litigation defending against Plaintiffs' meritless claims. Not surprisingly, the law does not permit this result.

The cases cited by Plaintiffs in support of their Rule 41(a)(2) motion do not dictate a different conclusion. See, e.g., Puerto Rico Maritime Shipping Auth. v. Leith, 668 F.2d 46 (1st Cir. 1981); Westlands Water District v. United States, 100 F.3d 94 (9th Cir. 1996); Read Corp. v. Bibco Equip. Co., 145 F.R.D. 288 (D.N.H. 1993); Less v. Berkshire Housing Servs., Inc., No. Civ. A. 00-30033, 2000 WL 1349252 (D. Mass. Aug. 18, 2000). For example, unlike this case, in Leith, both parties had separately maintained that the court lacked jurisdiction to hear the case. Leith, 668 F.2d at 49 ("two different motions to dismiss were pending before the district court. One was the defendants' motion to dismiss for lack of jurisdiction .... The second was plaintiff's motion for a voluntary dismissal because of a possible lack of subject matter jurisdiction"). No summary judgment motion was pending. Moreover, there is no evidence that the defendants in Leith had incurred the substantial legal expenses borne by Defendants in this case.[12]

---

[12]    In Leith, the Court also found that defendants did not suffer legal prejudice because the time and expense they had spent defending against plaintiff's lawsuit would not go to waste. Those efforts, as well as the extensive discovery conducted in that case, would remain relevant to a pending state court action brought by plaintiff in the Commonwealth of Puerto Rico. See Leith, 668 F.2d at 50. In this case, plaintiffs have no pending parallel state court claims. Therefore, the two and one-half years and $1.5 million that Defendants have invested in defending against plaintiffs' patent claims would be wasted if this Court grants a dismissal without prejudice. The Less case is further distinguishable because the plaintiff in that case was

Plaintiffs' reliance on Read v. Bibco is equally misplaced. The court in Read granted the plaintiff's Rule 41(a)(2) motion to dismiss a patent infringement lawsuit without prejudice because the defendant had gone "out of business," thus rendering it "completely unable to satisfy any judgment and preclud[ing] any risk of continuing infringement." See Read, 145 F.R.D. at 290. None of these facts is present here. Defendant ChemImage continues to operate as a viable business engaged in chemical imaging and has a strong business interest in finally disposing of Plaintiffs' meritless claims.

Plaintiffs' citation to one out-of-context quote from Westlands Water District, 100 F.3d at 97, for the proposition that "the expense incurred in defending against a lawsuit does not amount to legal prejudice," fares no better. The Westland Waters court stated that: "The defendants' interests can be protected by conditioning the dismissal without prejudice *upon the payment of appropriate costs and attorney fees*." Id. (citing Fed. R. Civ. P. 41(a)(2)) (emphasis added). Here, Plaintiffs are seeking dismissal without prejudice, but have made no offer to pay the $1.5 Million incurred by Defendants in defending against this baseless lawsuit. Absent such an offer by Plaintiffs, Westlands Water is neither relevant nor helpful to Plaintiffs.

As discussed above, the law requires that this Court dismiss Plaintiffs' action *with prejudice*. Defendants have expended substantial time and effort litigating this case to the point that it is now ripe for adjudication. Fact discovery has ended, expert reports have been served, a dispositive motion is pending, and the trial date, September 10, 2007, is only months away. A dismissal without prejudice would essentially provide Plaintiffs with a license for a "do-over," exposing Defendants to a situation where they might be required to re-litigate from scratch (at

---

also pursuing the same employment discrimination claims in pending state and EEOC administrative actions. See Less, 2000 WL 1349252, at *3-5.

Defendants' expense) the identical patent co-inventorship question that is now ripe for adjudication. Such a result would be unconscionable.

**B.    If Dismissal Without Prejudice Is Granted, Plaintiffs Should Be Required To Pay Defendants' Attorney Fees And Costs**

If the Court allows dismissal of this action without prejudice (which Defendants respectfully submit should not be permitted), the Court, at a minimum, should attach appropriate terms and conditions, including Plaintiffs' payment of Defendants' attorneys' fees. An award of attorneys' fees is appropriate when an action is dismissed without prejudice, and subject to re-litigation, in order to "reimburse defendant for expenses incurred in preparing work product that cannot be used in defending the resurrected cause of action." Read Corp., 145 F.R.D. at 290; see also 9 Wright & Miller § 2366, at 306 (stating that courts generally will "require that the plaintiff pay the costs of the litigation"); Moore's Federal Practice ¶ 41.06 n.1, at 41-74 (stating that the normal course is to grant dismissal without prejudice on condition that the dismissing plaintiff reimburse defendant).

The First Circuit's reasoning in Doe is again compelling where, as here, a plaintiff seeks a voluntary dismissal without prejudice after forcing the defendant to expend substantial fees defending an action:

> [I]t is very difficult to imagine in the circumstances of this case a non-prejudice dismissal at plaintiff's behest that would not involve payment by the plaintiff of the defendant's attorney's fees and other expenses of litigation in federal court to date. We do not suggest that payment of attorney's fees and costs automatically would justify a dismissal. But if there were other valid justifications for dismissal, payment of attorney's fees and other expenses might in some measure ameliorate the prejudice to the defendants of the plaintiff's abortive federal court litigation.

Doe, 216 F.3d at 163.  Thus, should the Court grant plaintiffs' request for a dismissal without prejudice, the Court should require Plaintiffs to pay Defendants for their costs and expenses incurred in defending against Plaintiffs' meritless claim.  Justice requires nothing less.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court enter an Order denying Plaintiffs' Motion to Dismiss this Action Without Prejudice Under Rule 41(a)(2) and either granting Defendants' pending motion for summary judgment or dismissing with prejudice Plaintiffs' Amended Complaint.  In the alternative, should the action be dismissed without prejudice, the dismissal should be issued with terms and conditions requiring Plaintiffs to pay immediately Defendants' costs and expenses incurred in defending against Plaintiffs' claims.

Respectfully submitted,

Date:   June 28, 2007

By their attorneys,

/s/ Christopher S. Kroon
Christopher S. Kroon (BBO # 660286)
Anthony J. Fitzpatrick (BBO # 564324)
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
Telephone: 617.289.9220
Fax: 617.289.9201
e-mail:  ajfitzpatrick@duanemorris.com

Paul D. Weller (admitted *pro hac vice*)
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA  19103
Telephone:  215.963.5530
eFax:  215.963.5001
e-mail:  pweller@morganlewis.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing and

paper copies will be sent to those indicated as non-registered participants on June 28, 2007.

In addition, complete copies of Defendants' Opposition to Plaintiffs' Motion Dismiss are

also being served, via first class mail, on June 28, 2007 on:


Martin B. Pavane, Esq.
Teodor J. Holmberg, Esq.
COHEN, PONTANI, LIEBERMAN AND PAVANE
551 Fifth Avenue
New York, New York 10176
Tel. (212) 687-2770
Fax (212) 972-5487


Brian L. Michaelis, Esq.
Erin E. McLaughlin, Esq.
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201


/s/ Christopher S. Kroon
Christopher S. Kroon

17

# EXHIBIT A

**The filing of this confidential exhibit has been deferred, pending a ruling on Defendants' Motion to Impound, which was electronically filed on June 28, 2007.**

# EXHIBIT B

**The filing of this confidential exhibit has been deferred, pending a ruling on Defendants' Motion to Impound, which was electronically filed on June 28, 2007.**

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MILLER, HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC. <br> Plaintiffs, <br><br> v. <br><br> PATRICK TREADO and CHEMIMAGE CORP. <br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | CIVIL ACTION <br><br> Case No. 05-1367 RWZ |

## DEFENDANTS' FIRST SET OF INTERROGATORIES
## DIRECTED TO PLAINTIFFS

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants

Patrick J. Treado and ChemImage Corp., by and through their undersigned counsel,

hereby request that Plaintiffs, Peter J. Miller, Clifford Hoyt and Cambridge Research and

Instrumentation, Inc. answer the following interrogatories, directing such answers and

any documents identified in Defendant's First Set of Interrogatories to the office of

Duane Morris LLP, 470 Atlantic Avenue, Suite 500, Boston, MA 02210 within thirty

(30) days from the date of service hereof.

5. Identify each person who has knowledge regarding the matters alleged in the Complaint, and separately identify the subjects of that person's knowledge.

**RESPONSE:**

6. Identify all documents that you intend to offer into evidence at trial in this matter.

**RESPONSE:**

7.     Identify each claim in U.S. Patent No. 6,734,962 patent that you contend Miller and/or Hoyt invented either individually, or jointly with one or more other persons, and **separately** for each such claim:

a.     state whether Miller contributed to the subject matter covered by the claim;

b.     state whether Hoyt contributed to the subject matter covered by the claim;

c.     describe in detail the contribution, if any, of Miller to the invention covered by the claim and identify the specific language from the claim corresponding to such contribution;

d.     describe in detail the contribution, if any, of Hoyt to the invention covered by the claim and identify the specific language from the claim corresponding to such contribution;

e.     state whether any other person contributed to the invention covered by the claim, and for each such person describe in detail the contribution of that person to the invention;

e.     identify all documents and communications that refer or relate to the contributions described for each claim; and

f.     identify all persons who have knowledge of the contributions described for each claim.

**RESPONSE:**

8.  Identify each person who participated in the preparation of your answers to these interrogatories, and set forth the nature of that person's participation, including but not limited to the interrogatory answers provided by that person.

**RESPONSE:**

# EXHIBIT D

# IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH &
INSTRUMENTATION, INC.,
a Delaware corporation,

        Plaintiffs,

        v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

        Defendants.

**Civil Action No. 05-10367-RWZ**

## PLAINTIFFS' RESPONSE TO DEFENDANTS'
## FIRST SET OF INTERROGATORIES (Nos. 1-8)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs, Peter J. Miller, Clifford Hoyt and Cambridge Research & Instrumentation, Inc. (collectively "Plaintiffs") hereby respond to Defendants, Patrick Treado and Chemimage Corp.'s (hereinafter "Defendants") First Set of Interrogatories, numbered 1-8 ("Interrogatories").

These responses are given without prejudice to their revision or supplementation upon discovery of further information. Plaintiffs' responses shall not be deemed to constitute admissions that any statement or characterization is complete.

Subject to and without waiver of the foregoing General Objections, Plaintiffs respond to the Interrogatories as follows:

1. **Identify all persons having knowledge concerning any conception or reduction to practice by Plaintiffs of any subject matter claimed in U.S. Patent No. 6,734,962.**

## RESPONSE:

Subject to the foregoing General Objections, Plaintiffs respond as follows:

Defendant Dr. Patrick Treado, employed at ChemImage.

Plaintiff Peter J. Miller, Chief Science Officer of Plaintiff Cambridge Research & Instrumentation (CRI).

Plaintiff Clifford Hoyt, Chief Technical Officer at Plaintiff CRI.

Dmitri Vinogradov, Senior Optical Technician at Plaintiff CRI.

Dr. Peter Foukal, former president of Plaintiff CRI, whose last known address is 192 Willow Rd, Nahant, MA.

Tracey Golini, Staff Scientist at CRI during the period spanning at least 1990 – 1992, no known address.

Dr. Greg Bearman, technical monitor at the Jet Propulsion Laboratories of National Space and Aeronautics Agency (NASA), Pasadena CA.

Dr. Tom Chrien, technical monitor at the Jet Propulsion Laboratories of NASA during the period 1991-1993, present address unknown.

Dr. David Vintner, Researcher and Professor, Univ. Alabama / Birmingham 1991-1993.

David Claypool, Digital Imaging Manager at MicroVideo Instruments (MVI), 1991 – present.

Ernst Keller, member of Technical Advisory Board, Zeiss America, 1992 – 1998 (retired).

Dr. Ken Spring, Investigator at the National Heart Lung Blood Institute (NHLBI) of the National Institute of Health (NIH).

Dr. Hannah Morris, Deputy Director, Carnegie-Mellon Art Conservation Research Center, 700 Technology Drive, Rm 3325, Pittsburgh PA.

Prof. John F. Turner, II, Chemistry Department, Cleveland State University, Cleveland OH.

7.  Identify each claim in U.S. Patent No. 6,734,962 patent that you contend Miller
    and/or Hoyt invented either individually, or jointly with one or more persons, and
    separately for each such claim:
    a.  State whether Miller contributed to the subject matter covered by the claim;
    b.  State whether Hoyt contributed to the subject matter covered by the claim;
    c.  Describe in detail the contribution, if any, of Miller to the invention covered by
        the claim and identify the specific language from the claim corresponding to
        such contribution;
    d.  Describe in detail the contribution, if any, of Hoyt to the invention covered by
        the claim and identify the specific language from the claim corresponding to
        such contribution;
    e1.* State whether any other person contributed to the invention covered by the
        claim, and for each such person describe in detail the contribution of that
        person to the invention;
    e2.  Identify all documents and communications that refer or relate to the
        contributions described for each claims; and
    f.  Identify all persons who has knowledge of the contribution described for each
        claim.

## RESPONSE:

Subject to the foregoing General Objections, Plaintiffs respond as follows:

Plaintiffs object to this Interrogatory as premature, as discovery has just begun and no schedule
for the exchange of contention interrogatories has been entered. Plaintiffs provide the following
preliminary answers, subject to further elucidation and explanation at the appropriate time:

    a.  Plaintiff Peter J. Miller contributed to the subject matter of each claim in U.S.
        Patent No. 6,734,962.
    b.  Plaintiff Clifford Hoyt contributed to the subject matter of each claim in U.S. Patent
        No. 6,734,962.
    c.  Plaintiff Peter J. Miller contributed to at least the infrared imaging spectrometer, its
        use for chemical imaging, its use in the near infrared (NIR), the split Evans design,
        the Solc design, and the use of a collimated beam.
    d.  Plaintiff Clifford Hoyt contributed to at least the infrared imaging spectrometer, its
        use for chemical imaging, its use in the NIR, the Solc design, and the use of a
        collimated beam.
    e1.  Defendant Patrick Treado contributed the use of an infrared imaging spectrometer
        in a Raman (scattering) light mode of sample interaction.
    e2.  This Interrogatory is premature. Preliminarily, see documents produced by
        Plaintiffs in response to Defendants' Document Requests. Plaintiffs reserve the
        right to supplement their response as discovery progresses.
    f.  See Plaintiffs' response to Interrogatory No. 1.

---

* Because Defendants' Interrogatory No. 7 had two "e"'s, they have been designated as "e1" and "e2" herein.

# EXHIBIT E

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

PETER J. MILLER, an individual,
CLIFFORD HOYT, an individual, and
CAMBRIDGE RESEARCH &
INSTRUMENTATION, INC.,
a Delaware corporation,

        Plaintiffs,

        v.

PATRICK TREADO, an individual, and
CHEMIMAGE CORP., a Delaware
corporation,

        Defendants.

Civil Action No. 05-10367-RWZ

## PLAINTIFFS' SUPPLEMENTAL RESPONSE
## TO DEFENDANTS'
## FIRST SET OF INTERROGATORIES (Nos. 1-8)

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiffs, Peter J. Miller, Clifford Hoyt and Cambridge Research & Instrumentation, Inc. (collectively "Plaintiffs") hereby respond to Defendants, Patrick Treado and Chemimage Corp.'s (hereinafter "Defendants") First Set of Interrogatories, numbered 1-8 ("Interrogatories").

These responses are given without prejudice to their revision or supplementation upon discovery of further information. Plaintiffs' responses shall not be deemed to constitute admissions that any statement or characterization is complete.

5.  **Identify each person who has knowledge regarding the matters alleged in the Complaint, and separately identify the subjects of that person's knowledge.**

**RESPONSE:**

Subject to the foregoing General Objections, Plaintiffs respond as follows:

Defendant Dr. Patrick Treado has knowledge of, among other things, Plaintiffs' contribution to the invention(s) claimed in the patent-in-suit.

Plaintiff Peter J. Miller has knowledge of at least the following: the development of the underlying Liquid Crystal Tunable Filter (LCTF) technology at Plaintiff CRI; the development of Near Infrared (NIR) versions of the LCTF at Plaintiff CRI; the development of split-retarder LCTF designs at Plaintiff CRI; the incorporation of LCTF units into optical systems using collimated beams; the design, modeling, construction, and testing of LCTFs and LCTF systems; the design of LCTFs for exploratory testing of LCTFs for chemical imaging and NIR Raman imaging prior to the decision to pursue an NSF grant for optimized work of this type; the roles played by Miller and Treado in the preparation, submission, and fulfillment of the National Science Foundation (NSF) grants in 1994 - 1999; and the negotiation of the Covenant Not To Sue executed between Plaintiff CRI and ChemImage in 2000.

Plaintiff Clifford Hoyt has knowledge of at least the following: the development of the underlying LCTF technology at Plaintiff CRI; the development of NIR versions of the LCTF at Plaintiff CRI; the conception of incorporating LCTF units into microscopes using collimated beams, in 1989 and thereafter; the conception of using LCTFs in microscopes having infinity-corrected objectives; the preparation, submission, and fulfillment of Hoyt's NIH grant in 1989-1993; and the roles played by Hoyt and Treado in exploration of LCTFs for chemical imaging and NIR Raman imaging beginning roughly January 29, 1993 until the decision to pursue an NSF grant for optimized work of this type.

Peter Foukal has knowledge of at least the following: the development of LCTF technology at Plaintiff CRI; the exploitation of LCTF technology as imaging spectrometers in infrared for remote sensing chemical imaging; the relationship between Plaintiff CRI and Defendant ChemIcon; the negotiation history and ultimate terms of the Phase III agreement between Plaintiff CRI and Defendant ChemIcon concerning the use of LCTFs optimized for Raman imaging; the negotiation history between Plaintiff CRI and Pat Treado concerning Mr. Treado's possible employment at Plaintiff CRI and the purchase of Defendant ChemIcon by Plaintiff CRI; and the reasons for the decision not to enter into such arrangement.

Dmitri Vinogradov has knowledge of the construction of production filters, prototype filters and test stages used in visible and NIR imaging systems, and filled out various fabrication records for specific items relevant to the patent-in-suit.

Tracey Golini has knowledge of the construction of production filters, prototype filters and test stages used in visible and NIR imaging systems relevant to the patent-in-suit.

Dr. Greg Bearman has knowledge of the Plaintiffs' proposals for, and reduction to practice of, NIR LCTFs for use in remote imaging chemical imaging systems, and has knowledge of his own use of chemical imaging systems using NIR LCTFs provided by Plaintiffs Hoyt and Miller.

Dr. Tom Chrien has knowledge of the Plaintiffs' proposals for, and reduction to practice of, NIR LCTFs for use in remote imaging chemical imaging systems.

Dr. David Vintner has knowledge of his and Hoyt's use of LCTFs for chemical imaging in microscopes, on biomedical samples.

David Claypool has knowledge of Hoyt's purchase, in 1991, of a Zeiss microscope with infinity-corrected objectives for incorporation of LCTFs used as imaging spectrometers.

Ernst Keller has knowledge of Plaintiff Hoyt's use of LCTFs in Zeiss microscopes having infinity-corrected objectives, for use as imaging spectrometers.

Dr. Ken Spring has knowledge of Plaintiff Hoyt's exploration of LCTFs in microscopy as imaging spectrometers.

Dr. Hannah Morris has knowledge of the CRI / Univ. of Pittsburgh collaboration between Hoyt, Treado, and Morris using LCTF and AOTF devices for Raman chemical imaging.

Dr. John Turner has knowledge of the construction by CRI of optimized Raman LCTF filters for chemical imaging, and of publication(s) written by Turner and Treado in 1997 on the use of such filters.

## SUPPLEMENTAL RESPONSE:

Subject to the foregoing General Objections, Plaintiffs supplement their answer as follows:

Dr. Mark Sartor has knowledge of Plaintiff Hoyt's development of LCTFs and LCTF imaging systems for infrared remote sensing chemical imaging systems.

Mr. Barry Logue has knowledge of technical, programmatic, and sales discussions between Treado and CRI personnel including the Plaintiffs.

7.  Identify each claim in U.S. Patent No. 6,734,962 patent that you contend Miller and/or Hoyt invented either individually, or jointly with one or more persons, and separately for each such claim:

   a.  State whether Miller contributed to the subject matter covered by the claim;
   b.  State whether Hoyt contributed to the subject matter covered by the claim;
   c.  Describe in detail the contribution, if any, of Miller to the invention covered by the claim and identify the specific language from the claim corresponding to such contribution;
   d.  Describe in detail the contribution, if any, of Hoyt to the invention covered by the claim and identify the specific language from the claim corresponding to such contribution;
   e1.*  State whether any other person contributed to the invention covered by the claim, and for each such person describe in detail the contribution of that person to the invention;
   e2.  Identify all documents and communications that refer or relate to the contributions described for each claim; and
   f.  Identify all persons who have knowledge of the contribution described for each claim.

**RESPONSE:**

Subject to the foregoing General Objections, Plaintiffs respond as follows:

Plaintiffs object to this Interrogatory as premature, as discovery has just begun and no schedule for the exchange of contention interrogatories has been entered. Plaintiffs provide the following preliminary answers, subject to further elucidation and explanation at the appropriate time:

   a.  Plaintiff Peter J. Miller contributed to the subject matter of each claim in U.S. Patent No. 6,734,962.
   b.  Plaintiff Clifford Hoyt contributed to the subject matter of each claim in U.S. Patent No. 6,734,962.
   c.  Plaintiff Peter J. Miller contributed to at least the infrared imaging spectrometer, its use for chemical imaging, its use in the near infrared (NIR), the split Evans design, the Solc design, and the use of a collimated beam.
   d.  Plaintiff Clifford Hoyt contributed to at least the infrared imaging spectrometer, its use for chemical imaging, its use in the NIR, the Solc design, and the use of a collimated beam.
   e1.  Defendant Patrick Treado contributed the use of an infrared imaging spectrometer in a Raman (scattering) light mode of sample interaction.
   e2.  This Interrogatory is premature. Preliminarily, see documents produced by Plaintiffs in response to Defendants' Document Requests. Plaintiffs reserve the right to supplement their response as discovery progresses.
   f.  See Plaintiffs' response to Interrogatory No. 1.

---

* Because Defendants' Interrogatory No. 7 had two "e"'s, they have been designated as "e1" and "e2" herein.

## SUPPLEMENTAL RESPONSE:

This supplemental response supersedes and replaces Plaintiffs' previous response.

Subject to the foregoing General Objections, Plaintiffs respond as follows:

**a.  State whether Miller contributed to the subject matter covered by the claim;**

Plaintiff Peter J. Miller contributed to the subject matter of Claims 1-13 in U.S. Patent No. 6,734,962.

**b.  State whether Hoyt contributed to the subject matter covered by the claim;**

Plaintiff Clifford Hoyt contributed to the subject matter of Claims 1-13 in U.S. Patent No. 6,734,962.

**c.  Describe in detail the contribution, if any, of Miller to the invention covered by the claim and identify the specific language from the claim corresponding to such contribution;**

...

**e2.[†]  Identify all documents and communications that refer or relate to the contributions described for each claim; ...**

### Claims 1, 12, and 13:

Miller at least co-invented the chemical imaging system and method as recited in Claims 1, 12, and 13. Miller either jointly or solely conceived of, and reduced to practice, such a device and method during the six year collaboration among Treado, Hoyt, Miller, and CRI which began on or about January 27th, 1993 [CRI000131-CRI000132]. In 1994, based on results of the collaboration, Miller and Treado submitted a research grant to the National Science Foundation, on which Miller was Principal Investigator and Treado, then at the University of Pittsburgh, was a consultant [CRI000258-CRI000335; CRI000582]. This grant proposal describes an apparatus (and method of using thereof) meeting all of the limitations of Claims 1, 12, or 13. See pages 9-10, Plaintiffs' Motion for an Order to Enjoin Defendants' Reissue Proceeding, Docket Entry 11, and pages 5-8, Plaintiffs' Reply to Defendants' Response to Plaintiffs' Motion for an Order to Enjoin Defendants' Reissue Proceeding, Docket Entry 18.

The original grant proposal was rejected for clerical reasons (exceeded page limit) but was resubmitted in 1995, and was awarded to Plaintiff CRI in early 1996 [CRI000949-CRI000976].

---

[†] Because Defendants' Interrogatory No. 7 had two "e"'s, they have been designated as "e1" and "e2" herein.

In 1996, Miller and Treado were co-authors on a paper which showed further results of the collaboration, including an apparatus that met all the limitations of claim 1, except at shorter wavelengths; and concludes with the recommendation to operate at longer wavelengths when optimized filters are developed ["Liquid Crystal Tunable Filter Raman Chemical Imaging", H.R. Morris, C.C. Hoyt, P. Miller, P.J. Treado, *Applied Spectroscopy*, 50, 6, 805-811 (1996)].

The collaboration continued through a Phase II NSF grant [CRI000665-CRI000704]. Miller was principal investigator on this grant, and his contributions included the development of filters that operated in the near infrared range, and provided the necessary resolution to perform chemical imaging.

### Claim 2:

Claim 2 specifically recites the use of a quartz tungsten halogen lamp or a xenon arc lamp as light sources, both of which had been used by Miller and/or Hoyt in chemical imaging systems meeting all of the limitations of Claim 1 at different times during the SBIR collaboration.

### Claim 3:

Miller contributed to the subject matter of this claim at least insofar as it is dependent on Claim 1.

### Claim 4:

Claim 4 recites using the Evans split-element liquid crystal tunable filter design for the "near infrared imaging spectrometer" in element (c) of Claim 1. Miller at least co-invented a chemical imaging system as recited in Claim 1 using the Evans split-element liquid crystal tunable filter design in Claim 4. Before June 26, 1996, Miller conceived of the Evans split-element liquid crystal tunable filter design (as the spectrometer in element (c) of Claim 1), validated the design using computer models that he wrote, then built and tested the first prototype, in which the Evans split-element liquid crystal tunable filter design had improved resolution as well as cheaper manufacturing costs.

See the outline of Phase 1 Final Report to the NSF, from Miller to Treado, dated 6/26/96, related to Miller's development of the Evans split element design [CRI000499]

See the scan showing the first-ever tunable split Evans stage, undated but prior to 9/10/96, taken by Miller of a sample constructed by Miller, according to a design conceived of by Miller and computer-optimized by Miller [CRI000503].

See Miller's computer model for a complete Raman filter incorporating split Evans stages [CRI000897] and memo recording success when computer model was run [CRI000898]

See the final report drafts for the NSF Phase I final report, dated 9/96, concerning Miller's development of the split-Evans filter design [CRI000848-CRI000856; CRI000794-CRI000806; CRI000034-CRI000847; CRI000882-CRI000896; CRI000807-CRI000833] and fax traffic from Treado with comments on same [CRI000506-CRI000524].

## Claim 5:

Claim 5 specifically recites the use of a "near infrared radiation focal plane detector" for the detector recited in element (a) of Claim 1. The chemical imaging system conceived and constructed by at least Miller and/or Hoyt in the SBIR collaboration used such a detector.

## Claims 6-10:

Miller contributed to the subject matter of these claims at least insofar as they are dependent on Claim 1.

## Generally:

The list of documents below is illustrative of Miller's expertise (and thus his contribution to the collaborative effort), but not exhaustive:

See Miller's proposal to NIST, 5/88 [CRI000375-CRI000380].
See Miller's 1990 SPIE paper describing solar astronomical chemical imaging, entitled "Tunable Narrowband Birefringent Filters for Astronomy" [CRI000721-CRI000729].
See Miller's final report summary to the NSF describing work done under NSF grant during period 1988-1992 [CRI000880].
See the brochure "VariSpec filters", to which Miller contributed [CRI000046-CRI000047].
See Miller's grant proposal to NASA dated 8/91 [CRI000858-CRI000878].
See Miller's proposal to the Department of Defense, 1/91 [CRI000400-CRI000421].
See the Foukal proposal to NASA "Tunable Liquid crystal Filters for Lunar and Planetary Spectral Imaging Systems", to which Miller contributed the LCTF sections [CRI000381-CRI000399].
See the Hoyt, Miller, and Foukal article entitled "Liquid crystal tunable light filters for surveillance and remote sensing applications" [CRI000741-CRI000750].
See Miller's Phase I grant proposal to NASA/JPL, the Phase I final report and Phase II grant proposal from 1992, and the many progress reports to NASA

[CRI000858-CRI000878; CRI000525-CRI000581; CRI000375-CRI000399; CRI000899 –CRI000942].

See Metrologia article "Use of Tunable Liquid Crystal Filters to Link Radiometric and Photometric Standards", P J Miller, *Metrologia* 28, 145-149 (1991).

See Miller's 1992 memo "VS Filter Application note data" [CRI000857].

See the 1992 Photonics Circle of Excellence award received by CRI for the LCTF, to which Miller made primary contributions ["Photonics Circle of Excellence Awards", *Photonics Spectra*, 26, 5 (1992)].

See the 1993 Laser Focus World CTA award for optical product excellence, received by CRI for the LCTF, to which Hoyt made primary contributions ["Five innovative winners: the 1993 CTA Awards", *Laser Focus World*, 28, 1 (1993)].

See the 1992 R&D 100 award received by CRI for the LCTF, to which Miller made primary contributions [R&D 100 Winners' Announcement, *Research & Development*, 34, 12 (1992)].

See the Miller and Hoyt paper entitled "Multispectral imaging with a liquid crystal tunable filter" [CRI000729-CRI000740].

See correspondence with Dr. Alex Pertica, which Miller participated in drafting, [CRI000431-CRI000460].

See Miller's memo concerning visit by Dr. Tom Chrien [CRI000430] concerning use of LCTFs for infrared chemical imaging of the Dead Sea Scrolls.

See Miller's correspondence with Wayne Schober concerning use of LCTFs for infrared chemical imaging of the Dead Sea Scrolls [CRI000879].

**d.  Describe in detail the contribution, if any, of Hoyt to the invention covered by the claim and identify the specific language from the claim corresponding to such contribution;**

...

**e2.[‡]  Identify all documents and communications that refer or relate to the contributions described for each claim; ...**

**Claims 1, 12, and 13:**

Hoyt at least co-invented the chemical imaging system and method as recited in Claims 1, 12, and 13. In particular, Hoyt provided the concept of using a light collecting device that produces a "collimated beam" (recited in element (b) of Claims 1, 12, and 13).

Defendant Treado began a six year collaboration with Hoyt, Miller, and CRI on or about January 27th, 1993 [CRI000131-CRI000132]. Prior to beginning the collaboration, Treado had started work on an article considering alternatives to acousto-optical tunable filters (AOTFs) as spectrometers in Raman imaging systems. Treado contacted Plaintiffs, who are recognized experts in LCTF technology [CRI000131-CRI000132]. The scope of Treado's article changed as a

---

[‡] Because Defendants' Interrogatory No. 7 had two "e"'s, they have been designated as "e1" and "e2" herein.

result of the collaboration, at first growing to include a comparison with LCTFs [CRI000130], ultimately concluding that LCTFs were a superior imaging technology [CRI000119], and naming Hoyt as a co-author [CRI000127].

The paper includes measurements taken in visible light, and with near-infrared light at 720 nm. ["Imaging spectrometers for Fluorescence and Raman Microscopy: Acousto-Optic and Liquid Crystal Tunable filters", H.R. Morris, C.C. Hoyt, and P.J. Treado, *Applied Spectroscopy*, 48, 7, 857-866 (1994)]. Later in the collaboration, measurements were made at longer wavelengths, including wavelengths in excess of 780 nm.

Between Treado's first contact with the Plaintiffs and the submission of the article, Hoyt proposed producing a "collimated beam" as recited in element (b) of Claims 1, 12, and 13. Specifically, Hoyt contributed the idea of producing a collimated beam with an infinity-corrected objective. [CRI000755-CRI000761; CRI000717-CRI000720; CRI000729-CRI000740]. From the time of initial contact and for at least two years thereafter, Hoyt and Treado collaborated closely to identify practical applications of this work with specific emphasis on areas with commercial value and/or scientific significance.

In addition to the references cited above, see Hoyt notes and correspondence with Treado [CRI000216; CRI000133; CRI000134; CRI000135-CRI00136; CRI000120-CRI000125; CRI000128-CRI00173]

## Claim 2:

Claim 2 specifically recites the use of a quartz tungsten halogen lamp or a xenon arc lamp as light sources, both of which had been used by Miller and/or Hoyt in chemical imaging systems meeting all of the limitations of Claim 1 at different times during the SBIR collaboration.

## Claim 3:

Claim 3 specifically recites the use of infinity-corrected optics, which Hoyt contributed to the collaboration, as discussed above.

## Claim 4:

Hoyt contributed to the subject matter of this claim at least insofar as it is dependent on Claim 1. Also, Hoyt brought expertise on the use of Solc-type LCTF designs. See Hoyt's NIH proposal, which describes use of these designs for a similar instrument operating primarily with visible light [CRI000048-CRI000073].

## Claim 5:

Claim 5 specifically recites the use of a "near infrared radiation focal plane detector" for the detector recited in element (a) of Claim 1. The chemical imaging system conceived and constructed by at least Miller and/or Hoyt in the SBIR collaboration used such a detector.

### Claims 6-10:

Hoyt contributed to the subject matter of these claims at least insofar as they are dependent on Claim 1.

### Generally:

The list of documents below is illustrative of Hoyt's expertise (and thus his contribution to the collaborative effort), but not exhaustive:

See Hoyt's 1988 NIH grant proposal dated 8/88 [CRI000048-CRI000073].
See the brochure "VariSpec filters", to which Hoyt contributed [CRI000046-CRI000047].
See the fax from David Claypool to Hoyt providing quotation for microscope with objectives to use in Hoyt's NIH grant work [CRI000755-CRI000761].
See Hoyt and Benson article entitled "Merging spectroscopy and digital imaging enhances cell research" [CRI000717-CRI000720].
See the correspondence with Dr. Alex Pertica, which Hoyt participated in [CRI000431-CRI000460].
See the Foukal proposal to NASA "Tunable Liquid crystal Filters for Lunar and Planetary Spectral Imaging Systems", to which Hoyt contributed [CRI000381-CRI000399].
See the Hoyt, Miller, and Foukal article entitled "Liquid crystal tunable light filters for surveillance and remote sensing applications" [CRI000751-CRI000754].
See correspondence between Hoyt and Peter Baurschmidt, dated 1/92 through 2/92 [CRI000943 - CRI000946, CRI000977-CRI000980].
See the 1992 Photonics Circle of Excellence award received by CRI for the LCTF, to which Miller made primary contributions ["Photonics Circle of Excellence Awards", *Photonics Spectra*, 26, 5 (1992)].
See the 1993 Laser Focus World CTA award for optical product excellence, received by CRI for the LCTF, to which Hoyt made primary contributions ["Five innovative winners: the 1993 CTA Awards", *Laser Focus World*, 28, 1 (1993)].
See the 1992 R&D 100 award received by CRI for the LCTF, to which Miller made primary contributions [R&D 100 Winners' Announcement, *Research & Development*, 34, 12 (1992)].
See Hoyt's correspondence with Mark Sartor of Xybion, 1992-1994 [CRI000247-CRI000253].
See Hoyt's fax to Mark Sartor dated 12/92 [CRI000947-CRI000948].

See Hoyt's paper with Miller entitled "Multispectral imaging with a liquid crystal tunable filter" [CRI000729-CRI000740].

See Hoyt's article "Toward Higher res, Lower cost Quality color and multispectral imaging", dated 4/95 [CRI000751-CRI000754].

e1.[§] **State whether any other person contributed to the invention covered by the claim, and for each such person describe in detail the contribution of that person to the invention;**

Defendant Patrick Treado contributed the use of an infrared imaging spectrometer in a Raman (scattering) light mode of sample interaction.

f.    **Identify all persons who have knowledge of the contribution described for each claim.**

Such persons are believed to include:
Dr. Peter Foukal
Dr. Mark Sartor
Dr. Greg Bearman
Dr. Tom Chrien
Dr. David Vinter
Dr. Ken Spring
Ernst Keller
David Claypool
Barry Logue

---

[§] Because Defendants' Interrogatory No. 7 had two "e"'s, they have been designated as "e1" and "e2" herein.

# EXHIBIT F



**COHEN PONTANI LIEBERMAN & PAVANE**

551 Fifth Avenue, New York, NY 10176  *phone* 212.687.2770  *fax* 212.972.5487  www.cplplaw.com

Myron Cohen (1927-2005)
Thomas C. Pontani, Ph.D.
Lance J. Lieberman
Martin B. Pavane
Thomas Langer
Michael C. Stuart
William A. Alper
Edward M. Weisz
Kent H. Cheng, Ph.D.
Julia S. Kim
Alfred W. Froebrich
Lisa A. Ferrari
Alan J. Morrison

———————————————

Sidney R. Bresnick
Of Counsel

———————————————

Mindy H. Chettih
Vincent M. Fazzari
Alfred H. Hemingway, Jr.
Roger S. Thompson
Teodor J. Holmberg
Richard D. Margiano
Darren S. Mogil
David P. Badanes
Mher Hartoonian
Alphonso A. Collins
Douglas D. Zhang
Edward V. DiLello
Edward M. Reisner
Bradley M. Marazas
F. Brice Faller
Marilyn Neiman

———————————————

Enshan Hong
Technical Advisor

May 21, 2007

***VIA E-MAIL***

Kenneth L. Racowski, Esq.
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA 19103

Re:    Stipulation for Tracey Golini in
       Miller et al. v. Treado et al.
       Civ. No. 05-10367-RWZ (D.Mass.)
       <u>Our File No.: 34250-60L</u>

Dear Ken:

In response to your April 27, 2007 e-mail concerning the deposition of Tracey Golini, we confirm that plaintiffs will not call Tracey Golini as a witness at trial because plaintiffs do not believe that Golini has any material knowledge concerning the inventorship issue.  It is our understanding that, based on this confirmation, you have agreed to forgo the Golini deposition.  If this is not the case, please inform us immediately.


Very truly yours,
COHEN, PONTANI, LIEBERMAN & PAVANE LLP

/s/ Tidge Holmberg

TJH/tdg

cc:    Paul D. Weller, Esq.
       Anthony J. Fitzpatrick, Esq.
       Christopher S. Kroon, Esq.

# EXHIBIT G

**The filing of this confidential exhibit has been deferred, pending a ruling on Defendants' Motion to Impound, which was electronically filed on June 28, 2007.**

**EXHIBIT H**



**"Tidge Holmberg"**
**<THolmberg@cplplaw.com>**
06/14/2007 09:29 AM

To   "Fitzpatrick, Anthony J." <AJFitzpatrick@duanemorris.com>

cc   "Martin B. Pavane" <MPavane@cplplaw.com>,
     pweller@morganlewis.com, dgolub@morganlewis.com,
     kracowski@morganlewis.com

bcc

Subject   RE: Miller et al. v. Treado et al.

Tony:

We confirm receipt of the expert reports yesterday morning.

We are presently assessing whether to depose Yeh. I assume defendants will also offer dates of availability for Yeung, since he also wrote an expert report. We will not agree to the terms of Dan Golub's June 11th e-mail. We have never seen the need for expert reports in this case, as the claim interpretation seems fairly simple, and, based on a quick review, many of the the of the opinions in both of defendants' expert reports seem to concern the invalidity of the '962 patent-in-suit, and have little to do with whether plaintiffs invented the subject matter claimed in the '962 patent-in-suit. The burden for this exercise is on defendants.

Tidge

       -----Original Message-----
       **From:** Fitzpatrick, Anthony J. [mailto:AJFitzpatrick@duanemorris.com]
       **Sent:** Thursday, June 14, 2007 9:18 AM
       **To:** Tidge Holmberg
       **Cc:** Martin B. Pavane; pweller@morganlewis.com; dgolub@morganlewis.com;
       kracowski@morganlewis.com
       **Subject:** RE: Miller et al. v. Treado et al.

       Tidge:

       My May 31 and June 4 e-mails were 9 MBs in size, and therefore should not have
       triggered the size limit of your firm's Exchange server. Furthermore, we did not receive
       an error message from either your firm or your local counsel indicating that the e-mails
       could not be delivered. Nonetheless, both expert disclosures were sent to you by fax first
       thing yesterday morning. If for some reason you did not receive that fax, please let me
       know.

       Again, please let us know at your earliest convenience whether the plaintiffs wish to
       depose Dr. Yeh on the date and terms outlined in Dan Golub's June 11 e-mail to you.



**From:** Tidge Holmberg [mailto:THolmberg@cplplaw.com]
**Sent:** Tuesday, June 12, 2007 6:28 PM
**To:** Fitzpatrick, Anthony J.
**Cc:** Martin B. Pavane; pweller@morganlewis.com; dgolub@morganlewis.com;
kracowski@morganlewis.com
**Subject:** RE: Miller et al. v. Treado et al.
**Importance:** High

Apparently your May 31st and June 4th e-mails exceeded 10 MBs, which is the default
size limit on e-mail exchange servers, so we never received them. Our understanding of
your letter is that you've sent a paper copy today by first-class mail (if this is not correct,
please inform us immediately).

In the future, we request that we be informed when you intend to send an e-mail
exceeding 10 MBs in size so that we can avoid this happening again. It might be useful to
break down such a document into pieces less than 3 MBs in size -- as many federal
district courts require that each file be smaller than 3 MBs when electronic filing, most law
firms do this on a regular basis. Of course, this is only a suggestion -- all that we ask is
that you inform us before sending an e-mail exceeding 10 MBs in size.
    -----Original Message-----
**From:** Fitzpatrick, Anthony J. [mailto:AJFitzpatrick@duanemorris.com]
**Sent:** Tuesday, June 12, 2007 5:47 PM
**To:** Tidge Holmberg
**Cc:** Martin B. Pavane; pweller@morganlewis.com; dgolub@morganlewis.com;
kracowski@morganlewis.com
**Subject:** Miller et al. v. Treado et al.

Counsel:

Please see attached.



**Anthony J. Fitzpatrick**
Partner
Duane Morris LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210
**P:** 857.488.4220
**F:** 857.488.4201

- BIO
- E-MAIL
- WEB SITE
- VCARD

# EXHIBIT I



Erin E. McLaughlin, Esq.
direct dial: 617-856-8297
emclaughlin@brownrudnick.com

One
Financial
Center
Boston
Massachusetts
02111
tel 617.856.8200
fax 617.856.8201

June 14, 2007

FILED
IN CLERK'S OFFICE

2007 JUN 14 A 11: 14

U.S. DISTRICT COURT
DISTRICT OF MASS

## VIA HAND DELIVERY

Clerk's Office
United States District Court
District of Massachusetts
One Courthouse Way
Boston, MA 02210

RE:   Cambridge Research & Instrumentation (CRI) v. ChemImage, Inc.
      United States District Court for the District of Massachusetts, No. 06-11479-RWZ

Dear Sir/Madam:

Enclosed for filing please find Notice of Voluntary Dismissal in connection with the above referenced matter.

Kindly acknowledge receipt and filing of the same by date-stamping the enclosed copy of this letter and returning it to the undersigned in the self-addressed, stamped envelope enclosed for your convenience. Thank you.

Very truly yours,

**BROWN RUDNICK BERLACK ISRAELS LLP**

By: _____
      Erin E. McLaughlin

EEM/jjk
Enclosures
cc:   Anthony J. Fitzpatrick, Esq.
      Paul D. Weller, Esq.
      Martin B. Pavane, Esq.
      Teodor J. Holmberg, Esq.

# 1331914 v3 - MCLAUGEE - 025029/0001

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF MASSACHUSETTS

CAMBRIDGE RESEARCH AND
INSTRUMENTATION, INC.,
a Delaware corporation, and
PETER J. MILLER, an individual, and
CLIFFORD HOYT, an individual,

              Plaintiffs,                        **Civil Action No. 06-11479-RWZ**

                v.

CHEMIMAGE CORP., a Delaware corporation,
and PATRICK TREADO, an individual,

              Defendants.

## NOTICE OF VOLUNTARY DISMISSAL

Pursuant to Fed. R. Civ. P. 41(a)(1)(i), plaintiffs Cambridge Research and Instrumentation, Inc., Peter J. Miller, and Clifford Hoyt, voluntarily dismiss Civil Action No. 06-11479-RWZ. This action was stayed on September 29, 2006, by Order [D.E. 83] in Civil Action No. 05-10367-RWZ. Because of this, defendants have never served an answer in this action. Thus, all requirements under Rule 41(a)(1)(i) have been met, and this action may be dismissed without an order from the court. Also pursuant to Fed. R. Civ. P. 41(a)(1)(i), this dismissal is without prejudice.

                        Respectfully submitted,

                        **CAMBRIDGE RESEARCH AND**
                        **INSTRUMENTATION, INC., PETER J.**
                        **MILLER, and CLIFFORD HOYT,**

By their attorneys:

Dated: June 14, 2007

Martin B. Pavane (admitted *pro hac vice*)
Teodor J. Holmberg (BBO# 634708)
COHEN PONTANI LIEBERMAN & PAVANE LLP
551 Fifth Avenue
New York, New York 10176
Tel. (212) 687-2770
Fax (212) 972-5487

Brian L. Michaelis (BBO# 555159)
Erin E. McLaughlin (BBO# 647750)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
Tel. (617) 856-8200
Fax (617) 856-8201

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below a true copy of the foregoing **NOTICE OF VOLUNTARY DISMISSAL** was served upon the attorney of record for defendants by mail as follows:

Anthony J. Fitzpatrick, Esq.
DUANE MORRIS LLP
470 Atlantic Avenue, Suite 500
Boston, MA 02210

Paul D. Weller, Esq.
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103

Dated: June 14, 2007

Teodor J. Holmberg (BBO# 634708)