**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PETER J. MILLER, an individual, CLIFFORD HOYT, an individual, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC., a Delaware corporation,<br><br>　　　　　　　　Plaintiffs,<br><br>　　v.<br><br>PATRICK TREADO, an individual, and CHEMIMAGE CORP., a Delaware corporation,<br><br>　　　　　　　　Defendants. | **Civil Action No. 05-10367-RWZ** |

**PLAINTIFFS' OPPOSITION
TO
<u>DEFENDANTS' MOTION [D.E. 149] TO ALTER OR AMEND JUDGMENT</u>**

Plaintiffs Cambridge Research and Instrumentation, Inc., Peter J. Miller, and Clifford Hoyt hereby submit this opposition to defendants' motion [D.E. 149] under Rule 59(e) to alter or amend this Court's order [D.E. 147] dismissing the present action.

Defendants' reissue patent ***will issue in less than five weeks***. *See infra*. At least because of this, the Court's ruling that "there is no longer a case or controversy" is supported by the facts and the law. Order [D.E. 147], pp. 2-3. There is no reason, and defendants have proffered no reason, to alter or amend that judgment. Accordingly, defendants' motion should be denied.

Pursuant to LR 7.1(b)(2), a memorandum of reasons, including citations of proper authorities, is incorporated herein.

Plaintiff's Opp. to
Defs.' Mot./Alter [D.E. 149]
this Court's Order [D.E. 147]

The law concerning Rule 59(e) motions is clear:

> We note that it is very difficult to prevail on a Rule 59(e) motion. The general rule in this circuit is that the moving party must "either clearly establish a manifest error of law or must present newly discovered evidence." *Pomerleau v. W. Springfield Pub. Sch.,* 362 F.3d 143, 146 n. 2 (1st Cir. 2004) (quoting *FDIC v. World Univ. Inc.,* 978 F.2d 10, 16 (1st Cir. 1992)); *see also* 11 C. Wright et al., *Federal Practice & Procedure* § 2810.1 (2d ed.1995) (noting four grounds for granting such a motion: manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, and an intervening change in controlling law).

*Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 7 n.2 (1st Cir. 2005).

Defendants have not shown any manifest error of law or fact, new evidence, injustice (whether "manifest" or not), or change in the law. Instead, defendants argue that because (1) the reissue patent has not yet issued, and (2) plaintiffs offered to compromise by dismissing with prejudice (an offer rejected by defendants), the Court must change its order from a dismissal *without* prejudice to a dismissal *with* prejudice.

Defendants' reissue patent, which does not claim the subject matter plaintiffs allegedly invented, and which *will issue in less than five weeks*, is the cause of death for both the patent-in-suit (which claimed the subject matter that was the basis for plaintiffs' claim of inventorship) and the sole claim for inventorship correction in this action.[*] *See* Order [D.E. 147], pp. 2-3. Defendants do not dispute that all that remains is the purely ministerial act of processing the reissue application for publication as a reissue patent. Without any cogent explanation or reasoning, defendants contend that the five-week-at-most existence of the original patent-in-suit

---

[*] Defendants' reissue patent has been "dispatch[ed] to FDC". **Exhibit 1 hereto**, Patent Office PAIR Status Report. FDC is "Final Data Capture", the final stage of preparation before issuance of a patent application. "The average time that an allowed application is in the FDC process is 5 weeks". **Exhibit 2 hereto**, Patent Office FAQ on "What happens to a patent application once the examiner allows it for issuance as a patent?". However, allowed *reissue* patent applications go through "special handling", effectively placing such applications ahead of all the other patent applications in the FDC process, making it very likely it will take less than 5 weeks for defendants' reissue patent to issue. **Exhibit 3 hereto**, MANUAL OF PATENT EXAMINING PROCEDURE, §1309 ("Issue of Patent").

Plaintiff's Opp. to
Defs.' Mot./Alter [D.E. 149]
this Court's Order [D.E. 147]

requires the Court to change its dismissal from *without* prejudice to *with* prejudice.  Defs.' Mot./Alter [D.E. 149]. p. 2-3.  To the contrary, the fleeting, five-week-at-most existence of the patent-in-suit proves there was no manifest error of fact or law in the Court's order dismissing this action.

Moreover, defendants do not merit the reward of a dismissal with prejudice—equivalent to a decision in their favor on the merits—since the inventorship of the claims in the original patent-in-suit has never been considered by this Court, and now will never by considered by this or any other court because it has been rendered moot by defendants' direct and deliberate actions in their reissue proceeding.  *See*, *e.g.*, Defs.' Memo. in Supp. of Mot. to Stay [D.E. 2], p. 10 ("To the extent that the claims of the '962 patent are successfully narrowed in the reissue proceedings … , Plaintiffs' inventorship and invalidity claims will be mooted.") (emphasis in original); *see also* Pltffs.' Memo. [D.E. 133] in Supp. of Mot./Dismiss [D.E. 132], pp. 2, 3.

Defendants also argue that the Court must change the dismissal from *without* prejudice to *with* prejudice because plaintiffs had offered defendants a compromise which included a dismissal of this action with prejudice.  *See* Defs. Mot./Alter [D.E. 149], p. 1; *see also*, *e.g.*, Pltffs' Opp. [D.E. 146], p. 5 ("Although plaintiffs are entitled to dismissal without prejudice … , plaintiffs have offered, in order to, *inter alia*, avoid wasting time, money, and resources on a now moot and pointless litigation, to dismiss with prejudice …").  But defendants *rejected* plaintiffs' offer to dismiss with prejudice.  *See* Pltffs.' {Proposed} Reply [D.E. 142-1], pp. 4-5; and Ex. 2 thereto (defs.' e-mail rejection of pltffs.' offer to compromise).  Plaintiffs' efforts to avoid wasting time and expense on this mooted litigation by compromising with defendants should not be punished by changing the present dismissal to one with prejudice—especially when the Court's order is the correct outcome under the law and the facts, and plaintiffs' efforts to

Plaintiff's Opp. to
Defs.' Mot./Alter [D.E. 149]
this Court's Order [D.E. 147]

compromise were spurned by defendants at the time. Lastly, in all of the cases cited by defendants for the proposition that plaintiffs' offer to dismiss with prejudice ***must*** result in a dismissal with prejudice ("the court is without discretion"), the plaintiffs had filed motions to dismiss with prejudice, which is not the case here and clearly distinguishes those cases from this one. *See* Defs.' Mot./Alter [D.E. 149], pp. 3-4.

At least on the basis of the foregoing, this Court should DENY defendants' motion [D.E. 149] under Rule 59(e) to alter or amend this Court's order [D.E. 147].

Respectfully submitted,

**PETER J. MILLER, CLIFFORD HOYT, and CAMBRIDGE RESEARCH AND INSTRUMENTATION, INC.,**

By their attorneys:

Dated: August 16, 2007

/s/ Teodor Holmberg
Martin B. Pavane (admitted *pro hac vice*)
Teodor J. Holmberg (BBO# 634708)
David P. Badanes (admitted *pro hac vice*)
COHEN PONTANI LIEBERMAN & PAVANE LLP
551 Fifth Avenue
New York, New York 10176
E-mail: tidge@cplplaw.com

Erin E. McLaughlin (BBO# 647750)
BROWN RUDNICK BERLACK ISRAELS LLP
One Financial Center
Boston, MA 02111
E-mail: EMcLaughlin@brownrudnick.com

### CERTIFICATE OF SERVICE

I hereby certify that the document identified in the top right-hand portion of this page and filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on the date indicated below.

Dated: August 16, 2007

/s/ Teodor Holmberg
Teodor J. Holmberg (BBO# 634708)

| 11/103,423 | NEAR INFRARED CHEMICAL IMAGING MICROSCOPE | 08-15-2007::15:47:58 |
|---|---|---|

## Transaction History

| Date | Transaction Description |
|---|---|
| 08-15-2007 | Dispatch to FDC |
| 08-15-2007 | Application Is Considered Ready for Issue |
| 04-10-2007 | Issue Fee Payment Verified |
| 04-10-2007 | Miscellaneous Incoming Letter |
| 06-01-2007 | TC Return to Pubs |
| 06-01-2007 | Mail Examiner's Amendment |
| 05-31-2007 | Examiner's Amendment Communication |
| 05-12-2007 | Pubs Case Remand to TC |
| 04-10-2007 | Issue Fee Payment Received |
| 04-02-2007 | Mail Notice of Allowance |
| 03-15-2007 | Document Verification |
| 03-15-2007 | Notice of Allowance Data Verification Completed |
| 11-20-2006 | Information Disclosure Statement considered |
| 02-08-2007 | Date Forwarded to Examiner |
| 01-31-2007 | Supplemental Response |
| 01-31-2007 | Oath or Declaration Filed (Including Supplemental) |
| 02-08-2007 | Date Forwarded to Examiner |
| 01-26-2007 | Supplemental Response |
| 11-20-2006 | Information Disclosure Statement (IDS) Filed |
| 11-20-2006 | Information Disclosure Statement (IDS) Filed |
| 11-27-2006 | Cleared by OIPE CSR |
| 11-22-2006 | Cleared by OIPE CSR |
| 11-22-2006 | Cleared by OIPE CSR |
| 11-21-2006 | Cleared by OIPE CSR |
| 11-08-2006 | Date Forwarded to Examiner |
| 10-31-2006 | Response after Non-Final Action |
| 09-25-2006 | Mail Non-Final Rejection |
| 09-17-2006 | Non-Final Rejection |
| 09-18-2006 | Mail Miscellaneous Communication to Applicant |
| 05-18-2005 | Information Disclosure Statement considered |
| 10-13-2005 | Information Disclosure Statement considered |
| 11-04-2005 | Information Disclosure Statement considered |
| 11-11-2005 | Cleared by OIPE CSR |
| 11-04-2005 | Information Disclosure Statement (IDS) Filed |
| 11-04-2005 | Information Disclosure Statement (IDS) Filed |
| 11-04-2005 | Cleared by OIPE CSR |
| 10-30-2005 | IFW TSS Processing by Tech Center Complete |
| 10-13-2005 | Information Disclosure Statement (IDS) Filed |
| 10-13-2005 | Information Disclosure Statement (IDS) Filed |
| 10-03-2005 | Miscellaneous Communication to Applicant - No Action Count |
| 04-11-2005 | Preliminary Amendment |
| 05-18-2005 | Information Disclosure Statement (IDS) Filed |

**EXHIBIT 1**

| | |
|---|---|
| 05-18-2005 | Information Disclosure Statement (IDS) Filed |
| 08-15-2005 | Mail Examiner Interview Summary (PTOL - 413) |
| 08-10-2005 | Examiner Interview Summary Record (PTOL - 413) |
| 08-09-2005 | Case Docketed to Examiner in GAU |
| 06-01-2005 | Information Disclosure Statement (IDS) Filed |
| 06-01-2005 | Information Disclosure Statement (IDS) Filed |
| 05-18-2005 | Cleared by L&R (LARS) |
| 05-09-2005 | Information Disclosure Statement (IDS) Filed |
| 05-09-2005 | Information Disclosure Statement (IDS) Filed |
| 05-06-2005 | Referred to Level 2 (LARS) by OIPE CSR |
| 06-07-2005 | Notice of Reissue Published in Official Gazette |
| 05-04-2005 | Application Dispatched from OIPE |
| 05-04-2005 | Application Is Now Complete |
| 04-28-2005 | IFW Scan & PACR Auto Security Review |
| 04-11-2005 | Initial Exam Team nn |

**Close Window**

**EXHIBIT 1**



United States Patent and Trademark Office

**PATENTS**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

**Patents** > Patent Publication FAQ

| | |
|---|---|
| **Office of Patent Publication - General Information** | |
| **Patent Publication Services** | |
| **Instructions for Responding to a Notice of Abandonment** | |

## Office of Patent Publication FAQ Categories:

**Correcting a Printed Patent**      **Notice of Allowance & Issue Fee Due**

**Official Gazette**                 **Publication Processing**

**EXHIBIT 2**

### Correcting a Printed Patent Frequently Asked Questions

What do I need to file to request an error appearing in printed patent be corrected?

Who should I speak to about requesting a Certificate of Correction form?

Who do I contact regarding the status of my request for a Certificate of Correction?

What should I do if I disagree (or have a question) in regards to the notification letter (or denial letter) that I received from the Certificates of Correction Branch?

A Certificate of Correction issued to correct an error in my patent. However, the correction has not been made to the patent on the USPTO Website.
Who should I contact to correct an error appearing in a patent on the USPTO Website?

How do I get my request for a Certificate of Correction expedited?

My issue notification is incorrect (e.g., an inventor's name, address, title of invention). What should I do?

How can I get erroneous assignee information appearing on my printed patent corrected?

I filed a Certificate of Correction, but my correspondence address and/or Power of Attorney has changed since the request. What should I do?

I have a trademark, how do I file a Certificate of Correction?

## Notice of Allowance and Issue Fee Due Frequently Asked Questions

**After my "Notice of Allowance and Issue Fee Due" (form PTOL-85) was mailed, there was a fee increase. My notice states the fee due is different than the new fee. I am now ready to pay my issue fee and it is after the date the new fee went into effect. Which amount do I pay?**

**How long after the Notice of Allowance and Issue Fee Due" (form PTOL-85) has been mailed do I have to pay my issue fee?**

**How long do I have to submit any drawings required on the "Notice of Allowability" (form PTOL-37)?**

**[back to top of FAQ]**

## Official Gazette Frequently Asked Questions



**What is the Official Gazette?**

**What is the Electronic Official Gazette - Patents (eOG:P)?**

**Are published patents the only content in the Electronic Official Gazette - Patents (eOG:P)?**

**Can I advertise my patent for license or sale in Electronic Official Gazette - Patents (eOG:P)?**

**Can I purchase a subscription or single copy of the Electronic Official Gazette - Patents (eOG:P)?**

**How do I order a subscription or single copy of the Electronic Official Gazette - Patents (eOG:P)?**

**Where could I locate a copy of the OG Notices for perusal, without purchasing the publication?**

**[back to top of FAQ]**

## Publication Processing Frequently Asked Questions

**My application has a query initiated (QURI) and I don't know why?**

**How long will the process take for an application, undergoing a query, to be resolved?**

**What happens to a patent application once the examiner allows it**

**for issuance as a patent?**

**How do I respond to a Notice of Abandonment that I received from the Office of Patent Publication?**

**[back to top of FAQ]**

---

**Question: My application has a query initiated (QURI) and I don't know why?**

Answer: The printing contractor has reviewed your application and found a discrepancy. Your application will be reviewed by the Office of Patent Publication where they will fix the discrepancy, notify you (the customer) for resolution or return the application to the examiner for resolution.

---



**Question: How long will the process take for an application to be resolved?**

Answer: Under normal circumstances the application should be resolved in less than 6 days. If the application involves special circumstances, (i.e., waiting for drawings, a signed declaration/oath, etc.) the timetable will vary depending on the response needed.

**[back to top - Publication Processing FAQ]**

---

**Question: What happens to a patent application once the examiner allows it for issuance as a patent?**

Answer: Listed below are the stages through which an allowed patent application goes within the PTO.

1. When the examiner allows an application a message concerning the application number is sent to the Office of Patent Publication.
2. The application is then electronically exported to Initial Data Capture (IDC) for electronic capture of the patent file.
3. It takes approximately 6 weeks from the date that the allowed file is exported for the completion of the Initial Data Capture of the application.
4. Upon IDC completion, a message is then sent to the File Maintenance Facility (FMF) to ensure that all post allowance correspondence, fees and drawings have been updated. The application may stay in the FMF for approximately 1-2 weeks. However, if all requirements are not yet fulfilled the application will remain at the FMF until the requirements are met.
5. Once the fee and any correspondence and/or drawings are matched with the application and all requirements have been met for issuance as a patent, the application is then electronically exported to the Final Data Capture (FDC) stage of

> the process. The FDC makes any updates necessary to the electronic file and places the allowed patent application in an issue. The average time that an allowed application is in the FDC process is 5 weeks (2 weeks of processing time for assignment of issue date). The "Issue Notification" is mailed approximately 3 weeks prior to the issue date of the patent.
6. The patent grant is mailed on the issue date of the patent. It includes any references to prior patents, the inventor(s)') names, specification, and claims (to name a few). It is bound in an attractive cover and includes a gold seal and red ribbon on the cover.

---

**Question: How do I respond to a Notice of Abandonment that I received from the Office of Patent Publication?**

Answer: For questions regarding the Notice of Abandonment contact the Office of Patent Publication Image Assistance Center at 571.272.4200 or 1.888.786.0101.



Detailed information in regards to the Notice of Abandonment is also provided at
**http://www.uspto.gov/web/patents/pubs/abandonment.htm**.

**[back to top - Publication Processing FAQ]**

---

**Question: What do I need to file to request an error appearing in printed patent be corrected?**

Answer: You should file a request for a Certificate of Correction that contains the following:

1. A transmittal letter or cover letter that includes bibliographic data identifying the:
     - patent number
     - application number
     - inventor(s)
     - issue date
     - title of invention

   **NOTE:** The transmittal letter should be signed by the attorney of record or owner of record and should state any facts supporting the requested corrections.

2. A copy of any document supporting the requested correction(s), your search revealed, that are not in the Office record or file (e.g., post card receipts, amendment(s), 1449)
3. Form PTO/SB/44 (same as form PTO-1050)
4. Identification of the location of error(s). Identify them by column and line number, using the nearest marginal line number in the printed patent.

Leave 2 inches at the bottom of the last page or first page if only one



Quality *>Assurance< forms and papers are *not* to be included with Office actions, nor should such forms or papers be retained in the file of any reviewed application whether or not prosecution is to be reopened. The application record should *not* indicate that a review has been conducted by Quality *>Assurance<.

Whenever an application has been returned to the TC under the Quality *>Assurance< Program, the TC should promptly decide what action is to be taken in the application and inform the Office of Patent Quality *>Assurance< of the nature of that action by use of the appropriate form. If prosecution is to be reopened or other corrective action taken, only the forms should be returned to the Office of Patent Quality *>Assurance< initially, with the application being returned to the Office of Patent Quality *>Assurance< when action is completed. In all other instances, both the application and the forms should be returned to the Office of Patent Quality *>Assurance<.

## 1309   Issue of Patent [R-5]

Under the current publication process, electronic capture of most of the information to be printed in a patent will begin as soon as an allowed application is received in the Office of Patent Publication, immediately after the Notice of Allowance has been mailed. The Office of Patent Publication forwards the allowed applications to the printer for Initial Data Capture (IDC). This IDC process takes approximately five weeks to accomplish and during this time the application, if in a paper file, is **not** available to examiners or for purposes of making copies of the application (copies of the application files that have been published may be ordered from the Office of Public Records, upon payment of the fee, but the applications will not be removed from the publication process for purposes of making copies). After IDC is completed, the application is returned to the Office of Patent Publication, and the file will be available to examiners and the Office of Public Records.

When the issue fee is paid and all other requirements have been met (e.g., drawings) within the time allowed by law, the application is forwarded to the printer for Final Data Capture (FDC) and final issue preparation. At this point, the application can only be retrieved if it is withdrawn from issue. The application is assigned a patent number and issue date about ten days before the application issues as a patent, and an Issue Notification is mailed to inform the applicant of the patent number and issue date. A bond paper copy of the patent grant is ribboned, sealed, and mailed by the Office of Patent Publication.

All allowed applications ready for printing will be selected by chronological sequence based on the date the issue fee was paid. Special handling will be given to the following applications in these categories:

(A) Allowed cases which were made special by the Director**.

(B) Allowed cases that have a U.S. effective filing date more than 5 years old.

(C) Allowed reissue applications.

(D) Allowed applications having an effective filing date earlier than that required for declaring an interference with a copending application claiming the same subject matter.

(E) Allowed application of a party involved in a terminated interference.

To ensure that any application falling within the scope of the categories outlined above and identified by (A) to (E) receives special treatment, the examiner should **>notify, via e-mail, the Manager of the Publishing Division, Kim Terrell in the Office of Publication that a particular application (identify the application number) should be given special treatment.< The examiner should state the special treatment category outlined above.

*35 U.S.C. 2.  Powers and duties.*

*****

**EXHIBIT 3**

(b)  SPECIFIC POWERS.— The Office—

(1)  shall adopt and use a seal of the Office, which shall be judicially noticed and with which letters patent, certificates of trademark registrations, and papers issued by the Office shall be authenticated;

*****

*35 U.S.C. 153.  How issued.*

Patents shall be issued in the name of the United States of America, under the seal of the Patent and Trademark Office, and shall be signed by the Director or have his signature placed thereon and shall be recorded in the Patent and Trademark Office.